DIMITRIOS P. BILLER (142730)
LDT Consulting, Inc.
15113 West Sunset Blvd., Suite "9"
Pacific Palisades, California 90272
Telephone (310) 459-9870
E-mail Address: biller_ldtconsulting@verizon.net

MARCIA DALEY (146,579)
DALEY & SACKS LAW RLLP
1516 Westwood Boulevard, Suite 102
Los Angeles, California 90024
Telephone: (310) 985-2808
E-mail: marcia@daleyandsackslaw.com

Attorneys for Creditor Paula Thomas

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT COURT OF CALIFORNIA

| | |
|---|---|
| IN RE<br><br>PDTW, LLC,<br><br>DEBTOR. | Case No.: 6-16-bk-15889-SY<br><br>INDEX TO EXHIBITS REFERRED TO IN THE DECLARATION OF DIMITRIOS P. BILLER IN SUPPORT OF CREDITOR PAULA THOMAS' BENCH BREIF ON THE EXCLUSION OF EVIDENCE, DENIAL OF ALL CLAIMS FILED BY THOMAS WYLDE, LLC, AND ORDER PROHIBITING NANCY ZAMORA |

INDEX TO EXHIBITS REFERRED TO IN THE DECLARATION OF DIMITRIOS P. BILLER IN SUPPORT OF CREDITOR PAULA THOMAS' BENCH BREIF ON THE EXCLUSION OF EVIDENCE, DENIAL OF ALL CLAIMS FILED BY THOMAS WYLDE, LLC, AND ORDER PROHIBITING NANCY ZAMORA FROM PARTICIPATING IN THE AUGSUT 28 AND 29, 2017 EVIDENTARY HEARING.

1

1

2

3

4

5

6

7

8

9

10

11

FROM PARTICIPATING IN THE
AUGSUT 28 AND 29, 2017
EVIDENTARY HEARING.

**VOLUME NUMBER VI, EXHIBITS
26 - 28**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INDEX TO EXHIBITS REFERRED TO IN THE DECLARATION OF DIMITRIOS P. BILLER IN SUPPORT OF
CREDITOR PAULA THOMAS' BENCH BREIF ON THE EXCLUSION OF EVIDENCE, DENIAL OF ALL CLAIMS
FILED BY THOMAS WYLDE, LLC, AND ORDER PROHIBITING NANCY ZAMORA FROM PARTICIPATING IN
THE AUGSUT 28 AND 29, 2017 EVIDENTARY HEARING.

2

# INDEX OF EXHIBITS REFERRED TO IN THE DECL. OF BILLER

## VOLUME VI

1.    **Exhibit "1"** Thomas Wylde's, LLC's Notice of Withdrawal of Claim No. 10.

2.    **Exhibit "2":** deposition transcript for Eniluz Gonzalez that was taken on July 31, 2017.

3.    **Exhibit "3":** Pleadings for Claim No. 10 that Richard Peddie apparently prepared and signed under penalty of perjury.

4.    **Exhibit "4":** e-mail Nancy Zamora sent to inform the parties that the Trustee will not call the accountant as a witness.

5.    **Exhibit "5":** Operating Agreement for Thomas Wylde, LLC signed on July 22, 2014.

6.    **Exhibit "6":** Transaction Accounts document that Stephen Choi claims to have received from Thomas Wylde, LLC.

7.    **Exhibit "7":** Agreement to Purchase Units of Membership in Thomas Wylde, LLC.

8.    **Exhibit "8":** Employment Agreement that Paula Thomas signed;

9.    **Exhibit "9"":** Amended Operating Agreement.

INDEX TO EXHIBITS REFERRED TO IN THE DECLARATION OF DIMITRIOS P. BILLER IN SUPPORT OF CREDITOR PAULA THOMAS' BENCH BREIF ON THE EXCLUSION OF EVIDENCE, DENIAL OF ALL CLAIMS FILED BY THOMAS WYLDE, LLC, AND ORDER PROHIBITING NANCY ZAMORA FROM PARTICIPATING IN THE AUGSUT 28 AND 29, 2017 EVIDENTARY HEARING.                                          3

10. **Exhibit "10":** Amended Schedule B for Thomas Wylde, LLC

11. **Exhibit "11":** is the salary chart showing Paula Thomas received her last pay check on April 15, 2015.

12. **Exhibit "12":** Amendment to Schedule B of the Amended Operating Agreement

13. **Exhibit "13":** income tax return for Thomas Wylde, LLC.

14. **Exhibit "14":** Agreement to Purchase Membership Interest.

15. **Exhibit "15":** e-mail Richard Peddie sent proving notice of the withdrawal of Claim No. 10.

16. **Exhibit "16":** e-mail sent to Richard Peddie requesting more information regarding the reasons he withdrew the $2,000,000.00 claim.

17. **Exhibit "17":** Motion for the Trustee seeking to buy the PDTW, LLC's.

18. **Exhibit "18":** e-mail that apparently caused Mrs. Zamora to change her position to produce the expert witness, but then she withdrew him.

19. **Exhibit "19":** e-mail Nancy Zamora send taking the position that the accountant is not an expert and he was only going to be called to "AUTHENICATE" business records of PDTW, LLC.

INDEX TO EXHIBITS REFERRED TO IN THE DECLARATION OF DIMITRIOS P. BILLER IN SUPPORT OF CREDITOR PAULA THOMAS' BENCH BREIF ON THE EXCLUSION OF EVIDENCE, DENIAL OF ALL CLAIMS FILED BY THOMAS WYLDE, LLC, AND ORDER PROHIBITING NANCY ZAMORA FROM PARTICIPATING IN THE AUGSUT 28 AND 29, 2017 EVIDENTARY HEARING.                                                   4

20.    **Exhibit "20":** e-mail from Mrs. Zamora changing her position.

21.    **Exhibit "21":** Second Amended Cross-Complaint TW filed against Paula Thomas.

22.    **Exhibit "22":** Paula Thomas' initial witness list.

23.    **Exhibit "23":** Paula Thomas' initial Exhibit List.

24.    **Exhibit "24":** e-mail received from Richard Peddie withdrawing the $2 million claim.

25.    **Exhibit "25":** "Explanatory Note – Basis for Claim attached to Claim No. 10.

26.    **Exhibit "26":** May 14, 2015 letter that Mr. Peddie wrote to create a false record that TW terminated Thomas one month earlier on April 15, 2015. responses to Form and Special Interrogatories to substantiate the position.

27.    **Exhibit "27"** Thomas Wylde, LLC's responses to form and special interrogatories referring to the letter.

28.    **Exhibit "28"** Demand for Production of Witnesses and served on Thomas Wylde, LLC.

1  Dated: August 7, 2017

2

3

4                               Respectfully submitted,

5

6

7                               By: /S/ Dimitrios P. Biller
                                Counsel for Creditor Paula Thomas

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  INDEX TO EXHIBITS REFERRED TO IN THE DECLARATION OF DIMITRIOS P. BILLER IN SUPPORT OF
    CREDITOR PAULA THOMAS' BENCH BREIF ON THE EXCLUSION OF EVIDENCE, DENIAL OF ALL CLAIMS
    FILED BY THOMAS WYLDE, LLC, AND ORDER PROHIBITING NANCY ZAMORA FROM PARTICIPATING IN

28  THE AUGSUT 28 AND 29, 2017 EVIDENTARY HEARING.                                    6

## PROOF OF SERVICE
## STATE OF CALIFORNIA
## COUNTY OF LOS ANGELES

I declare under penalty of perjury that I live in the County of Los Angeles, state of California, I am over the age of 18 years; my business is located at 15113 West Sunset Blvd., Suite "9", Pacific Palisades, CA 90272. On **August 7, 2017**, I caused to be served, via e-mail, the following pleadings:

### INDEX OF EXHIBITS

on the interested parties in this action by e-mail:

> Richard Byron Peddie,
> lawstudios@comcast.net
> Lawstudios Richard Bryon Peddie
> 505 Euclid Avenue
> Boulder, Co 80303-2811
> Counsel for ALL Defendants


> Nancy Hoffmeir Zamora
> Anthony N.R. Zamora
> Zamora & Hoffmeier
> U.S. Bank Tower
> 633 West 5th Street, Suite 2600
> Los Angeles, California 90071
> e-mail zamora3aol.com


**XXXX** BY MAIL – I placed such envelope for deposit in the U.S. Mail for service by the United States Postal service, with postage thereon fully prepaid. I am "readily familiar" with the practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid at Pacific

INDEX TO EXHIBITS REFERRED TO IN THE DECLARATION OF DIMITRIOS P. BILLER IN SUPPORT OF CREDITOR PAULA THOMAS' BENCH BREIF ON THE EXCLUSION OF EVIDENCE, DENIAL OF ALL CLAIMS FILED BY THOMAS WYLDE, LLC, AND ORDER PROHIBITING NANCY ZAMORA FROM PARTICIPATING IN THE AUGSUT 28 AND 29, 2017 EVIDENTARY HEARING.                                      7

1   Palisades, California. I am aware that on motion of the party served, service is
2   presumed invalid if postal cancellation date or postage meter date is more than one
    day after date of deposit for mailing in affidavit.

4   _____ BY FEDERAL EXPRESS – I am familiar with the practice at my place of
5   business for collection and processing of correspondence for overnight delivery
    maintained by Federal Express. Such correspondence will be deposited with a
6   facility regularly maintained by Federal Express for receipt on the same day in the
7   ordinary course of business. The envelope was sealed and placed for collection
    and delivery by Federal Express with delivery fees paid or provided for in
8   accordance with ordinary business practices.
9   _____ BY PERSONAL SERVICE – I caused such envelope to be delivered by hand
    to the offices of the addressee.
10
11  **XXX**: E-mail at the above e-mail addresses.

12  **XXX** (State) I declare **under penalty of perjury under the laws of the State of**
13  **California** that the foregoing is true and correct.

14
        Executed on **August 7, 2017**, at Pacific Palisades, California.
15

16

17  /S/ Dimitrios P. Biller
18  Dimitrios P. Biller

19

20

21

22

23

24

25

26

27  INDEX TO EXHIBITS REFERRED TO IN THE DECLARATION OF DIMITRIOS P. BILLER IN SUPPORT OF
    CREDITOR PAULA THOMAS' BENCH BREIF ON THE EXCLUSION OF EVIDENCE, DENIAL OF ALL CLAIMS
    FILED BY THOMAS WYLDE, LLC, AND ORDER PROHIBITING NANCY ZAMORA FROM PARTICIPATING IN
28  THE AUGSUT 28 AND 29, 2017 EVIDENTARY HEARING.                                    8

# EXHIBIT "26"

# LAWSTUDIOS™ | RICHARD BYRON PEDDIE, P.C.

*a Colorado professional corporation*
5051 Euclid Avenue
Boulder, Colorado 80303-2831

RICHARD BYRON PEDDIE
ADMITTED: CA, CO, FL, NY

*New York:*
140 Beekman – Third Floor
New York, New York 10038

Tel.: 303.444.5447
Fax: 720.222.4766
lawstudios@comcast.net

---

## TELECOPIER TRANSMITTAL SHEET

Fax Number:  310.201.2334                Client Number: 00150-001

Page 1 of 5 (includes cover)

TO:    Olivia Goodkin, Esq., c/o Greenberg Glusker Fields Claman & Machtinger LLP

FROM: Richard Byron Peddie, Esq.

Re:    *Notice – Paula Thomas*

ADDITIONAL INFORMATION/MESSAGE: *Please deliver to Olivia Goodkin, Esq. Thanks!*
*Richard Byron Peddie*

### TO REPORT ERRORS IN TRANSMISSION:
### 303.444.5447 (voice)
### 720.222.4766 (facsimile)

The information contained in this transmission may be attorney privileged or contain attorney
work product. In any event, the contents of this communication are CONFIDENTIAL, intended
only for the designated recipient. If you are not the intended recipient, you are notified that any
review, dissemination, distribution, or copying of this communication is strictly prohibited. If you
have received this transmission in error, please notify us immediately by telephone and return the
original message to us, at the address listed above, via postal service. We will reimburse you for
your postal charges upon request.

LAWSTUDIOS™ | RICHARD BYRON PEDDIE, P.C.
*a Colorado professional corporation*
5051 Euclid Avenue
Boulder, Colorado 80303-2831

RICHARD BYRON PEDDIE
ADMITTED: CA, CO, FL, NY

*New York:*
140 Beekman – Third Floor
New York, New York 10038

Tel.: 303.444.5447
Fax: 720.222.4766
lawstudios@comcast.net

May 14, 2015

*Via Facsimile* – 310.201.2334
Olivia Goodkin, Esq.
Greenberg Glusker Fields Claman & Machtinger LLP
1900 Avenue of the Stars -- 21st Floor
Los Angeles, CA 90067

Re:    **NOTICE**: Paula Thomas – Company Position; Termination of Employment

Dear Ms. Goodkin:

This firm has been engaged as litigation counsel to Thomas Wylde, LLC ("Company"). I have been instructed to communicate the following:

As far as the Company is concerned, Paula Thomas quit her position without justification and without "Good Reason" as that term may be defined in any applicable contract. This she did through a series of breaches and wrongful acts culminating in what is, essentially, an abandonment of her post. While she later changed her mind, and while the Company entertained proposals to reincarnate Ms. Thomas' role in one form or the other, and while, more recently, the Company also engaged in talks with a view towards amicably settling matters with Ms. Thomas, those talks have not borne fruit. In the meantime, Ms. Thomas has only continued to act in ways that harm both the Company and its brand – and therefore its prospects for returning value to its members.

Thus, to be clear: The Company's position is that Ms. Thomas quit her post without justification – albeit under circumstances in which she could easily have been terminated. None of what has happened since that time has had anything to do with any real belief that she did not do so or that she had any claims whatsoever against the Company or anyone affiliated with it. Those discussions have been for the sole purpose of parting amicably, avoiding even vexatious claims, and, initially, a notion that it was better to retain Paula Thomas in some capacity for company good will.

Olivia Goodkin, Esq.
Greenberg Glusker Fields Claman & Machtinger LLP
May 14, 2015
Page 2 of 4

As will be made clearer below, the Company no longer perceives any value in any affiliation with Ms. Thomas; nor does it believe that Ms. Thomas will truly abide by any terms designed to protect Company value; nor does it believe that any monetary inducements offered to Ms. Thomas would not be wholly offset by damages suffered by the Company, present and future.

In the alternative – and in the unlikely event that any contract between Paula Thomas and the Company somehow survives – the Company terminates any and all such surviving contracts with Paula Thomas or with any entity affiliated with her, effective immediately. This termination is for cause generally, and, specifically, pursuant to section 9 of that employment agreement executed by Paula Thomas on Dec. 31, 201 – in the unlikely event that agreement survives.

Because Ms. Thomas quit, the Company will make no severance payments. In the alternative, because this termination is for cause, the Company will likewise make no severance payments.

All negotiations, whether for a settlement and termination agreement or otherwise, are also hereby terminated, save only those that we may now initiate.

You will no doubt wonder why it is that the Company has cut short negotiations:

Paula Thomas materially breached her employment agreement, refused to comply with the reasonable directives of her superior officer, refused or otherwise failed to abide by Company policies and procedures, and engaged in willful misconduct affecting Company affairs. These acts and omissions have had a materially adverse effect upon, and otherwise damaged, the Company, its members, and its management. To make matters worse, while the Company was busy negotiating in good faith with you – and therefore justifiably expected a *detente* of sorts – these malfeasances did not stop. To the contrary: Some of the most egregious transgressions occurred only quite recently.

For example, the Company was recently informed by Siim Kohv, a public relations representative retained by the Company, that Paula Thomas contacted him and requested that he forward all emails from Company CEO John Hanna regarding press releases. She did this despite the fact that the Company had already instructed her to stand down and revoked any authorization she had to speak for it. Mr. Kohv further stated that Ms. Thomas repeatedly advised him that Mr. Hanna and Company COO Jene Park were "not good people" and that he should "be careful" when dealing with them. Mr. Kohv also indicated that Ms. Thomas admitted to making similar disparaging and defamatory remarks about the Company and its management to Yann Weber at Antidote Magazine.

This is utterly unacceptable. The Company is shocked and hurt that its good faith

Olivia Goodkin, Esq.
Greenberg Glusker Fields Claman & Machtinger LLP
May 14, 2015
Page 3 of 4

attempts to come to amicable arrangements had precisely zero effect on Ms. Thomas' conduct. Frankly, we are puzzled that Paula Thomas should expect to receive financial benefits from the Company with one hand while secretly undermining and harming it with the other.

These personal attacks on Company management, and upon Mr. Hanna and Ms. Park personally, are not only contrary to Company policies and Ms. Thomas' duty of loyalty; they are also in direct violation of Mr. Hanna's explicit admonishment not to speak ill of Company officers to outside parties. Such remarks are clearly intended to damage the Company and its officers both in their official and personal capacities and to diminish the Company's reputation within the industry.

As already disclosed to you, Ms. Thomas had, after all, already been admonished in the past for similar conduct after admitting her wrongdoing. For example, during the Company's latest fashion show in New York, Ms. Thomas told a representative of the Company's PR firm, BPCM, that Mr. Hanna was "a moron" and that he was "running the Company into the ground." When confronted, Ms. Thomas was admonished in no uncertain terms to cease and desist from disparaging the Company or its personnel. She acknowledged the wrongdoing and promised to stop. Nevertheless, as we have seen, she has blatantly continued to denigrate the Company and its officers in her conversations with Mr. Kohv and others.

Furthermore, the Company recently discovered that Ms. Thomas breached obligations under its Confidentiality and Intellectual Property Agreement:

Earlier this year, Ms. Thomas obtained passwords to access the company's file server. She secretly disclosed these passwords to Messrs. Tony Jay and Joshua Sophrin with neither prior authorization nor justification to do so. The confidentiality provisions require that Ms. Thomas keep the data on that server "strictly confidential" and not disclose it to any third party without the express written consent of the Managing Member.

While Mr. Jay did work as a contractor for the company and assisted with the February fashion show and website launch, he had no need for access to the Company's servers nearly a full month later. The Company is not even aware of who Joshua Sophrin is, much less why he would need access to Company servers. Ms. Thomas' surreptitious disclosure of Company passwords to these two individuals constitutes a significant breach of security, a violation of Company policy, a breach of fiduciary duties, and a material breach of the employment agreement.

Based upon these circumstances and others that have already been discussed with Ms. Thomas in the past, the Company exercises its right to terminate her employment for cause – in case this is at all necessary, because again: The Company's position is that she quit her post. Ms. Thomas has been given ample warning and every opportunity to change her conduct, yet failed to

Olivia Goodkin, Esq.
Greenberg Glusker Fields Claman & Machtinger LLP
May 14, 2015
Page 4 of 4

do so. The more recent breaches in particular are not amenable to cure. That these breaches
occurred precisely while the Company was engaged in good faith attempts to resolve matters
amicably is particularly hurtful.

I will therefore request now that you instruct your client to cease and desist all further
defamatory conduct and stop disseminating confidential information and otherwise cease all other
forms of wrongful conduct. After all, Ms. Thomas has ongoing duties as a Company member and
former officer, as well as under the Company's confidentiality agreement. These duties run not
only to the Company, but also, in certain instances, to its other members and management.

Please accept Mr. Schnider's apologies for not responding to you. The Company has put
matters into my hands and prefers that further communications go through me.

I have sent this notice letter to you directly, and not to Ms. Thomas. I have done so under
the assumption that you will continue to represent her in this matter, however altered the picture
may now be. Still, as a courtesy, I ask that you confirm not only receipt but also confirm that
receipt by you is indeed receipt by Ms. Thomas for all purposes – for the obvious reasons.

Finally, please advise whether you are authorized to accept service of process on Paula
Thomas' behalf. The Company intends to sue for its damages and to enjoin further defamatory
conduct and breaches of its confidentiality policies. Thank you.

Very truly yours,
RICHARD BYRON PEDDIE, P.C.

By: Richard Byron Peddie

RBP:rko

# EXHIBIT "27"

1  Richard Byron Peddie, SBN 193770
   lawstudios@comcast.net
2  Lawstudios | Richard Byron Peddie, P.C.
   5051 Euclid Avenue
3  Boulder, CO 80303-2831
   Tel.: 303.444.5447
4  Fax. 720.222.4766
   *Attorney for Defendants*

5

6

7

8                  SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                          COUNTY OF LOS ANGELES

10                             CENTRAL DISTRICT

11   PAULA THOMAS, individually and in        Case No. BC 596 495
     the right of and for the benefit of
12   THOMAS WYLDE, LLC, a California          THOMAS WYLDE, LLC'S COMBINED
     limited liability company, and           RESPONSES TO FORM
13   PDTW, LLC, a California limited liability INTERROGATORIES, FORM
     company,                                 INTERROGATORIES — EMPLOYMENT,
14                                            SPECIAL INTERROGATORIES, SET ONE,
                                             REQUESTS FOR PRODUCTION OF
15        Plaintiffs,                        DOCUMENTS, SET ONE, AND
                                             REQUESTS FOR ADMISSION, SET ONE
16   v.

17   THOMAS WYLDE, LLC, a California          Hon. Michael J. Raphael
     limited liability company,               Department 51 – Room 511
18   JOHN HANNA, an individual,
     JENE PARK, an individual,
19   SHOT IN THE ARMOIRE, LLC, a
     Florida limited liability company, and
20   H&H FASHION, LLC, a Florida limited
     liability company, and DOES 1-50,
21   inclusive,

22        Defendants.

23              THOMAS WYLDE, LLC'S COMBINED RESPONSES TO
        FORM INTERROGATORIES, FORM INTERROGATORIES — EMPLOYMENT,
24                   SPECIAL INTERROGATORIES, SET ONE,
        REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE, AND
25                  REQUESTS FOR ADMISSION, SET ONE

26        THOMAS WYLDE, LLC ("Respondent") responds to Plaintiff PAULA THOMAS' form
     interrogatories — both general and employment-related — special interrogatories, requests for
27   production of documents, and requests for admission, thusly:

28

2/26/16

# GENERAL STATEMENT

Respondent has not completed its investigation of the facts relating to this case, nor has it completed discovery or preparation for trial. Discovery is ongoing. These responses are made on the basis of information presently available to Respondent. There may be further information of which Respondent is unaware. Therefore, Respondent reserves the right to offer or rely at trial on subsequently discovered information.

These responses are made solely for the purpose of this action. Respondent reserves the right to object to the use of any response in any other action or for any other purpose. Each response is given subject to all appropriate objections, including, but not limited to, objections concerning competency, relevancy, materiality, propriety, admissibility, the attorney-client privilege and the work product doctrine, or any other objections, including those which would require the exclusion of any statements contained herein where made by a witness present and testifying in court. All such objections and grounds therefore are reserved and may be interposed at the time of trial or any other time.

No incidental or implied admissions are intended by these responses. Respondent's responses or objections to any request or interrogatory are not intended as an admission of any purported facts set forth or assumed by such request or interrogatory. Respondent's response to any request or interrogatory is not intended as a waiver by it of any objection to that request or any other request.

Respondent objects and/or responds to each interrogatory (form or special) or request for production of documents (and/or tangible things) or request for admission herein on the basis of its understanding and interpretation of each interrogatory or request. Respondent reserves the right to supplement any of these responses with additional objections or information or otherwise if the requesting party interprets these requests differently.

## I. RESPONSES TO FORM INTERROGATORIES — GENERAL

### 1.0 Identity of Persons Answering These Interrogatories

1.1 State the name, ADDRESS, telephone number, and relationship to you of each PERSON who prepared or assisted in the preparation of the responses to these interrogatories. (Do not identify anyone who simply typed or reproduced the responses.)

*–counsel of record–*

John Hanna
c/o Thomas Wylde, LLC
3231 S. La Cienega Blvd,
Suite A
Los Angeles, CA 90016
310.559.5549

Meldy Rafols
c/o Thomas Wylde, LLC
3231 S. La Cienega Blvd,
Suite A
Los Angeles, CA 90016
310.559.5549

Yoonsung Bae
c/o Thomas Wylde, LLC
3231 S. La Cienega Blvd.
Suite A
Los Angeles, CA 90016
310.559.5549

Jene Park
c/o Thomas Wylde, LLC
3231 S. La Cienega Blvd.
Suite A
Los Angeles, CA 90016
310.559.5549

David Schnider, Esq.
c/o Thomas Wylde, LLC
3231 S. La Cienega Blvd.
Suite A
Los Angeles, CA 90016
310.559.5549

### 3.0 General Background Information——Business Entity

3.1 Are you a corporation? No.

3.2 Are you a partnership? No.

3.3 Are you a limited liability company?

1

2   Yes. The name stated in the current articles of organization is Thomas Wylde, LLC. The
    company has used no other names during the past 10 years, but is loosely referred to as
3   "Thomas Wylde" sometimes. The articles of organization were filed on July 22, 2014, with
    the California Secretary of State. The address of the principal place of business for this
4   company is: 3231 S. La Cienega Blvd. — Suite A, Los Angeles, CA 90016. As a California
    limited liability company the company needs no separate qualification to do business in the
5   State of California.

6   3.4 Are you a joint venture? No.

7   3.5 Are you an unincorporated association? No.

8   3.6 Have you done business under a fictitious name during the past 10 years?

9       No. The company "Thomas Wylde, LLC" however may loosely be referred to as "Thomas
        Wylde", however.

10  3.7 Within the past five years has any public entity registered or licensed your business?

11      Yes. That City of Los Angeles Tax Registration Certificate already supplied to Plaintiffs may
        be responsive to this interrogatory. Plaintiffs may refer to it for any remaining details. There
12      is also a U.S. Federal Fish & Wildlife Permit, No. LE13622-0, copy supplied. There is also
        a California State Board of Equalization Seller's Permit, No. 102-692838, copy supplied.
13      Respondent knows of nothing else responsive apart from generic things such as the
        company's EIN/TIN issued from the United States Department of the Treasury.

14
    **4.0 Insurance**
15
    4.1 At the time of the INCIDENT, was there in effect any policy of insurance through which you
16  were or might be insured in any manner (for example, primary, pro-rata, or excess liability coverage
    or medical expense coverage) for the damages, claims, or actions that have arisen out of the
17  INCIDENT? No.

18  4.2 Are you self-insured under any statute for the damages, claims, or actions that have arisen out
    of the INCIDENT? No.
19
    **15.0 Denials and Special or Affirmative Defenses**
20
    15.1 Identify each denial of a material allegation and each special or affirmative defense in your
21  pleadings and for each:

22      Respondent has not answered yet and so cannot identify each denial of a material allegation
        or each special or affirmative defense at this time.
23
    **17.0 Responses to Request for Admissions**
24
    17.1 Is your response to each request for admission served with these interrogatories an unqualified
25  admission?

26      Yes, except where noted in responding.

27  **50.0 Contract**

28  50.1 For each agreement alleged in the pleadings:

(a) Identify each DOCUMENT that is part of the agreement and for each state the name, ADDRESS, and telephone number of each PERSON who has the DOCUMENT.

Respondent will identify those DOCUMENTS constituting an "agreement alleged in the pleadings" and also list some, but not necessarily all, of the other DOCUMENTS that may constitute agreements that bear upon these proceedings:

1. Employment agreement between Paula Thomas and Thomas Wylde, LLC. THOMAS already appears to have this document with its exhibits and attachments and has appended it to her complaint.

2. Operating agreement for Thomas Wylde, LLC. THOMAS already appears to have this document with all of its exhibits and attachments, and now has the latest amended exhibits as well.

3. Documents related to THOMAS acquisition of membership interest in Thomas Wylde, LLC. THOMAS already appears to have any documents related to (2) above and how she acquired her membership interest in Thomas Wylde, LLC, such as a membership purchase agreement, a clawback agreement, an indemnification agreement, an assumption of liabilities document, and articles of dissolution for Thomas Wylde Holdings, LLC. These may or may not be responsive or relevant although not directly referred to in the pleadings.

(b) State each part of the agreement not in writing, the name, ADDRESS, and telephone number of each PERSON agreeing to that provision, and the date that part of the agreement was made.

Portions of the THOMAS employment agreement not in writing include obligations implied by law or otherwise imposed by law. These duties include the duty of good faith and fair dealing. These also include those duties of loyalty and fiduciary duties THOMAS assumed when, as part of her contract, and as part of the company operating agreement, she undertook to act as a company officer. THOMAS agreed to such things and THOMAS has all of the other required information relating to the dates she agreed to her employment agreement and the company operating agreement, and otherwise her contact data. In addition, THOMAS, together with other executives, agreed to a 1/3 cut in salary in or around April, 2015 in order to free up cash to help ensure the company's survival. Also, THOMAS agreed that, as part of the overall reorganization transaction, she would cause PDTW, LLC, to transfer all things of value and chattels to Thomas Wylde, LLC, in exchange for Thomas Wylde, LLC's payment of certain liabilities, sometimes through liquidating PDTW property (e.g., inventory). In addition, THOMAS agreed that PDTW would remain liable to Thomas Wylde, LLC, for monies lent to it. The pay cut agreement was confirmed in writing but no signature was required of any member/officer as each had decided to forego that much pay in exchange for the others' agreement to do so, and all did, ratifying it. The agreement to transfer chattels was left unwritten because the two companies were being operated in tandem by the same personnel, and also because of certain liabilities PDTW has to third parties, and, in particular, to Dr. Michael Schiffman, who is a secured creditor. In particular this was done to protect management and, in particular, Plaintiff THOMAS, from any claims of fraud or fraudulent conveyances/transfers in obtaining the Schiffman loan and/or in treatment of secured assets once the loan had been made.

(c) Identify all DOCUMENTS that evidence any part of the agreement not in writing and for each state the name, ADDRESS, and telephone number of each PERSON who has the DOCUMENT.

Two emails between Meldy Rafols and John Hanna sent on March 26, 2015 confirming that John Hanna, Iene Park, and Paula Thomas each agreed to take a 33% cut in their salary. One e-mail from Meldy Rafols to THOMAS from Mar. 30, 2015, confirming the paycut. One e-mail from Olivia Goodkin, Esq., from April 5, 2015, confirming THOMAS' agreement to take a paycut. Those emails are in the possession of defendant Thomas Wylde, LLC but are

1    also in THOMAS' possession as a recipient. There are also bank statements and payroll
records indicating that officers, including THOMAS, took and accepted the reduced pay, and
2    therefore performed and ratified the modification. In addition, bank statements and payment
records exist demonstrating payments made by Thomas Wylde, LLC, to Dr. Schiffman and
3    other creditors to pay down PDTW, LLC's liability. These DOCUMENTS also show monies
lent by Respondent to PDTW. These documents are in the possession of respondent and are
4    also believed to be in THOMAS' possession now through discovery.

5    (d) Identify all DOCUMENTS that are part of any modification to the agreement, and for each state
the name, ADDRESS, and telephone number of each PERSON who has the DOCUMENT;
6
    Two emails between Meldy Rafols and John Hanna sent on March 26, 2015 confirming that
7    John Hanna, Jene Park, and Paula Thomas each agreed to take a 33% cut in their salary as
well as an e-mail from THOMAS' counsel, Olivia Goodkin, on April 5, 2015, also referring
8    to the agreed-to reduction. There also exists an e-mail from Meldy Rafols to THOMAS from
Mar. 30, 2015, confirming the payout. Those emails are in the possession of defendant
9    Thomas Wylde, LLC. *See* also responses to (b) & (c), immediately above. Inasmuch as recent
issuance of additional equity may be deemed a "modification" of the agreement, the amended
10   Exhibit B to the operating agreement may be responsive and is in the possession of
THOMAS.
11
    (e) State each modification not in writing, the date, and the name, ADDRESS, and telephone number
12   of each PERSON agreeing to the modification, and the date the modification was made.

13   As noted above, the executives agreed to reduce their salaries by 1/3 starting April, 2015.
THOMAS agreed to this, as did John Hanna and Jene Park. *See* also responses to (b) & (c),
14   immediately above. The agreements related to advances made by Thomas Wylde, LLC, to
PDTW, were not really modifications but instead part of the overall reorganization plan
15   created in mid-2014.

16   (f) Identify all DOCUMENTS that evidence any modification of the agreement not in writing and
for each state the name, ADDRESS, and telephone number of each PERSON who has the
17   DOCUMENT.

18   Two emails between Meldy Rafols and John Hanna sent on March 26, 2015 confirming that
John Hanna, Jene Park, and Paula Thomas each agreed to take a 33% cut in their salary. As
19   noted above, there also exists an April 5, 2015 email between Olivia Goodkin, Esq. and
David Schnider, in which THOMAS acknowledges the agreements to take reduced pay.
20   There also exists an e-mail from Meldy Rafols to THOMAS from Mar. 30, 2015, confirming
the payout. Those emails are in the possession of defendant Thomas Wylde, LLC
21
    50.2 Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe
22   and give the date of every act or omission that you claim is the breach of the agreement.

23   Yes. THOMAS breached her employment agreement with Thomas Wylde, LLC. Between
November 2014 and April 2015, THOMAS engaged in numerous breaches of her
24   employment agreement with Thomas Wylde, LLC, including: failing to adequately perform
her job duties as Chief Creative Officer and Creative Director; failing to use her best efforts
25   to perform those services to Thomas Wylde, LLC's reasonable satisfaction; refusing to abide
by or comply with the reasonable directives of her superior officers, or the company's
26   policies and procedures; disclosing confidential information to third parties without
authorization, and disparaging company executives to third parties. Further detail is supplied
27   in responses to Special Interrogatories as well as responses to the 201 series of Employment
Form Interrogatories, which responses are incorporated fully herein by this reference, as if
28   fully restated. Breaches of the company's operating agreement are implicit in Plaintiff
THOMAS' conduct. Breaches of yet other agreements (*i.e.*, those not alleged in the

pleadings) will be asserted. Inasmuch as breach and THOMAS' resignation/termination are related, the details of the resignation/ abandonment/termination are given elsewhere below but should be considered breaches of her contract all the same and are incorporated by this reference. In addition, both plaintiffs have breached and/or committed an anticipatory repudiation of their duty to repay Thomas Wylde, LLC, funds borrowed from it.

50.3 Was performance of any agreement alleged in the pleadings excused? If so, identify each agreement excused and state why performance was excused.

Yes, Thomas Wylde, LLC's performance was excused under its employment agreement with THOMAS because THOMAS announced that she would no longer perform her obligations under that agreement and otherwise repudiated her obligations under it. In addition, performance was excused through THOMAS' material breach and/or anticipatory breach of her employment agreement and the company operating agreement. By way of example and not limitation, THOMAS breached her employment agreement, in turn frustrating the expectations under the operating agreement, and also by breaching inter-member agreements and understandings regarding each voluntarily agreeing to a pay cut, something to which each other member/officer also agreed, each in reliance upon the promise of the other, and each to his or her detriment, while THOMAS instead now disavows that agreement. THOMAS also disavows that agreement to transfer certain chattels from PDTW to Thomas Wylde, LLC, once certain liabilities were cleared. Plaintiffs also disavow their agreement to repay Thomas Wylde, LLC, for monies lent to them — literally millions of dollars paid to cleanse THOMAS of personal liabilities for prior debts and to pay down PDTW, LLC's existing debts. These breaches and disavowals and repudiations excuse performance.

50.4 Was any agreement alleged in the pleadings terminated by mutual agreement, release, accord and satisfaction, or novation?

Yes. On or about April 5, 2015, THOMAS formally announced that she would not design the Spring/Summer 2016 line, in breach of her employment agreement and the operating agreement. This repudiation of her duties terminated the employment agreement and divested her, under the operating agreement, of the right to any particular title or office. In addition, she committed material breach, as described elsewhere. Thereafter the company sought unsuccessfully to negotiate with THOMAS a new agreement with her to employ her in a different capacity that would be acceptable to her and would accommodate her stated desires for a different position with different duties. She failed to accept the offer to accommodate her desires. (The other circumstances in which THOMAS informally communicated her refusal to continue designing are described elsewhere herein.)

50.5 Is any agreement alleged in the pleadings unenforceable?

Yes. THOMAS' rights under her employment contract and the operating agreement are wholly or partially unenforceable inasmuch as they were induced by fraud: THOMAS knew that she either could not or was unwilling to perform those functions expected of her as a member, as an officer, and also as Creative Director of Thomas Wylde, LLC. THOMAS' rights under these agreements are unenforceable because of her material breach. She is entitled to no severance and must disgorge all things of value conveyed to her, and PDTW, LLC must do the same.

50.6 Is any agreement alleged in the pleadings ambiguous?

No. No agreement alleged in the pleadings is known to be facially ambiguous as to topics covered, although the agreements alleged in the pleadings may not cover every anticipated contingency. Nor is every agreement affecting these matters alleged in the pleadings; nor is every agreement affecting matters in writing.

II. RESPONSES TO FORM INTERROGATORIES -- EMPLOYMENT

200.0 Contract Formation

200.1 Do you contend that the EMPLOYMENT relationship was "at will"?

The original employment relationship once the transition of business from PDTW, LLC, to Thomas Wylde, LLC, was mostly complete, and for the period Jan. 1, 2015 until approximately April 5, 2015, when THOMAS' counsel confirmed THOMAS' refusal to continue to design, was not "at will".

For periods both before and after this period, however, the relationship may have been "at will" inasmuch as no employment agreement existed. Before Jan. 1, 2015, there was no contract of employment, the agreement being signed on Dec. 31, 2014. After THOMAS' refusal to design future collections, the relationship may have been "at will" — assuming there was any employment relationship at all. This is because her resignation and refusal to perform terminated the contract of employment.

PERSONS with knowledge include: John Hanna, Jene Park, Olivia Goodkin, David Schnider, Meldy Rafols, and THOMAS. DOCUMENTS include that April 5, 2015 e-mail in which Olivia Goodkin repeats that THOMAS will no longer be designing and discussing the negotiations for a new position and role for THOMAS, as well as similar e-mail exchanges from April 10-15, 2015, in which THOMAS, through her counsel, instead indicates that a "complete 'divorce'" is desired by THOMAS.

200.2 Do you contend that the EMPLOYMENT relationship was not "at will"? If so:

(a) State all facts upon which you base this contention.

THOMAS signed the Thomas Employment Agreement which she has annexed to her complaint. This would suggest a period in which the relationship was not "at will".

Discovery is ongoing and Respondent reserves the right to state more fully its position as to whether or not the relationshipwas not "at will" even after Dec. 31 and until resignation or abandonment given THOMAS' non-performance and given her repudiation of the agreement and her frustration of its purposes through: disavowing other written and oral obligations and agreements under the overall plan of transition, only part of which involved an agreement to employ THOMAS (e.g., apparent refusal to acknowledge sale of certain assets to Thomas Wylde, LLC, by herself and/or PDTW, LLC, apparent disavowal of Thomas Wylde, LLC's ownership interest in its domain names, Thomas Wylde, LLC's interest in the leasehold for its space, Thomas Wylde, LLC's succession to ownership of assets such as computers, artwork, furniture, and equipment, through payment of PDTW, LLC's debts, and disavowal of PDTW, LLC's debts to Thomas Wylde, LLC).

(b) State the name, ADDRESS, and telephone number of each PERSON who has knowledge of those facts.

THOMAS; John Hanna; Jene Park; Meldy Rafols; Yoonsung Bae; David Schnider; Olivia Goodkin (addresses and other contact data already supplied)

(c) identify all DOCUMENTS that support your contention.

Thomas Employment Agreement, in THOMAS' possession. In addition, agreements denominated as follows: Dec. 22, 2014, Articles of Dissolution of Thomas Wylde Holdings, LLC; Certificate of Cancellation of a Limited Liability Company for Thomas Wylde Holdings, LLC; Dec. 22, 2014 "Clawback Agreement" between THOMAS and Thomas

Wylde, LLC members: Dec. 22, 2014 Indemnity Agreement indemnifing THOMAS against certain PDTW, LLC debts; Dec. 22, 2014 Agreement to Purchase Membership Interest between THOMAS and Thomas Wylde, LLC; and Dec. 22, 2014 Use of Proceeds Agreement between THOMAS and Thomas Wylde, LLC members

200.3 Do you contend that the EMPLOYMENT relationship was governed by any agreement – written, oral, or implied? If so:

(a) state all facts upon which you base this contention.

EMPLOYER and EMPLOYEE entered into that contract identified as "Thomas Employment Agreement" and appended by Plaintiff as Exhibit B to her complaint in this action, with its own exhibits, which include a confidentiality agreement. In addition, EMPLOYEE agreed, along with other company officers, to reduce her salary by 1/3 effective April 2015. In addition, it was understood that, as a precondition of any employment contract (or even membership interest, or even third party investment, or even for the very formation of Thomas Wylde, LLC) THOMAS would cause certain PDTW, LLC assets to transfer to Thomas Wylde, LLC, in exchange for Thomas Wylde, LLC's payment of certain debts, and that PDTW, LLC would acknowledge its debts to Thomas Wylde, LLC. Implicit in all agreements or contracts was the duty of good faith and fair dealing. The company operating agreement may also be relevant.

(b) State the name, ADDRESS, and telephone number of each PERSON who has knowledge of those facts.

Paula Thomas; John Hanna; Jene Park; Meldy Rafols; Yoonsung Bae; David Schnider Olivia Goodkin

(c) Identify all DOCUMENTS that support your contention.

Thomas Employment Agreement, in THOMAS' possession; operating agreement, already identified; e-mails concerning voluntary salary reduction of core management team by 1/3; Olivia Goodkin April 5, 2015 e-mail also confirming agreement to reduced salaries; bank statements and payroll records indicating acceptance and ratification by all officers of 1/3 pay reduction and performance under that agreement; bank statements indicating loans to PDTW as well as payments to Dr. Michael Schiffman or to other PDTW creditors. There also exists an e-mail from Meldy Rafols to THOMAS from Mar. 30, 2015, confirming the payout. Bank records indicate acceptance and ratification of the payout arrangement through acceptance and performance under it.

200.4 Was any part of the parties' EMPLOYMENT relationship governed in whole or in part by any written rules, guidelines, policies, or procedures established by the EMPLOYER? If so, for each DOCUMENT containing the written rules, guidelines, policies, or procedures:

(a) state the date and title of the DOCUMENT and a general description of its contents;
(b) state the manner in which the DOCUMENT was communicated to employees; and
(c) state the manner, if any, in which employees acknowledged either receipt of the DOCUMENT or knowledge of its contents.

1. Thomas Employment Agreement, appended to THOMAS' complaint, negotiated by THOMAS
2. Thomas Wylde, LLC, Employee Handbook, dated 4/1/2015, circulated to employees and acknowedged generally by signature, and circulated to THOMAS on or about April 9, 2015 by e-mail. THOMAS was already aware of the contents of this handbook and its general expectations as she had input in its creation and its policies were based, in part, upon those practices and usages she herself established for PDTW, LLC.

200.6 Do you contend that the EMPLOYEE and the EMPLOYER were in a business relationship other than an EMPLOYMENT relationship?

PAULA THOMAS and THOMAS WYLDE, LLC are parties to a business relationship. The relationship is: THOMAS has a relationship with TW as one of its members and also as one of its officers. EMPLOYEE and EMPLOYER also have a form of business relationship inasmuch as EMPLOYEE, as the 99.5% owner of PDTW, LLC, and with control of PDTW, LLC, has a direct impact upon what PDTW, LLC, does and does not do, and therefore controls the business relationship between the two entities.

## 201.0 Adverse Employment Action

201.1 Was the EMPLOYEE involved in a TERMINATION?

Yes.

(a) state all reasons for the EMPLOYEE'S TERMINATION.

Reasons for EMPLOYEE's termination include those reasons set forth in that letter from Richard Byron Peddie, P.C., to EMPLOYEE's counsel, Olivia Goodkin, Esq., on May 14, 2015, a copy of which EMPLOYEE already has. That letter is incorporated in this response in its entirety. Reasons are also set forth in response to Special Interrogatory No. 55, below. That response is also incorporated now in its entirety as if fully set forth here and now.

In essence, EMPLOYEE had already resigned and otherwise communicated her separation by not coming to the office and refusing to perform her stated function. Apparently she later changed her mind. EMPLOYER could not continue with what had already become a burdensome, strife-filled, back-and-forth process with EMPLOYEE and therefore, to clarify, and after offering her alternative employment, and after learning of EMPLOYEE's ongoing negative remarks to third parties (notwithstanding prior warnings to desist) and sharing of confidential company information with third parties, ended further talks of a new position and terminated EMPLOYEE to make it clear that EMPLOYER did not and would not recognize any attempts by EMPLOYEE to claw her way back into that position from which she had resigned.

Even before resignation, EMPLOYEE had disregarded directives, notwithstanding admonishments, that would have merited termination. These too played a factor in EMPLOYEE's termination because they indicated an overall pattern from which it could be deduced that EMPLOYEE simply would not, ever, abide by the directives of her superiors, or even acknowledge her superiors, or otherwise successfully make the transition from 99.5% owner and CEO of her own company, with full powers over nearly everything, to a minority position in the new company, with a CEO over her. These include, but are not limited to, the following:

A general pattern of poor judgment and poor decisionmaking and general inability to work with others and insubordination. For example, EMPLOYEE, traveled to New York on Nov. 10, 2014, returning on Nov. 13, 2014. With EMPLOYEE's selections of airfare and hotel, this trip cost the company over $4,000.00 (airfare of $1,817.98 and at least $2,025.00 in hotel expense alone, not to mention meals and hotel taxes). In another situation, EMPLOYEE discharged Roger Kuo — affiliated with one of Thomas Wylde, LLC's investors — as web designer, and replaced him with a Parisian outfit that cost many tens of thousands of dollars more. EMPLOYEE insisted, over management's objections, on using celebrity model Poppy Delevingne for an ad campaign initiated in late 2014 for EMPLOYER. This increased the expense for modelling for that campaign by more than 300% and EMPLOYER experienced no real additional benefit from use of this model, especially considering that EMPLOYEE

eviscerated much of any celebrity value by misspelling the model's name in approximately 25 hash-tag messages to the target audience — something which also made EMPLOYER look foolish and unprofessional in the marketplace.

All of these incidents — which are merely examples — would have demonstrated bad judgment in any company under any circumstances, but particularly under the circumstances in which the company was performing poorly and desperately needed every last dollar for survival. Other examples of poor judgment involve self-dealing and include the use of company employees for personal errands, like setting hair appointments or taking pets to the veterinarian, with instructions to lie to management about their whereabouts or activities if asked.

Such things demonstrated an absolute disregard for the company's objectives and duties owed to those who had recently invested substantial sums — millions of dollars — in the company's future at a time when the predecessor company, PDTW, LLC, and therefore EMPLOYER, was on the brink of failure and collapse. In sum, EMPLOYER demonstrated absolutely no cognizance whatsoever that, by late 2014, EMPLOYER's very existence depended upon the receipt of substantial amounts of new investor money and that the company's chances for survival depended upon making sound decisions and no longer acting whimsically in financial matters, especially with other people's money.

As yet another example, Hanna finally reprimanded EMPLOYEE verbally on or about March 20, 2015, for those things above-described, as well as yet others, directing her to make no decisions whatsoever anymore without first consulting with Hanna. Then, almost immediately thereafter, EMPLOYEE was contacted by representatives for the artist Sia who were interested in having the company dress Sia for her appearances on the UK version of the television show *The Voice*. EMPLOYEE, notwithstanding the extremely recent admonition, and consulting with no one, turned down this opportunity on behalf of the company. This led to the March 24, 2015 written e-mail warning and admonishment sent to her by David Schnider.

As yet another example, EMPLOYEE secretly requested that the company IT tech automatically forward the e-mails of at least one company employee — Jean Johnston — to her. This occurred on or about April 10, 2015. Given that April 7, 2015, was EMPLOYEE's last day reporting to work, this action, with its secrecy, can only be viewed as a form of spying.

As yet another example, EMPLOYEE flatly refused, without consulting with the company CEO, to accommodate the stated market needs of customers in certain key foreign markets. In particular, EMPLOYEE refused to furnish garments not using silk, leather, or cashmere for Japan where such things are essentially unsellable for spring and summer purposes. EMPLOYEE had done so in her prior company and continued to do so at the company. This came to a head on or about Mar. 7, 2015 when company CEO John Hanna had to admonish EMPLOYEE to create products suitable for these markets, yet EMPLOYEE refused to do so, telling John Hanna "Tell the Japanese to get used to it. I'm not changing anything."

As yet another example, EMPLOYEE, without consulting with anyone, would tell sales personnel not to sell to certain willing store buyers for whimsical reasons or simply because she took a dislike to those buyers.

As yet another example, on or about Feb. 27, 2015, EMPLOYEE issued directives to the sales team — which was not under her supervision — to obtain her approval or permission before selling to any store or customer. She did so without discussing this with anyone, causing confusion amongst the sales representatives.

In addition, at the February, 2015 New York fashion show, EMPLOYEE disparaged

management, telling industry players, including the company's PR firm BPCM (Vanessa Von Bismarck) that John Hanna was a "moron" who was "running the company into the ground." Other BPCM representatives at the fashion show also indicated that THOMAS was speaking poorly of management. Similarly, and after being admonished to stop disparaging her co-officers, who are also her co-members in ownership, she later told Siim Kohv and Yann Weber that Hanna and Park were essentially "bad people" and not to be trusted.

Otherwise, EMPLOYEE's behavior in the months leading up to her separation fell short of the mark in many, many ways. While no employees thought it proper to bring pets to work, EMPLOYEE, during the period leading up to the transition to handing off operations fully to Thomas Wylde, LLC, regularly brought her dogs to work. The dogs urinated on company property, vomited, and otherwise made such a nuisance of themselves that, finally, at least one employee felt compelled to complain. This occurred in late November, 2014. While it was not itself a reason for terminating EMPLOYEE, the fact that EMPLOYEE continued with absolutely thoughtless behavior after the handoff and after being asked to be more considerate demonstrates EMPLOYEE's overall view that she was above the rules and demonstrates her unwillingness to accept the reality of no longer being within her own private fiefdom in which she could always just do as she pleases, but instead a senior executive reporting to a superior collaborating with others in a company in which she has only a minority stake.

And otherwise, EMPLOYEE used extremely harsh and vulgar language regularly, jokingly claiming a special right to do so because of being "British", but still exposing management and employees to regular streams of vulgarities which included angry, unprofessional tirades directed at others. EMPLOYEE also thought it proper at times to change in front of others and would simply strip down naked and change in full sight of whomever was nearby. She also thought it proper to share her complaints about her sex life, or lack thereof, with a certain amount of graphic language, a fact which takes on meaning when placed in juxtaposition with her current claims of sexual harassment. (It is also ironic that EMPLOYEE should accuse others of using the words "bitch" and "whore" which are precisely the words she used to describe PARK to HANNA at various times.) As an example, EMPLOYEE subjected John Hanna to a discussion of her sexual thoughts, describing her desire to locate someone who would "bend [her] over the sink and fuck [her]". While some of these antics eventually stopped and were not direct reasons for terminating EMPLOYEE (who actually resigned first), they do illustrate EMPLOYEE's general attitude that she was somehow above the rules of conduct expected of everyone. They further illustrate her inability to perceive herself as part of a team and to participate as such and demonstrate why, considering her other actions, EMPLOYER lost hope that she might moderate her behavior and be able to fulfill her job functions.

A small factor in the decision was EMPLOYEE's attitude towards her job as demonstrated by her actions. The official hand-off of operations from PDTW, LLC, to Thomas Wylde, LLC, was, for tax purposes at least, and for all other purposes wherever possible, Jan. 1, 2015, and thus this was the start date under EMPLOYEE's Employment Agreement. But Employee had taken a vacation and was in the Caribbean from approximately December 19, 2014, until approximately January 10, 2015 (all at a time when preparations for the pre-spring collection were already woefully late). Thus, EMPLOYEE's only history of actually working at the company consists of the period from approximately January 10, 2015, until April 7, 2015 — and thus consists of just a little less than three months. Yet even by late February of 2015, EMPLOYEE was apparently planning her exit from the company: Park and Hanna and Rafols, and others besides, all noticed that she had, by that time, begun removing things from EMPLOYER's premises. At about the same time, and approximately on Feb. 26, 2015, EMPLOYER met with EMPLOYEE and EMPLOYEE's counsel to discuss the work relationship which had already so deteriorated that EMPLOYEE had sought counsel's intervention.

1   EMPLOYEE's short tenure at the company can only be described as one of strife. Over time
    it became clear that the source of this strife was EMPLOYEE herself. Almost immediately
2   upon her return from vacation, the design team presented her with what they had prepared
    for the pre-spring collection. In EMPLOYEE's absence, the team had been led by Giselle
3   Limtao. After a nearly two hour presentation, EMPLOYEE flatly stated that she didn't like
    anything the team had done in her absence. Ms. Limtao left the building, and EMPLOYEE
4   followed her and engaged her in conversation in the parking lot. Hanna approached the two,
    and EMPLOYEE turned to him and blamed Park for the collection. (Ms. Limtao would later
5   inform Hanna that Park in no way had any effect upon the collection or in obstructing the
    design team or was to blame for anything, especially since Limtao approved of the new
6   designs.) This vignette is supplied as just one example of EMPLOYEE's behavior in seeking
    constantly to undermine others or blame them for things or falsely accuse them, or otherwise
7   to describe EMPLOYEE's childish and tedious campaign of constantly disparaging HANNA
    to PARK, but then also PARK to HANNA, or otherwise to sow dissension in the ranks. In
8   one instance, HANNA was traveling with PARK by car in South Korea while speaking with
    EMPLOYEE by telephone. After disparaging PARK severely, EMPLOYEE next
9   immediately called PARK, who was seated next to HANNA, and feigned great affection and
    friendship.
10
11  These childish, unproductive, two-faced antics and the strife they generated were becoming
    an intolerable burden to the company which needed to devote its entire energies to reversing
12  the poor performance of the brand in 2014 under PDTW, LLC, and thereafter in the initial
    chapters of Thomas Wylde, LLC. The company simply could not have, in its midst, one who
13  apparently could not or would not work with or for anyone else without constantly
    undermining and sabotaging the efforts of others.

14  (b) state the name, ADDRESS, and telephone number of each PERSON who participated in the
    TERMINATION decision.
15
        *John Hanna; Jene Park*
16
    (c) state the name, ADDRESS, and telephone number of each PERSON who provided any
17  information relied upon in the TERMINATION decision.

18  *The below listed persons furnished information either relied upon in the TERMINATION decision*
    *and/or in supplying those details set forth in (a), above:*
19

20  *John Hanna*              *Jene Park*                *David Schnider*           *Meldy Rafols*
    *Jean Johnston*           *Elsa Chavez*              *Giselle Limtao*           *Olivia Goodkin*
    *4808 Bonvue Ave*         *4784 BROADVIEW DRIVE*     *2861 EFFIE ST,*
21  *Los Angeles, Ca 90027*   *GLENDALE, CA 91208*       *LOS ANGELES, CA 90026*
    *jeanejohnston1*          *Elsa@thomaswylde.com*     *glimtao@gmail.com*
22  *@gmail.com*              *323-600-9104*             *626-673-7158*
    *949-903-3773*
23
    (d) identify all DOCUMENTS relied upon in the TERMINATION decision.
24
        *See* response to Special Interrogatory No. 83, below, which response, together with all
25      cross-referenced responses therein, are incorporated herein by this reference as if set forth
        and stated fully here and now.
26
        THOMAS first resigned. To clarify, she was also later terminated.
27
28  201.2 Are there any facts that would support the EMPLOYEE'S TERMINATION that were first
    discovered after the TERMINATION? If so:

Fraudulent medical note: At no time did THOMAS ever furnish any medical note to EMPLOYER signed by any doctor on April 20, 2015. The first time this note ever surfaced was in this litigation. Thus, all claims based upon this note's presentation are patently false and groundless. The only doctor's note received during EMPLOYEE's period of employment is the one dated April 8, 2015. The only one received thereafter pre-suit was the Aug. 31, 2015 doctor's note sent via e-mail to Meldy Rafols and well after EMPLOYEE's separation.

Dishonesty and false accusations brought against company officers and the company would support termination. For example, THOMAS has, in both the complaint and first amended complaint, accused John Hanna of sexual harassment. As THOMAS has pointed out in her own pleadings, she founded the original company, was its CEO and leader, and herself set the tone and atmosphere at whatever company was producing the brand. She herself used the very foulest language of all and would do things like dress and undress in front of others or at least within their view. That she should now try to confect a sexual harassment claim over invented conversations demonstrates dishonesty. That she should do so for use of the words "bitch" and "whore" — words she herself used to describe Jene Park — makes the whole claim laughable. Yet the fact that she would confect such a claim demonstrates character defects and a lack of professionalism unacceptable in a company fiduciary. The other false claims of utterances made by John Hanna likewise demonstrate reasons for terminating EMPLOYEE.

THOMAS' refusal to acknowledge that all chattels and other things of value within PDTW and necessary for continued operation under the THOMAS WYLDE mark were to transfer to Thomas Wylde, LLC, either directly or in exchange for the payment of certain PDTW obligations over time. This disavowal and breaking of one's word and attempt at mulcting the company for a money claim demonstrates disloyalty, a breach of fiduciary duty, and is conduct undesired in either an employee or officer. This was first learned of on or about mid October, 2015 when the Complaint was received, which document is that document that evidences this, as does the First Amended Complaint. Certain letters from THOMAS' counsel also evidence this. Persons with knowledge include THOMAS and her counsel. THOMAS appears even to assert ownership over the domain names in use by EMPLOYER. Such frivolity in disavowing obligations and asserting baseless claims and breaching agreements is a basis for termination.

THOMAS' refusal to acknowledge that Thomas Wylde, LLC, had lent and was continuing to lend money to PDTW and her disavowal of that obligation. This disavowal and breaking of one's word and attempt at mulcting the company for a money claim demonstrates disloyalty, a breach of fiduciary duty, and is conduct undesired in either an employee or officer. This was first learned of on or about mid October, 2015 when the Complaint was received, which document is that document that evidences this, as does the First Amended Complaint. Certain letters from THOMAS' counsel also evidence this. Persons with knowledge include THOMAS and her counsel.

THOMAS' disavowal of that agreement made between all Thomas Wylde, LLC, officers, voluntarily to cut their pay by 1/3 each if every other officer would do so. This disavowal and breaking of one's word and attempt at mulcting the company for a money claim demonstrates disloyalty, a breach of fiduciary duty, and is conduct undesired in either an employee or officer. This was first learned of on or about Feb. 6, 2016 when the First Amended Complaint was received, which document is that document that evidences this. Persons with knowledge include THOMAS and her counsel.

THOMAS' active campaign to disparage company management after her separation as well as her attempts to disrupt in-progress transactions, encourage third parties to breach their contracts with the company and cancel orders, and otherwise to divert business away from the company would also warrant termination and are, in addition, gross breaches of

1    the duty of loyalty and fiduciary duties.

2    The persons who know of these facts are the same as those listed above for reasons for
     termination. The DOCUMENTS are also the same but, in addition, include the pleadings
3    and all other papers on file in this case plus all correspondence from counsel for
     EMPLOYEE.

4
     201.4 Was the TERMINATION or any other ADVERSE EMPLOYMENT ACTIONS referred to
5    in Interrogatories 201.1 through 201.3 based in whole or in part on the EMPLOYEE'S job
     performance? If so, for each action:
6
         (a) The adverse action was termination. As stated above, EMPLOYEE actually resigned
7        or abandoned her post or at least declared that she would no longer perform her duties.
         The termination was for clarification.
8        (b) EMPLOYEE'S specific job performance that played a role in the ADVERSE
         EMPLOYMENT ACTION is described in response to Interrogatories 201.1 through
9        201.3, above, as well as the response to Special Interrogatory No. 35, below, but also
         includes resignation or abandonment of her post.
10       (c) EMPLOYEE'S Employment Agreement, the company operating agreement, and, to a
         lesser extent, the company Employee Handbook were used to evaluate the
11       EMPLOYEE'S specific job performance, whether for their explicit content or for their
         spirit.
12       (d) The PERSONS who had responsibility for evaluating the specific job performance of
         the EMPLOYEE include HANNA and PARK.
13       (e) The PERSONS who have knowledge of EMPLOYEE'S specific job performance that
         played a role in that ADVERSE EMPLOYMENT ACTION include THOMAS, HANNA,
14       PARK, Meldy Rafols, Yoonsung Bae, Ed Smith, Siim Kohv, Yann Weber, Vanessa Von
         Bismarck, Tony Jay, one "Joshua" and Olivia Goodkin.
15       (f) On or about Feb. 26, 2015, a meeting occurred with EMPLOYEE's counsel present. At
         that meeting, EMPLOYEE was warned to stop making negative comments to third parties
16       about other company officers and implored to demonstrate leadership and otherwise
         rectify her conduct. The substance of that meeting is memorialized in an e-mail exchange
17       between Olivia Goodkin and David Schnider starting on Feb. 27, 2015, and ending on
         Mar. 3, 2015.
18
         On or about March 20, 2015, CEO John Hanna gave EMPLOYEE a verbal warning that
19       EMPLOYEE was not to make decisions on behalf of the company without talking to him
         first and obtaining his approval.
20
         Almost immediately afterwards, EMPLOYEE was contacted about an opportunity for the
21       company to dress the celebrity Sia for her appearances on the UK version of the television
         program *The Voice*, EMPLOYEE, acting on behalf of the company, and without
22       consulting with its CEO, turned down this opportunity.

23       EMPLOYEE was again warned, this time in writing, on March 24, 2015, via an e-mail
         from in-house counsel David Schnider, that she was to refrain from making any company
24       decisions at all. These warnings are further described elsewhere in responses to
         discovery,
25
     201.5 Was any PERSON hired to replace the EMPLOYEE after the EMPLOYEE'S
26   TERMINATION or demotion? If so, state the PERSON'S name, job title, qualifications,
     ADDRESS and telephone number, and the date the PERSON was hired.
27
         No. Eventually, however, Jene Park was assigned EMPLOYEE's duties and given the
28       title of Creative Director. Jene Park was employed by EMPLOYER from inception.

1 | 201.6 Has any PERSON performed any of the EMPLOYEE'S former job duties after the
EMPLOYEE'S TERMINATION or demotion? If so:

2

3 | Jene Park has been assigned EMPLOYEE's former job duties and started to perform some
or all of them since even before EMPLOYEE's termination or even her resignation, due to
EMPLOYEE's absence and hence, non-performance. and the overall need for the company

4 | to move forward.

5 | **204.0 Disability Discrimination**

6 | 204.3 Were there any communications between the EMPLOYEE (or the EMPLOYEE'S
HEALTH CARE PROVIDER) and the EMPLOYER about the type or extent of any disability of

7 | EMPLOYEE?

8 | No.

9 | 204.4 Did the EMPLOYER have any information about the type, existence, or extent of any
disability of EMPLOYEE other than from communications with the EMPLOYEE or the

10 | EMPLOYEE'S HEALTH CARE PROVIDER? If so, state the sources and substance of
that information and the name, ADDRESS, and telephone number of each PERSON who

11 | provided or received the information.

12 | No.

13 | 204.5 Did the EMPLOYEE need any accommodation to perform any function of the
EMPLOYEE'S job position or need a transfer to another position as an accommodation? If so,

14 | describe the accommodations needed.

15 | Accommodations needed, if any, were unknown to EMPLOYER. Nevertheless,
EMPLOYEE attempted to "accommodate" EMPLOYEE's stated preferences for a

16 | different role in the company post-resignation. These accommodations, however, were
not based upon knowledge of any physical or mental or other disability, temporary or

17 | permanent, but instead upon EMPLOYEE's stated refusal to continue in her role and
stated preference for a different role in the company.

18

19 | 204.6 Were there any communications between the EMPLOYEE (or the EMPLOYEE'S
HEALTH CARE PROVIDER) and the EMPLOYER about any possible accommodation of

20 | EMPLOYEE?

21 | *No.*

22 | 204.7 What did the EMPLOYER consider doing to accommodate the EMPLOYEE? For each
accommodation considered:

23 | The EMPLOYER had no knowledge of any illness or physical or mental condition or
disability. Thus, EMPLOYER can only answer as to "accommodations" it offered in

24 | order to accommodate EMPLOYEE'S stated desire to work for EMPLOYER in a
different capacity with different duties.

25

26 | (a) describe the accommodation considered.

27 | The accommodation considered involved employing EMPLOYEE as a "brand
ambassador" or otherwise to continue as the "face of the brand" and to employ her to
appear essentially at promotional events and otherwise participate in other opportunities

28 | to promote EMPLOYER'S brand and trademark. The offer included a job working part
time for $120,000.00 per year.

(b) state whether the accommodation was offered to the EMPLOYEE.

    Yes.

(c) state the EMPLOYEE'S response.

    EMPLOYEE declined the offer through a failure to accept or otherwise respond.

(d) or if the accommodation was not offered, state all the reasons why this decision was made.

    N/A

(e) state the name, ADDRESS, and telephone number of each PERSON who on behalf of EMPLOYER made any decision about what accommodations, if any, to make for the EMPLOYEE.

    John Hanna, Jene Park

(f) state the name, ADDRESS, and telephone number of each PERSON who on behalf of the EMPLOYER made or received any communications about what accommodations, if any, to make for the EMPLOYEE.

    John Hanna, Jene Park, David Schnider

**207.0 Internal Complaints**

207.1 Were there any internal written policies or regulations of the EMPLOYER that apply to the making of a complaint of the type that is the subject matter of this lawsuit? If so:

(a) state the title and date of each DOCUMENT containing the policies or regulations and a general description of the DOCUMENT'S contents.

    Thomas Wylde Employee Handbook, April 1, 2015, generally describes the company policies.

(b) state the manner in which the DOCUMENT was communicated to EMPLOYEES;

    The employee handbook was distributed to employees on our about its date of issuance.

(c) state the manner, if any, in which EMPLOYEES acknowledged receipt of the DOCUMENT or knowledge of its contents, or both.

    Employees were requested to sign a document acknowledging receipt.

(d) state, if you contend that the EMPLOYEE failed to use any available internal complaint procedures, all facts that support that contention.

    To the extent EMPLOYEE failed to advise EMPLOYER of any disability, temporary or otherwise, and to the extent she also failed to continue with those attempts to accommodate her needs, but instead cut off communication, EMPLOYEE failed to use available procedures that promised to offer relief for her.

(e) state, if you contend that the EMPLOYEE'S failure to use internal complaint procedures was excused, all facts why the EMPLOYEE's use of the procedures was excused.

1   EMPLOYER contends that there was no excuse for failure to engage in that particular
    "interactive process" in fact offered or otherwise to explore those accommodations in fact
2   offered to her.

3   207.2 Did the EMPLOYEE complain to the EMPLOYER about any of the unlawful conduct
    alleged in the PLEADINGS?
4
        No. At no point did EMPLOYEE complain of any unlawful conduct whatsoever; nor did
5       she, at any point, advise that she had any mental or physical condition or disability.

6   **208.0 Governmental Complaints**

7   208.2 Did the EMPLOYER respond to any claim, complaint, or charge identified in Interrogatory
    208.1? If so, for each claim, complaint, or charge:
8
        EMPLOYEE did not request a response to Form Interrogatory 208.1.
9
    **209.0 Other Employment Claims by Employee or Against Employer**
10
    209.2 Except for this action, in the past 10 years has any employee filed a civil action against the
11  EMPLOYER regarding his or her employment?

12      No.

13  **211.0 Loss of Income——Interrogatories to Employer [See instruction 2(d).]**

14  211.1 Identify each type of BENEFIT to which the EMPLOYEE would have been entitled, from
    the date of the ADVERSE EMPLOYMENT ACTION to the present, if the ADVERSE
15  EMPLOYMENT ACTION had not happened and the EMPLOYEE had remained in the same job
    position. For each type of benefit, state the amount the EMPLOYER would have paid to provide
16  the benefit for the EMPLOYEE during this time period and the value of the BENEFIT to the
    EMPLOYEE.
17
        EMPLOYEE is in possession of her employment contract which sets forth any and all
18      benefits to which she was entitled.  EMPLOYEE was entitled to four weeks of paid
        vacation per year.  *See* Thomas Employment Agreement ¶ 5 (Exhibit B to Complaint).
19      EMPLOYEE was entitled to health, vision, and dental insurance equivalent to what she
        had had at PDTW, LLC. *Id.* ¶ 6.  EMPLOYEE was initially entitled to $300,000.00 in
20      salary per year, but this amount was amended temporarily to $200,000.00 in salary per
        year when other company officers similarly agreed to a pay cut of 1/3. *Id.* ¶ 3.
21
    211.2 Do you contend that the EMPLOYEE has not made reasonable efforts to minimize the
22  amount of the EMPLOYEE'S lost income?

23      Yes.

24  If so:

25  (a) describe what more EMPLOYEE should have done.

26      EMPLOYEE should not have resigned, quit, and abandoned her post. EMPLOYEE
        should have done her job. EMPLOYEE should have accepted that other position created
27      to accommodate EMPLOYEE's stated desires and needs. EMPLOYEE should not have
        disobeyed directives of management. EMPLOYEE should not have denigrated
28      management and EMPLOYER to third parties. EMPLOYEE should not have disclosed
        confidential company information. EMPLOYEE should have accepted that

"accommodation" offered to her, EMPLOYEE should have mitigated her damages by getting a job or otherwise generating income through self-employment.

(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts that support your contention.

*John Hanna, Jene Park, Meldy Rafols, Yoonsung Bae, David Schnider, Olivia Goodkin*

(d) identify all DOCUMENTS that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

In addition to all DOCUMENTS identified above with respect to breach or non-performance or reasons for termination, EMPLOYEE's application for unemployment insurance benefits as well as the EDD file in her unemployment insurance claim matter.

211.3 Do you contend that any of the lost income claimed by the EMPLOYEE, as disclosed in discovery thus far in this case, is unreasonable or was not caused by the ADVERSE EMPLOYMENT ACTION?

(a) state the amount of claimed lost income that you dispute.

All of it.

(b) state all facts upon which you base your contention.

EMPLOYEE resigned, failed to accept a reasonable offer conforming to her stated desires for a new job, continued with those malfeasances described above, and was, for clarity, terminated for cause. She has also failed to mitigate her damages. She also failed to perform while employed, and any damages she may claim are wholly offset by damages owed to EMPLOYER. Furthermore, the only period for which EMPLOYEE arguably had any history of a salary of $300K / year is under the contract of employment at issue and thus for short period of employment from Jan. 1, 2015 until EMPLOYEE resigned or abandoned her post on or about April 5, 2015. During that period, EMPLOYEE materially breached that agreement and failed to perform and from the very outset of contract performance sought to frustrate the purposes of that contract. Thus, EMPLOYEE has no history whatsoever of entitlement to a salary of $300K / year in any position in which she actually performed and gave value.

(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts.

THOMAS, John Hanna, Jene Park, Meldy Rafols, David Schnider, Yoonsung Bae, Olivia Goodkin

(d) identify all DOCUMENTS that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

Company operating agreement; Thomas Employment Agreement, EDD unemployment insurance file, e-mail exchanges between Olivia Goodkin and David Schnider from late March and early April, 2015, negotiating a new position for EMPLOYEE.

214.0 Insurance

214.1 At the time of the ADVERSE EMPLOYMENT ACTION, was there in effect any policy of insurance through which you were or might be insured in any manner for the damages, claims, or actions that have arisen out of the ADVERSE EMPLOYMENT ACTION?

1      No.

2  214.2 Are you self-insured under any statute for the damages, claims, or actions that have arisen
3  out of the ADVERSE EMPLOYMENT ACTION?

4      No.

5  **215.0 Investigation**

6  215.1 Have YOU OR ANYONE ACTING ON YOUR BEHALF interviewed any individual
7  concerning the ADVERSE EMPLOYMENT ACTION?

8      Counsel of record has interviewed the following concerning either the ADVERSE
       EMPLOYMENT ACTION or general background and history of EMPLOYER or PDTW,
9      LLC or THOMAS. Any and all notes taken are claimed as work product and protected
       from discovery:

| John Hanna | Jene Park | Meldy Rafols | Yoonsung Bae |
|---|---|---|---|
| Giselle Limtao | Joel Keyser | Allison Lee | Elsa Chavez |
| 2861 EFFIE ST. | 17835 Ventura Blvd. | 3435 Wilshire Blvd. | 4784 BROADVIEW DRIVE |
| LOS ANGELES, CA 90026 | Suite 207 | Suite 1970 | GLENDALE, CA 91208 |
| glimtao@gmail.com | Encino, CA 91316 | Los Angeles, CA 90010 | Elsa@thomaswylde.com |
| 626-673-7158 | Tel.: 310.310.1103 | Tel.: 213.381.3557 | 323-600-3104 |
| | Tel.: 818.654.6132 | allison4tax@gmail.com | |
| | joelkeyser@jdkcpa.com | | |

15  215.2 Have YOU OR ANYONE ACTING ON YOUR BEHALF obtained a written or recorded statement from any
     individual concerning the ADVERSE EMPLOYMENT ACTION?

16      No.

17  **216.0 Denials and Special or Affirmative Defenses**

18  216.1 Identify each denial of a material allegation and each special or affirmative defense in your
19  PLEADINGS and for each:

      EMPLOYER has not answered the complaint yet.

20  **217.0 Response to Request for Admissions**

21  217.1 Is your response to each request for admission served with these interrogatories an
22  unqualified admission? If not, for each response that is not an unqualified admission:

23      Yes, except where noted.

24  **III. RESPONSES TO SPECIAL INTERROGATORIES, SET ONE**

25  **SPECIAL INTERROGATORY NO. 1:** Identify all loan agreements entered into by Thomas
     Wylde, LLC regarding loans obtained by Thomas Wylde, LLC, by date, name and contact
26  information of lender, amount and purpose of the loan.

27      On August 13, 2014, Thomas Wylde, LLC, borrowed $1.8M from Hillshore Investments,
      LLC. The purpose of the loan was to finance operations. Hillshore is a company member,
28      contact information already in THOMAS' possession.

1    On August 19, 2014, Thomas Wylde, LLC, borrowed $225K from Consumer Resource
Network LLC. The purpose of the loan was to finance operations until equity investment
2    could be received. The contact information for Consumer Resource Network LLC is c/o
Alex Kim, akim@indirect.com [no other contact data available other than what is on the
3    note].

4    On Dec. 1, 2014, Thomas Wylde, LLC borrowed $2M from Khondker Sheeb Ahmed and
Eniluz Gonzalez. The purpose of the loan was to finance operations. The contact
5    information is as follows: For Mr. Ahmed — Puerto de Hierro #93, Santa Ana, San Jose,
Costa Rica, and for Mr. Eniluz — Puerto de Hierro #5, Santa Ana, San Jose, Costa Rica.
6

7    On August 4 and 7, 2015, Thomas Wylde, LLC, borrowed $15K and $75K respectively
from The Palliative, LLC, c/o Jene Park. The purpose of these loans was to fund
8    operations. These loans were paid back, without interest, shortly before Thomas Wylde,
LLC, borrowed the additional $100K from The Palliative, LLC, on November 11, 2015.

9    On Nov. 11, 2015, Thomas Wylde, LLC, borrowed $100,000.00 from The Palliative,
LLC, an entity controlled by Steve Prestemon, husband to Jene Park. The purpose of this
10    loan was to finance operations. This was essentially a bridge loan deemed necessary by
management to permit operations to continue until funds could be obtained from recent
11    investment commitments made by member Hillshore Investments.

12  **SPECIAL INTERROGATORY NO. 2:** Identify all loan agreements entered into by Thomas
Wylde, LLC regarding loans made by Thomas Wylde, LLC, by date, name and contact
13  information of borrower, amount and purpose of the loan.

14    None.

15  **SPECIAL INTERROGATORY NO. 3:** Identify all regarding distributions made by Thomas
Wylde, LLC to any of its members by date, name and contact information of member, and
16  amount of distribution.

17    *Objection:* The interrogatory is vague and unintelligible.

18    In any event, Respondent will respond by indicating that no distributions have been made
to any LLC members since the company's inception; nor could any have been made in
19    accordance with the company operating agreement and California law.

20  **SPECIAL INTERROGATORY NO. 4:** Identify the current value of the capital accounts of
each of the members of Thomas Wylde, LLC.
21

22    *Objection:* THOMAS is already in possession of the company operating agreement,
including Exhibit B, which sets forth the capital account balances. THOMAS is already
in possession of Third Amended Exhibit B as well, reflecting changes due to recent unit
23    issuances, from which she may ascertain percentage interests and capital contributions.
In addition, the "value" of the capital accounts in terms of any market value cannot easily
24    be ascertained. Thus, whatever is available only indicates partner-style capital account
balances, and not "value" in any sense.
25

26  **SPECIAL INTERROGATORY NO. 5:** Identify the dates and amounts of all capital
contributions made by each member of Thomas Wylde, LLC.

27
28

| Date | Name | Memo | Credit |
|------|------|------|--------|
| 12/31/2014 | John Hanna | John Hanna | 700.00 |
| 12/31/2014 | Hillshore Investment | Contribution from Aug to Dec 2014 initially booked as loans | 2,300,000.00 |
| 01/02/201 | Jene; Doug; Roger | Jene $900, Doug $350 Roger $350 | 1,600.00 |

| | | | |
|---|---|---|---|
| 01/28/2015 | Hillshore Investment | Jan 2015 Funds contribution | 900,000.00 |
| 03/03/2015 | Hillshore Investment | Feb 2015 Contribution | 450,000.00 |
| 03/06/2015 | Hillshore Investment | March 2015 Contribution | 350,000.00 |
| 04/13/2015 | THOMAS, PAULA D | Contributor - partial payment | 1,800.00 |
| 04/14/2015 | Hillshore Investment | Contribution | 100,000.00 |
| 04/17/2015 | Hillshore Investment | Contribution | 100,000.00 |
| 05/14/2015 | Hillshore Investment | Contribution | 100,000.00 |
| 05/20/2015 | PAULA THOMAS | Contribution - full payment | 1,800.00 |
| 06/01/2015 | Hillshore Investment | Contribution | 100,000.00 |
| 06/26/2015 | Hillshore Investment | Contribution | 100,000.00 |
| 06/29/2015 | Hillshore Investment | Contribution | 100,000.00 |
| 06/30/2015 | Hillshore Investment | Contribution | 366,000.00 |
| 07/10/2015 | Hillshore Investment | Contribution | 200,000.00 |
| 09/14/2015 | Hillshore Investment | Balance on Contribution of 5.5M | 332,000.00 |
| 11/23/2015 | Hillshore Investment | Contribution | 250,000.00 |
| 12/03/2015 | Hillshore Investment | Contribution | 250,000.00 |
| 12/31/2015 | Hillshore Investment | Contribution from Aug-Oct 2015 initially booked as loans | 1,500,013.00 |
| 01/05/2016 | Hillshore Investment | Contribution | 500,000.00 |
| 01/20/2016 | Hillshore Investment | Contribution | 250,000.00 |
| 02/10/2016 | Hillshore Investment | Contribution | 250,000.00 |
| **Balance as of Feb 16, 2016** | | | **6,505,613.00** |

**SPECIAL INTERROGATORY NO. 6:** Identify the dates and amount of each payment Thomas
Wylde, LLC has made to Michael L. Schiffman, M.D.

| | | |
|---|---|---|
| *04/27/2015* | *Michael L Schiffman Trust* | *30,000.00* |
| *09/15/2015* | *Michael L Schiffman Trust* | *12,000.00* |
| *10/15/2015* | *Michael L Schiffman Trust* | *12,000.00* |
| *11/13/2015* | *Michael L Schiffman Trust* | *12,000.00* |
| *12/11/2015* | *Michael L Schiffman Trust* | *12,000.00* |
| *1/14/2016* | *Michael L Schiffman Trust* | *12,000.00* |
| *2/12/2016* | *Michael L Schiffman Trust* | *12,000.00* |

**SPECIAL INTERROGATORY NO. 7:** State all facts supporting Thomas Wylde, LLC's
contention that PDTW, LLC owes Thomas Wylde, LLC any money.

> *Objection:* The interrogatory is overly broad and overly burdensome and oppressive as to
> scope particularly when calling for "all facts". *See Ritchie Risk-Linked Strategies*
> *Trading (Ireland), Ltd. v. Coventry First, LLC,* 273 FRD 367, 369 (SDNY 2010); *Lucero*
> *v. Valdez,* 240 FRD 591, 594 (DNM 2007); *Moses v. Halstead,* 236 FRD 667, 674 (D.
> Kan. 2006).

Thomas Wylde, LLC, has made payments for the benefit of PDTW, LLC, to pay down
and/or extinguish various liabilities to trade creditors and general creditors as well as
Michael L. Schiffman, M.D. These amounts are shown as advances or loans on the books
of Thomas Wylde, LLC and PDTW, LLC. With the QuickBooks file supplied to
THOMAS under HIGHLY CONFIDENTIAL - ATTORNEYS'EYES ONLY protection
under the existing protective order, THOMAS should be able to ascertain "all facts"
reasonably desired. None of these payments would have been made but for the
understanding that the debt would be recognized and but for the tacit understanding that
all things of value necessary to the uninterrupted and seamless continuation of PDTW,
LLC's business under the THOMAS WYLDE mark, and all things appurtaining to the
legacy of that mark, would continue under Thomas Wylde, LLC and belong to it. Nor
would these payments have been made without the acknowledgment by PDTW, LLC, and

1    THOMAS, of the intercompany loans and their amounts.

2    **SPECIAL INTERROGATORY NO 8:** Identify all persons by name, address, and contact
3    information who have knowledge of the facts supporting Thomas Wylde, LLC's contention that
PDTW, LLC owes Thomas Wylde, LLC any money.

4    Paula Thomas, Plaintiff; John Hanna; David Schnider; Jene Park; Meldy Rafols;
Yoonsung Bae; Elsa Chavez

5

6    **SPECIAL INTERROGATORY NO. 9:** Identify all DOCUMENTS supporting Thomas Wylde,
LLC's contention that PDTW, LLC owes Thomas Wylde, LLC any money.
7    The term "DOCUMENT" or "DOCUMENTS" shall mean any documents, tangible
things, and property of any kind, as referred to in Code of Civil Procedure §§ 2031.010, and any
8    tangible thing bearing a writing as that term is defined in Evidence Code §§ 250, in your
possession, custody or control, including the originals and all non-identical copies thereof,
9    whether different from the originals by reason of any notation made on such copies or otherwise,
including, without limitation emails, letters, minutes, agendas, contracts, agreements, reports,
10    summaries, inter-office and intra-office communications, offers, notations of any sort of
conversations, diaries, appointment books or calendars, teletypes, telefax, thermafax,
11    confirmations, computer data (including information or programs stored in a computer, whether
or not ever printed out or displayed) and all drafts, alterations, modifications, changes and
12    amendments of any of the foregoing, and all graphic or manual records or representations of any
kind, including, without limitation, photographs, microfiche, microfilm, videotapes, records, and
13    motion pictures, and electronic, mechanical or electrical records or representations of any kind,
including, without limitation tapes, cassettes, discs, magnetic cards and recordings.

14    All documents related to the PDTW, LLC, litigation with Dr. Michael Schiffman, from
the original promissory note to the security agreement to the pleadings to the settlement
15    agreement. All accounting records and bank statements demonstrating that Thomas
Wylde, LLC, has made payments to Dr. Michael Schiffman. The accounting records and
16    banking records of PDTW, LLC, in Plaintiff Paula Thomas' possession, indicating
monies lent and debts incurred and acceptance of the benefit of Thomas Wylde, LLC's
17    payments.

18    **SPECIAL INTERROGATORY NO. 10:** For each check that Thomas Wylde, LLC or any of its
19    employees wrote from PDTW, LLC's bank accounts to pay for Thomas Wylde, LLC's debts,
identify the date, amount, and purpose of the check, and the person who signed the check.

20    *Objection:* The request is unduly burdensome given that Plaintiffs THOMAS and PDTW,
LLC, are in possession of information related to checks written from PDTW, LLC's
21    accounts or have superior or at least equal access to it. In addition, neither Thomas
Wylde, LLC, nor any of its employees wrote any checks from PDTW, LLC's bank
22    accounts to pay for Thomas Wylde, LLC's debts: First, any persons involved in issuing
checks drawn upon PDTW, LLC's bank accounts did so as representatives of PDTW,
23    LLC, and as part of the transition of operations from PDTW, LLC to Thomas Wylde,
LLC, all with the explicit or implicit authorization of THOMAS and/or PDTW, LLC.
24    Second, any checks issued were for PDTW, LLC's debts, and not for Thomas Wylde,
LLC's debts, except where such amounts were fully used to offset amounts already owed
25    by PDTW, LLC to Thomas Wylde, LLC. For this reason, any following interrogatories
that imply that "Thomas Wylde, LLC or any of its employees wrote [any checks] from
26    PDTW, LLC's bank accounts" or otherwise took or controlled money *as Thomas Wylde,
LLC or as an employee of Thomas Wylde, LLC, and not as a representative of* PDTW,
27    will be answered similarly or simply denied or answered with "None".

28    **SPECIAL INTERROGATORY NO. 11:** For each check that Thomas Wylde, LLC or any of its
employees wrote from PDTW, LLC's bank accounts to pay for Thomas Wylde, LLC's debts,

1  identify all persons by name, address, and telephone number with knowledge of the facts
   regarding each such payment.

2

3      None. *See* response to Special Interrogatory No. 10, above, incorporated fully by this
       reference, including its objection.

4  **SPECIAL INTERROGATORY NO. 12:** For each instance where Thomas Wylde, LLC or any
   of its employees took money from PDTW, LLC's bank accounts and paid it to any companies
5  owned in whole or in part by either John Hanna or any of his friends or family, including but not
   limited to H&H Fashion, LLC, identify the date, amount, and purpose of the check, and the
6  person who signed the check.

7      *Objection:* Plaintiffs Paula Thomas and PDTW have equal or better access to this
       information. The request is therefore unduly burdensome and interposed solely to harass
8      and increase the cost of this litigation.

9      As explained above in response to Interrogatory No. 10, neither Thomas Wylde, LLC, nor
       any of its employees took money from PDTW, LLC. Duly authorized representatives of
10     PDTW, LLC, paid amounts to H&H Fashion, LLC, as part of the agreed-to compensation
       for John Hanna, much in the same way that Paula Thomas at times took her compensation
11     in the form of payments to Lock-n-Load, LLC.

12     *See* response to Special Interrogatory No. 10, above, incorporated fully by this reference,
       including its objection.

13
   **SPECIAL INTERROGATORY NO. 13:** For each instance where Thomas Wylde, LLC or any
14 of its employees took money from PDTW, LLC's bank accounts and paid it to any companies
   owned in whole or in part by either John Hanna or any of his friends or family, including but not
15 limited to H&H Fashion, LLC, identify all persons by name, address, and telephone number with
   knowledge of the facts regarding each such payment.
16
       None. *See* response to Special Interrogatory No. 10, above, incorporated fully by this
17     reference, including its objection. Those with knowledge of payments made by PDTW
       representatives include THOMAS, Meldy Rafols, John Hanna, David Schnider, and Jene
18     Park.

19 **SPECIAL INTERROGATORY NO. 14:** For each instance where Thomas Wylde, LLC or any
   of its employees took money from PDTW, LLC's bank accounts and paid it to any companies
20 owned in whole or in part by either Tasha Hess or any of her friends or family, including but not
   limited to Shot in the Armoire, LLC, identify the date, amount, and purpose of the check, and the
21 person who signed the check.

22     None. *See* response to Special Interrogatory No. 10, above, incorporated fully by this
       reference, including its objection.
23
   **SPECIAL INTERROGATORY NO. 15:** For each instance where Thomas Wylde, LLC or any
24 of its employees took money from PDTW, LLC's bank accounts and paid it to any companies
   owned in whole or in part by either Tasha Hess or any of her friends or family, including but not
25 limited to Shot in the Armoire, LLC, identify all persons by name, address, and telephone
   number with knowledge of the facts regarding each such payment.
26
       None. *See* response to Special Interrogatory No. 10, above, incorporated fully by this
27     reference, including its objection.

28 **SPECIAL INTERROGATORY NO. 16:** For each instance where Thomas Wylde, LLC or any
   of its employees took money from PDTW, LLC's bank accounts and paid it to any companies

1  owned in whole or in part by either Jene Park or any of her friends or family, identify all persons
2  by name, address, and telephone number with knowledge of the facts regarding each such payment.

3  None. *See* response to Special Interrogatory No. 10, above, incorporated fully by this
   reference, including its objection.
4

   **SPECIAL INTERROGATORY NO. 17:** For each instance where Thomas Wylde, LLC or any
5  of its employees took money from PDTW, LLC's bank accounts and paid it to any companies
   owned in whole or in part by Jene Park or any of her friends or family, identify all persons by
6  name, address, and telephone number with knowledge of the facts regarding each such payment.

7  None. *See* response to Special Interrogatory No. 10, above, incorporated fully by this
   reference, including its objection.
8

   **SPECIAL INTERROGATORY NO. 18:** For each instance where Thomas Wylde, LLC or any
9  of its employees paid money from Thomas Wylde, LLC's bank accounts and paid it to any
   companies owned in whole or in part by either John Hanna or any of his friends or family,
10 including but not limited to H&H Fashion, LLC, identify the date, amount, and purpose of the
   check, and the person who signed the check.
11

12 *Objection:* The interrogatory is overly burdensome and interposed to harass and annoy.
   THOMAS now, through discovery, has equal access to bank and accounting records from
13 which to ascertain this information.

14 The only payments possibly responsive involve payments to H&H Fashion, LLC, as part
   paying John Hanna his agreed-to compensation. THOMAS herself is familiar with
15 payments made to loan-out companies as she did the same thing, directing that certain
   payments for her compensation be made to Lock-n-Load, LLC. Thus, the purpose of all
16 such payments was compensation.

   **SPECIAL INTERROGATORY NO. 19:** For each instance where Thomas Wylde, LLC or any
17 of its employees took money from Thomas Wylde, LLC's bank accounts and paid it to any
   companies owned in whole or in part by either John Hanna or any of his friends or family,
18 including but not limited to H&H Fashion, LLC, identify all persons by name, address, and
   telephone number with knowledge of the facts regarding each such payment.
19

20 THOMAS, John Hanna, Meldy Rafols, Yoonsung Bae, David Schnider, Jene Park

   **SPECIAL INTERROGATORY NO. 20:** For each instance where Thomas Wylde, LLC or any
21 of its employees paid money from Thomas Wylde, LLC's bank accounts and paid it to any
   companies owned in whole or in part by either Tasha Hess or any of her friends or family,
22 including but not limited to Shot in the Armoire, LLC, identify the date, amount, and purpose of
   the check, and the person who signed the check.
23

24 None.

   **SPECIAL INTERROGATORY NO. 21:** For each instance where Thomas Wylde, LLC or any
25 of its employees took money from Thomas Wylde, LLC's bank accounts and paid it to any
   companies owned in whole or in part by either Tasha Hess or any of her friends or family,
26 including but not limited to Shot in the Armoire, LLC, identify all persons by name, address, and
   telephone number with knowledge of the facts regarding each such payment.
27

28 None.

   **SPECIAL INTERROGATORY NO. 22:** For each instance where Thomas Wylde, LLC or any

1    of its employees paid money from Thomas Wylde, LLC's bank accounts and paid it to any

2    companies owned in whole or in part by either Jene Park or any of her friends or family, identify
the date, amount, and purpose of the check and the person who signed the check.

3

*Objection:* The interrogatory is overly burdensome and interposed to harass and annoy.

4    THOMAS has equal access to bank and accounting records from which to ascertain this
information.

5

The only payments possibly responsive involve either: (a) payments to Park and/or her
husband, Steve Prestemon, and/or Mr. Prestemon's company The Palliative, LLC, for

6    monies lent to Thomas Wylde, LLC; or (b) payments to B2 International, a company
controlled by Park's brother that supplies pick-and-pack services to Thomas Wylde, LLC.

7    Thus, in the former instances, the purpose was to pay back monies lent, and in the latter
to pay for services rendered in South Korea.

8

**SPECIAL INTERROGATORY NO. 23:** For each instance where Thomas Wylde, LLC or any

9    of its employees took money from Thomas Wylde, LLC's bank accounts and paid it to any
companies owned in whole or in part by either Jene or any of her friends or family, identify all

10   persons by name, address, and telephone number with knowledge of the facts regarding each
such payment.

11

THOMAS, John Hanna, Jene Park, Meldy Rafols, David Schnider, Yoonsung Bae

12

**SPECIAL INTERROGATORY NO. 24:** If you contend that Paula Thomas authorized any

13   money to be paid out of PDTW, LLC's bank accounts for Thomas Wylde, LLC's debts, state all
facts supporting your contention.

14

*Objection:* The interrogatory is overly broad and overly burdensome and oppressive as to

15   scope particularly when calling for "all facts". *See Ritchie Risk-Linked Strategies
Trading (Ireland), Ltd, v. Coventry First, LLC*, 273 FRD 367, 369 (SDNY 2010); *Lucero*

16   *v. Valdez*, 240 FRD 591, 594 (DNM 2007); *Moses v. Halstead*, 236 FRD 667, 674 (D.
Kan. 2006).

17

In order to save the brand THOMAS WYLDE from certain failure and extinction and to

18   protect her own interest in the mark and its history, THOMAS participated in a structured
transition of business operations from PDTW, LLC, to Thomas Wylde, LLC. As part of

19   this transition, THOMAS understood and authorized all things to allow a seamless
handing off of operations from PDTW, LLC to Thomas Wylde, LLC. THOMAS well

20   understood that persons, including herself, would at one and the same time be acting as
and for PDTW, LLC, and then as and for Thomas Wylde, LLC, in order to accomplish

21   the transition. THOMAS' complete cooperation in this regard was, *inter alia,* an
inducement to investors to come in with millions of dollars of desperately needed capital

22   and to put that capital at risk. In no scenario was it ever envisioned that PDTW, LLC,
would continue operating, or that it or THOMAS would retain assets necessary to the

23   continued operations of Thomas Wylde, LLC under the brand THOMAS WYLDE, or
hold hostage such things as the domain names and items that are part of the THOMAS

24   WYLDE brand legacy. Nor was there any scenario in which THOMAS, after having been
relieved of millions of dollars of personal liability and being given nearly 1/3 of Thomas

25   Wylde, LLC, would yet retain PDTW, LLC with full indirect rights to its accounts
receivable, its assets, its lease, and any other things of value necessary to Thomas Wylde,

26   LLC's operations or appurtaining to the brand and its history. Thus, it was at all times
understood that PDTW, LLC, was operated for the sole benefit of the new company,

27   Thomas Wylde, LLC, and that employees and representatives of PDTW, LLC, would
participate in, and cooperate with, the structured transition.

28

**SPECIAL INTERROGATORY NO. 25:** If you contend that Paula Thomas authorized any

1    money to be paid out of PDTW, LLC's bank accounts for Thomas Wylde, LLC's debts, identify
2    all persons by name, address, and telephone number with knowledge of the facts supporting your
     contention.

3        THOMAS, Jene Park, John Hanna, David Schnider, Meldy Rafols, Yoonsung Bae

4    **SPECIAL INTERROGATORY NO. 26:** If you contend that Paula Thomas authorized any
     money to be paid out of PDTW, LLC's bank accounts for Thomas Wylde, LLC's debts, identify
5    all DOCUMENTS supporting your contention.

6        *See* response to Special Interrogatory No. 10, above, incorporated fully by this reference,
         including its objection.
7
         Documents that support respondent's position, however, include at least the following:
8
         1. Articles of Organization of Thomas Wylde, LLC;
9        2. Operating Agreement of Thomas Wylde, LLC, as amended, with all exhibits, as
            amended;
10       3. Employment contract between Paula Thomas and Thomas Wylde, LLC, and all
            exhibits;
11       4. "Clawback Agreement" between Paula Thomas and other Thomas Wylde, LLC
            members;
12       5. "Agreement to Purchase Membership Interest" from Nov. 2014;
         6. December, 2014 Articles of Dissolution of Thomas Wylde Holdings, LLC;
13       7. December 2014 Action by Written Consent of the Members of PDTW, LLC
            (delegating liabilities to THOMAS).
14       8. All PDTW accounting records.
         9. PDTW bank statements.
15       10. Thomas Wylde, LLC accounting records.
         11. Thomas Wylde, LLC bank statements.
16       12. All paychecks issued to THOMAS directly or to Lock-n-Load, LLC.
         13. Dec, 2014 Indemnification Agreement.
17

**SPECIAL INTERROGATORY NO. 27:** Identify all assets that Thomas Wylde, LLC
18   purchased from PDTW, LLC and/or Paula Thomas, including but not limited to tangible assets,
19   website domain names, intellectual property, furniture, computers, artwork, inventory,
     equipment, and accounts receivable.

20       Thomas Wylde, LLC granted Paula Thomas a Membership Interest in exchange for
         certain assets as set forth in the Agreement to Purchase Membership Interest. That
21       agreement speaks for itself as to those other documents set forth in response to Special
         Interrogatory No. 26, above. All other assets were understood to belong to Thomas
22       Wylde, LLC, after completion of the transition as well as elimination of any secured
         creditors or other creditors of PDTW, LLC. In other words, it was agreed that certain
23       assets would temporarily remain inside of PDTW, LLC in order to avoid any accusation
         of a fraudulent conveyance, in particular by Dr. Michael Schiffman. All PDTW assets
24       necessary to the continued operations of Thomas Wylde, LLC under the THOMAS
         WYLDE brand name were understood to be part of the transaction; all other assets were
25       understood to be collateral for the mounting debt owed by PDTW, LLC, to Thomas
         Wylde, LLC, and thus to be given transferred to Thomas Wylde, LLC. *See also* response
26       to Special Interrogatory No. 24, above. Thus, from Paula Thomas, Thomas Wylde, LLC,
         purchased those items listed in the membership purchase agreement as well as all other
27       things necessary to give effect to that agreement, including, without limitation, domain
         names and anything else held by her relating to the brand. From PDTW, LLC, Thomas
28       Wylde, LLC, purchased, or received the future right to, all assets, as indicated when it
         obtained possession and use of all assets.

**SPECIAL INTERROGATORY NO. 28:** Identify all debts or liabilities that Thomas Wylde, LLC assumed from PDTW, LLC and/or Paula Thomas.

Thomas Wylde, LLC did not explicitly assume any debts from PDTW, LLC. Thomas Wylde, LLC assumed certain debts from Paula Thomas in connection with granting her a Membership Interest as set forth in the Agreement to Purchase Membership Interest. Again, as described above Thomas Wylde, LLC, has paid certain liabilities not explicitly assumed by it under the agreement that all remaining assets would transfer to it.

Those liabilities assumed *from THOMAS* include the following:

Secured Promissory Note executed by PDTW, LLC in favor of CBC Partners I, LLC, dated October 15, 2013 in the approximate amount of $1,625,000

Balloon Payment Promissory note executed by PDTW, LLC in favor of Steven John Prestemon, dated March 27, 2011 in the approximate amount of $228,000

Balloon Payment Promissory note executed by PDTW, LLC in favor of Steven John Prestemon, dated January 1, 2013 in the approximate amount of $131,337

While Thomas Wylde, LLC, has made payments on certain debts owed by PDTW, LLC, it has done so under the tacit arrangement discussed elsewhere under which PDTW, LLC, borrowed those sums and that its mounting debt to Thomas Wylde, LLC, would, in part, be satisfied by transfer of all remaining assets held by it.

**SPECIAL INTERROGATORY NO. 29:** Identify all inventory that Thomas Wylde, LLC obtained from PDTW, LLC, and state where the inventory is currently located.

*Objection:* The interrogatory is compound. The term "obtained" is vague and ambiguous. Thomas Wylde, LLC has possession of some inventory. Some of his inventory has been sold and applied to PDTW, LLC's debts to Thomas Wylde, LLC (or to PDTW, LLC's debt to Michael Schiffman). This has been true and was done with THOMAS' approval since approximately August of 2014.

**SPECIAL INTERROGATORY NO. 30:** Identify the consideration that John Hanna and Jene Park paid for their membership units in Thomas Wylde, LLC.

The monetary consideration is listed on Exhibit B to the company operating agreement, a copy of which THOMAS has, original and as amended.

**SPECIAL INTERROGATORY NO 31:** State the name, address, telephone number, and email address of Stephen Choi.

Stephen Choi                    [address also c/o Hillshore Investments]
317 17th Street
Manhattan Beach, CA 90266-4635
310.819.5000
stephen@choisite.com

**SPECIAL INTERROGATORY NO. 32:** Identify the name, address, and account number for all bank accounts held by Thomas Wylde, LLC.

*Objection:* This request is for information that is not relevant and is not calculated to lead to admissible evidence. This information will be supplied, if at all, only when an appropriate protective order is in place. In any event, in other discovery Plaintiffs have received copies

of all bank account statements for any and all accounts and may, on an HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY basis, ascertain this information.

**SPECIAL INTERROGATORY NO. 33:** Identify the name, address, telephone number, and email address of all tax professionals who have prepared tax returns for Thomas Wylde, LLC.

Allison Lee
3435 Wilshire Blvd.
Suite 1970
Los Angeles, CA 90010
Tel.: 213.381.3557
allison4tax@gmail.com

NORMAN KO & JOSEPH
FOSTER
KF PROFESSIONAL GROUP
100 N 1ST ST, STE 105
BURBANK, CA 91502
818-736-5960
KFPG@KFPGCPA.COM
(2014 return)

**SPECIAL INTERROGATORY NO. 34:** Identify the name, address, telephone number, and account number of all credit cards held by Thomas Wylde, LLC at any time, including for any credit cards that Thomas Wylde, LLC has issued to John Hanna and/or Jene Park.

*Objection:* This request is for information that is not relevant and is not calculated to lead to admissible evidence. This information will be supplied, if at all, only when an appropriate protective order is in place. In any event, in other discovery Plaintiffs have received copies of all credit card statements for any and all accounts and may, on an HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY basis, ascertain this information.

**SPECIAL INTERROGATORY NO. 35:** Identify the date, amount, and purpose of each payment that Thomas Wylde, LLC has made to John Hanna, including but not limited to for wages, bonus, commission, expense reimbursement, loan or advance.

*Objection:* The interrogatory is unduly burdensome. THOMAS' counsel may ascertain whatever THOMAS may require from materials already being supplied to THOMAS under Attorneys' Eyes Only protection under the existing protective order.

**SPECIAL INTERROGATORY NO. 36:** Identify the date, amount, and purpose of each payment that Thomas Wylde, LLC has made to Jene Park, including but not limited to for wages, bonus, commission, expense reimbursement, loan or advance.

*Objection:* The interrogatory is unduly burdensome. THOMAS' counsel may ascertain whatever THOMAS may require from materials already being supplied to THOMAS under Attorneys' Eyes Only protection under the existing protective order.

**SPECIAL INTERROGATORY NO. 37:** Identify the name, address, telephone number, and email address of all outside payroll services that Thomas Wylde, LLC has used at any time.

Allison Lee
3435 Wilshire Blvd.
Suite 1970
Los Angeles, CA 90010
Tel.: 213.381.3557
allison4tax@gmail.com

Paychex, Inc.
P.O. Box 2000
Henrietta, NY 14467
Tel.: 800.472.0072

**SPECIAL INTERROGATORY NO. 38:** Identify the name, address, telephone number, email address, contact person, and type of goods or services sold for each vendor Thomas Wylde, LLC, has used at any time.

1   *Objection:* The interrogatory is compound and also requests information that is
2   confidential business information and/or trade secret information and therefore protected
    and/or privileged. Given Plaintiff Thomas' history of abuse of such information, it will be
3   provided, if at all, only under a suitable protective order offering "Attorneys' Eyes Only"
    protection. Respondent otherwise objects because the interrogatory is unduly burdensome
4   and seeks irrelevant material and otherwise is not calculated to lead to admissible
    evidence. In any event, in other discovery THOMAS' attorneys have received copies of
5   materials from which, on an HIGHLY CONFIDENTIAL — ATTORNEYS' EYES
    ONLY basis, they may ascertain this information.

6   **SPECIAL INTERROGATORY NO, 39:** Identify the name of vendor, address, telephone
    number, date of payment, amount of payment, and reason for payment for each payment Thomas
7   Wylde, LLC has made to any vendor located in South Korea at any time.

8       *Objection:* The interrogatory is overly broad, unduly burdensome, and not reasonably
        calculated to lead to admissible evidence. Plaintiff Paula Thomas already knows the
9       names of key vendors used by PDTW, LLC, and later by Thomas Wylde, LLC. In any
        event, in other discovery THOMAS' attorneys have received copies of materials from
10      which, on an HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY basis, they
        may ascertain this information.

11
    **SPECIAL INTERROGATORY NO. 40:** Identify all DOCUMENTS which set forth Thomas
12  Wylde, LLC's expense reimbursement policies, guidelines, and procedures.

13      The Thomas Wylde Employee Handbook, April 1, 2015 Rev.

14  **SPECIAL INTERROGATORY NO. 41:** Identify all employees on payroll at Thomas Wylde,
    LLC at any time, including name, address, telephone number, job title, and rate of pay.
15
16      *Objection:* The interrogatory is overly broad, unduly burdensome, and not reasonably
        calculated to lead to admissible evidence. THOMAS' attorneys have received copies of
17      materials from which, on an HIGHLY CONFIDENTIAL — ATTORNEYS' EYES
        ONLY basis, they may ascertain this information.

18  **SPECIAL INTERROGATORY NO. 42:** Identify all employees at Thomas Wylde, LLC that
    received commissions as part of their compensation package at any time by name, address,
19  telephone number, and job title.

20      None.

21  **SPECIAL INTERROGATORY NO. 43:** Identify all persons and companies by name, address,
    and telephone number that received any gifts from Thomas Wylde, LLC, as reflected on Thomas
22  Wylde, LLC's profit and loss statements.

23      *Objection:* The interrogatory is overly broad, unduly burdensome, and not reasonably
        calculated to lead to admissible evidence. THOMAS' attorneys have received copies of
24      materials from which, on an HIGHLY CONFIDENTIAL — ATTORNEYS' EYES
        ONLY basis, they may ascertain this information. (*See* public relations expense item
25      detail. QuickBooks file.)

26  **SPECIAL INTERROGATORY NO. 44:** State the total amount of travel expenses that Thomas
    Wylde, LLC has incurred to date for John Hanna and his guests, including but not limited to for
27  airfare, hotel, and transportation, and explain how the amount was calculated by setting forth the
    date, description of expense, amount, and business purpose for each expense.
28
        *Objection:* The interrogatory is overly broad, unduly burdensome, irrelevant, and not

1    reasonably calculated to lead to admissible evidence. THOMAS' attorneys have received
2    copies of materials from which, on an HIGHLY CONFIDENTIAL — ATTORNEYS'
     EYES ONLY basis, they may ascertain this information.

3    **SPECIAL INTERROGATORY NO. 45:** State the total amount of travel expenses that Thomas
4    Wylde, LLC has incurred to date for Jene Park and her guests, including but not limited to for
     airfare, hotel, and transportation, and explain how the amount was calculated by setting forth the
5    date, description of expense, amount, and business purpose for each expense.

6    *Objection:* The interrogatory is overly broad, unduly burdensome, irrelevant, and not
     reasonably calculated to lead to admissible evidence. THOMAS' attorneys have received
7    copies of materials from which, on an HIGHLY CONFIDENTIAL — ATTORNEYS'
     EYES ONLY basis, they may ascertain this information.

8    **SPECIAL INTERROGATORY NO. 46:** State the total amount of meals and entertainment
     expenses that Thomas Wylde, LLC has incurred to date, including but not limited to for dining,
9    entertaining guests, staff, and bars and alcohol, and explain how the amount was calculated by
10   setting forth the date, description of expense, who incurred the expense, amount, and business
     purpose for each expense.

11   *Objection:* The interrogatory is overly broad, unduly burdensome, and not reasonably
     calculated to lead to admissible evidence. THOMAS' attorneys have received copies of
12   materials from which, on an HIGHLY CONFIDENTIAL — ATTORNEYS' EYES
13   ONLY basis, they may ascertain this information.

14   **SPECIAL INTERROGATORY NO. 47:** Explain what the "pick & pack" money spent by
     Thomas Wylde, LLC was for, as reflected on its profit and loss statements, including the date,
15   amount, and business purpose of each such payment.

16   *Objection:* Plaintiffs Paula Thomas and PDTW, LLC, are aware of both PDTW, LLC's
     and Thomas Wylde, LLC's history of having goods manufactured in South Korea. They
17   are also aware that these goods, once manufactured, require proper packaging, shipping,
     and handling. They are also aware that both companies have historically used B2
18   International as their designated vendor for such purposes in Korea. The interrogatory is
     therefore interposed solely to harass and annoy and increase the cost of litigation. The
19   interrogatory is also compound. Furthermore, Plaintiffs can ascertain whatever they wish
     to know from discovery materials already supplied to them.

20   **SPECIAL INTERROGATORY NO. 48:** If Thomas Wylde, LLC has made any advances to
     any of its officers, directors or employees, identify the date, amount, person who received the
21   advance, reason for the advance, who authorized the advance, the date the advance was repaid, or
     if it has not been repaid, how much is still owing.

22   *Objection:* The interrogatory is overly broad, unduly burdensome, and not reasonably
23   calculated to lead to admissible evidence. THOMAS' attorneys have received copies of
     materials from which, on an HIGHLY CONFIDENTIAL — ATTORNEYS' EYES
24   ONLY basis, they may ascertain this information.

25   The reason for any minor advances made to any officer or employee is for the
     convenience of such officer or employee.

26
     **SPECIAL INTERROGATORY NO. 49:** State all facts supporting your contention that Paula
27   Thomas resigned from Thomas Wylde, LLC.

28   *Objection:* The interrogatory is overly broad and overly burdensome and oppressive as to
     scope particularly when calling for "all facts". *See Ritchie Risk-Linked Strategies*

1    *Trading (Ireland), Ltd. v. Coventry First, LLC*, 273 FRD 367, 369 (SDNY 2010); *Lucero
2    v. Valdez*, 240 FRD 591, 594 (DNM 2007); *Moses v. Halstead*, 236 FRD 667, 674 (D.
     Kan. 2006).

3    By March 24, 2015, the company was already approximately 90 days behind in
4    conceptualizing the pre-Spring 2016 collection due to THOMAS' apparent disinterest in
     her work. This work should have been completed by Dec. 23, 2014. On March 26, 2015,
5    David Schnider spoke with Olivia Goodkin, THOMAS' attorney. During that call,
     Goodkin conveyed that the company should hire a new Creative Director to replace
6    THOMAS for the spring/summer 2016 collection. In that call, Goodkin suggested that
     THOMAS would continue to work on the pre-spring 2016 collection. On March 31,
7    2015, THOMAS issued instructions to have almost all of her personal property removed
     from the company premises and in that period — and even earlier — herself removed
8    items belonging to her. On April 5, 2015, Olivia Goodkin wrote David Schnider by e-
     mail. In this e-mail, Goodkin indicated that THOMAS claimed to have "completed pre-
9    Spring 2016 and *will not* design Spring/Summer 2016 . . ." THOMAS therefore declared
     that she would not perform the function of Creative Director any longer which is the
10   functional equivalent of a resignation from that position.

11   **SPECIAL INTERROGATORY NO. 50:** Identify all persons by name, address, and telephone
     number with knowledge of the facts supporting your contention that Paula Thomas resigned from
12   Thomas Wylde, LLC.

13   Paula Thomas; John Hanna; Jene Park; Meldy Rafols; David Schnider; Olivia Goodkin

14   **SPECIAL INTERROGATORY NO. 51:** Identify all DOCUMENTS supporting your
     contention that Paula Thomas resigned from Thomas Wylde, LLC.

15   March 26, 2015 e-mail from David Schnider to John Hanna; April 5, 2015 e-mail from
16   Olivia Goodkin to David Schnider; THOMAS' June 1, 2015 press release announcing her
     departure from Thomas Wylde, LLC; DRAFT settlement documents from late April and
17   early May, 2015 and their cover correspondence.

18   **SPECIAL INTERROGATORY NO. 52:** State all facts supporting your contention that Paula
     Thomas abandoned her job at Thomas Wylde, LLC.

19   *Objection:* The interrogatory is overly broad and overly burdensome and oppressive as to
20   scope particularly when calling for "all facts". *See Ritchie Risk-Linked Strategies
     Trading (Ireland), Ltd., v. Coventry First, LLC*, 273 FRD 367, 369 (SDNY 2010); *Lucero
21   v. Valdez*, 240 FRD 591, 594 (DNM 2007); *Moses v. Halstead*, 236 FRD 667, 674 (D.
     Kan. 2006).

22   *See* response to Interrogatory No. 49, above.

23   **SPECIAL INTERROGATORY NO. 53:** Identify all persons by name address, and telephone
24   number with knowledge of the facts supporting your contention that Paula Thomas abandoned
     her job at Thomas Wylde, LLC.

25   Paula Thomas; John Hanna; Jene Park; Meldy Rafols; David Schnider; Olivia Goodkin

26   **SPECIAL, INTERROGATORY NO. 54:** Identify all DOCUMENTS supporting your
27   contention that Paula Thomas abandoned her job at Thomas Wylde, LLC.

     *See* response to Special Interrogatory No. 51 above.
28
     **SPECIAL INTERROGATORY NO. 55:** State all facts supporting your contention that

1  Thomas Wylde, LLC terminated Paula Thomas for cause.

2  *Objection: The interrogatory is overly broad and overly burdensome and oppressive as to
scope particularly when calling for "all facts". See Ritchie Risk-Linked Strategies
3  Trading (Ireland), Ltd. v. Coventry First, LLC, 273 FRD 367, 369 (SDNY 2010); Lucero
v. Valdez, 240 FRD 591, 594 (DNM 2007); Moses v. Halstead, 236 FRD 667, 674 (D.
4  Kan. 2006).*

5  Reasons for EMPLOYEE's termination include those reasons set forth in that letter from
Richard Byron Peddie, P.C., to EMPLOYEE's counsel, Olivia Goodkin, Esq., on May 14,
6  2015, a copy of which EMPLOYEE already has. That letter is incorporated in this
response in its entirety. Reasons are also set forth in response to Employment Form
7  Interrogatory No. 201.1(a), above, and that response is also incorporated in this response
in its entirety.

8
9  Thomas Wylde, LLC, was created to permit the THOMAS WYLDE brand to survive: By
mid-2014 both PDTW, LLC, and THOMAS were hopelessly insolvent and the brand was
10  performing poorly. As part of the organization of Thomas Wylde, LLC, the company
needed capital and took in over $6M (by 3/2015) of combined capital investment and
11  loan monies. Part of this new arrangement required that THOMAS relinquish that control
she had previously enjoyed while at PDTW, LLC, and put herself under a CEO.
12  THOMAS did many things demonstrating that she was, ultimately, either unwilling or
unable to take direction or relinquish actual control. For example:

13  1. THOMAS denigrated management on certain occasions. For example, in late April
she called Siim Kohv, the company's global PR director, and said repeatedly that John
14  Hanna and Jene Park are "not good people" and not to trust them. She further indicated
that she had already called Yann Weber at Antidote magazine to express similar opinions
15  about company management. (All of this occurred during a period in which the company
was negotiating in good faith to hire THOMAS for a new position.)

16
2. In late February or early March THOMAS instructed the company's IT contractor, Ed
17  Smith, to give passwords for access to Thomas Wylde, LLC's servers, including access to
all company designs, e-mails, intellectual property, etc., to Tony Jay and one "Joshua".
18  Full virtual private network ("VPN") and file transfer protocol ("FTP") access was
provided. This was discovered on May 12, 2015.

19
3. On Feb. 13 John Hanna and Jene Park went to New York for Fashion Week.
20  THOMAS was already there. On Feb. 17, 2015, John Hanna had breakfast with Vanessa
Von Bismarck. During this meeting, Von Bismarck, President of BPCM, indicated that
21  THOMAS was bad-mouthing the company management team. When confronted about
this, THOMAS apologized and promised to desist from denigrating other members of the
22  management team.

23  4. On March 23, John Hanna emphasized to THOMAS that she must not unilaterally
make company decisions at all. One day later, on March 24, THOMAS instructed
24  company employee Sohini Khakhria to reject an opportunity offered by the singer Sia to
allow the company to dress her and the company lost this opportunity.

25
5. On a number of occasions John Hanna asked that THOMAS refrain from bringing her
26  dogs to the company. THOMAS kept bringing her dogs to the company premises, and
requested company staff to do such things as clean up after them or take them to the
27  veterinarian.

28  6. On various occasions, THOMAS made use of company staff for personal errands or for
such things as setting hair appointments, etc. She continued doing so after admonitions

1  not to. These occasions at times involved instructions by THOMAS to company staff to
2  lie about their whereabouts and activities.

3  7. On various occasions John Hanna requested that THOMAS exhibit leadership and set
   an example for the design team. For example, on Feb. 26, 2015, at THOMAS' attorney,
4  Olivia Goodkin's, office, Hanna requested that THOMAS turn things around, exhibit
   leadership, and lead the design team. THOMAS failed or refused to do so and failed to
5  cooperate with Jene Park in achieving company objectives.

6  8. On many occasions THOMAS said negative things about John Hanna and Jene Park
   within the company, to company employees, or about Hanna to Park, or about Park to
7  Hanna, or otherwise said things that had a negative impact upon morale or were intended
   to undermine certain people.

8  9. Abandonment of her post or resignation: The company could no longer afford to
   maintain someone on its payroll who was not productive, had apparently abandoned her
9  post, and who had refused to perform her stated functions and refused to accept having
   anyone above her, and refused to accept alternative positions offered to her.
10
   10. THOMAS demonstrated a lack of due care or good judgment in performing her job
11  functions. For example, she insisted upon repeating the same old designs essentially. As
    set forth elsewhere, she refused to accommodate the requests from the Japanese markets
12  to avoid using silk, cashmere, or leather in summer designs for them, leading to loss of
    that market. EMPLOYEE did absurd things, like compelling the design team to stay late
13  on one occasion, directing them to write postive reviews of her. EMPLOYEE insisted
    upon the wasteful Poppy Delevingne ad campaign described elsewhere and thereafter
14  mishandled its publicity. EMPLOYEE mistreated or mistreated customers and clients, or
    treated them with disdain or rudeness. EMPLOYEE caused production issues by insisting
15  upon using herself for sizing and fit issues instead of a fitting model conforming to
    consumer/market needs.
16
   **SPECIAL INTERROGATORY NO. 56:** Identify all persons by name, address, and telephone
17  number with knowledge of the facts supporting your contention that Thomas Wylde, LLC
    terminated Paula Thomas for cause.
18
      Paula Thomas; John Hanna; Jene Park; David Schnider; Siim Kohv; Yann Weber; Sia;
19    Meldy Rafols; Sohini Khakhria; Vanessa Von Bismarck
20
   **SPECIAL INTERROGATORY NO. 57:** Identify all DOCUMENTS supporting your
21  contention that Thomas Wylde, LLC terminated Paula Thomas for cause.
22    Richard Byron Peddie, P.C., letter of termination dated May 14, 2015; all documents
      listed in response to Special Interrogatory No. 51, above. Siim Kohv's April 29, 2015 e-
23    mail. Jean Johnston's April 10, 2015 e-mail. Ed Smith March 3, 2015 e-mail regarding
      furnishing company server passwords to Tony Jay and "Joshua". David Schnider/Olivia
24    Goodkin e-mail exchanges Feb. 26 — Mar. 3, 2015.

   **SPECIAL INTERROGATORY NO. 58:** Identify every provision of the employment
25  agreement that you contend Paula Thomas materially breached, and state all facts regarding how
    you contend Paula Thomas materially breached each such provision.
26
      *Objection:* The interrogatory is compound. The interrogatory is also overly broad and
27    overly burdensome and oppressive as to scope particularly when calling for "all facts".
      *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First, LLC*, 273
28    FRD 367, 369 (SDNY 2010); *Lucero v. Valdez*, 240 FRD 591, 594 (DNM 2007); *Moses
      v. Halstead*, 236 FRD 667, 674 (D. Kan. 2006).

Section 1, by failing and/or refusing to undertake those duties listed in Section 1 with due care and by breaching, in material ways, Section 1, and by failing to follow those rules, policies, and procedures set forth therein, all as alleged above in responses to Form Interrogatory — Employment No 201.1(a) and Special Interrogatory No. 55.

Section 9, by committing material breaches of the agreement, by intentionally not performing her duties, and by her refusal to abide by or comply with the directives of her superiors or company policies or procedures; by her willful dishonesty, fraud, and misconduct with regard to the affairs of the company in ways that adversely affect the company in material ways; and by conflict of interest in the solicitation of vendors or customers and/or recruitment of employees, in violation of Sections 10 & 11.

Sections 10 & 11, as described immediately above.

Addendum A — Through providing access to the company's entire server contents to outside third parties without the consent of management.

**SPECIAL INTERROGATORY NO. 59:** Identify all persons by name, address, and telephone number with knowledge of the facts supporting your contention that Paula Thomas materially breached the employment agreement.

Paula Thomas; John Hanna; Jene Park; Meldy Rafols; Siim Kohv; Ed Smith; Vanessa Von Bismarck; Tony Jay; "Joshua"; Jean Johnston; Yoonsung Bae; Sohini Khakhria; David Schnider

**SPECIAL INTERROGATORY NO. 60:** Identify all DOCUMENTS supporting your contention that Paula Thomas materially breached the employment agreement.

All documents listed in response to Special Interrogatories Nos. 51 & 57, above.

**SPECIAL INTERROGATORY NO. 61:** State all facts supporting your contention that Paula Thomas committed insubordination.

*Objection:* The interrogatory is overly broad and overly burdensome and oppressive as to scope particularly when calling for "all facts". *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First, LLC,* 273 FRD 367, 369 (SDNY 2010); *Lucero v. Valdez,* 240 FRD 591, 594 (DNM 2007); *Moses v. Halstead,* 236 FRD 667, 674 (D. Kan. 2006).

On or about March 23, 2015, John Hanna, as CEO of Thomas Wylde, LLC, instructed Paula Thomas to stop making company decisions without consulting the CEO. On or about March 24, 2015, Paula Thomas, in direct contravention of this instruction, turned down an opportunity for the company to dress popular artist Sia. In late April, 2015, Paula Thomas, in a conversation with Siim Kohv, said that John Hanna and Jene Park are "bad people" and suggested that Siim Kohv should be careful dealing with them. These were just the final straws in what was actually a history of insubordination. As recounted elsewhere, THOMAS had bad-mouthed company management at the New York Fashion Show in February, 2015. In addition, the constant disregard of the directives of the company CEO were insubordinate, as recounted elsewhere herein.

**SPECIAL INTERROGATORY NO. 62:** Identify all persons by name, address, and telephone number with knowledge of the facts supporting your contention that Paula Thomas committed insubordination.

Paula Thomas; John Hanna; Jene Park; Meldy Rafols; Siim Kohv; Ed Smith; Vanessa

1    Von Bismarck; Tony Jay; "Joshua"; Jean Johnston; Yoonsung Bae; David Schnider

2    SPECIAL INTERROGATORY NO. 63: Identify all DOCUMENTS supporting your
     contention that Paula Thomas committed insubordination.

3

4       All documents identified in response to Special Interrogatories 51, 57 & 60, above.

5    SPECIAL INTERROGATORY NO. 64: Identify all company written rules, guidelines,
     policies or procedures that you contend Paula Thomas failed to comply with, and state all facts
6    supporting your contention that Paula Thomas failed to comply with them.

7       *Objection:* The interrogatory is compound. The interrogatory is also overly broad and
        overly burdensome and oppressive as to scope particularly when calling for "all facts".
8       *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First, LLC,* 273
        FRD 367, 369 (SDNY 2010); *Lucero v. Valdez,* 240 FRD 591, 594 (DNM 2007); *Moses
9       v. Halstead,* 236 FRD 667, 674 (D. Kan. 2006).

10      Thomas Wylde, LLC, Employee Handbook, Rev. April 1, 2015.

11   SPECIAL INTERROGATORY NO. 65: Identify all persons by name, address and telephone
     number with knowledge of the facts supporting your contention that Paula Thomas failed to
12   comply with the company's written rules, guidelines, policies or procedures.

13      THOMAS; John Hanna; Jene Park; David Schnider; Meldy Rafols; Yoonsung Bae; Jean
        Johnston; Ed Smith; Tony Jay; "Joshua"

14   SPECIAL INTERROGATORY NO. 66: Identify all DOCUMENTS supporting your
     contention that Paula Thomas failed to comply with the company's written rules, guidelines,
15   policies or procedures.

16      All documents identified in response to Special Interrogatories 51, 57, 60 & 63, above.
        Documents for trip expenses occurred, trip to NYC, Nov. 10-13, 2014, in THOMAS'
17      possession.

18   SPECIAL INTERROGATORY NO. 67: State all facts supporting your contention that Paula
     Thomas' conduct during her employment with Thomas Wylde, LLC, caused damage to Thomas
19   Wylde, LLC, its members, and/or management.

20      *Objection:* The interrogatory is overly broad and overly burdensome and oppressive as to
        scope particularly when calling for "all facts". *See Ritchie Risk-Linked Strategies
21      Trading (Ireland), Ltd. v. Coventry First, LLC,* 273 FRD 367, 369 (SDNY 2010); *Lucero
        v. Valdez,* 240 FRD 591, 594 (DNM 2007); *Moses v. Halstead,* 236 FRD 667, 674 (D.
22      Kan. 2006).

23      The failure to design the pre-spring collection by late December, 2014 and resulting rush
        and bottlenecking through March of 2015 and ultimate failure to finish designing that
24      collection was costly and caused damage to the company. Negative comments made to
        third parties as described above damaged the company. THOMAS' failure and later
25      refusal to perform her duties damaged the company. The constant strife created by
        THOMAS and her campaign to undermine persons at the company, or to create
26      dissension between them, while not effectively doing her own job, diverted company
        energies and damaged the company. Refusal to accommodate the Russian and Japanese
27      markets in particular damaged Thomas Wylde, LLC tremendously

28   SPECIAL INTERROGATORY NO. 68: Identify all persons by name, address, and telephone
     number with knowledge of the facts supporting your contention that Paula Thomas' conduct

1   during her employment with Thomas Wylde, LLC caused damage to Thomas Wylde, LLC, its
    members, and/or management.

2

3       THOMAS; John Hanna; Jene Park; David Schnider; Meldy Rafols; Yoonsung Bae; Siim
        Kohv; Yann Weber; Vanessa Von Bismarck; Elena Davidyants

4   **SPECIAL INTERROGATORY NO. 69:** Identify all DOCUMENTS supporting your
5   contention that Paula Thomas' conduct during employment with Thomas Wylde, LLC caused
    damage to Thomas Wylde, LLC, its members, and/or management.

6       All documents identified above in response to Special Interrogatories 51, 57, 60, 63 & 66.
        Documents related to the Poppy Delevingne ad campaign's expense and the hash-tagging;
7       documents related to THOMAS' Nov. 10-13 trip to NYC and its expense; documents
        related to website design expense after Roger Kno was dismissed by THOMAS.
8       Discovery is ongoing and not all documents have been identified that could possibly
        indicate damage.

9

10  **SPECIAL INTERROGATORY NO. 70:** State the amount of damages that you contend Paula
    Thomas caused to Thomas Wylde by her conduct during her employment with Thomas Wylde,
11  LLC to Thomas Wylde, LLC, its members or management, and explain how you calculated the
    same.

12      *Objection:* The interrogatory is compound and unintelligible. Discovery is ongoing and
13      Respondent has not had the opportunity to calculate its damages.

14  **SPECIAL INTERROGATORY NO. 71:** State all facts supporting your contention that Paula
    Thomas' conduct after her employment with Thomas Wylde, LLC ended caused damage to
15  Thomas Wylde, LLC, its members, and/or management.

16      *Objection:* The interrogatory is overly broad and overly burdensome and oppressive as to
        scope particularly when calling for "all facts". *See Ritchie Risk-Linked Strategies*
17      *Trading (Ireland), Ltd. v. Coventry First, LLC,* 273 FRD 367, 369 (SDNY 2010); *Lucero*
        *v. Valdez,* 240 FRD 591, 594 (DNM 2007); *Moses v. Halstead,* 236 FRD 667, 674 (D.
18      Kan. 2006).

19      THOMAS attempted to solicit company sales agents.

20      THOMAS caused at least one customer, Just One Eye, to cancel an existing order and
        ship back product already delivered. The company was not paid in full for that order.
21      THOMAS' apparent interference with other customers and stores and her role in causing
        them not to order or cancel orders is still under investigation.

22      THOMAS published many company images on Instagram, claiming sole credit for
        company designs and implying that the company had nothing to do with what was shown.
23      This caused damage to the company inasmuch as it falsely disregarded the ability of the
        company's design team to keep designing in THOMAS' absence. Use of these images was
24      not authorized and must be viewed as a potential violation of copyright.

25      THOMAS told falsehoods to Elena Davidyants at TSUM in Russia and created a false
        impression of occurrences at the company such that TSUM refused to do business with
26      the company.

27      THOMAS has brought this lawsuit asserting in bad faith, frivolous, vexatious, and
        groundless claims, damaging this company and diverting its energies and monies to
28      defending against the same.

1   **SPECIAL INTERROGATORY NO. 72:** Identify all persons by name, address, and telephone number with knowledge of the facts supporting your contention that Paula Thomas' conduct after
2   her employment with Thomas Wylde, LLC ended caused damage to Thomas Wylde, LLC, its members, and/or management.

3

4   THOMAS; John Hanna; Jene Park; David Schnider; Meldy Rafols; Yoonsung Bae; Elena Davidyants; representatives of Just One Eye; THOMAS' Instagram recipients

5   **SPECIAL INTERROGATORY NO. 73:** Identify all DOCUMENTS supporting your contention that Paula Thomas' conduct after her employment with Thomas Wylde, LLC ended
6   caused damage to Thomas Wylde, LLC, its members, and/or management.

7   All papers filed in this action. TW company accounting files. Evidence of returns by Just One Eye. Documents evidencing sales history to customers who suddenly did not order
8   anymore. Documents to be retrieved from THOMAS in discovery. THOMAS' e-mails and social media communications to be retrieved in discovery.

9

10  **SPECIAL INTERROGATORY NO. 74:** State the amount of damages that you contend Paula Thomas caused to Thomas Wylde by her conduct after her employment with Thomas Wylde,
11  LLC ended to Thomas Wylde, LLC, its members or management, and explain how you calculated the same.

12  *Objection:* The interrogatory is compound and unintelligible. Discovery is ongoing and Respondent has not had the opportunity to calculate its damages.

13

14  **SPECIAL INTERROGATORY NO. 75:** State all facts supporting your contention that Paula Thomas slandered or defamed Thomas Wylde, LLC, its members, and/or any of its management.

15  *Objection:* The interrogatory is overly broad and overly burdensome and oppressive as to scope particularly when calling for "all facts". *See Ritchie Risk-Linked Strategies*
16  *Trading (Ireland), Ltd, v. Coventry First, LLC,* 273 FRD 367, 369 (SDNY 2010); *Lucero v. Valdez,* 240 FRD 591, 594 (DNM 2007); *Moses v. Halstead,* 236 FRD 667, 674 (D.
17  Kan. 2006).

18  As described above, THOMAS made negative remarks to Vanessa Von Bismarck at the Feb. 2015 NYC Fashion Show or during that week. As described above, THOMAS told
19  Siim Kohv and Yann Weber that Jene Park and John Hanna are "bad people" and untrustworthy and urged them not to do business with the company. Apparently similar
20  remarks were made to Elena Davidyants at TSUM and representatives of Just One Eye. Discovery is ongoing and defamatory remarks were also the apparent causes of yet other
21  cancellations of orders or refusals by vendors or suppliers or customers or stores to fulfill their obligations to the company or to make anything resembling their customary orders.

22

23  **SPECIAL INTERROGATORY NO. 76:** Identify all persons by name, address, and telephone number that have knowledge of the facts supporting your contention that Paula Thomas
24  slandered or defamed Thomas Wylde, LLC, its members and/or its management.

25  THOMAS; John Hanna; Jene Park; David Schnider; Meldy Rafols; Yoonsung Bae; Vanessa Von Bismarck; Elena Davidyants; Yann Weber; Siim Kohv

26  **SPECIAL INTERROGATORY NO. 77:** Identify all DOCUMENTS supporting your contention that Paula Thomas slandered or defamed Thomas Wylde, LLC, its members, and/or
27  any of its management.

28  *See* all documents listed in response to Special Interrogatories 51, 57, 60, 63, 69 & 73, above.

**SPECIAL INTERROGATORY NO. 78:** State all facts supporting your contention that Paula Thomas breached her duty of loyalty to Thomas Wylde, LLC.

*Objection:* The interrogatory is overly broad and overly burdensome and oppressive as to scope particularly when calling for "all facts". *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First, LLC,* 273 FRD 367, 369 (SDNY 2010), *Lucero v. Valdez,* 240 FRD 591, 594 (DNM 2007); *Moses v. Halstead,* 236 FRD 667, 674 (D. Kan. 2006).

See responses to Special Interrogatories 55, 61, 67 & 71 above; *see* response to Employment Form Interrogatory 201.1(a), above.

**SPECIAL INTERROGATORY NO. 79:** Identify all persons by name, address, and telephone number with knowledge of the facts supporting your contention that Paula Thomas breached her duty of loyalty to Thomas Wylde, LLC.

THOMAS; John Hanna; Jene Park; Meldy Rafols; Yann Weber; Siim Kohv; Vanessa Von Bismarck; Elena Davidyants at TSUM; representatives of JUST ONE EYE

**SPECIAL INTERROGATORY NO. 80:** Identify all DOCUMENTS supporting your contention that Paula Thomas breached her duty of loyalty to Thomas Wylde, LLC.

*See* all documents listed in response to Special Interrogatories 51, 57, 60, 63, 69, 73 & 77, above.

**SPECIAL INTERROGATORY NO. 81:** State all facts supporting your contention that Paula Thomas breached her obligations under a Confidentiality and Intellectual Property Agreement.

*Objection:* The interrogatory is overly broad and overly burdensome and oppressive as to scope particularly when calling for "all facts". *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First, LLC,* 273 FRD 367, 369 (SDNY 2010); *Lucero v. Valdez,* 240 FRD 591, 594 (DNM 2007); *Moses v. Halstead,* 236 FRD 667, 674 (D. Kan. 2006).

On or about March 3, 2015, Paula Thomas gave access to TW's servers to Tony Jay and one "Joshua". In addition, since her separation THOMAS has made use of confidential company information to contact at least two purchasers of company product, and perhaps others, and to dissuade them from completing or making orders or otherwise doing business with the company. These include representatives of JUST ONE EYE and also Elena Davidyants at TSUM; and others yet to be identified. In addition, THOMAS has attempted to recruit away at least one sales representative or employee. In addition, THOMAS has taken and made use of images belonging to the company in her social media, laying claims to authorship for the items depicted, but also violating copyright and making use of company information and data.

**SPECIAL INTERROGATORY NO. 82:** Identify all persons by name, address, and telephone number with knowledge of the facts supporting your contention that Paula Thomas breached her obligations under a Confidentiality and Intellectual Property Agreement.

Jene Park; John Hanna; David Schnider; Meldy Rafols; THOMAS; Elena Davidyants; representatives of JUST ONE EYE, Ed Smith, Tony Jay, one "Joshua"

**SPECIAL INTERROGATORY NO. 83:** Identify all DOCUMENTS supporting your contention that Paula Thomas breached her obligations under a Confidentiality and Intellectual Property Agreement.

*See* all documents listed in response to Special Interrogatories 51, 57, 60, 63, 69, 73, 77 & 80, above. *See Employment Agreement* with all addenda and exhibits, see also operating agreement with all exhibits and addenda. *See* Ed Smith March 3, 2015 e-mail relating to furnishing passwords to Tony Jay and one "Joshua".

**SPECIAL INTERROGATORY NO. 84:** State all facts supporting your contention that Paula Thomas gave passwords to the company server to unauthorized persons.

*Objection:* The interrogatory is overly broad and overly burdensome and oppressive as to scope particularly when calling for "all facts". *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First, LLC*, 273 FRD 367, 369 (SDNY 2010); *Lucero v. Valdez*, 240 FRD 591, 594 (DNM 2007); *Moses v. Halstead*, 236 FRD 667, 674 (D. Kan. 2006).

On March 3, 2015, Paula Thomas instructed the company's outside IT specialist Ed Smith to furnish the passwords to Tony Jay and one "Joshua".

**SPECIAL INTERROGATORY NO. 85:** Identify all persons by name, address, and telephone number with knowledge of the facts supporting your contention that Paula Thomas gave passwords to the company server to unauthorized persons.

Paula Thomas; John Hanna; Jene Park; Meldy Rafols; Ed Smith; Tony Jay; "Joshua"

**SPECIAL INTERROGATORY NO. 86:** Identify all DOCUMENTS supporting your contention that Paula Thomas gave passwords to the company server to unauthorized persons.

Ed Smith's March 3, 2015 e-mail to Tony Jay and Joshua (last name unknown)

**SPECIAL INTERROGATORY NO. 87:** Identify each unauthorized person by name, address, and telephone number to whom you contend Paula Thomas gave passwords to the company server, and the dates on which each such incident occurred.

Tony Jay and Joshua (last name unknown).

**SPECIAL INTERROGATORY NO. 88:** Identify all contracts that you contend Thomas Wylde, LLC and Paula Thomas entered into including all alleged written, oral, and implied in fact contracts, and the dates each such contract was made.

Thomas Wylde, LLC company operating agreement could possibly be deemed a contract for the purposes of this interrogatory. The Thomas Employment Agreement, with its attachments, and which Plaintiff Thomas already has, is a contract between these parties. The oral agreement of all officers, including Paula Thomas, to reduce voluntarily their salaries by 1/3 is yet another contract. There were also various agreements including a clawback agreement, a membership interest purchase agreement, articles of dissolution for Thomas Wylde Holdings, LLC, and a written consent to assumption of PDTW's liabilities by THOMAS that may also be relevant. THOMAS has each of these and may refer to them for any additional information.

Attending each of these were duties of good faith and fair dealing. In this particular context in which millions of dollars of investor money were solicited and received, Paula Thomas also implicitly bound herself to do all things necessary to maximize the chances for success of Thomas Wylde, LLC and not to frustrate the purpose of the planned transition of business from PDTW, LLC, to Thomas Wylde, LLC by, for example, making vexatious claims to ownership of domain names, or veiled threats concerning the leasehold, or claims to things allegedly inside PDTW, LLC, that are necessary to the

1  continuation of the brand under Thomas Wylde, LLC.

2  Respondent's responses to Form Interrogatories Nos. 50.1 — 50.6 inclusive are
incorporated herein by this reference.

3

**SPECIAL INTERROGATORY NO. 89:** Identify all persons by name, address, and telephone
4  number who participated in the decision to terminate Paula Thomas.

5  John Hanna; Jene Park

6  **SPECIAL INTERROGATORY NO. 90:** Identify all reasons why you terminated Paula
Thomas' employment.

7

*See* response to Employment Form Interrogatory No. 201.1(a) in particular but also all
8  other responses to the series 201 Employment Form Interrogatories above; *see also*
Special Interrogatory No. 55, above, which responses are incorporated herein by this
9  reference as if fully set forth.

10  **SPECIAL INTERROGATORY NO. 91:** Identify all DOCUMENTS that you relied upon in
deciding to terminate Paula Thomas' employment.

11

*See* response to Employment Form Interrogatory No. 201.1(d) in particular but also all
12  other responses to the series 201 Employment Form Interrogatories and documents
identified; *see also* response to Special Interrogatory No. 83, above, which responses are
13  incorporated herein by this reference as if fully set forth.

14  **SPECIAL INTERROGATORY NO. 92:** State all facts supporting your contention that Paula
Thomas was not disabled during her employment with Thomas Wylde, LLC.

15

*Objection:* The interrogatory is overly broad and overly burdensome and oppressive as to
16  scope particularly when calling for "all facts". *See Ritchie Risk-Linked Strategies
Trading (Ireland), Ltd. v. Coventry First, LLC,* 273 FRD 367, 369 (SDNY 2010); *Lucero
17  v. Valdez,* 240 FRD 591, 594 (DNM 2007); *Moses v. Halstead,* 236 FRD 667, 674 (D.
Kan. 2006).

18

At no time during THOMAS' employment with the company has the company been in
19  possession of any facts to indicate that she was disabled. If THOMAS was secretly
disabled during any period in which she was employed by the company, she kept that fact
20  to herself. The impression given was that of an obstinate refusal to accept a new situation
in which she would have anyone above her and instead would insist upon continuing with
21  those behavioral patterns which drove PDTW, LLC, and herself, into insolvency and the
brink of failure. Having no facts to suggest that Paula Thomas was disabled during her
22  period of employment, the company therefore contends that she was not disabled during
that period. The first time Respondent ever learned of any alleged disability was when
23  served with the complaint in this action. Not even those draft settlement documents
prepared by THOMAS' prior counsel in late April and early May mention disability. No
24  communication from any of her prior counsel asserts a disability. No communication
from present counsel asserts a disability until it is asserted in the original complaint in
25  this action.

26  **SPECIAL INTERROGATORY NO. 93:** Identify all persons by name, address, and telephone
number with knowledge of the facts supporting your contention that Paula Thomas was not
27  disabled during her employment with Thomas Wylde, LLC

28  *See* response to Special Interrogatory No. 92. John Hanna, Jene Park, Meldy Rafols,
David Schnider, Yoonsung Bae

**SPECIAL INTERROGATORY NO. 94:** Identify all DOCUMENTS supporting your contention that Paula Thomas was not disabled during her employment with Thomas Wylde, LLC.

*Objection:* The interrogatory asks respondent to prove a negative, essentially. It is the absence of documents as to THOMAS' disability during any time period that is relevant. Otherwise, respondent can only answer that the universe of documents suggesting no disability is vast and necessarily includes such things as documents involving THOMAS' vacation from mid-December to mid-January, documents to be discovered demonstrating what she said to third parties during relevant time periods, her medical records, what she did at and outside of work during the relevant time periods, etc. Thus, the interrogatory is unduly burdensome and overly broad. Discovery is ongoing and Respondent expects to receive proofs of whatever sort that THOMAS is not now and never was during her period of employment suffering from a disability.

Among the documents responsive will be draft settlement documents prepared by THOMAS' counsel in late April and early May as well as all correspondence from Olivia Goodkin and Michael Crain, none of which mentions disability, like any other document anywhere to Respondent's knowledge during that time period.

**SPECIAL INTERROGATORY NO. 95:** Identify all employment benefits provided for Paula Thomas by Thomas Wylde, LLC, including but not limited to retirement plan, car allowance, cellphone allowance and insurance benefits, and identify the monthly value of each such benefit.

*Objection:* The interrogatory is compound. In addition, THOMAS' attorneys are already in possession of materials from which they can ascertain the desired information. The interrogatory is therefore unduly burdensome and interposed solely to harass or annoy or to increase the cost of litigation.

**SPECIAL INTERROGATORY NO. 96:** Identify all employment benefits provided for John Hanna by Thomas Wylde, LLC, including but not limited to retirement plan, car allowance, cellphone allowance, and insurance benefits, and identify the monthly value of each such benefit.

*Objection:* The interrogatory is compound. In addition, THOMAS' attorneys are already in possession of materials from which they can ascertain the desired information. The interrogatory is therefore unduly burdensome and interposed solely to harass or annoy or to increase the cost of litigation.

**SPECIAL INTERROGATORY NO. 97:** Identify all employment benefits provided for Jene Park by Thomas Wylde, LLC, including but not limited to retirement plan, car allowance, cell phone allowance, and insurance benefits, and identify the monthly value of each such benefit.

*Objection:* The interrogatory is compound. In addition, THOMAS' attorneys are already in possession of materials from which they can ascertain the desired information. The interrogatory is therefore unduly burdensome and interposed solely to harass or annoy or to increase the cost of litigation.

**SPECIAL INTERROGATORY NO. 98:** Identify all inventory of the archive pieces designed by Paula Thomas that are in storage.

*Objection:* The company knows of no archive pieces that were "designed by Paula Thomas" exclusively. All archive pieces of which the company is aware were designed by a design team. Paula Thomas led the design team but cannot be said to have single-handedly designed anything. In addition, THOMAS is in possession of PDTW, LLC's books and records and thus has at least as good, if not better, access to any and all lists of

archive pieces and can ascertain the desired information.

**SPECIAL INTERROGATORY NO. 99:** Identify all stores in which Thomas Wylde brand clothing is now carried by name, address, and telephone number.

> *Objection:* The interrogatory calls for confidential business information and/or trade secret information protected by privilege or other law. It is possible that the company will turn this material over to counsel for plaintiffs once an appropriate protective order is in place providing for "Attorneys' Eyes Only" protection. However, the request asks for material that is irrelevant and the request is not reasonably calculated to lead to admissible evidence.

**SPECIAL INTERROGATORY NO. 100:** Identify all distributors of Thomas Wylde, LLC products by name, address, and telephone number.

> *Objection:* The interrogatory calls for confidential business information and/or trade secret information protected by privilege or other law. It is possible that the company will turn this material over to counsel for plaintiffs once an appropriate protective order is in place providing for "Attorneys' Eyes Only" protection. However, the request also asks for material that is irrelevant and the request is not reasonably calculated to lead to admissible evidence.

**SPECIAL INTERROGATORY NO. 101:** Identify all existing and prospective licensing agreements for Thomas Wylde, LLC for both first line and second line products, including but not limited to clothing, eyewear, denim, fragrance, jewelry, and furniture.

> *Objection:* The interrogatory calls for confidential business information and/or trade secret information protected by privilege or other law. It is possible that the company will turn this material over to counsel for plaintiffs once an appropriate protective order is in place providing for "Attorneys' Eyes Only" protection. However, the interrogatory also asks for material that is irrelevant and the request is not reasonably calculated to lead to admissible evidence.

**SPECIAL INTERROGATORY NO. 102:** Identify all of PDTW, LLC's customers by name, address, telephone number, and contact person, including but not limited to stores and private clients.

> *Objection:* This information is in the hands of Plaintiff PDTW, LLC which is controlled by Plaintiff THOMAS. The information can be obtained more easily and more cheaply by the plaintiffs. The request is therefore unduly burdensome and interposed nearly to harass and annoy and otherwise increase the costs of litigation.

**SPECIAL INTERROGATORY NO. 103:** Identify all of PDTW, LLC's vendors at any time by name, address, phone number, email address, name of contact person, and type of services performed and/or goods sold.

> *Objection:* This information is in the hands of Plaintiff PDTW, LLC which is controlled by Plaintiff THOMAS. The information can be obtained more easily and more cheaply by the plaintiffs. The request is therefore unduly burdensome and interposed nearly to harass and annoy and otherwise increase the costs of litigation.

**IV. RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS AND TANGIBLE THINGS, SET ONE**

*General Objection to Place of Production:* Each and every request for production is objected to inasmuch as the place of production is designated as the offices of Kring & Chung, LLP.

1   Whatever will be made available will be made available at that place designated by Respondent.

2   **REQUEST NO. 1:** All of Thomas Wylde, LLC's monthly bank statements from the date each account was opened until the present date.

3

4       *Objection:* The request calls for confidential business information inasmuch as vendors, suppliers, and customers are indicated. This material will be supplied only under an

5       appropriate protective order, especially given plaintiff Thomas' history of contacting the company's trading partners and attempting to disrupt company business. The protective

6       order must provide for "Attorneys' Eyes Only" ("AEO") protection. Most or all of these materials have now been provided as Highly Confidential — AEO material.

7   **REQUEST NO. 2:** All check images for checks written from Thomas Wylde, LLC's bank account from the date each account was opened until the present date.

8

9       *Objection:* The request is unduly burdensome, cumulative, and redundant and interposed to harass and annoy the company and otherwise to increase the costs of this litigation. The

10      company will reconsider its position once an appropriate protective order is in place, but only to the extent Paula Thomas limits her requests to those checks having a bearing upon

11      these proceedings. Many check images have nonetheless been furnished already to THOMAS' counsel.

12  **REQUEST NO. 3:** All financial statements of Thomas Wylde, LLC from the date the company was formed until the present date, including but not limited to monthly and yearly profit and loss

13  statements, monthly and yearly income and expense statements, and monthly and yearly balance sheets.

14

15      The company will supply its latest QuickBooks file once THOMAS indicates that she agrees that it will be treated as "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES

16      ONLY" material under the protective order, whether signed by the court yet or not. From this THOMAS may ascertain the desired information. It is understood that the

17      QuickBooks file may not be finalized and may be subject to adjustments, corrections, and revisions. To the extent the request calls for documents that do not exist, Respondent

18      *OBJECTS.*

19  **REQUEST NO. 4:** All checking account ledgers for Thomas Wylde, LLC from the date each account was opened until the present date.

20      *Objection:* The request calls for confidential business information inasmuch as vendors, suppliers, and customers are indicated. This material will be supplied only under an

21      appropriate protective order, especially given plaintiff Thomas' history of contacting the company's trading partners and attempting to disrupt company business. The protective

22      order must provide for "Attorneys' Eyes Only" protection.

23      The company will supply its latest QuickBooks file once THOMAS indicates that she agrees that it will be treated as "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES

24      ONLY" material under the protective order, whether signed by the court yet or not. From this THOMAS may ascertain the desired information. It is understood that the

25      QuickBooks file may not be finalized and may be subject to adjustments, corrections, and revisions.

26

27  **REQUEST NO. 5:** All general ledgers for Thomas Wylde, LLC from the date each account was opened until the present date.

28      *Objection:* The request calls for confidential business information inasmuch as vendors, suppliers, and customers are indicated. This material will be supplied only under an

appropriate protective order, especially given plaintiff Thomas' history of contacting the
company's trading partners and attempting to disrupt company business. The protective
order must provide for "Attorneys' Eyes Only" protection.

The company will supply its latest QuickBooks file once THOMAS indicates that she
agrees that it will be treated as "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES
ONLY" material under the protective order, whether signed by the court yet or not. From
this, THOMAS may ascertain the desired information. It is understood that the
QuickBooks file may not be finalized and may be subject to adjustments, corrections, and
revisions.

**REQUEST NO. 6:** All loan agreements entered into by Thomas Wylde, LLC regarding loans
obtained by Thomas Wylde, LLC.

The requested material will be made available for copying and inspection. It is believed
that these materials have already been furnished — Bates 00805 — 00821.

**REQUEST NO. 7:** All loan agreements entered into by Thomas Wylde, LLC regarding loans
made by Thomas Wylde, LLC.

None.

**REQUEST NO. 8:** All DOCUMENTS regarding distributions made by Thomas Wylde, LLC to
any of its members.

None. The company has never made distributions to its members in its approximately 12
months of existence.

**REQUEST NO. 9:** All DOCUMENTS regarding the capital accounts of the members of
Thomas Wylde, LLC.

The requested material will be made available for copying and inspection.

**REQUEST NO. 10:** All lease agreements for the premises that Thomas Wylde, LLC currently
occupies.

These will be made available for inspection and copying.

**REQUEST NO. 11:** All sublease agreements for the premises that Thomas Wylde, LLC
currently occupies.

The requested material will be made available for copying and inspection, if any such
materials exist.

**REQUEST NO. 12:** All DOCUMENTS regarding capital contributions made by any member of
Thomas Wylde.

Plaintiff Thomas is already in receipt of the company operating agreement and its exhibits
which indicate original monetary capital contributions as well as amendments to the same
showing later capital contribution and unit issuance activity. She likewise has bank
statements indicating deposits of capital contributions as well as the latest Amended
Exhibit B to the Operating Agreement. Nevertheless, the requested material will be made
available for copying and inspection.

**REQUEST NO. 13:** All DOCUMENTS regarding the repayment of loans obtained by Thomas
Wylde, LLC.

1

2   The requested material will be made available for copying and inspection. It is believed that THOMAS already has sufficient documentary evidence of loan repayments from bank statements supplied.

3

4   **REQUEST NO. 13:** All DOCUMENTS regarding the repayment of loans made by Thomas Wylde, LLC.

5     None.

6   **REQUEST NO. 15:** All DOCUMENTS regarding Thomas Wylde, LLC's payment of money to Michael L. Schiffman, M.D.

7

8     *Objection:* As phrased the request is overly burdensome. With the bank statements and other materials supplied, including answers to Special Interrogatories, plaintiffs will have the ability to ascertain whatever it is they need. Otherwise, inasmuch as the obligation to Schiffman originates from a note signed by PDTW, LLC, and inasmuch as the litigation and settlement documents are readily accessible by PDTW, LLC, which is controlled by THOMAS, the request calls for material just as easily obtained by THOMAS from her own sources.

9

10

11

12  **REQUEST NO. 16:** All DOCUMENTS regarding Thomas Wylde, LLC's contention that PDTW, LLC owes Thomas Wylde, LLC, any money.

13     The requested material will be made available for copying and inspection.

14  **REQUEST NO. 17:** All DOCUMENTS regarding Thomas Wylde, LLC's contention that PDTW, LLC borrowed any money from Thomas Wylde, LLC.

15

16     The requested material will be made available for copying and inspection.

17  **REQUEST NO. 18:** All DOCUMENTS regarding Thomas Wylde, LLC's contention that PDTW, LLC agreed to repay any money to Thomas Wylde, LLC.

18     The requested material will be made available for copying and inspection.

19  **REQUEST NO. 19:** All DOCUMENTS regarding checks that Thomas Wylde, LLC or any of its employees wrote from PDTW, LLC's bank accounts to pay for Thomas Wylde, LLC's debts.

20

21     None. Respondent will answer "none" to all such questions inasmuch as they posit Thomas Wylde, LLC or any of its employees as writing checks or taking or paying money from PDTW, LLC's bank accounts. Any current employees of Thomas Wylde, LLC who participated in any financial transaction involving a PDTW, LLC, account, did so as a representative of PDTW, LLC, and as part of an agreed-upon plan involving a transition of business operations from PDTW, LLC to Thomas Wylde, LLC, and with the explicit approval and participation of THOMAS. In any event, PDTW, LLC, has the greater access to its own accounts and banks and therefore bank statements and check images, and thus Respondent *OBJECTS* to the request.

22

23

24

25

26  **REQUEST NO. 20:** All DOCUMENTS regarding money that Thomas Wylde, LLC or any of its employees paid from PDTW, LLC's bank accounts to any companies owned in whole or in part by either John Hanna or any of his friends or family, including but not limited to H&H Fashion, LLC.

27

28     None. *See* response to Request No. 19, *supra.*

**REQUEST NO. 21:** All DOCUMENTS regarding money that Thomas Wylde, LLC or any of its employees paid from PDTW, LLC's bank accounts to any companies owned in whole or in part by either Tasha Hess or any of her friends or family, including but not limited to Shot in the Armoire, LLC.

> None. *See* response to Request No. 19, *supra*, and note that, to Respondent's knowledge, there are no payments to Tasha Hess or any of her friends or family or to Shot in the Armoire, LLC, from PDTW, LLC.

**REQUEST NO. 22:** All DOCUMENTS regarding money that Thomas Wylde, LLC or any of its employees paid from PDTW, LLC's bank accounts to any companies owned in whole or in part by either Jene Park or any of her friends or family.

> None. *Objection:* To the extent current employees of Thomas Wylde, LLC may have participated in paying PDTW, LLC's creditors, they did so as representatives of PDTW, LLC. *See* response to Request No. 19, *supra*. In addition, plaintiffs are themselves in possession of adequate documents allowing them to ascertain whatever it is that they wish to know.

**REQUEST NO. 23:** All DOCUMENTS regarding money that Thomas Wylde, LLC or any of its employees paid from PDTW, LLC's bank accounts to any employee of Thomas Wylde, LLC other than Paula Thomas, including but not limited to John Hanna and Jene Park.

> None. *See* response to Request No. 19, *supra*.

**REQUEST NO. 24:** All DOCUMENTS regarding money that Thomas Wylde, LLC or any of its employees paid from Thomas Wylde, LLC's bank accounts to any companies owned in whole or in part by either John Hanna or any of his friends or family, including but not limited to H&H Fashion, LLC.

> The requested material will be made available for copying and inspection. It is believed that THOMAS has already received responsive documents.

**REQUEST NO. 25:** All DOCUMENTS regarding money that Thomas Wylde, LLC or any of its employees paid from Thomas Wylde, LLC's bank accounts to any companies owned in whole or in part by either Tasha Hess or any of her friends or family, including but not limited to Shot in the Armoire, LLC.

> None.

**REQUEST NO. 26:** All DOCUMENTS regarding money that Thomas Wylde, LLC or any of its employees paid from Thomas Wylde, LLC's bank accounts to any companies owned in whole or in part by either Jene Park or any of her friends or family.

> The requested material will be made available for copying and inspection.

**REQUEST NO. 27:** All DOCUMENTS regarding correspondence between Paula Thomas and any employee of Thomas Wylde, LLC regarding writing checks or making payments out of PDTW, LLC's bank account for any reason, including but not limited to emails and texts.

> *Objection:* The request is overly burdensome inasmuch as it requests material to which THOMAS herself has equal access.
>
> *See* response to Request No. 19, *supra*.

**REQUEST NO. 28:** All DOCUMENTS provided by Thomas Wylde, LLC to its members from

the date of the company's inception to the present.

*Objection:* The request is overly burdensome inasmuch as it requests material to which THOMAS herself has equal access. All such things have been supplied to THOMAS as a member. Inspection and copying will be permitted of company books, however.

**REQUEST NO. 29:** All DOCUMENTS regarding the value of the membership units of Thomas Wylde, LLC at all times from the date of the company's inception to the present.

The requested material will be made available for copying and inspection. It is believed that THOMAS is already in possession of all such DOCUMENTS. It is not believed that no such documents exist save only those establishing capital account balances for tax purposes. No known documents establish any sort of "value" of membership units.

**REQUEST NO. 30:** All DOCUMENTS regarding the value of Thomas Wylde, LLC at all times from the date of the company's inception to the present.

*Objection:* There are no current appraisals, and Plaintiff Thomas already is in possession of whatever documents she may need to make rough estimations of value under one or more of the various business appraisal methods.

**REQUEST NO. 31:** All federal and state tax returns of Thomas Wylde, LLC from the date of the company's inception to the present.

*Objection:* These materials have already been supplied to THOMAS.

To the extent not already provided, the requested material will be made available for copying and inspection. It is believed that THOMAS is already in possession of all such DOCUMENTS.

**REQUEST NO. 32:** All DOCUMENTS regarding Thomas Wylde, LLC's purchase of assets from PDTW, LLC and/or Paula Thomas, including but not limited to tangible assets, website domain names, intellectual property, furniture, computers, artwork, inventory, equipment, and accounts receivable.

The requested material will be made available for copying and inspection. It is believed that THOMAS is already in possession of all such DOCUMENTS.

**REQUEST NO. 33:** All DOCUMENTS regarding Thomas Wylde, LLC's formation, including but not limited all versions of the operating agreement and initial sale of membership units.

*Objection:* These DOCUMENTS are either already in THOMAS' possession or, in the case of the articles of organization, are easily and immediately available to her via the California Secretary of State's website.

**REQUEST NO. 34:** All DOCUMENTS reflecting consideration that John Hanna and Jene Park paid for their membership units in Thomas Wylde, LLC.

*Objection:* A requirement that Respondent produce the universe of "all DOCUMENTS" conceivably responsive is unduly burdensome and interposed merely to harass or annoy or increase the costs of this litigation.

THOMAS has received, in discovery, bank statements from which she can, together with Exhibit B to the company operating agreement, which she has, verify the monetary amounts paid in by each member in exchange for their membership units.

**REQUEST NO. 35:** All DOCUMENTS regarding the sale of membership units in Thomas Wylde, LLC at any time.

THOMAS is in possession of the company's operating agreement as well as those notices and consent forms relating to the company's recent issuance of an additional 3,300 membership units. THOMAS is also in possession of the final documents, including the Amended Exhibit B, showing post-transaction holdings.

To the extent not already in THOMAS' possession, the requested material (if any) will be made available for copying and inspection.

**REQUEST NO. 36:** All K-1 statements issued by Thomas Wylde, LLC to its members from the date the company was formed to the present.

The requested material will be made available for copying and inspection.

**REQUEST NO. 37:** All credit card statements for credit cards held by Thomas Wylde, LLC from the date the company was started to the present.

The requested material will be made available for copying and inspection.

**REQUEST NO. 38:** All DOCUMENTS regarding expense reimbursements submitted by John Hanna to Thomas Wylde, LLC, including but not limited to all expense reimbursement forms, all supporting documentation submitted therewith (including but not limited to credit card statements, invoices, hotel folios, and receipts), and all payments made by Thomas Wylde, LLC for the same.

The requested material will be made available for copying and inspection.

**REQUEST NO. 39:** All DOCUMENTS regarding expense reimbursements submitted by Jene Park to Thomas Wylde, LLC, including but not limited to all expense reimbursement forms, all supporting documentation submitted therewith (including but not limited to credit card statements, invoices, hotel folios, and receipts), and all payments made by Thomas Wylde, LLC for the same.

The requested material will be made available for copying and inspection.

**REQUEST NO. 40:** All DOCUMENTS regarding payroll at Thomas Wylde, LLC from the date the Company was formed until the present, including but not limited to copies of checks or direct deposits made for officer, director and employee compensation and reflecting the dates of each such payment.

The requested material will be made available for copying and inspection to the extent Thomas Wylde, LLC, is in possession of the same. It is believed that THOMAS is already in possession of sufficient accounting and bank statement information from which to ascertain whatever information is desired.

**REQUEST NO. 41:** All DOCUMENTS regarding payments made by Thomas Wylde, LLC to vendors located in South Korea from the date the company was formed until the present, including but not limited to copies of checks and wire transfers made, purchase orders, and invoices.

The requested material will be made available for copying and inspection. It is believed that THOMAS is already in possession of sufficient accounting and bank statement information from which to ascertain whatever information is desired.

1 | **REQUEST NO. 42:** All supporting DOCUMENTS regarding the "advertising and promotion"
2 | money spent by Thomas Wylde, LLC from the date the company was formed until the present as
reflected on its profit and loss statements.

3 |     The requested material will be made available for copying and inspection.

4 | **REQUEST NO. 43:** All supporting DOCUMENTS regarding the "website" money spent by
Thomas Wylde, LLC from the date the company was formed until the present, as reflected on its
5 | profit and loss statements.

6 |     The requested material will be made available for copying and inspection.

7 | **REQUEST NO. 44:** All supporting DOCUMENTS regarding the "commission" money spent by
Thomas Wylde, LLC from the date the company was formed until the present, as reflected on its
8 | profit and loss statements.

9 |     The requested material will be made available for copying and inspection.

10 | **REQUEST NO. 45:** All supporting DOCUMENTS regarding the "other employee benefits"
money spent by Thomas Wylde, LLC from the date the company was formed until the present, as
11 | reflected on its profit and loss statements.

12 |     The requested material will be made available for copying and inspection.

13 | **REQUEST NO. 46:** All supporting DOCUMENTS regarding the "gifts" money spent by
Thomas Wylde, LLC from the date the company was formed until the present, as reflected on its
14 | profit and loss statements.

15 |     The requested material will be made available for copying and inspection.

16 | **REQUEST NO. 47:** All supporting DOCUMENTS regarding the "photoshoot" money spent by
Thomas Wylde, LLC from the date the company was formed until the present, as reflected on its
17 | profit and loss statements.

18 |     The requested material will be made available for copying and inspection.

19 | **REQUEST NO. 48:** All supporting DOCUMENTS regarding the "samples" money spent by
Thomas Wylde, LLC from the date the company was formed until the present, as reflected on its
20 | profit and loss statements.

21 |     The requested material will be made available for copying and inspection.

22 | **REQUEST NO. 49:** All supporting DOCUMENTS regarding the "reference and materials"
money spent by Thomas Wylde, LLC from the date the company was formed until the present, as
23 | reflected on its profit and loss statements.

24 |     The requested material will be made available for copying and inspection.

25 | **REQUEST NO.50.** All supporting DOCUMENTS regarding the "meals and entertainment"
money spent by Thomas Wylde, LLC from the date the company was formed until the present, as
26 | reflected on its profit and loss statements.

27 |     The requested material will be made available for copying and inspection.

28 | **REQUEST NO. 51:** All supporting DOCUMENTS regarding the "pick & pack" money spent by
Thomas Wylde, LLC from the date the company was formed until the present, as reflected on its

1    profit and loss statements.

2      The requested material will be made available for copying and inspection.

3    **REQUEST NO. 52:** All supporting DOCUMENTS regarding the "outside services" money
spent by Thomas Wylde, LLC from the date the company was formed until the present, as
4    reflected on its profit and loss statements.

5      The requested material will be made available for copying and inspection. Materials may
be redacted under where they contain attorney-client communications or attorney work
6      product.

7    **REQUEST NO. 53:** All supporting DOCUMENTS regarding the "professional fees" money
spent by Thomas Wylde, LLC from the date the company was formed until the present, as
8    reflected on its profit and loss statements.

9      The requested material will be made available for copying and inspection. Materials may
be redacted under where they contain attorney-client communications or attorney work
10      product.

11    **REQUEST NO. 54:** All supporting DOCUMENTS regarding the "public relations" money spent
by Thomas Wylde, LLC from the date the company was formed until the present, as reflected on
12    its profit and loss statements.

13      The requested material will be made available for copying and inspection.

14    **REQUEST NO. 55:** All supporting DOCUMENTS regarding the "rent expense" money spent by
Thomas Wylde, LLC from the date the company was formed until the present, as reflected on its
15    profit and loss statements.

16      The requested material will be made available for copying and inspection.

17    **REQUEST NO. 56:** All supporting DOCUMENTS regarding the "payroll - salaries" money
spent by Thomas Wylde, LLC from the date the company was formed until the present, as
18    reflected on its profit and loss statements, including but not limited to the "management fee"
money spent by Thomas Wylde under the "payroll - salaries" section.
19

20      The requested material will be made available for copying and inspection.

21    **REQUEST NO. 57:** All supporting DOCUMENTS regarding the "showroom expense" money
spent by Thomas Wylde, LLC from the date the company was formed until the present, as
22    reflected on its profit and loss statements.

23      The requested material will be made available for copying and inspection.

24    **REQUEST NO. 58:** All supporting DOCUMENTS regarding the "fashion show" money spent
by Thomas Wylde, LLC from the date the company was formed until the present, as reflected on
25    its profit and loss statements.

26      The requested material will be made available for copying and inspection.

27    **REQUEST NO. 59:** All supporting DOCUMENTS regarding the "travel expense" money spent
by Thomas Wylde LLC from the date the company was formed until the present, as reflected on
28    its profit and loss statements.

     The requested material will be made available for copying and inspection.

1

**REQUEST NO. 60:** All supporting DOCUMENTS regarding the "other expense-interest
2  expense" money spent by Thomas Wylde, LLC from the date the company was formed until the
present, as reflected on its profit and loss statements
3

The requested material will be made available for copying and inspection.
4

**REQUEST NO. 61:** All DOCUMENTS regarding payments made by Thomas Wylde, LLC to
5  companies that John Hanna or any of his friends or family owns in whole or in part, including but
not limited to H&H Fashion, LLC.
6

The requested material will be made available for copying and inspection. It is believed
7  that THOMAS is already in possession of all such DOCUMENTS.

8  **REQUEST NO. 62:** All DOCUMENTS regarding payments made by Thomas Wylde, LLC to
companies that Tasha Hess or any of her friends or family owns in whole or in part, including but
9  not limited to Shot in the Armoire, LLC.

10  None.

11  **REQUEST NO. 63:** All DOCUMENTS regarding payments made by Thomas Wylde, LLC to
companies that Jene Park or any of her friends or family owns in whole or in part.
12

The requested material will be made available for copying and inspection. It is believed
13  that THOMAS is already in possession of all such DOCUMENTS.

14  **REQUEST NO. 64:** All DOCUMENTS regarding any advances made by Thomas Wylde, LLC
to any of its officers, directors or employees, and regarding any repayment of the same.
15

The requested material will be made available for copying and inspection. It is believed
16  that THOMAS is already in possession of all such DOCUMENTS.

17  **REQUEST NO. 65:** Paula Thomas' entire personnel file.

18  The requested material will be made available for copying and inspection. It is believed
that THOMAS is already in possession of all such DOCUMENTS.
19

**REQUEST NO. 66:** All DOCUMENTS supporting your contention that Paula Thomas resigned
20  from Thomas Wylde, LLC.

21  The requested material will be made available for copying and inspection. It is believed
that THOMAS is already in possession of all such DOCUMENTS.
22

**REQUEST NO. 67:** All DOCUMENTS supporting your contention that Paula Thomas
23  abandoned her job at Thomas Wylde, LLC.

24  The requested material will be made available for copying and inspection. It is believed
that THOMAS is already in possession of all such DOCUMENTS.
25

**REQUEST NO. 68:** All DOCUMENTS supporting your contention that Thomas Wylde, LLC
26  terminated Paula Thomas for cause.

27  The requested material will be made available for copying and inspection. It is believed
that THOMAS is already in possession of all such DOCUMENTS.
28

**REQUEST NO. 69:** All DOCUMENTS regarding the decision to terminate Paula Thomas from

1 | Thomas Wylde, LLC.

2 | The requested material will be made available for copying and inspection. It is believed that THOMAS is already in possession of all such DOCUMENTS

3 |

4 | **REQUEST NO. 70:** All DOCUMENTS supporting your contention that Paula Thomas materially breached her employment agreement.

5 | The requested material will be made available for copying and inspection. It is believed that THOMAS is already in possession of all such DOCUMENTS.

6 |

7 | **REQUEST NO 71:** All DOCUMENTS supporting your contention that Paula Thomas committed insubordination.

8 | The requested material will be made available for copying and inspection. It is believed that THOMAS is already in possession of all such DOCUMENTS.

9 |

10 | **REQUEST NO. 72:** All DOCUMENTS supporting your contention that Paula Thomas refused to comply by company written rules, guidelines, policies or procedures.

11 | The requested material will be made available for copying and inspection. It is believed that THOMAS is already in possession of all such DOCUMENTS.

12 |

13 | **REQUEST NO. 73:** All DOCUMENTS reflecting written rules, guidelines, policies and procedures that were in effect at Thomas Wylde, LLC during Paula Thomas' employment, including but not limited to all versions of the employee handbook, all revisions and addendums thereto, and all expense reimbursements guidelines, policies and procedures.

14 |

15 | The requested material will be made available for copying and inspection. It is believed that THOMAS is already in possession of all such DOCUMENTS.

16 |

17 | **REQUEST NO. 74:** All DOCUMENTS reflecting Paula Thomas' acknowledgment of receipt of Thomas Wylde, LLC's written rules, guidelines, policies and procedures.

18 | The requested material will be made available for copying and inspection. It is believed that THOMAS is already in possession of all such DOCUMENTS.

19 |

20 | **REQUEST NO. 75:** All DOCUMENTS supporting your contention that Paula Thomas' conduct during her employment with Thomas Wylde, LLC caused damage to Thomas Wylde, LLC, its members, and/or management.

21 |

22 | The requested material will be made available for copying and inspection. It is believed that THOMAS is already in possession of all such DOCUMENTS.

23 | **REQUEST NO. 76:** All DOCUMENTS supporting your contention that Paula Thomas' conduct after her employment ended with Thomas Wylde, LLC caused damage to Thomas Wylde, LLC, its members, and/or management.

24 |

25 | The requested material will be made available for copying and inspection. It is believed that THOMAS is already in possession of all such DOCUMENTS.

26 |

27 | **REQUEST NO. 77:** All DOCUMENTS supporting your contention that Paula Thomas slandered or defamed Thomas Wylde, LLC, its members, and/or any of its management.

28 | The requested material will be made available for copying and inspection. It is believed that THOMAS is already in possession of all such DOCUMENTS.

**REQUEST NO. 78:** All DOCUMENTS supporting your contention that Paula Thomas breached her duty of loyalty to Thomas Wylde, LLC.

The requested material will be made available for copying and inspection.  It is believed that THOMAS is already in possession of all such DOCUMENTS.

**REQUEST NO. 79:** All DOCUMENTS supporting your contention that Paula Thomas breached her obligation under a Confidentiality and Intellectual Property Agreement.

The requested material will be made available for copying and inspection.  It is believed that THOMAS is already in possession of all such DOCUMENTS.

**REQUEST NO. 80:** All DOCUMENTS supporting your contention that Paula Thomas gave passwords to the company server to unauthorized persons.

The requested material will be made available for copying and inspection.  It is believed that THOMAS is already in possession of all such DOCUMENTS.

**REQUEST NO. 81:** All DOCUMENTS regarding contracts entered into between Thomas Wylde, LLC and Paula Thomas, including all alleged written, oral, and implied in fact contracts.

THOMAS is already in possession of the Thomas Employment Agreement as well as the company operating agreement, The operating agreement may or may not be responsive but is already in THOMAS' possession, as amended, with all exhibits, as amended. It is believed that THOMAS is already in possession of those and all other contracts and contract modification DOCUMENTS. Any other responsive material will be made available for copying and inspection.

**REQUEST NO. 82:** All DOCUMENTS regarding contracts entered into between Thomas Wylde, LLC and PDTW, LLC. including all alleged written, oral, and implied in fact contracts.

The requested material will be made available for copying and inspection.  It is believed that THOMAS is already in possession of all such DOCUMENTS.

**REQUEST N0. 83:** All DOCUMENTS regarding communications between attorneys Richard Byron Peddie and Olivia Goodkin regarding the facts giving rise to this lawsuit.

*Objection:* THOMAS has equal access to all such communications inasmuch as Olivia Goodkin is her attorney. The request is therefore unduly burdensome and interposed solely to harass and to increase the cost of this litigation. In addition, the request is vague and incomprehensible. Respondent cannot possibly know what "facts and circumstances" gave rise to this lawsuit because respondent did not initiate this lawsuit and is not clairevoyant.

**REQUEST NO. 84:** All DOCUMENTS regarding communications between Paula Thomas and Jene Park regarding the facts and circumstances giving rise to this lawsuit, including but not limited to emails and texts.

*Objection:* THOMAS has equal access to all such communications inasmuch as she was a participant. The request is therefore unduly burdensome and interposed solely to harass and to increase the cost of this litigation. In addition, the request is vague and incomprehensible. Respondent cannot possibly know what "facts and circumstances" gave rise to this lawsuit because respondent did not initiate this lawsuit and is not clairevoyant.

1  **REQUEST NO. 85:** All DOCUMENTS regarding communications between Paula Thomas and
John Hanna regarding the facts and circumstances giving rise to this lawsuit, including but not
2  limited to emails and texts.

3       *Objection:* THOMAS has equal access to all such communications inasmuch as she was a
participant. The request is therefore unduly burdensome and interposed solely to harass
4       and to increase the cost of this litigation. In addition, the request is vague and
incomprehensible. Respondent cannot possibly know what "facts and circumstances"
5       gave rise to this lawsuit because respondent did not initiate this lawsuit and is not
clairevoyant.

6
**REQUEST NO. 86:** All DOCUMENTS regarding communications between John Hanna and
7  Jene Park regarding the facts and circumstances giving rise to this lawsuit, including but not
limited to emails and texts.
8
       *Objection:* The request is vague and incomprehensible. Respondent cannot possibly
9       know what "facts and circumstances" gave rise to this lawsuit because respondent did not
initiate this lawsuit and is not clairevoyant.
10
**REQUEST NO. 87:** All DOCUMENTS regarding communications made by Thomas Wylde,
11  LLC or any of its agents, representatives, officers, directors, or employees regarding Paula
Thomas' separation of employment from the company, including but not limited to the press;
12  media; Thomas Wylde, LLC's members; employees; vendors; customers; social media; potential
investors; and third parties.
13
       The requested material will be made available for copying and inspection. It is believed
14       that THOMAS is already in possession of all such DOCUMENTS. To the extent the
request seeks material protected by the attorney-client privilege or work product doctrine,
15       Respondent *OBJECTS.*

16  **REQUEST NO. 88:** All DOCUMENTS that Thomas Wylde, LLC provided to potential
investors, including but not limited to Stephen Choi, including but not limited to any and all
17  financial reports and business projections.

18       The requested material will be made available for copying and inspection. It is believed
that THOMAS is already in possession of all such DOCUMENTS.
19
**REQUEST NO. 89:** All DOCUMENTS regarding how Thomas Wylde, LLC plans to become
20  cash flow positive in the future, including but not limited to business development and marketing
plans.
21
       The requested material will be made available for copying and inspection. It is believed
22       that THOMAS is already in possession of all such DOCUMENTS.

23  **REQUEST NO. 90:** John Hanna's entire personnel file.

24       The requested material will be made available for copying and inspection.

25  **REQUEST NO. 91:** Jene Park's entire personnel file.

26       The requested material will be made available for copying and inspection.

27  **REQUEST NO. 92:** All DOCUMENTS reflecting accounts receivable currently held by Thomas
Wylde, LLC, including but not limited to an aged receivable ledger (over 90 days old).
28
       *Objection:* The request calls for confidential business information inasmuch as vendors,

1    suppliers, and customers are indicated. This material will be supplied only under an
appropriate protective order, especially given plaintiff Thomas' history of contacting the
2    company's trading partners and attempting to disrupt company business. The protective
order must provide for "Attorneys' Eyes Only" protection.

3

4    The company will supply its latest QuickBooks file once THOMAS indicates that she
agrees that it will be treated as "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES
ONLY" material under the protective order. From this, THOMAS may ascertain the
5    desired information. It is understood that the QuickBooks file may not be finalized and
may be subject to adjustments, corrections, and revisions.

6

**REQUEST NO. 93:** All DOCUMENTS reflecting any aged accounts payable currently owed by
7    Thomas Wylde LLC (over 90 days old).

8        *Objection:* The request calls for confidential business information inasmuch as vendors,
suppliers, and customers are indicated. This material will be supplied only under an
9        appropriate protective order, especially given plaintiff Thomas' history of contacting the
company's trading partners and attempting to disrupt company business. The protective
10       order must provide for "Attorneys' Eyes Only" protection.

11       The company will supply its latest QuickBooks file once THOMAS indicates that she
agrees that it will be treated as "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES
12       ONLY" material under the protective order. From this, THOMAS may ascertain the
desired information. It is understood that the QuickBooks file may not be finalized and
13       may be subject to adjustments, corrections, and revisions.

14   **REQUEST NO. 94:** All DOCUMENTS that reflect or refer to performance appraisals,
evaluations, and reviews of Paula Thomas by Thomas Wylde, LLC.

15
        None.
16

**REQUEST NO. 95:** Any and all organizational charts (or the functional equivalent) that show
17   the chain of command at Thomas Wylde, LLC during Paula Thomas' employment.

18       The requested material will be made available for copying and inspection. It is believed
that THOMAS is already in possession of all such DOCUMENTS.
19

**REQUEST NO. 96:** Any and all DOCUMENTS between Thomas Wylde, LLC's Human
20   Resources Department and Paula Thomas.

21       The requested material will be made available for copying and inspection. It is believed
that THOMAS is already in possession of all such DOCUMENTS.
22

**REQUEST NO. 97:** Any and all DOCUMENTS that reflect or refer to Paula Thomas'
23   termination, separation from or discharge from Thomas Wylde, LLC.

24       The requested material will be made available for copying and inspection. It is believed
that THOMAS is already in possession of all such DOCUMENTS. To the extent the
25       request seeks material protected by the attorney-client privilege or work product doctrine,
Respondent *OBJECTS.*
26

**REQUEST NO. 98:** Any and all DOCUMENTS that reflect or refer to Paula Thomas' requests
27   for time off of work from Thomas Wylde, LLC. including but not limited to paid or unpaid time
off requests, requests for medical leave of absence, and doctor's notes.

28
        None.

1

**REQUEST NO. 99:** Any and all DOCUMENTS that reflect or refer to Paula Thomas' disability,
physical or mental health condition, medical issue, need for medical treatment, and/or need for
reasonable accommodation for the same, including but not limited to Paula Thomas'
communications with Thomas Wylde, LLC regarding the same, and including but not limited to
health care providers' communications with Thomas Wylde, LLC regarding the same.

    None.

**REQUEST NO. 100:** Any and all DOCUMENTS that reflect or refer to any engagement of an
interactive process by Thomas Wylde, LLC with Paula Thomas.

    The requested material will be made available for copying and inspection. It is believed
that THOMAS is already in possession of all such DOCUMENTS. That "interactive"
process" engaged in by Thomas Wylde, LLC, was an interactive negotiation involving
THOMAS and her counsel, Olivia Goodkin, on the one hand, and the company, on the
other, in order eventually to create a new position for her after she stated she would no
longer design and abdicated her position as Creative Director. (The process indeed
essentially began on or around Feb. 26, 2015, when company officers first met with
THOMAS and her counsel in an attempt to work out emerging issues related to
THOMAS.) The company engaged in this process to accommodate THOMAS' stated
desires and needs for a different position. It is believed THOMAS already has all such
DOCUMENTS as they involve e-mail communications and e-mail memorializations of
conversations between the parties and THOMAS was either copied or has access to all
such documents through her prior counsel Olivia Goodkin.

**REQUEST NO. 101:** All DOCUMENTS that Thomas Wylde, LLC relied upon to support Paula
Thomas' termination.

    The requested material will be made available for copying and inspection. It is believed
that THOMAS is already in possession of all such DOCUMENTS.

**REQUEST NO. 102:** Any and all DOCUMENTS that reflect or refer to Paula Thomas' job
description and/or job duties with Thomas Wylde, LLC.

    Plaintiff THOMAS is already in possession of the Thomas Employment Agreement and
also the company operating agreement, each with all attachments and exhibits. These
documents may be thought to "reflect or refer to" Thomas' job description or duties.
These documents are already in THOMAS' possession.

**REQUEST NO. 103:** Any and all DOCUMENTS that reflect or refer to any employment
benefits provided for Paula Thomas by Thomas Wylde, LLC, including but not limited to
retirement plan, car allowance, cellphone allowance, and insurance benefits.

    Plaintiff THOMAS is already in possession of the Thomas Employment Agreement as
well as all documents related to benefits received. Respondent knows of no other
documents that are responsive. To the extent any such documents exist, they will be made
available for inspection and copying.

**REQUEST NO. 104:** Any and all non-privileged DOCUMENTS that reflect or refer to any
investigation conducted by Thomas Wylde, LLC in response to any of the claims made by Paula
Thomas and/or FDTW, LLC in this lawsuit.

    None.

**REQUEST NO. 105:** Any and all DOCUMENTS regarding notifications sent by Thomas

1   Wylde, LLC to its members of meetings to vote on matters requiring a vote of a supermajority of
2   members under the terms of the operating agreement.

3       Plaintiff THOMAS is already in possession of the notice sent to company members
    requesting consent to issue additional membership units.

4       The requested material will be made available for copying and inspection. It is believed
    that THOMAS is already in possession of all such DOCUMENTS.

5

6   **REQUEST NO. 106:** Any and all DOCUMENTS reflecting the votes cast by Thomas Wylde,
    LLC's members regarding any matters requiring a vote of a supermajority of members under the
7   terms of the operating agreement.

8       Plaintiff THOMAS is already in possession of the notice sent to company members
    requesting consent to issue additional membership units as well as all subsequent notices
    or other documents indicating that consent was granted by a supermajority of company
9   members.

10      To the extent not already provided, the requested material will be made available for
    copying and inspection. It is believed that THOMAS is already in possession of all such
11  DOCUMENTS.

12  **REQUEST NO. 107:** Any and all DOCUMENTS that reflect or refer to any communications
    made by Paula Thomas or anyone on her behalf to Thomas Wylde, LLC regarding the status of
13  her ability or inability to return to work relating to a disability or physical or mental health
    condition.

14

15      None.

16  **REQUEST NO. 108:** Any and all DOCUMENTS that reflect or refer to any accommodation
    Thomas Wylde, LLC offered to Paula Thomas due to her disability or physical or mental health
    condition.
17
        There are no such documents. The company did not know that THOMAS claimed or had
18      a disability or mental health condition. Nevertheless, as described above the company
        sought to accommodate her stated desires for changes to her role within the company.
19      Related documents were sent to THOMAS' counsel, Olivia Goodkin, from whom they
        may be obtained if not already in THOMAS' possession.
20
21  **REQUEST NO. 109:** Any and all DOCUMENTS that reflect or refer to any steps Thomas
    Wylde, LLC took to determine whether a reasonable accommodation could be provided for Paula
22  Thomas' disability or physical or mental health condition.

        *See* response to Request No. 108, above. It is not believed that there are any additional
23      documents other than those documents already furnished under Request No. 108.

24  **REQUEST NO. 110:** Any and all DOCUMENTS that evidence or show that allowing Paula
    Thomas to take a temporary medical leave of absence would have caused an undue hardship on
25  Thomas Wylde, LLC's operations.

26      *Objection:* The request is vague as to timeframes. Also, the request is irrelevant:
        THOMAS never requested any temporary medical leave of absence.
27
28  **REQUEST NO. 111:** Any and all DOCUMENTS that relate to, refer to or memorialize any
    assessment of Paula Thomas' performance of her job duties, including any DOCUMENTS
    containing praise or criticism of her job performance.

The requested material will be made available for copying and inspection. It is believed that THOMAS is already in possession of all such DOCUMENTS.

**REQUEST NO. 112:** Any and all insurance policies held by Thomas Wylde, LLC, under which coverage may exist for the claims alleged in this lawsuit.

None.

**REQUEST NO. 113:** Any and all DOCUMENTS Thomas Wylde, LLC identified in response to Plaintiffs First Set of Form Interrogatories served concurrently here with.

To the extent such materials exist and are in the possession of respondent, they will be made available for inspection and copying.

**REQUEST NO. 114:** Any and all DOCUMENTS Thomas Wylde, LLC identified in response to Plaintiffs First Set of Employment Form Interrogatories served concurrently herewith.

To the extent such materials exist and are in the possession of respondent, they will be made available for inspection and copying.

**REQUEST NO. 115:** Any and all DOCUMENTS Thomas Wylde, LLC identified in response to the First Set of Special Interrogatories served concurrently here with.

To the extent such materials exist and are in the possession of respondent, they will be made available for inspection and copying.

**REQUEST NO. 116:** Any and all DOCUMENTS regarding correspondence between Giselle Limtao and Jene Park between February 1 and April 30, 2015, including but not limited to emails.

To the extent such materials exist and are in the possession of respondent, they will be made available for inspection and copying.

**REQUEST NO. 117:** Any and all DOCUMENTS regarding correspondence between Giselle Limtao and John Hanna between February 1 and April 30, 2015, including but not limited to emails.

To the extent such materials exist and are in the possession of respondent, they will be made available for inspection and copying.

**REQUEST NO. 118:** Any and all DOCUMENTS regarding correspondence between Amy Liu and Jene Park between February 1 and April 30, 2015, including but not limited to emails.

To the extent such materials exist and are in the possession of respondent, they will be made available for inspection and copying.

**REQUEST NO. 119:** Any and all DOCUMENTS regarding correspondence between Amy Liu and John Hanna between February 1 and April 30, 2015, including but not limited to emails.

To the extent such materials exist and are in the possession of respondent, they will be made available for inspection and copying.

**REQUEST NO. 120:** All invoices and purchase orders between Thomas Wylde, LLC and a Korean vendor by the name of Sun Moon.

To the extent such materials exist and are in the possession of respondent, they will be made available for inspection and copying.

REQUEST NO. 121: All invoices and purchase orders between Thomas Wylde, LLC and a Korean vendor by name of Dada.

To the extent such materials exist and are in the possession of respondent, they will be made available for inspection and copying.

REQUEST NO. 122: All DOCUMENTS regarding correspondence between Jene Park and a Korean vendor by the name of Sun Moon of any of Sun Moon's officers, managers, employees or agents (including but not limited to Eric Won), including but not limited to emails and texts.

To the extent such materials exist and are in the possession of respondent, they will be made available for inspection and copying.

REQUEST NO. 123: All DOCUMENTS regarding correspondence between Jene Park and a Korean vendor by the name of Dada or any of Dada's officers, managers, employees or agents (including but not limited to Alex Park), including but not limited to emails and texts.

To the extent such materials exist and are in the possession of respondent, they will be made available for inspection and copying.

REQUEST NO. 124: All invoices and purchase orders between Thomas Wylde, LLC and a Korean vendor by the name of The Pic and Pac Company.

None.

REQUEST NO. 125: All DOCUMENTS regarding correspondence between Jene Park and a Korean vendor by the name of The Pic and Pac Company or any of The Pic and Pac Company's officers, managers, employees or agents (including but not limited to Jene Park's brother), including but not limited to emails and texts.

None. Respondent knows of no company called "The Pic and Pac Company".

REQUEST NO. 126: Any and all press or media materials on Thomas Wylde, LLC, Paula Thomas, and/or Jene Park.

Objection: These third party materials that have been published are just as easily obtainable by THOMAS as by respondent. The request is therefore overly burdensome.

To the extent not readily obtainable elsewhere, and to the extent in Respondent's possession, the requested material will be made available for copying and inspection. It is believed that THOMAS is already in possession of all such DOCUMENTS.

REQUEST NO. 127: Any and all campaign images created by or on behalf of Thomas Wylde, LLC.

To the extent such materials exist and are not readily obtainable elsewhere and are in Respondent's possession, they will be made available for inspection and copying.

REQUEST NO. 128: Any and all photographs and video of Paula Thomas.

Objection: These materials are already in the hands of THOMAS.

To the extent such materials exist that cannot be accessed readily by THOMAS through

other avenues and are also in Respondent's possession, they will be made available for inspection and copying so long as THOMAS identifies them with reasonable particularity such that the burden in locating them is reasonable.

**REQUEST NO. 129:** All DOCUMENTS reflecting inventory lists of the archive pieces designed by Paula Thomas that are in storage.

None. The company knows of no archive pieces "designed by Paula Thomas" that are in storage. The company knows only of archive pieces designed by design teams led by THOMAS while at PDTW, LLC and Thomas Wylde, LLC. To the extent the request asks for a list of things that THOMAS now claims were created by her while at PDTW, LLC, Respondent *OBJECTS*. THOMAS would have at least as convenient access to such things because she has the PDTW records.

**REQUEST NO. 130:** All DOCUMENTS reflecting a list of all vendors used by Thomas Wylde, LLC, including names, addresses, contact information, and description of services.

*Objection:* THOMAS has utilized such information abusively since separation. This information also is not relevant and consists of confidential business information and/or trade secret information subject to privilege and/or protection. This information will be provided, if it exists, under a suitable protective order affording "Attorneys' Eyes Only" protection.

**REQUEST NO. 131:** All DOCUMENTS reflecting a list of all stores in which Thomas Wylde brand clothing is now carried.

*Objection:* THOMAS has utilized such information abusively since separation. This information also is not relevant and consists of confidential business information and/or trade secret information subject to privilege and/or protection. This information will be provided, if it exists, under a suitable protective order affording "Attorneys' Eyes Only" protection.

**REQUEST NO. 132:** All DOCUMENTS regarding correspondence between John Hanna and Meldy Rafols from the date of formation of Thomas Wylde, LLC to the present, including but not limited to emails and text messages.

To the extent they exist, these materials will be made available for inspection and copying.

**REQUEST NO. 133:** All DOCUMENTS regarding correspondence between Jene Park and Yonnsung Bae from the date of formation of Thomas Wylde, LLC to the present, including but not limited to emails and text messages.

To the extent they exist, these materials will be made available for inspection and copying.

**REQUEST NO. 134:** All DOCUMENTS regarding existing and prospective licensing agreements for Thomas Wylde, LLC for both first line and second line products, including but not limited to clothing, eyewear, denim, fragrance, jewelry, and furniture.

*Objection:* THOMAS has utilized such information abusively since separation. This information also is not relevant and consists of confidential business information and/or trade secret information subject to privilege and/or protection. This information will be provided, if it exists, under a suitable protective order affording "Attorneys' Eyes Only" protection.

**REQUEST NO. 135:** All DOCUMENTS regarding existing and prospective distribution agreements for Thomas Wylde, LLC.

> *Objection:* THOMAS has utilized such information abusively since separation. This information also is not relevant and consists of confidential business information and/or trade secret information subject to privilege and/or protection. This information will be provided, if it exists, under a suitable protective order affording "Attorneys' Eyes Only" protection.

**REQUEST NO. 136:** PDTW, LLC's entire customer list, including but not limited to stores and private clients, and including but not limited to name, address, phone number, email address, and name of contact person.

> *Objection:* THOMAS is herself in control of PDTW, LLC, and has this information or has at least as good access to it as respondent. The request is therefore unduly burdensome and interposed merely to harass and increase the cost of this litigation.

**REQUEST NO. 137:** PDTW, LLC's entire vendor list, including but not limited to name, address, phone number, email address, name of contact person, and type of services performed and/or goods sold.

> *Objection:* THOMAS is herself in control of PDTW, LLC, and has this information or has at least as good access to it as respondent. The request is therefore unduly burdensome and interposed merely to harass and increase the cost of this litigation.

## V. RESPONSES TO REQUESTS FOR ADMISSION, SET ONE

**REQUEST FOR ADMISSION NO. 1:** Admit that PDTW, LLC does not owe Thomas Wylde, LLC any money.

> Denied.

**REQUEST FOR ADMISSION NO. 2:** Admit that Paula Thomas does not owe Thomas Wylde, LLC any money.

> Denied. At the very least, THOMAS has failed to pay for certain contractors involved in moving furniture to her place of residence in Palm Springs for a photo shoot. THOMAS agreed to pay for this expense and has not done so. Nor has she returned certain company items. In addition, Thomas Wylde, LLC, has damages claims against THOMAS. Futhermore, having brought, in her own name, litigation that is totally frivolous, vexatious, and groundless, Paula Thomas is liable for damages. Thomas Wylde, LLC, also has veil-piercer or *alter ego* or civil conspiracy claims against THOMAS for how she has manipulated PDTW, LLC, into making false or frivolus, vexatious, and/or groundless claims and otherwise into disavowing its debts to Thomas Wylde, LLC and otherwise into claiming that things that, by agreement, were to pass to Thomas Wylde, LLC, somehow still belong to PDTW, LLC.

**REQUEST FOR ADMISSION NO. 3:** Admit that Thomas Wylde, LLC used money from PDTW, LLC's bank accounts to pay for Thomas Wylde, LLC's debts.

> Denied. As noted above in responses to other discovery requests, certain individuals were representatives of both PDTW, LLC, and Thomas Wylde, LLC, for the purposes of the planned transition. Thomas Wylde, LLC, never used or took any money, *as Thomas Wylde, LLC*, from PDTW, LLC's accounts for any purpose. Rather, those individuals authorized under the plan of transition -- and specifically authorized by THOMAS or other PDTW, LLC officers -- fulfilled their functions and paid debts in the ordinary

1    course. Any Thomas Wylde, LLC debts that were effectively paid for out of PDTW,
LLC's accounts (if any) were paid as partial repayment to Thomas Wylde, LLC, of those
2    loans and other debts owed by PDTW, LLC, to Thomas Wylde, LLC. Thus, all further
requests for admission that suggest that Thomas Wylde, LLC (or any employee or other
3    representative of it), paid or took money or issued checks from PDTW, LLC's bank
accounts will be denied.

4

**REQUEST FOR ADMISSION NO. 4:** Admit that Paula Thomas did not authorize Thomas
5    Wylde, LLC to use money from PDTW, LLC's bank accounts to pay for Thomas Wylde, LLC's
6    debts.

        Denied.
7

**REQUEST FOR ADMISSION NO. 5:** Admit that Thomas Wylde, LLC paid money from
8    PDTW, LLC's bank accounts to companies owned in whole or in part by either John Hanna or
9    his friends or family, including but not limited to H&H Fashion, LLC.

        Denied. As noted elsewhere any monies paid to H&H Fashion, LLC, were paid as part of
10        Mr. Hanna's agreed-to compensation. THOMAS also caused her own compensation to be
        paid at times to her own loan out company, Lock-n-Load, LLC, and THOMAS is thus
11        familiar with this practice.

12   **REQUEST FOR ADMISSION NO. 6:** Admit that Thomas Wylde, LLC paid money from
13   Thomas Wylde, LLC's bank accounts to companies owned in whole or in part by either John
     Hanna or his friends or family, including but not limited to H&H Fashion, LLC.

14       Denied. It is admitted, however, that Thomas Wylde, LLC paid money from its accounts
15       to H&H Fashion, LLC, but to no other "companies" whether owned by John Hanna or his
       friends or family members. Any payments made to H&H Fashion, LLC, were made as
16       part of Hanna's agreed-to compensation. *See* response to Request for Admission No. 5,
       above.

17   **REQUEST FOR ADMISSION NO. 7:** Admit that Thomas Wylde, LLC paid money from
18   PDTW, LLC's bank accounts to companies owned in whole or in part by Tasha Hess or her
     friends or family, including but not limited to Shot in the Armoire, LLC.

19       Denied.

20   **REQUEST FOR ADMISSION NO. 8:** Admit that Thomas Wylde, LLC paid money from
     Thomas Wylde, LLC's bank accounts to companies owned in whole or in part by Tasha Hess or
21   her friends or family, including but not limited to Shot in the Armoire, LLC.

22       Denied.

23   **REQUEST FOR ADMISSION NO. 9:** Admit that Thomas Wylde, LLC paid money from
     PDTW, LLC's bank accounts to companies owned in whole or in part by Jene Park or her friends
24   or family, including but not limited to The Pick and Pack Company.

25       Denied.

26   **REQUEST FOR ADMISSION NO. 10:** Admit that Thomas Wylde, LLC paid money from
     Thomas Wylde, LLC's bank accounts to companies owned in whole or in part by Jene Park or
27   her friends or family, including but not limited to The Pick and Pack Company.

28       Admitted in part only and otherwise denied.. There is no "The Pick and Pack Company".
       Payments were made to B2 International, a company supplying pick-and-pack services

controlled by Jene Park's brother. It is also admitted that payments were made to Jene
Park and/or Steve Prestemon and/or The Palliative, LLC, but were either for: (a) Park's
compensation, whether paid directly to her or to The Palliative, LLC, as her loan-out
company; or (b) to her or Steve Prestemon or The Palliative, LLC, as repayment of
various sizeable loans made by them to Thomas Wylde, LLC, to sustain operations. The
request is otherwise denied.

**REQUEST FOR ADMISSION NO. 11:** Admit that Thomas Wylde, LLC gave advances to
John Hanna.

Admitted.

**REQUEST FOR ADMISSION NO. 12:** Admit that Thomas Wylde, LLC did not purchase any
tangible assets from PDTW, LLC, such as furniture, computers, artwork, inventory, and
equipment.

Denied. It was understood that Thomas Wylde, LLC, would receive ownership of all
such things relating to continuing business under the THOMAS WYLDE mark in
exchange for paying off certain PDTW, LLC debts. By way of example, and not
limitation, Thomas Wylde, LLC, agreed to pay off, and did make payments towards,
those debts owing by PDTW, LLC, to Dr. Michael Schiffman, all in reliance, to its
detriment, upon Plaintiff THOMAS' and PDTW's covenant to convey all things of value
to Thomas Wylde, LLC. In the alternative, Thomas Wylde, LLC, has self-help remedies,
if not actual, secured remedies, and lien interests, against any and all furniture, computers,
artwork, inventory, and equipment allegedly owned by PDTW, LLC or otherwise by
Plaintiff THOMAS, THOMAS, on behalf of PDTW, LLC, agreed to and understood all
of this. The only reason why these particular provisions were never put in writing was to
avoid any appearance of a fraudulent conveyance or attempt to cheat Schiffman and other
secured creditors, and also because, the two companies being operated in tandem, it was
not thought necessary.

**REQUEST FOR ADMISSION NO. 13:** Admit that Thomas Wylde, LLC has been using
furniture belonging to PDTW, LLC since Thomas Wylde, LLC was formed.

Denied. *See* response to Request for Admission No. 12, above. In the alternative, any
furniture retained is collateral for amounts owed by PDTW, LLC to Thomas Wylde, LLC.

**REQUEST FOR ADMISSION NO. 14:** Admit that Thomas Wylde, LLC has been using
computers belonging to PDTW, LLC since Thomas Wylde, LLC was formed.

Denied. *See* response to Request for Admission No. 12, above. In the alternative, any
computers retained are collateral for amounts owed by PDTW, LLC to Thomas Wylde,
LLC.

**REQUEST FOR ADMISSION NO. 15:** Admit that Thomas Wylde, LLC has been using
artwork belonging to PDTW, LLC since Thomas Wylde, LLC was formed.

Denied. *See* response to Request for Admission No. 12, above. In the alternative, any
artwork retained is collateral for amounts owed by PDTW, LLC to Thomas Wylde, LLC.

**REQUEST FOR ADMISSION NO. 16:** Admit that Thomas Wylde, LLC has possessed
inventory belonging to PDTW, LLC since Thomas Wylde, LLC was formed.

Denied. *See* response to Request for Admission No. 12, above. In the alternative, any
inventory retained and/or liquidated is collateral for amounts owed by PDTW, LLC to

1    Thomas Wylde, LLC.

2    **REQUEST FOR ADMISSION NO. 17:** Admit that Thomas Wylde, LLC has been using
equipment belonging to PDTW, LLC since Thomas Wylde, LLC was formed.

3

4       *Objection:* The request is vague. Respondent has already given responses relating to
computers, furniture, and artwork and knows of no other thing that could be in the
category of "equipment" belonging to PDTW, LLC.

5

       Denied. *See* response to Request for Admission No. 12, above.

6

7    **REQUEST FOR ADMISSION NO. 18:** Admit that Thomas Wylde, LLC has not compensated
PDTW, LLC for any of the tangible assets that Thomas Wylde, LLC has been using that belong
to PDTW, LLC.

8

9       Denied.

10   **REQUEST FOR ADMISSION NO. 19:** Admit that the lease for the space occupied by
Thomas Wylde, LLC is in the name of PDTW, LLC.

11      Admitted as to the existence of a lease in the name of PDTW, LLC, for the indicated
space.

12

13   **REQUEST FOR ADMISSION NO. 20:** Admit that Thomas Wylde, LLC has made all of the
settlement payments to Michael Schiffman, M.D. to date.

14      Respondent admits only that it has made payments to Dr. Michael Schiffman as indicated
in other responses, above, but denies any inferences to be drawn about their specific
purpose.

15

16   **REQUEST FOR ADMISSION NO. 21:** Admit that Paula Thomas owns the domain names for
the websites used by Thomas Wylde, LLC.

17      Denied. THOMAS and/or Perfect Privacy, LLC, holds such domain names in trust for the
owner of the mark THOMAS WYLDE, which is Thomas Wylde, LLC. Thus, while
Plaintiff THOMAS may hold apparent or legal title to domain names owned by Thomas
Wylde, LLC, equitable and actual title resides in Thomas Wylde, LLC.

18

19

20   **REQUEST FOR ADMISSION NO. 22:** Admit that John Hanna and Jene Park did not
contribute any funds to the initial capitalization of Thomas Wylde, LLC.

21

22      Denied.

23   **REQUEST FOR ADMISSION NO. 23:** Admit that John Hanna and Jene Park did not pay any
money in consideration for their membership units in Thomas Wylde, LLC.

24      Denied.

25   **REQUEST FOR ADMISSION NO. 24:** Admit that Paula Thomas did not resign from Thomas
Wylde, LLC.

26

       Denied.

27

28   **REQUEST FOR ADMISSION NO. 25:** Admit that Paula Thomas did not abandon her job at
Thomas Wylde, LLC.

1    Denied.

2    **REQUEST FOR ADMISSION NO. 26:** Admit that Paula Thomas' designs received positive
press, reviews, and/or feedback at the 2015 New York Fashion Show.

3
        Denied. Respondent knows of no designs that can be described exclusively as "Paula
4    Thomas' designs." All designs presented at the 2015 New York Fashion Show were
     created by a design team of which THOMAS was part and, as Creative Director, its
5    leader. And, the collection did not make it onto style.com/voguerunway.com. While the
     designs may have received *some* positive feedback somewhere, they were largely ignored
6    by the most important sources of press, reviews and/or feedback. Thus it cannot be said
     that the collection received positive feedback overall.

7
     **REQUEST FOR ADMISSION NO. 27:** Admit that Thomas Wylde, LLC did not terminate
8    Paula Thomas for cause, as that term is defined in the employment agreement.

9        Denied.

10   **REQUEST FOR ADMISSION NO. 28:** Admit that Paula Thomas did not materially breach the
     employment agreement.
11
         Denied.
12
     **REQUEST FOR ADMISSION NO. 29:** Admit that Paula Thomas did not commit
13   insubordination.

14       Denied.

15   **REQUEST FOR ADMISSION NO. 30:** Admit that Paula Thomas did not materially fail to
     comply with any of Thomas Wylde, LLC's written rules, guidelines, policies or procedures.
16
         Denied.
17
     **REQUEST FOR ADMISSION NO. 31:** Admit that Paula Thomas' conduct during her
18   employment with Thomas Wylde, LLC did not cause any damage to Thomas Wylde, LLC, its
     members, and/or management.
19
         Denied.
20
     **REQUEST FOR ADMISSION NO. 32:** Admit that Paula Thomas' conduct after her
21   employment with Thomas Wylde, LLC ended did not cause any damage to Thomas Wylde, LLC,
     its members and/or management.
22
         Denied.
23
     **REQUEST FOR ADMISSION NO. 33:** Admit that Paula Thomas did not slander or defame
24   Thomas Wylde, LLC, its members and/or any of its management.

25       *Objection:* The request calls for a legal conclusion. Whether or not those comments
     made by THOMAS to third parties in written or oral modes rose to the level of legal
26   defamation is a question of law. Nevertheless, those utterances, written and oral, made
     by THOMAS both during her employ and afterwards have damaged the company and its
27   members and management.

28       Denied.

**REQUEST FOR ADMISSION NO. 34:** Admit that Paula Thomas did not breach her duty of loyalty to Thomas Wylde, LLC.

Denied.

**REQUEST FOR ADMISSION NO. 35:** Admit that Paula Thomas did not materially breach her obligations under a Confidentiality and Intellectual Property Agreement.

Denied.

**REQUEST FOR ADMISSION NO. 36:** Admit that Paula Thomas' physical or mental disability was a substantial factor in your decision to terminate her employment.

Denied.

**REQUEST FOR ADMISSION NO. 37:** Admit that Paula Thomas' taking a medical leave of absence was a substantial factor in your decision to terminate her employment.

Denied.

**REQUEST FOR ADMISSION NO. 38:** Admit that Paula Thomas had a physical or mental health condition during her employment with Thomas Wylde, LLC which temporarily limited her ability to work.

Denied. Respondent is now and has always been without sufficient information to enable it to form a belief as to whether or not THOMAS had any physical or mental health condition whatsoever during her period of employment at Thomas Wylde, LLC. Lacking that information, Respondent cannot opine as to whether or not any such alleged condition created a temporary or permanent limitation upon THOMAS' ability to work.

\* \* \* \* \*

*I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.*

Date: February 26, 2016

_____

John Hanna

*As to objections:*

Date: February 26, 2016

_____

Richard Peddie

1  **REQUEST FOR ADMISSION NO. 34:** Admit that Paula Thomas did not breach her duty of
loyalty to Thomas Wylde, LLC.

2

3      Denied.

**REQUEST FOR ADMISSION NO. 35:** Admit that Paula Thomas did not materially breach her
4  obligations under a Confidentiality and Intellectual Property Agreement.

5      Denied.

6  **REQUEST FOR ADMISSION NO. 36:** Admit that Paula Thomas' physical or mental
disability was a substantial factor in your decision to terminate her employment.

7

8      Denied.

**REQUEST FOR ADMISSION NO. 37:** Admit that Paula Thomas' taking a medical leave of
9  absence was a substantial factor in your decision to terminate her employment.

10     Denied.

11 **REQUEST FOR ADMISSION NO. 38:** Admit that Paula Thomas had a physical or mental
health condition during her employment with Thomas Wylde, LLC which temporarily limited her
12 ability to work.

13     Denied. Respondent is now and has always been without sufficient information to enable
it to form a belief as to whether or not THOMAS had any physical or mental health
14     condition whatsoever during her period of employment at Thomas Wylde, LLC. Lacking
that information, Respondent cannot opine as to whether or not any such alleged
15     condition created a temporary or permanent limitation upon THOMAS' ability to work.

16                          *   *   *   *   *

       *I declare under penalty of perjury under the laws of the State of California that the foregoing*
17 *answers are true and correct.*

18 Date: February 26, 2016

19                                              John Hanna

20

21     *As to objections:*

22 Date: February 26, 2016                        Richard Peddie

23

24

25

26

27

28

# EXHIBIT "28"

DIMITRIOS P. BILLER (142730)
LDT Consulting, Inc.
15113 West Sunset Blvd., Suite "9"
Pacific Palisades, California 90272
Telephone (310) 459-9870
E-mail Address: biller_ldtconsulting@verizon.net

MARCIA DALEY (146579)
DALEY & SACKS LAW RLLP
1516 Westwood Boulevard, Suite 102
Los Angeles, California 90024
Telephone: (310) 985-2808
E-mail: marciad@daleyandsackslaw.com

Attorneys for Creditor Paula Thomas

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT COURT OF CALIFORNIA

| | |
|---|---|
| IN RE<br><br>PDTW, LLC,<br><br>DEBTOR. | Case No.: 6:16-bk-15889 SY<br><br>CREDITOR PAULA THOMAS'<br>DEMAND FOR PRODUCTION OF<br>DOCUMENTS AND WITNESSES<br>WITHIN THE CONTROL OF<br>THOMAS WYLDE, LLC |

1
CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

Creditor Paula Thomas demands that Thomas Wylde, LLC produce the individual/witnesses and **DOCUMENTS** set forth below under *Rule 45 of the Federal Rules of Civil Procedure* and the equivalent *Bankruptcy Rules*. Paula Thomas has given Thomas Wylde, LLC advance notice since June 2017 that Paula Thomas has sought these **DOCUMENTS** and witnesses.

## WITNESS LIST

1. John Hanna;

2. Jene Park;

3. David Schnider;

4. Stephen Choi;

5. Doug Lee;

6. Roger Kuo;

7. Eniluz Gonzalez;

8. Kyu Hong Kim;

9. Stanley Ducks;

10. Financial Controler

2

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

## DEMAND FOR PRODUCTION

## DEFINITIONS

1. **"YOU", "YOUR"**, and **"YOU'RE"** are defined as the Persons Most

Knowledge and Custodian of Records Thomas Wylde, LLC has

appointed to testify on the above topics and as the Custodian of Record.

2. **"DOCUMENT"** or **"DOCUMENTS"** includes "handwriting,

typewriting, printing, photostating, photographing, photocopying, transmitting by

electronic mail or facsimile, and every other means of recording upon any tangible

thing, any form of communication or representation, including letters, words,

pictures, sounds, or symbols, or combinations thereof, and any record thereby

created, regardless of the manner in which the record has been stored." California

*Evidence Code §250*.   **DOCUMENT** and **DOCUMENTS** also include any

writing, letter, correspondence, electronically stored information ("ESI"), meta

data, e-mails, attachments to e-mails, including pdf copies, spread sheets, word

documents, reports, records, statements, materials containing any writing and

written data, forms, policies, any tangible items containing any form of images,

communications, voices mail recordings, tape records, photographs, videotapes,

digital images, declarations, signed statements, and correspondence.

3. **GARMENTS** is defined to be any tangible object that can be worn on a

3

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

include verbal discussions, meeting between individual, e-mail, letters,

correspondence, **DOCUMENTS**, materials store as electronically stored

information, voice mail, videotape, audiotape, and any method used to convey

information from one person to others.

## DAMAND FOR PRODUCTION FOR DOCUMENTS

## ATTACHMENT TO DAVID SCHNIDER'S SUBPEONA DUCEM TECUM

1. Produce any and all **DOCUMENTS** related to the Employment Agreement

   that **YOU** negotiated on behalf of Thomas Wylde, Inc. related to Plaintiff's

   employment position in 2015 with Thomas Wylde, Inc. attached as **Exhibit**

   **"1."**

2. Produce any and all **DOCUMENTS** to the job description for Paula Thomas

   Wylde, LLC

3. Produce any and all **DOCUMENTS** related to the negotiations of the

   Purchase Agreement attached as **Exhibit "2."**

4. Produce any and all **DOCUMENTS** related to any negotiations with

   Hillshore Investments, S.A. regarding the amount of money and schedule of

   payments to invest in Thomas Wylde, Inc., approximately $2 million to $9.5

   million invested into Thomas Wylde, Inc.

5. Produce any and all **DOCUMENTS** informing Plaintiff that Hillshore

5

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

1   human to cover any part of the human body including but not limited to articles of

2   clothing, suits, pants, pant suits, dresses, skirts, shirts, t-shirts, shoes, bags,

3

4   sweaters, overalls, jackets, coats, boots, jewelry, hats, scarfs, gloves, accessories,

5   swim suits, fabric, buttons, stitching, materials used to create **GARMENTS** and

6

7   anything that Plaintiff Paula Thomas designed.

8       5. "**CORPORATE DOCUMENTS**": **DOCUMENTS** regarding Thomas

9
    Wylde Holding, LLL, including but not limited to:(a) annual minutes, (b) units of
10

11  ownership, (c) agreements related to units of ownership, (d) books and records

12  from the time of incorporation to the present, (e) financial statements, (f)

13
    accounting records, (g) bank statements, (h) cancelled checks, (i) Statements of
14

15  Information, (j) documents filed with the California Secretary of State, (k)

16
    insurance policies, (l) tax returns to the Internal Revenue Service, (m) tax returns
17

18  filed with the California Franchise Tax Board, (n) ledger of income and expenses,

19  (o) licenses regarding ownership of any intellectual property, (p) insurance policies

20
    on any equipment owned, (q) records of income, (r) records of expenses, (s)
21

22  records of revenue, (t) contracts any third party, (u) contracts for any business with

23
    any third parties, (v) payroll records, (w) wages/earnings/salaries paid to any
24

25  person at Thomas Wylde, LLC at any time.

26      6.     **COMMUNICATIONS** and **COMMUNICATE** are defined to

27

28
    CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
    WITHIN THE CONTROL OF THOMAS WYLDE, LLC

Investment, Inc. was going to invest approximately $2 million to $9.5 into

Thomas Wylde, LLC.

6. Produce any and all **DOCUMENTS** any and all Operating Agreements and

amended to those agreements from 2013 to the present.

7. Produce any and all **DOCUMENTS** informing any person holding Units of

Membership of Thomas Wylde, Inc. that Hillshore Investment, Inc. was

going to invest approximately $2 million to $9.5 into Thomas Wylde, LLC.

8. Produce any and all **DOCUMENTS** related to company records for Thomas

Wylde, LLC including but not limited to, notes of any meetings with the

Unit Members in 2014 and 2015

9. Produce any and all **DOCUMENTS** related to the termination of Paula

Thomas from Thomas Wylde, Inc.

10. Produce any and all **DOCUMENTS** regarding any discussions and

communications related to the decision to terminate Paula Thomas.

11. Produce any and all **DOCUMENTS** that relate to providing Plaintiff a 30

days' written notice of termination sent to Paula Thomas.

12. Produce any and all **DOCUMENTS** that relate to any facts that resulted in

the belief that Paula Thomas committed any of the five grounds justifying

termination for Cause as defined in the Employment Agreement (**Exhibit**

6

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

"**1**").

13. Produce any and all **DOCUMENTS** related to any money paid to Paula Thomas as part of her Severance Package as described in the Employment Agreement.

14. Produce any and all **DOCUMENTS** related to the decision to dilute the Units of Membership Paula Thomas purchase with the $3,200.00 described in the Purchase Agreement.

15. Produce any and all **DOCUMENTS** related to the number of Units of Membership of everybody holding such Units in July 2014.

16. Produce any and all **DOCUMENTS** related to the number of Units of Membership of everybody holding such Units in from August 1, 2014 to August 1, 2015.

17. Produce any and all **DOCUMENTS** exchanged between Thomas Wylde, LLC and Hillshore Investment, S.A. related to investments in Thomas Wylde, including but not limited to (a) money of invests/transactions of money up to $9.5 million and (b) issuance of Units Hillshore Investment, Inc.

18. Produce any and all **DOCUMENTS** exchanged between Thomas Wylde, LLC and Stephen Choi related to investments in Thomas Wylde, including

7

but not limited to (a) money of invests/transactions of money up to $9.5

million and (b) issuance of Units of Membership to Hillshore Investment,

S.A.

19. Produce any and all **DOCUMENTS** communicating to Paula Thomas that

Hillshore Investment, Inc. invested money in Thomas Wylde, LLC money

before November 2014.

20. Produce any and all **DOCUMENTS** related to the resumes for any and all

people working for Thomas Wylde, LLC between 2013 to the present time.

21. Produce any and all **DOCUMENTS** related to the job description of

everybody working for Thomas Wylde's, including Jene Park and John

Hanna, from 2013 to the present.

22. Produce any and all **DOCUMENTS** any and all retainer fees, including but

not limited to engagements, contracts, and agreement of understanding

between David Schnider and Thomas Wylde, Inc. in 2014 and 2015.

23. Produce any and all **DOCUMENTS** related income paid to all employees

and management from 2013 and 2015.

24. Produce any and all **DOCUMENTS** regarding any and all communications

David Schnider had with Stephon Choi between 2014 and 2015.

25. Produce any and all **DOCUMENTS** communications involving John Hanna

8

Stephone Choi between 2014 and 2015.

26. Produce any and all **DOCUMENTS** communications involving Stephen

Choi and Jene Park between 2014 and 2015.

27. Produce any and all **DOCUMENTS** regarding any and all communications

involving Stephen Choi and David Schnider between 2014 and 2015.

28. Produce any and all **DOCUMENTS** regarding any and all communications

any of the Defendants and Paul Thomas between 2013 and 2015.

29. Produce any and all **DOCUMENTS** regarding any and all communications

with any actual or potential investors between 2014 and 2015.

30. Produce any and all **DOCUMENTS** regarding any and all drafts of the

Purchase Agreement attached as **Exhibit "1."**

31. Produce any and all **DOCUMENTS** regarding any and all drafts of the

Employment Agreement attached as **Exhibit "2."**

32. Produce any and all **DOCUMENTS** regarding Jene Park's background in

designing **GARMENTS**.

33. Produce any and all **DOCUMENTS** regarding the income Thomas Wylde,

Inc. generated between 2014 and the present time.

34. Produce any and all **DOCUMENTS** regarding any money distributed to any

investor, including but not limited to Plaintiff, Hillshore Investment, Inc.,

9

John Hanna, Jene Park, Stephon Choi, Doug Lee and Roger Kou, between 2014 and the present time.

35. Produce any and all **DOCUMENTS** regarding the salaries and bonuses paid to John Hanna, Jene Park, and all other employees between 2014 to the present time.

36. Produce any and all **DOCUMENTS** related to the revenues Thomas Wylde, LLC received for the calendar/fiscal years of 2014 to the present time.

37. Produce any and all **DOCUMENTS** related to all state and federal income tax returns for Thomas Wylde, LLC between 2014 and the present.

38. Produce any and all **DOCUMENTS** related to all the expenses Thomas Wylde, LLC has incurred between 2014 and the present time.

39. Produce any and all **DOCUMENTS** related to any agreements negotiated with people/companies/corporations/entities regarding investments in Thomas Wylde, LLC (including Stephon Choi, Doug Lee, Roger Kou, Jene Park, John Hana and David Schneider).

40. Produce any and all **DOCUMENTS** related to any and all business plans for Thomas Wylde, LLC from 2013 to the present.

41. Produce any and all **DOCUMENTS** related to any **GARMENTS** that Jene Park personally designed.

10

42. Produce any and all **DOCUMENTS** related Jene Park's qualifications as a design of **GARMENTS**.

43. Produce any and all **DOCUMENTS** related to the sale of any and all **GARMENTS** by Thomas Wylde, LLC from 2014 to the present time.

44. Produce any and all **DOCUMENTS** inventory lists of any and all **GARMENTS** that Thomas Wylde, LLC sold or attempted to sell from 2014 to the present.

45. Produce any and all **DOCUMENTS** related to invoices, receipts and proof of payment by customers, distributors and retailers regarding the sale of **GARMENTS** by Thomas Wylde, LLC3.

46. Produce any and all **DOCUMENTS** related to Profit & Loss Statements for Thomas Wylde, LLC between 2013 and the present time.

47. Produce any and all **DOCUMENTS** related to Balance Sheets for Thomas Wylde, LLC between 2013 and the present time.

48. Produce any and all **DOCUMENTS** generated by QuickBooks for Thomas Wylde, LLC regarding information inputted from 2013 to the present time.

49. Produce any and all **DOCUMENTS** related to all information and **DOCUMENTS** given to anybody who prepared the 2014, 2015, 2016 tax returns for Thomas Wylde, LLC.

11

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

50. Produce any and all **DOCUMENTS** related to the decision to terminate
Plaintiff in 2015.

51. Produce any and all **DOCUMENTS** considered in reaching the decision to
terminate Plaintiff in 2015.

52. Produce any and all **DOCUMENTS** related to employee manuals that
existed from 2014 to the present time that exists at Thomas Wylde, LLC.

53. Produce any and all **DOCUMENTS** regarding an employee's employment
rights that existed between 2014 and the present time that existed at Thomas
Wylde, LLC.

54. Produce any and all **DOCUMENTS** related to employee retaliation by
management that existed from 2014 to the present time that existed at
Thomas Wylde, LLC.

55. Produce any and all **DOCUMENTS** regarding discrimination of any kind
that existed between 2014 and the present time that existed at Thomas
Wylde, LLC.

56. Produce any and all **DOCUMENTS** regarding sick leave at Thomas Wylde,
LLC between 2013 and the present.

57. Produce any and all **DOCUMENTS** that **YOU** claim to show the
intellectual property Plaintiff owned before December 31, 2014 transferred

12

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

to anybody, including Hillshore Investment, S.A.

58. Produce any and all **DOCUMENTS** related to any and all communications with the attorney representing Plaintiff in the negotiations regarding the Employment Agreement.

59. Produce any and all **DOCUMENTS** regarding the attorney **YOU** referred to represent Paula Thomas and all communications **YOU** had with that attorney prior to December 31, 2014 at any time.

60. Produce any and all **DOCUMENTS** related to contracts with anybody responsible for all or some of the manufacturing of Thomas Wylde, LLC's **GARMENTS.**

61. Produce any and all **DOCUMENTS** related to contracts with anybody responsible for all or some of the manufacturing of fabric purchased by Thomas Wylde, LLC's **GARMENTS.**

62. Produce any and all **DOCUMENTS** related to any designs (sketches and computer created) that Jene Park claims she personally designed.

63. Produce any and all **DOCUMENTS** related to any designs (sketches and computer created) that Plaintiff personally designed.

64. Produce any and all **DOCUMENTS** related Jene Park's contention she is a "self-tough designer."

13

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

65. Produce any and all **DOCUMENTS** related to the decision that somebody other than Plaintiff could create designs for **GARMENTS**.

66. Produce any and all **DOCUMENTS** related to any kind of loan that Thomas Wylde, LLC has outstanding.

67. Produce any and all **DOCUMENTS** related to bank accounts (savings, checking, CD) in the name of Thomas Wylde, LLC from 2013 to the present.

68. Produce any and all **DOCUMENTS** related to the opening and closing of any bank accounts (savings, checking, CD) in the name of Thomas Wylde, LLC.

69. Produce any and all **DOCUMENTS** related to the transfer of money as investments into the accounts for Thomas Wylde.

70. Produce any and all **DOCUMENTS** sent to investors between 2013 and present regarding the financial status of Thomas Wylde, LLC.

71. Produce any and all **DOCUMENTS** regarding the projection of growth of Thomas Wylde, LLC from 2013 to the present time.

72. Produce any and all **DOCUMENTS** that **YOU** and Thomas Wylde, LLC gave to potential and actual investors in 2013 to the present regarding Thomas Wylde, LLC.

14

73. Produce any and all **DOCUMENTS** related to any and all marketing efforts, fashion shows, and advertisements Thomas Wylde, LLC distributed between 2013 and 2014.

74. Produce any and all **DOCUMENTS** exchanged between Thomas Wylde, LLC and any third party having any responsibilities to market Thomas Wylde, LLC and its **GARMENTS**, promote fashion shows, and create advertisements Thomas Wylde, LLC distributed between 2013 and 2014.

75. Produce any and all **DOCUMENTS** (including but not limited to contracts with web designers) related to any and all website for Thomas Wylde, LLC put on the internet between 2013 and the present time.

76. Produce any and all **DOCUMENTS** related to any and all photographs of GARMENTS Thomas Wylde, LLC sold from 2013 to the present.

77. Produce any and all **DOCUMENTS** regarding contracts with models and photographers depicting GARMENTS sold by Thomas Wylde, LLC from 2013 to the present.

78. Produce any and all **DOCUMENTS** regarding how to engage in the interactive process when employment issues arise.

79. Produce any and all **DOCUMENTS** regarding any insurance policy (including but not limited to general commercial insurance, employment

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

insurance, worker' compensation insurance, and umbrella policies) that

existed and provide any type of insurance to Thomas Wylde, LLC from

2013 to the present.

80. Produce any and all **DOCUMENTS** regarding any insurance policy that

existed and provide any type of insurance to the people working in any

management capacity (including CFO, CEO, Creative Designer, In-house

Counsel) from 2013 to the present.

81. Produce any and all **DOCUMENTS** related to any employment dispute with

John Hanna.

82. Produce any and all **DOCUMENTS** related to any settlement, compromise

and/or agreement reached between Thomas Wylde, LLC.

83. Produce any and all **DOCUMENTS** related to the nature of the dispute and

cause of any disagreements that led to John Hanna leaving Thomas Wylde,

LLC.

## ATTACHMENT "A" TO GONZALEZ SUBPEONA

1. Produce all **DOCUMENTS** regarding **COMMUNICATIONS** between

Hillshore Investment, S.A. and Thomas Wylde, LLC.

2. Produce any and all **DOCUMENTS** related to any loans Hillshore

Investment, S.A. provided to Thomas Wylde, LLC.

16

3. Produce any and all **DOCUMENTS** related to any investment Hillshore Investment, S.A. made in Thomas Wylde, LLC.

4. Produce any and all **DOCUMENTS** related any returns on any investment Hillshore Investment, S.A. received from Thomas Wylde, LLC and any person associated with Thomas Wylde, LLC.

5. Produce any and all **DOCUMENTS** related to a transfer of money from any bank accounts in the name of Hillshore Investment, S.A. and Thomas Wylde, LLC.

6. Produce any and all **DOCUMENTS** related to the Units of Membership Hillshore Investment, S.A. owns in Thomas Wylde, LLC.

7. Produce any and all **DOCUMENTS** related to any and all ownership interests in Thomas Wylde, LLC.

8. Produce any and all **DOCUMENTS** related to the by-laws of Hillshore Investment, S.A.

9. Produce any and all **DOCUMENTS** related the articles of incorporations of Hillshore Investment, Inc.

10. Produce any and all **DOCUMENTS** related to any and all minutes of the Board of Directors from 2014 to the present time.

11. Produce any and all **DOCUMENTS** regarding the Purchase Agreement

17

between Hillshore Investment, S.A. and Thomas Wylde, LLC.

12. Produce any and all **DOCUMENTS** that relate Employment Agreement between Thomas Wylde, LLC and Paula Thomas.

13. Produce any and all **DOCUMENTS** that relate to the address of the physical location of Hillshore Investment, S.A.

14. Produce any and all **DOCUMENTS** related the business purposes of Hillshore Investment, S.A.

15. Produce any and all **DOCUMENTS** related any and all advertising Hillshore Investment, S.A. authorizes for business purposes.

16. Produce any and all **DOCUMENTS** related to organizational charts for Hillshore Investment, S.A. used between 2014 and the present time.

17. Produce any and all **DOCUMENTS** related bank statements reflecting any transfer of money between any accounts in the name of Hillshore Investment, S.A. and bank accounts in the name of Thomas Wylde, LLC.

18. Produce any and all **DOCUMENTS** regarding the names, addresses, e-mail addresses and telephone number of any agents, employee, directors and officers of Hillshore Investment, S.A.

19. Produce any and all **DOCUMENTS** related to the number of shares issued by Hillshore Investment, S.A.

18

20. Produce any and all **DOCUMENTS** regarding the names, addresses, e-mail addresses, and telephone numbers of the shareholders.

21. Produce any and all **DOCUMENTS** related to the number of shares each shareholder has in his/her/its name.

22. Produce any and all **DOCUMENTS** related to the value of shares as of the present time.

## DOCUMENTS TO BE PRODUCED (PEDDIE)

1. All **DOCUMENTS** related to all personal income tax returns for Paula Thomas;

2. Any and all tangible and intangible items belonging to Paula Thomas, including ESI on her personal computer and the computer itself;

3. All **DOCUMENTS** related to any and all **COMMUNICATIONS** with the Trustee's attorney, Nancy Zamora;

4. All **DOCUMENTS** related to any and all **COMMUNIATIONS** with Trustee Larry Simons;

5. All **DOCUMENTS** related to any and all **COMMUNIATIONS** with David Spears, RL Spears, Co., Inc.;

6. All **DOCUMENTS** exchanged between Thomas Wylde, LLC and the Trustee's attorney, Nancy Zamora;

19

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

7. All **DOCUMENTS** exchanged between Thomas Wylde, LLC and the Trustee Larry Simons;

8. All **DOCUMENTS** exchanged between Thomas Wylde, LLC and David Spears and RL Spears Co., Inc.

9. Produce all **DOCUMENTS** regarding the date of retention referred to in the **MAY 14, 2014 LETTER**: "This firm has been engaged as litigation counsel to Thomas Wylde, LLC ("Company")."

   a. Produce all **DOCUMENTS** regarding the following sentence in the **MAY 14, 2014 LETTER**: "As far as the Company is concerned, Paula Thomas quit her position without justification and without "Good Reason" as that term may be defined in any applicable contract."

### REQUEST FOR PRODUCTION NO. 2

1. Produce all **DOCUMENTS** regarding the following sentence in the **MAY 14, 2014 LETTER**: "This she did (sic) through a series of breaches and wrongful acts culminating in what is, essentially, an abandonment of her post."

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

2. Produce all **DOCUMENTS** regarding the following sentence in the **MAY 14, 2014 LETTER**: "While she later changed her mind, and while the Company entertained proposals to reincarnate Ms. Thomas' role in one form or the other, and while, more recently, the Company also engaged in talks with a view towards amicably settling matters with Ms. Thomas, those talks have not borne fruit."

3. Produce all **DOCUMENTS** regarding the following sentence in the **MAY 14, 2014 LETTER**: ". . . Ms. Thomas has only continued to act in ways that harm both the Company and its brand – and therefore its prospects for returning value to its members."

4. Produce all **DOCUMENTS** regarding the following sentence in the **MAY 14, 2014 LETTER**: "The Company's position is that Ms. Thomas quit her post without justification – albeit under circumstances in which she could easily have been terminated."

5. Produce all **DOCUMENTS** regarding the following sentence in the **MAY 14, 2014 LETTER**: "None of what has happened since that time has had anything to do with any real belief that she did not do so or that she had any claims whatsoever against the Company or anyone affiliated with it

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

6. Produce all **DOCUMENTS** regarding the following sentence in the **MAY 14, 2014 LETTER**: "Those discussions have been for the sole purpose of parting amicably, avoiding even vexatious claims, and, initially, a notion that it was better to retain Paula Thomas in some capacity for company good will."

7. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "As will be made clearer below, the Company no longer perceives any value in any affiliation with Ms. Thomas; nor does it believe that Ms. Thomas will truly abide by any terms designed to protect Company value; nor does it believe that any monetary inducements offered to Ms. Thomas would not be wholly offset by damages suffered by the Company, present and future."

8. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "In the alternative – and in the unlikely event that any contract between Paula Thomas and the Company somehow survives – the Company terminates any and all such surviving contracts with Paula Thomas or with any entity affiliated with her, effective immediately."

9. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: In the alternative – and in the unlikely event that any

22

contract between Paula Thomas and the Company somehow survives – the

Company terminates any and all such surviving contracts with Paula

Thomas or with any entity affiliated with her, effective immediately.

10. Produce all **DOCUMENTS** regarding the following statement in the **MAY

14, 2014 LETTER**: "In the alternative – and in the unlikely event that any

contract between Paula Thomas and the Company somehow survives – the

Company terminates any and all such surviving contracts with Paula

Thomas or with any entity affiliated with her, effective immediately."

11. Produce all **DOCUMENTS** regarding the following statement in the **MAY

14, 2014 LETTER**: "This termination is for cause generally, and,

specifically, pursuant to section 9 of that employment agreement executed

by Paula Thomas on Dec. 31, 201 (sic) – in the unlikely event that

agreement survives."

12. Produce all **DOCUMENTS** regarding the following statement in the **MAY

14, 2014 LETTER**: "Because Ms. Thomas quit, the Company will make no

severance payments."

13. Produce all **DOCUMENTS** regarding the following statement in the **MAY

14, 2014 LETTER**: "In the alternative, because this termination is for cause,

the Company will likewise make no severance payments."

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

14. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "All negotiations, whether for a settlement and termination agreement or otherwise, are also hereby terminated, save only those that we may now initiate."

15. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "You will no doubt wonder why it is that the Company has cut short negotiations: Paula Thomas materially breached her employment agreement, refused to comply with the reasonable directives of her superior officer, refused or otherwise failed to abide by Company policies and procedures, and engaged in willful misconduct affecting company affairs."

16. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "These acts and omissions have had a materially adverse effect upon, and otherwise damaged, the Company, its members, and its management."

17. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "To make matter worse, while the Company was busy negotiating in good faith with you – and therefore justifiably expected a *détente* of sorts – these malfeasances did not stop."

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

18. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "To the contrary: Some of the most egregious transgressions occurred only quite recently."

19. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "For example, the Company was recently informed by Siim Kohv, a public relations representative retained by the Company, that Paula Thomas contacted him and requested that he forward all emails from Company CEO John Hanna regarding press releases."

20. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "She did this despite the fact that the Company had already instructed her to stand down and revoked any authorization she had to speak for it."

21. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "Mr. Kohv further stated that Ms. Thomas repeatedly advised him that Mr. Hanna and Company COO Jene Park were "not good people" and that he should "be careful" when dealing with them."

22. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "Mr. Kohv further stated that Ms. Thomas repeatedly

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

advised him that Mr. Hanna and Company COO Jene Park were "not good people" and that he should "be careful" when dealing with them."

23. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "The Company is shocked and hurt that its good faith attempts to come to amicable arrangements had precisely zero effect on Ms. Thomas' conduct."

24. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "Frankly, we are puzzled that Paula Thomas should expect to receive financial benefits from the Company with one hand while secretly undermining and harming it with the other."

25. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "These personal attacks on Company management, and upon Mr. Hanna and Ms. Park personally, are not only contrary to Company policies and Ms. Thomas' duty of loyalty; they are also in direct violation of Mr. Hanna's explicit admonishment not to speak ill of Company officers to outside parties."

26. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "Such remarks are clearly intended to damage the

26

Company and its officers both in their official and personal capacities and to diminish the Company's reputation within the industry."

27. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "As already disclosed to you, Ms. Thomas had, after all, already been admonished in the past for similar conduct after admitting her wrongdoing."

28. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "For example, during the Company's latest fashion show in New York, Ms. Thomas told a representative of the Company's PR firm, BPCM, that Mr. Hanna was "a moron" and that he was "running the Company into the ground."

29. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "When confronted, Ms. Thomas was admonished in no uncertain terms to cease and desist from disparaging the Company or its personnel."

30. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "When confronted, Ms. Thomas was admonished in no uncertain terms to cease and desist from disparaging the Company or its personnel."

27

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES WITHIN THE CONTROL OF THOMAS WYLDE, LLC

31. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "She acknowledged the wrongdoing and promised to stop."

32. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "Nevertheless, as we have seen, she has blatantly continued to denigrate the Company and its officers in her conversations with Mr. Kohv and others."

33. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "Furthermore, the Company recently discovered that Ms. Thomas breached obligations under its Confidentiality and Intellectual Property Agreement: Earlier this year, Ms. Thomas obtained passwords to access the company's file server."

34. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "She secretly disclosed these passwords to Messrs. Tony Jay and Joshua Sophrin with neither prior authorization nor justification to do so."

35. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "The confidentiality provisions require that Ms. Thomas keep the data on that server "strictly confidential" and not disclose

28

it to any third party without the express written consent of the Managing

Member."

36. Produce all **DOCUMENTS** regarding the following statement in the **MAY
14, 2014 LETTER**: "While Mr. Jay did work as a contractor for the
company and assisted with the February fashion show and website launch,
he had no need for access to the Company's servers nearly a full month
later."

37. Produce all **DOCUMENTS** regarding the following statement in the **MAY
14, 2014 LETTER**: "The Company is not even aware of who Joshua
Sophrin is, much less why he would need access to Company servers."

38. Produce all **DOCUMENTS** regarding the following statement in the **MAY
14, 2014 LETTER**: "Ms. Thomas' surreptitious disclosure of Company
passwords to these two individuals constitutes a significant breach of
security, a violation of Company policy, a breach of fiduciary duties, and a
material breach of the employment agreement."

39. Produce all **DOCUMENTS** regarding the following statement in the **MAY
14, 2014 LETTER**: "Based upon these circumstances and others that have
already been discussed with Ms. Thomas in the past, the Company exercises

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

its right to terminate her employment for cause – in case this is at all

necessary, because again: The Company's position is that she quit her post."

40. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "Ms. Thomas has been given ample warning and every opportunity to change her conduct, yet failed to do so."

41. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "The more recent breaches in particular are not amenable to cure."

42. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "That these breaches occurred precisely while the Company was engaged in good faith attempts to resolve matters amicably is particularly hurtful."

43. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "I will therefore request now that you instruct your client to cease and desist all further defamatory conduct and stop disseminating confidential information and otherwise cease all other forms of wrongful conduct."

44. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "After all, Ms. Thomas has ongoing duties as a

30

Company member and former officer, as well as under the Company's confidentiality agreement."

45. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "These duties run not only to the Company, but also, in certain instances, to its other members and management."

46. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "Please accept Mr. Schnider's apologies for not responding to you: The Company has put matters into my hands and prefers that further communications go through me."

47. Produce all **DOCUMENTS** regarding the following statement in the **MAY 14, 2014 LETTER**: "The Company intends to sue for its damages and to enjoin further defamatory conduct and breaches of its confidentiality policies."

## <u>REQUEST FOR PRODUCTION NO. 3</u>

1. Produce any and all **CORPORATE DOCUMENTS** for Thomas Wylde, Holdings, LLC.

2. Produce any and all **DOCUMENTS** related to any agreements entered into by Thomas Wylde, Holdings, LLC and Paul Thomas.

3. Produce any and all **DOCUMENTS** related to any agreements entered into

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

between Thomas Wylde, LLC Holdings, LLC and CBCI Partners, Inc.

4. Produce any and all **DOCUMENTS** regarding any Promissory Notes

entered by/between Thomas Wylde Holdings, LLC and CBCI Partners, Inc.

5. Produce any and all **DOCUMENTS** related to agreements, including

Promissory Notes, entered into by/between Eniluz Gonzalez and Khonder

Schoeb Ahmed, on the one hand, and Thomas Wylde, LLC, on the other

hand.

6. Produce any and all **DOCUMENTS** related to any agreements, including

Promissory Notes, entered into by/between Hillshore Investments, S.A., on

the one hand, and Thomas Wylde, LLC, on the other hand.

7. Produce any and all **DOCUMENTS** related to All Employment

Agreement(s) by/between Jon Hanna and Thomas Wylde, LLC.

8. Produce any and all **DOCUMENTS** related to all Employment

Agreement(s) by/between Jene Park and Thomas Wylde, LLC.

9. Produce any and all **DOCUMENTS** regarding any and all schedule of

deposits, whether by wire transfer or otherwise, from Hillshore Investments,

S.A. to Thomas Wylde, LLC, from July 1, 2014 through present.

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

10. Produce any and all **DOCUMENTS** regarding any and all schedules of deposits, whether by wire transfer or otherwise, from Eniluz Gonzalez to Thomas Wylde, LLC from July 1, 2014 through present.

11. Produce any and all **DOCUMENTS** regarding schedules of deposits, whether by wire transfer or otherwise, from Steven Choi to Thomas Wylde, LLC from July 1, 2014 through present.

12. Produce any and all **DOCUMENTS** regarding schedules of deposits, whether by wire transfer or otherwise, from Khonder Schoeb Ahmed to Thomas Wylde, LLC from 7/1/2014 through present.

13. Produce any and all **DOCUMENTS** regarding any and all deposits, whether by wire transfer or otherwise, from Eniluz Gonzalez to Thomas Wylde, LLC from July 1, 2014 through present.

14. Produce any and all **DOCUMENTS** regarding deposits, whether by wire transfer or otherwise, from Steven Choi to Thomas Wylde, LLC from July 1, 2014 through present.

15. Produce any and all **DOCUMENTS** regarding deposits, whether by wire transfer or otherwise, from Khonder Schoeb Ahmed to Thomas Wylde, LLC from 7/1/2014 through present.

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

16. Produce each and every **DOCUMENT** regarding monthly statements from July 1, 2014 to the present in the name of Thomas Wylde, LLC, from any bank, financial institution, savings & loan, credit union in which any money from any investors was deposited.

17. Produce each and every **DOCUMENT** regarding monthly statements from July 1, 2014 to the present in the name of Thomas Wylde, LLC, from any bank, financial institution, savings & loan, credit union in which any money from any investors was deposited.

18. Produce each and every **DOCUMENT** regarding monthly statements from July 1, 2014 to the present in the name of Thomas Wylde, LLC, from any bank, financial institution, savings & loan, credit union in which any money from the sale of products.

19. Produce any and all **DOCUMENTS**, include ESI, contain information that was inputted into QuickBooks.

20. Produce each and every **DOCUMENT** regarding monthly statements from July 1, 2014 to the present in the name of Thomas Wylde, LLC, from any bank, financial institution, savings & loan, credit union in which Thomas Wylde, LLC paid any and all money for any reason to John Hanna, David Schnider, Jene Park, Stephon Choi, Eniluz Gonzalez, Hillshore Investment,

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

S.A, and any business/company/person under the control of Stephon Choi,

Eniluz Gonzalez, Hillshore Investment, S.A

21. Produce each and every **DOCUMENT** regarding all Profit and Loss

Statements for Thomas Wylde, LLC from January 13, 2013 to the present.

   a. Produce each and every **DOCUMENT** regarding all Balance Sheets s

      for Thomas Wylde, LLC from January 13, 2013 to the present.

22. Produce each and every **DOCUMENT** regarding all sales of all products by

Thomas Wylde, LLC between January 1, 2013 and the present time.

23. Produce each and every **DOCUMENT** regarding all sales of all products by

Thomas Wylde, LLC between January 1, 2013 and the present time.

24. Produce each and every **DOCUMENT** regarding any and all inventories

created between January 1, 2013 and the present time.

25. Produce each and every **DOCUMENT** regarding any and all sales of

products by Thomas Wylde, LLC between January 1, 2013 and the present

time.

26. Produce each and every **DOCUMENT** regarding any and all fashion shows

Thomas Wylde, LLC participated in between January 1, 2013 and the

present time.

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

27. Produce each and every **DOCUMENT** regarding any and all sales of product generated as a result of any fashion shows Thomas Wylde, LLC participated in between January 1, 2013 and the present time.

28. Produce each and every **DOCUMENT** regarding money and/or anything of value that Thomas Wylde, LLC has paid any person and/or business as an investment return, including but not limited to, Stephen Choi, Eniluz Gonzalez, Hillshore Investment, S.A, Doug Lee, Roger Kou, David Schnider, Jene Park, and John Hanna.

29. Produce each and every **DOCUMENT** regarding any investment of anything of value, including but not limited to money, in Thomas Wylde, LLC from July 1, 2014 to the present time.

30. Produce each and every **DOCUMENT** regarding the value, including money, of units of membership from January 1, 2017 to the present time.

31. Produce each and every **DOCUMENT** how the value, including money, of units of membership from January 1, 2017 to the present time.

32. Produce each and every **DOCUMENT** regarding the methodology used to determine the value, including money, of units of membership from January 1, 2017 to the present time for Thomas Wylde, LLC the.

36

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

33. Produce each and every **DOCUMENT** regarding the manufacturing of all products between January 2013 and the present time.

34. Produce each and every **DOCUMENT** regarding the distribution of all products between January 2013 and the present time.

35. Produce each and every **DOCUMENT** regarding any and all correspondence by/between Hillshore Investments, S.A. and Thomas Wylde, LLC.

36. Produce each and every **DOCUMENT** regarding any and all correspondence by/between Hillshore Investments, S.A. and Thomas Wylde, LLC.

37. Produce each and every **DOCUMENT** regarding any and all correspondence by/between Khonder Schoeb Ahmed and Thomas Wylde, LLC.

38. Produce each and every **DOCUMENT** regarding any and all correspondence by/between Stephen Choi and Thomas Wylde, LLC.

39. Produce each and every **DOCUMENT** regarding any and all correspondence by/between Eniluz Gonzalez and Thomas Wylde, LLC.

40. Produce each and every **DOCUMENT** regarding any and all agreements entered into by/between Eniluz Gonzalez and Thomas Wylde, LLC.

37

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

41. Produce each and every **DOCUMENT** regarding any and all agreements entered into by/between Hillshore Investments, S.A. and Thomas Wylde, LLC.

42. Produce each and every **DOCUMENT** regarding any and all agreements entered into by/between Stephen Choi and Thomas Wylde, LLC.

43. Produce each and every **DOCUMENT** regarding any and all agreements entered into by/between Khonder Schoeb Ahmed and Thomas Wylde, LLC.

    a. Produce each and every **DOCUMENT** regarding any and all agreements between Hillshore Investments, S.A. and Thomas Wylde Holdings, LLC.

    b. Produce each and every **DOCUMENT** regarding any and all agreements between Hillshore Investments, S.A. and Paula Thomas.

44. Produce each and every **DOCUMENT** regarding any and all agreements between Hillshore Investments, S.A. and PDTW, LLC.

45. Produce each and every **DOCUMENT** regarding any and all agreements between Hillshore Investments, S.A. and Paula Thomas LLC.

46. Produce any and all **COMMUNICATIONS** seeking for google with using Plaintiff's employment description.

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

47. Produce any and all **COMMUNICATIONS** regarding the termination of
Plaintiff.

48. Produce any and all **COMMUNICATIONS** regarding the Employment
Agreement Plaintiff.

49. Produce any and all **COMMUNICATIONS** regarding the Purchase
Agreement Plaintiff.

50. Produce any and all **COMMUNICATIONS** regarding the investments into
Thomas Wylde, LLC obtained from Hillshore Investment, S.A.

51. Produce any and all **COMMUNICATIONS** regarding the investments into
Thomas Wylde, LLC obtained from Eniluz Gonzalez.

52. Produce any and all **COMMUNICATIONS** regarding the investments into
Thomas Wylde, LLC obtained from Stephen Choi.

53. Produce any and all **COMMUNICATIONS** regarding the investments into
Thomas Wylde, LLC obtained from any investors.

54. Produce any and all **DOCUMENTS** regarding the amount of money each
investor paid into Thomas Wylde, LLC.

55. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** disclosing
to any person, including but not limited to Plaintiff that Hillshore
Investment, S.A. was investing money into Thomas Wylde, LLC.

39

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

56. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** disclosing to any person, including but not limited to Plaintiff, that Thomas Wylde, LLC was giving Hillshore Investment, S.A. anything of value for its investments.

57. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** related to any information about Hillshore Investment, S.A.'s business operations and how it generates income/revenue that Thomas Wylde, LLC obtained before any investments in Thomas Wylde, LLC by.

58. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** distributed to Hillshore Investments, S.A., Stephen Choi and Eniluz Gonzalez regarding Thomas Wylde, LLC.

59. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding her permission and authorization to use any valuation report for generating income from investors.

60. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding money paid for any valuation report.

61. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** any discussions and meetings related to investments involving Hillshore Investment, S.A., Stephen Choi and Eniluz Gonzalez.

40

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES WITHIN THE CONTROL OF THOMAS WYLDE, LLC

62. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding all expenses Thomas Wylde, LLC has incurred from January 1, 2013 to the present time.

## REQUEST FOR PRODUCTION NO. 4

1. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding the bankruptcy proceedings between Richard Peddie and Nancy Zamora.

2. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding the bankruptcy proceedings between Richard Peddie and Larry Simons.

3. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding loans by Hillshore Investment, S.A. provided to Thomas Wylde, LLC, including but not limited to, the $2,000,000.00 set forth in the Purchased Agreement.

4. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding loans provided to Thomas Wylde, LLC between January 2014 to the present time.

5. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding how the investments for approximately $9,000,000.00 by Hillshore Investment, S.A. was used.

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

6. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding wire transfers, bank statements, receipts, related to the investments for approximately $9,000,000.00 by Hillshore Investment, S.A.

7. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding the loan of $2,000,000.00 set forth in the Purchase Agreement.

8. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding payment of the loan for $2,000,000.00 set forth in the Purchase Agreement.

9. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding any and all signed Operating Agreements, including Amended Operating Agreements, for Thomas Wylde, LLC from July 2014 to the present time.

10. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding any withdraws by any investors in Thomas Wylde, LLC.

11. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding loan conversions related to converting loans to investments.

12. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding loan conversions related to converting investments to loans.

13. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding the name, address, telephone number, e-mail address and cell phone number of any attorney representing John Hanna.

42

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES WITHIN THE CONTROL OF THOMAS WYLDE, LLC

14. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding the name, address, telephone number, e-mail address and cell phone number of any attorney representing John Hanna.

15. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding the transfer of units of membership from any investor to any third party.

16. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding the transfer of units of membership from any investor to any other investor.

17. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding any and all investments in Thomas Wylde, LLC from July 1, 2014 to the present time.

18. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding any and all moneys and/or anything of value paid as an investment in Thomas Wylde, LLC from July 1, 2014 to the present time.

19. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** track the investments and distribution of units of member to Thomas Wylde, LLC from July 1, 2014 to the present time.

20. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding the retainer fee agreement with Richard Peddie.

43

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

21. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding any and all invoices, bills and statement from Richard Peddie regarding his legal services to Thomas Wylde, LLC.

22. Produce any and all **COMMUNICATIONS** between anybody working at Thomas Wylde, LLC and Stephen Choi from April 20, 2014 to the present time.

23. Produce any and all **COMMUNICATIONS** between anybody working at Thomas Wylde, LLC and Stephen Choi from April 20, 2014 to the present time.

24. Produce any and all **COMMUNICATIONS** between anybody working at Thomas Wylde, LLC and Eniluz Gonzalez from April 20, 2014 to the present time.

25. Produce any and all **COMMUNICATIONS** between anybody working at Thomas Wylde, LLC and Doug Lee.

26. Produce any and all **COMMUNICATIONS** between anybody working at Thomas Wylde, LLC and Roger Kou.

27. Produce any and all **COMMUNICATIONS** between anybody working at Thomas Wylde, LLC and Paula Thomas.

28. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding

44

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

Paula Thomas' income tax returns for both state and federal governments.

29. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding any and all Notices of Issuance of New Membership Interest.

30. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding any and all Agreements to Purchase Membership Interests.

31. Produce any and all **COMMUNICATIONS** and **DOCUMENTS** regarding any and all Exhibits attached to Agreements to Purchase Membership Interests.

Dated: August 4, 2017

Respectfully submitted,

By: /S/ Dimitrios P. Biller
Attorney for Creditor Paula
Thomas

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
WITHIN THE CONTROL OF THOMAS WYLDE, LLC

## PROOF OF SERVICE
## STATE OF CALIFORNIA
## COUNTY OF LOS ANGELES

I declare under penalty of perjury that I live in the County of Los Angeles, state of California, I am over the age of 18 years; my business is located at 15113 West Sunset Blvd., Suite "9", Pacific Palisades, CA 90272. On August 4, 2017, I caused to be served, via e-mail, the following pleadings:

### PAULA THOMAS' EXHIBIT LIST

on the interested parties in this action by e-mail:

Richard Byron Peddie,
lawstudios@comcast.net
Lawstudios Richard Bryon Peddie
505 Euclid Avenue
Boulder, Co 80303-2811
e-mail: lawstudios@comcast.net
Counsel for ALL Defendants

Nancy Hoffmeir Zamora
Anthony N.R. Zamora
Zamora & Hoffmeier
U.S. Bank Tower
633 West 5th Street, Suite 2600
Los Angeles, California 90071
e-mail zamora3aol.com

**XXXX** BY MAIL – I placed such envelope for deposit in the U.S. Mail for service by the United States Postal service, with postage thereon fully prepaid. I am "readily familiar" with the practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid at Pacific Palisades, California. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

46

CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES WITHIN THE CONTROL OF THOMAS WYLDE, LLC

1

2     ____ BY FEDERAL EXPRESS – I am familiar with the practice at my place of
business for collection and processing of correspondence for overnight delivery
3  maintained by Federal Express.  Such correspondence will be deposited with a
facility regularly maintained by Federal Express for receipt on the same day in the
4  ordinary course of business.  The envelope was sealed and placed for collection
and delivery by Federal Express with delivery fees paid or provided for in
5  accordance with ordinary business practices.
6     ____ BY PERSONAL SERVICE – I caused such envelope to be delivered by hand
7  to the offices of the addressee.

8

9     **XXX**: E-mail at the above e-mail addresses.

10    **XXX** (State) I declare **under penalty of perjury under the laws of the State of**
11    **California** that the foregoing is true and correct.

12       Executed on **August 4, 2017**, at Pacific Palisades, California.

13

14

15    /S/ Dimitrios P. Biller
16    Dimitrios P. Biller

17

18

19

20

21

22

23

24

25

26

27
                                47
28    CREDITOR PAULA THOMAS' DEMAND FOR PRODUCTION OF DOCUMENTS AND WITNESSES
      WITHIN THE CONTROL OF THOMAS WYLDE, LLC