1  DIMITRIOS P. BILLER (142730)
2  LDT Consulting, Inc.
   15113 West Sunset Blvd., Suite "9"
3  Pacific Palisades, California 90272
4  Telephone (310) 459-9870
   E-mail Address: biller_ldtconsulting@verizon.net
5
6  MARCIA DALEY (146,579)
7  DALEY & SACKS LAW RLLP
   1516 Westwood Boulevard, Suite 102
8  Los Angeles, California 90024
9  Telephone: (310) 985-2808
   E-mail: marcia@daleyandsackslaw.com
10
11 Attorneys for Creditor Paula Thomas
12
13
14                UNITED STATES DISTRICT COURT
15        FOR THE CENTRAL DISTRICT COURT OF CALIFORNIA
16
17
18 IN RE                              Case No.: 6-16-bk-15889-SY
19 PDTW, LLC,
20                                    INDEX TO EXHIBITS REFERRED
                                      TO IN THE DECLARATION OF
21             DEBTOR.                DIMITRIOS P. BILLER IN SUPPORT
22                                    OF CREDITOR PAULA THOMAS'
                                      BENCH BREIF ON THE EXCLUSION
23                                    OF EVIDENCE, DENIAL OF ALL
24                                    CLAIMS FILED BY THOMAS
                                      WYLDE, LLC, AND ORDER
25                                    PROHIBITING NANCY ZAMORA
26
   INDEX TO EXHIBITS REFERRED TO IN THE DECLARATION OF DIMITRIOS P. BILLER IN SUPPORT OF
27 CREDITOR PAULA THOMAS' BENCH BREIF ON THE EXCLUSION OF EVIDENCE, DENIAL OF ALL CLAIMS
   FILED BY THOMAS WYLDE, LLC, AND ORDER PROHIBITING NANCY ZAMORA FROM PARTICIPATING IN
28 THE AUGSUT 28 AND 29, 2017 EVIDENTARY HEARING.                                    1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FROM PARTICIPATING IN THE
AUGSUT 28 AND 29, 2017
EVIDENTARY HEARING.

**VOLUME NUMBER III, EXHIBITS
6-13**

INDEX TO EXHIBITS REFERRED TO IN THE DECLARATION OF DIMITRIOS P. BILLER IN SUPPORT OF
CREDITOR PAULA THOMAS' BENCH BREIF ON THE EXCLUSION OF EVIDENCE, DENIAL OF ALL CLAIMS
FILED BY THOMAS WYLDE, LLC, AND ORDER PROHIBITING NANCY ZAMORA FROM PARTICIPATING IN
THE AUGSUT 28 AND 29, 2017 EVIDENTARY HEARING.

2

# INDEX OF EXHIBITS REFERRED TO IN THE DECL. OF BILLER

## VOLUME III

1.      **Exhibit "1"** Thomas Wylde's, LLC's Notice of Withdrawal of Claim No. 10.

2.      **Exhibit "2":** deposition transcript for Eniluz Gonzalez that was taken on July 31, 2017.

3.      **Exhibit "3":** Pleadings for Claim No. 10 that Richard Peddie apparently prepared and signed under penalty of perjury.

4.      **Exhibit "4":** e-mail Nancy Zamora sent to inform the parties that the Trustee will not call the accountant as a witness.

5.      **Exhibit "5":** Operating Agreement for Thomas Wylde, LLC signed on July 22, 2014.

6.      **Exhibit "6:** Transaction Accounts document that Stephen Choi claims to have received from Thomas Wylde, LLC.

7.      **Exhibit "7":** Agreement to Purchase Units of Membership in Thomas Wylde, LLC.

8.      **Exhibit "8":** Employment Agreement that Paula Thomas signed;

9.      **Exhibit "9"":** Amended Operating Agreement.

INDEX TO EXHIBITS REFERRED TO IN THE DECLARATION OF DIMITRIOS P. BILLER IN SUPPORT OF CREDITOR PAULA THOMAS' BENCH BREIF ON THE EXCLUSION OF EVIDENCE, DENIAL OF ALL CLAIMS FILED BY THOMAS WYLDE, LLC, AND ORDER PROHIBITING NANCY ZAMORA FROM PARTICIPATING IN THE AUGSUT 28 AND 29, 2017 EVIDENTARY HEARING.

10.   **Exhibit "10":** Amended Schedule B for Thomas Wylde, LLC

11.   **Exhibit "11":** is the salary chart showing Paula Thomas received her last pay check on April 15, 2015.

12.   **Exhibit "12":** Amendment to Schedule B of the Amended Operating Agreement

13.   **Exhibit "13":** income tax return for Thomas Wylde, LLC.

14.   **Exhibit "14":** Agreement to Purchase Membership Interest.

15.   **Exhibit "15":** e-mail Richard Peddie sent proving notice of the withdrawal of Claim No. 10.

16.   **Exhibit "16":** e-mail sent to Richard Peddie requesting more information regarding the reasons he withdrew the $2,000,000.00 claim.

17.   **Exhibit "17":** Motion for the Trustee seeking to buy the PDTW, LLC's.

18.   **Exhibit "18":** e-mail that apparently caused Mrs. Zamora to change her position to produce the expert witness, but then she withdrew him.

19.   **Exhibit "19":** e-mail Nancy Zamora send taking the position that the accountant is not an expert and he was only going to be called to "AUTHENICATE" business records of PDTW, LLC.

INDEX TO EXHIBITS REFERRED TO IN THE DECLARATION OF DIMITRIOS P. BILLER IN SUPPORT OF
CREDITOR PAULA THOMAS' BENCH BREIF ON THE EXCLUSION OF EVIDENCE, DENIAL OF ALL CLAIMS
FILED BY THOMAS WYLDE, LLC, AND ORDER PROHIBITING NANCY ZAMORA FROM PARTICIPATING IN
THE AUGSUT 28 AND 29, 2017 EVIDENTARY HEARING.

4

20.   **Exhibit "20":** e-mail from Mrs. Zamora changing her position.

21.   **Exhibit "21":** Second Amended Cross-Complaint TW filed against Paula Thomas.

22.   **Exhibit "22":** Paula Thomas' initial witness list.

23.   **Exhibit "23":** Paula Thomas' initial Exhibit List.

24.   **Exhibit "24":** e-mail received from Richard Peddie withdrawing the $2 million claim.

25.   **Exhibit "25":** "Explanatory Note – Basis for Claim attached to Claim No. 10.

26.   **Exhibit "26":** May 14, 2015 letter that Mr. Peddie wrote to create a false record that TW terminated Thomas one month earlier on April 15, 2015. responses to Form and Special Interrogatories to substantiate the position.

27.   **Exhibit "27"** Thomas Wylde, LLC's responses to form and special interrogatories referring to the letter.

28.   **Exhibit "28"** Demand for Production of Witnesses and served on Thomas Wylde, LLC.

INDEX TO EXHIBITS REFERRED TO IN THE DECLARATION OF DIMITRIOS P. BILLER IN SUPPORT OF CREDITOR PAULA THOMAS' BENCH BREIF ON THE EXCLUSION OF EVIDENCE, DENIAL OF ALL CLAIMS FILED BY THOMAS WYLDE, LLC, AND ORDER PROHIBITING NANCY ZAMORA FROM PARTICIPATING IN THE AUGSUT 28 AND 29, 2017 EVIDENTARY HEARING.

1  Dated: August 7, 2017

2

3

4                              Respectfully submitted,

5

6

7                              By: /S/ Dimitrios P. Biller
                               Counsel for Creditor Paula Thomas

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  INDEX TO EXHIBITS REFERRED TO IN THE DECLARATION OF DIMITRIOS P. BILLER IN SUPPORT OF
    CREDITOR PAULA THOMAS' BENCH BREIF ON THE EXCLUSION OF EVIDENCE, DENIAL OF ALL CLAIMS
    FILED BY THOMAS WYLDE, LLC, AND ORDER PROHIBITING NANCY ZAMORA FROM PARTICIPATING IN

28  THE AUGSUT 28 AND 29, 2017 EVIDENTARY HEARING.                              6

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

I declare under penalty of perjury that I live in the County of Los Angeles, state of California, I am over the age of 18 years; my business is located at 15113 West Sunset Blvd., Suite "9", Pacific Palisades, CA 90272. On **August 7, 2017**, I caused to be served, via e-mail, the following pleadings:

**INDEX OF EXHIBITS**

on the interested parties in this action by e-mail:

> Richard Byron Peddie,
> lawstudios@comcast.net
> Lawstudios Richard Bryon Peddie
> 505 Euclid Avenue
> Boulder, Co 80303-2811
> Counsel for ALL Defendants


> Nancy Hoffmeir Zamora
> Anthony N.R. Zamora
> Zamora & Hoffmeier
> U.S. Bank Tower
> 633 West 5th Street, Suite 2600
> Los Angeles, California 90071
> e-mail zamora3aol.com


**XXXX** BY MAIL – I placed such envelope for deposit in the U.S. Mail for service by the United States Postal service, with postage thereon fully prepaid. I am "readily familiar" with the practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid at Pacific

INDEX TO EXHIBITS REFERRED TO IN THE DECLARATION OF DIMITRIOS P. BILLER IN SUPPORT OF CREDITOR PAULA THOMAS' BENCH BRIEF ON THE EXCLUSION OF EVIDENCE, DENIAL OF ALL CLAIMS FILED BY THOMAS WYLDE, LLC, AND ORDER PROHIBITING NANCY ZAMORA FROM PARTICIPATING IN THE AUGSUT 28 AND 29, 2017 EVIDENTARY HEARING.          7

1   Palisades, California. I am aware that on motion of the party served, service is
2   presumed invalid if postal cancellation date or postage meter date is more than one
    day after date of deposit for mailing in affidavit.
3

4   _____ BY FEDERAL EXPRESS – I am familiar with the practice at my place of
    business for collection and processing of correspondence for overnight delivery
5   maintained by Federal Express. Such correspondence will be deposited with a
6   facility regularly maintained by Federal Express for receipt on the same day in the
    ordinary course of business. The envelope was sealed and placed for collection
7   and delivery by Federal Express with delivery fees paid or provided for in
8   accordance with ordinary business practices.
9   _____ BY PERSONAL SERVICE – I caused such envelope to be delivered by hand
    to the offices of the addressee.
10

11  **XXX**: E-mail at the above e-mail addresses.

12  **XXX** (State) I declare **under penalty of perjury under the laws of the State of**
13  **California** that the foregoing is true and correct.

14
        Executed on **August 7, 2017**, at Pacific Palisades, California.
15

16

17  /S/ Dimitrios P. Biller
18  Dimitrios P. Biller

19

20

21

22

23

24

25

26

27  INDEX TO EXHIBITS REFERRED TO IN THE DECLARATION OF DIMITRIOS P. BILLER IN SUPPORT OF
    CREDITOR PAULA THOMAS' BENCH BREIF ON THE EXCLUSION OF EVIDENCE, DENIAL OF ALL CLAIMS
    FILED BY THOMAS WYLDE, LLC, AND ORDER PROHIBITING NANCY ZAMORA FROM PARTICIPATING IN
28  THE AUGSUT 28 AND 29, 2017 EVIDENTARY HEARING.                                    8

# EXHIBIT "6"

11:41 AM
02/27/17
Accrual Basis

# THOMAS WYLDE LLC
## Transactions by Account
### All Transactions

| Type | Date | Memo | Debit | Credit | Balance |
|---|---|---|---|---|---|
| **Notes Payable - Long Term** | | | | | |
| **Notes Payable - Hillshore Contr** | | | | | |
| Deposit | 08/28/2014 | INCOMING DOMESTIC WIRE WIRE IN    1/HILLSHORE | | 600,000.00 | 600,000.00 |
| Deposit | 09/19/2014 | INCOMING DOMESTIC WIRE WIRE IN    HILLSHORE | | 350,000.00 | 950,000.00 |
| Deposit | 10/14/2014 | Fund transfer from Hillshore, Inc. | | 350,000.00 | 1,300,000.00 |
| Deposit | 11/13/2014 | $500K loan to Thomas Wylde LLC, to be converted to Equity la. | | 500,000.00 | 1,800,000.00 |
| Deposit | 12/12/2014 | December Funding 2014 | | 500,000.00 | 2,300,000.00 |
| General | 12/31/2014 | To recllass Hillshore loan to Equity | 2,300,000.00 | | 0 |
| Transfer | 02/25/2016 | Funds Transfer | | 249,975.00 | 249,975.00 |
| General | 02/25/2016 | bank fee | | 25.00 | 250,000.00 |
| Deposit | 03/25/2016 | Deposit | | 250,000.00 | 500,000.00 |
| Deposit | 04/15/2016 | Deposit | | 200,000.00 | 700,000.00 |
| Deposit | 04/26/2016 | Deposit | | 200,000.00 | 900,000.00 |
| Deposit | 05/16/2016 | Deposit | | 674,000.00 | 1,574,000.00 |
| Deposit | 05/26/2016 | Deposit | | 277,000.00 | 1,851,000.00 |
| Deposit | 06/15/2016 | Deposit | | 80,000.00 | 1,931,000.00 |
| Deposit | 06/27/2016 | Deposit | | 100,000.00 | 2,031,000.00 |
| Deposit | 06/30/2016 | Deposit | | 280,000.00 | 2,311,000.00 |
| Deposit | 07/13/2016 | 375K | | 175,000.00 | 2,086,000.00 |
| Deposit | 08/16/2016 | Deposit | | 250,000.00 | 2,936,000.00 |
| Deposit | 09/02/2016 | Deposit | | 200,000.00 | 3,136,000.00 |
| Deposit | 10/03/2016 | $3,801.12 | | 100,000.00 | 3,236,000.00 |
| Deposit | 11/03/2016 | Deposit | | 25,000.00 | 3,261,000.00 |
| General | 11/04/2016 | pay off -MURPHY ROSEN/Friday, November 4, 2016 3:52:55.. | | 35,000.00 | 3,296,000.00 |
| Deposit | 12/01/2016 | Deposit | | 70,000.00 | 3,366,000.00 |
| Deposit | 12/09/2016 | Deposit | | 65,000.00 | 3,421,000.00 |
| Deposit | 01/04/2017 | Deposit | | 65,000.00 | 3,486,000.00 |
| Deposit | 01/17/2017 | Deposit | | 60,000.00 | 3,546,000.00 |
| Deposit | 02/07/2017 | Deposit | | 65,000.00 | 3,611,000.00 |
| Deposit | 02/13/2017 | Deposit | | 60,000.00 | 3,671,000.00 |
| **Total Notes Payable - Hillshore Contr** | | | 2,300,000.00 | 5,971,000.00 | 3,671,000.00 |
| **Total Notes Payable - Long Term** | | | 2,300,000.00 | 5,971,000.00 | 3,671,000.00 |
| **TOTAL** | | | 2,300,000.00 | 5,971,000.00 | 3,671,000.00 |

EXHIBIT NO. 32
For Identification
Witness: ENILU L GONZALEZ
Date: 7-31-2017
Darrion M. LeBlanc, CSR No. 11951

# EXHIBIT "7"

## AGREEMENT TO PURCHASE MEMBERSHIP INTEREST

This Agreement to Purchase Membership Interest (the "Agreement") is entered into by and between Thomas Wylde, LLC, a California limited liability company ("Seller"), and Paula Thomas, an individual ("Purchaser"), effective December 22, 2014 (the "Effective Date").

### RECITALS

A.     Seller is a California limited liability company, formed on July 22, 2014, pursuant to Articles of Organization of a Limited Liability Company filed with the California Secretary of State. Seller operates pursuant to an Operating Agreement entered into on or about July 22, 2014 (the "Operating Agreement"). Other than as set forth herein, all Units Membership Interest in Seller are owned by John Hanna, Jene Park, Roger Kuo, and Doug Lee (the "Members").

B.     Purchaser seeks to invest $3,200 and certain assets and liabilities into Seller in exchange for 64 membership Units in the Seller.

C.     Seller and its Members desire to accept Purchaser's investment in the company and to issue new membership Units in exchange.

D.     Seller's Manager and Members have unanimously approved the sale of such new membership Units to Purchaser.

### AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  Sale of the Interest. Upon the execution of this Agreement, subject to the terms and conditions herein set forth, and on the basis of the representations, warranties, and agreements herein, Seller shall sell to Purchaser, and Purchaser shall purchase from Seller, a 64 Units of Membership Interest in the Seller. All undefined capitalized terms herein shall have the meaning ascribed by the Operating Agreement.

2.  Instruments of Conveyance. Upon execution hereof, this Agreement shall evidence conveyance and transfer of the Membership Interest, which shall be effective to immediately vest in Purchaser all right, title, and interest in and to all of the securities underlying the Membership Interest pursuant to this Agreement, free and clear of all liens, claims, encumbrances, and adverse interests. Such conveyance shall entitle Purchaser to all the rights of a Member under the Operating Agreement, including, without limitation, all Transferable Interests as well as any Voting Interest provided by the Operating Agreement. Seller may, at its discretion, deliver a certificate or certificates representing the Units to Purchaser, in form and substance customary in the industry. Within five (5) business days of the Effective Date, Seller shall record this Agreement in the Seller's minute book and shall amend Exhibit A to the Operating Agreement and any company membership listing to reflect the change in ownership interests.

3.  Consideration. In consideration for the Membership Interest, Purchaser shall make a capital

contribution to Seller in the amount of Three Thousand Two Dollars ($3,200) and shall transfer to Seller those assets and liabilities set forth on Exhibit "A" hereto.

4. <u>Purchaser Representations and Warranties</u>. Purchaser represents and warrants to Seller as follows:

    a.    This Agreement and any other document, instrument, or agreement to be executed and delivered by Purchaser in connection herewith has been duly executed and delivered by the Purchaser and constitutes the legal, valid, and binding obligation of the Purchaser, enforceable in accordance with its terms.

    b.    Purchaser is acquiring the Membership Interest for her own account, for investment purposes, and not with a view to the distribution thereof.

    c.    Purchaser has firsthand knowledge of the business and affairs of Seller, has reviewed the Operating Agreement, and agrees to be bound by all of the terms and conditions of the Operating Agreement.

5. <u>Seller Representations and Warranties</u>. Seller represents and warrants to Purchaser as follows:

    a.    Seller has not taken any action, or entered into any agreements, in any way affecting or binding Seller, its Manager, or Members and has full right, power, and authority to sell, transfer, and deliver the Membership Interest pursuant to this Agreement.

    b.    Seller shall transfer title in and to the Membership Interest to the Purchaser free and clear of all liens, security interests, pledges, encumbrances, charges, restrictions, demands and claims, of any kind and nature whatsoever.

    c.    Seller has received fair equivalent value under the terms of this Agreement.

    d.    Seller has the legal capacity to execute and deliver this Agreement and to effect the sale with respect to the Membership Interest.

    e.    The execution and delivery of this Agreement, the consummation of the transactions contemplated hereby, and the performance of Seller's obligations hereunder will not conflict with or result in any violation of or default under any provision of any agreement or instrument by which the Seller is bound.

    f.    Except for any consent or approval that has been obtained and remains in full force and effect as of the date hereof, no consent, approval or authorization of, or declaration, notice, filing or registration with, any governmental or regulatory authority, or any other person, is required to be made or obtained by the Seller on or prior to the date hereof in connection with the execution, delivery, and performance of this Agreement or the consummation of the transactions contemplated hereby.

    g.    Subsequent to the purchase contemplated hereby, the fully diluted capitalization of Company is as set forth in Exhibit "B" to the Amended Agreement (defined below).

6. Conditions Precedent. Purchaser's obligations hereunder are conditioned upon:

      a.    The Company and the Members' execution and delivery of that certain Amended and Restated Operating Agreement of Company in the form attached as Exhibit "B" hereto ("Amended Agreement");

      b.    The Members' execution and delivery of that certain Clawback Agreement in the form attached as Exhibit "C" hereto;

      c.    Hillshore Investments funding of a Two Million Dollar [$2,000,000) loan to the Company;

      d.    The Company's use of the proceeds of such loan in the manner set forth in that certain Use Of Proceeds Agreement in the form attached as Exhibit "D" hereto (a fully executed copy of which must be delivered to Purchaser);

      e.    The Company and the Members' execution and delivery of that certain Indemnity Agreement in the form attached as Exhibit "E"; and

      f.    The Company's execution and delivery of an employment agreement for Paula in a form mutually agreed to by the parties.

7. Benefit. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns.

8. Necessary Actions. Each party agrees to execute and deliver all such other documents or instruments and to take any action as may be reasonably required in order to effectuate the transaction contemplated by this Agreement.

9. Waiver And Amendment. No breach of any provision of this Agreement can be waived unless in writing. Waiver of any one breach shall not be deemed to be a waiver of any other breach of the same or any other provision. This Agreement may only be amended by a written agreement signed by both Parties.

10. Entire Agreement. This Agreement and the exhibits hereto constitute the entire agreement and understanding between the parties and supersedes all prior agreements and understandings, written or oral, between the parties relating to the subject matter hereof.

11. Severability. If any provision of this Agreement is held to be illegal or invalid by a court of competent jurisdiction such provision shall be considered severed and deleted. Neither such provision, nor its severance and deletion, shall affect the validity of the remaining provisions of this Agreement.

12. Governing Law And Venue. The laws of the State of California shall govern this Agreement. Venue for any legal action arising from or relating to this Agreement shall be solely in the state or federal courts located in the County of Los Angeles in the State of California. The prevailing party in any such action shall be entitled to recover its reasonable costs, including attorney's

fees

13. Drafting. All parties have been represented by independent counsel in this transaction and have participated in the negotiation and preparation of this Agreement, and this Agreement shall not be construed or interpreted against the interests of any party hereto based on that party's preparation of this Agreement

14. Counterparts. This Agreement may be executed in counterparts, and a signed copy shall have the full force and effect of a signature on any original. A copy, PDF, or facsimile copy of the fully executed Agreement shall have the full force and effect of the original executed Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed on their behalf by a duly authorized representative.

Thomas Wylde, LLC

_____
John Hanna, Manager

_____
Paula Thomas

RADIS 00003 473114 073 3

## Exhibit "A" to Agreement to Purchase Membership Interest

List of Asset Being Transferred from Paula Thomas to Thomas Wylde, LLC

All intellectual property rights and associated goodwill relating to the Thomas Wylde brand and designs, including, without limitation, any copyrights, trademarks, patents, trade secrets, or any other rights therein but specifically excluding Paula Thomas' name, image, likeness, biography and moral rights ("IP"). The IP includes the following:

### TRADEMARKS

| Mark | Serial No. / Reg. No. | Status |
|------|------------------------|--------|
| Henna Skull Design | 4,045,284 | Registered 10/25/11 |
| Henna Skull Design | 85/282,535 | Filed 3/31/11 |
| THE WYLDE | 86/003,488 | Filed 7/6/13 |
| THOMAS WYLDE | 3,283,944 | Registered 8/21/07 |
| WYLDE BY THOMAS WYLDE | 85/020,665 | Filed 4/22/10 |
| DOGS GONE WYLDE | 77/737,583 | Abandoned 1/14/13 |
| THOMAS WYLDE | 77/622,486 | Abandoned 1/28/13 |
| THOMAS WYLDE | 78/778,668 | Abandoned 5/15/08 |
| TW FOR THOMAS WYLDE | 77/742,386 | Abandoned 8/2/10 |
| WYLDE | 77/853,330 | Abandoned 7/24/10 |
| WYLDE CHILD | 78/379,441 | Abandoned 3/22/05 |

## COPYRIGHTS

| Title | Registration Number | Registration Date |
|---|---|---|
| Acid Flower | VA 1-344-484 | 04/14/2006 |
| Henna Skull | VA 1-813-811 | 03/30/2011 |
| Skull Flower | VAu 691-713 | 04/14/2006 |
| Skull Pattern | VA 1-344-483 | 04/14/2006 |
| Money Print | VA 1-853-563 | 10/24/2012 |
| Hidden Death Print | VA 1-853-575 | 10/24/2012 |
| Ballet Bowie Print | VA 1-853-570 | 10/24/2012 |
| Carpe Diem Print | VA 1-853-579 | 10/24/2012 |
| Goth Moth | VA 1-853-573 | 10/24/2012 |
| Madame Butterfly | VA 1-853-576 | 10/24/2012 |
| Samona Print | VA 1-853-569 | 10/24/2012 |
| Cyclops | VA 1-907-692 | 9/11/2013 |
| Louis Skull | VA 1-889-372 | 11/5/2013 |
| Spinal Tap | VA 1-907-688 | 9/11/13 |

List of Liabilities Being Transferred from Paula Thomas to Thomas Wylde, LLC

Secured Promissory Note executed by PDTW, LLC in favor of CBC Partners I, LLC, dated
October 15, 2013 in the amount of $1,600,000

Balloon Payment Promissory note executed by PDTW, LLC in favor of Steven John Prestemon,
dated March 27, 2011 in the amount of $228,000

Balloon Payment Promissory note executed by PDTW, LLC in favor of Steven John Prestemon,
dated January 1, 2013 in the amount of $131,337

## Exhibit "B"

## Amended And Restated Operating Agreement

## Exhibit "C"

### Clawback Agreement

## Exhibit "D"

## Use Of Proceeds Agreement

## Exhibit "E"

### Indemnity Agreement

m
fa
oi
ai
ac

to

**X**

**X**
**C**

'S
D

# EXHIBIT "8"

# THOMAS EMPLOYMENT AGREEMENT

This contract is entered into between Thomas Wylde, LLC, a California limited liability company with its principal place of business at 3731 S.L. Grand Blvd., Los Angeles, CA 90016 ("Company"), and Paula Thomas, an individual residing at 2514 S. Toledo Ave., Palm Springs, CA 92264 ("Employee"), effective January 1, 2015 ("Effective Date").

1.      **Employment.** Employee shall serve as the Company's Chief Creative Officer and Creative Director and shall be in charge of the Company's brand image, product and service design, function, look, feel, materials, marketing, advertising, promotion and all such other activities that could affect the goodwill of the Company and/or its products and services, as well as such other title or position as may be mutually agreed by the parties. In addition, Employee shall have the rights and responsibilities relative to her title set forth in the Company's Operating Agreement as in existence as of the date hereof. Employee shall devote all of her working time, attention, knowledge, and skills to Employer's business interests and shall do so in good faith, with best efforts, and to Employer's reasonable satisfaction. During the term of this Agreement, Employee agrees that she will not, without the knowledge and express written consent of the Company's Manager (not unreasonably to be withheld, delayed or conditioned): (i) engage in any form of activity that produces a "conflict of interest" with Employer; or (ii) have any interest in or engagement with any business directly competitive to Employer's. The Company acknowledges and agrees that Employee's activities set forth in Schedule 1 hereto, as it may be amended from time to time, is not a conflict of interest. Employee is expected to comply with Company's policies, procedures and work rules as they now exist or may be modified or adopted by the Company in the future as set forth in any written policy, handbook, or otherwise. These policies include but are not limited to policies against violence in the workplace, discrimination, harassment, and retaliation.

2.      **Term of Employment.** This Agreement shall be binding upon full execution and shall be effective as of the Effective Date and shall continue until the earlier of (i) three years from the Effective Date or (ii) termination of the Agreement in accordance with Section 9, below. Unless the Agreement is terminated pursuant to Section 9, below, at the end of the first three-year term, Employee's employment with the Company shall continue on the terms and conditions set forth herein on an "at-will" basis, meaning that either the Company or the employee may terminate the employment relationship at any time, with or without cause, and with or without notice.

3.      **Compensation.** For the services to be rendered by Employee during the term of employment, the Company shall pay the Employee a base salary in the amount of $300,000 per year. Employee's wages shall be paid in accordance with the Company's normal payroll practices. All compensation payable to the Employee pursuant hereto shall be subject to the customary income tax withholding and such other Employee deductions as are required by law with respect to compensation paid by a company to an employee. Employee's compensation and employee benefits are subject to increase in accordance with the Company's policies and procedures, as determined from time to time in the reasonable discretion of the Company, upon written notice to Employee. Employee shall contemporaneously receive increases in her base salary in the same amounts as the largest increase to the base salary of any other member of the Company's senior management team.

**4.** **Bonuses.** In addition to the compensation set forth in Section 3 above, the Company may, in its sole and exclusive discretion, pay Employee bonuses from time to time. Bonus amounts may be fixed, discretionary, performance related, or based on a target amount. Performance as set forth in Section 9, Employee must be employed at the time of payment to receive any such bonuses. Notwithstanding anything contained herein, Employee shall receive a bonus that is not less than 10% less than the largest bonus or aggregate bonuses paid to any member of the Company's senior management team, excluding any sales commissions or similar sales based incentives. Such mandatory bonus shall be paid in amounts and type of consideration equivalent to such largest bonus.

**5.** **Vacation and Holidays.** Employee is entitled to four weeks of vacation in accordance with the Company's standard policies, provided that such vacation shall be taken in commercially reasonable increments and is subject to the notification and approval of the CEO, which approval shall not be unreasonably withheld.

**6.** **Other Benefits.** Employee shall be eligible for all other benefits generally provided by Company for exempt employees; provided, that, the Company shall provide Employee with all health, dental and vision insurance equivalent to which she had as a PDTW LLC employee. In the event that Company obtains key person insurance on any of the lives of Company's senior management, it shall do so on Employee's life in at least the same amounts.

**7.** **Expense Reimbursement.** Employee shall be entitled to reimbursement of any or all expenses authorized and reasonably incurred in the performance of the functions and duties under this Agreement. In order to receive reimbursement, Employee must timely provide Employer with an itemized account of all expenditures, along with suitable receipts therefore in accordance with the Company's standard policies. Any expenditure over the dollar amount of $2,000 requires prior written authorization of the Company's Manager

**8.** **Exempt Status.** Employee is employed as a salaried/exempt employee and, is not entitled to overtime wages. Employee shall not receive overtime compensation for the services performed under this Agreement.

**9.** **Termination.** The Company shall have the right to terminate Employee's employment under this Agreement at any time for Cause, which termination shall be effective immediately. Termination for "Cause" shall mean the commission of the following acts by Employee that are not reasonably cured within thirty days of Employee's receipt of written notice from Company detailing in specifics the alleged acts or omissions of Employee that Company believes fit the definition of Cause:

    (i)     material breach of this Agreement;

    (ii)    intentional nonperformance or mis-performance of her duties, or refusal to abide by or comply with the reasonable directives of her superior officers, or the Corporation's policies and procedures;

(iii)   willful dishonesty, fraud, or misconduct with respect to the business or affairs of the
        Company, that in the reasonable judgment of the Manager or a Supermajority of the
        Members, has had or could reasonably be expected to have an effect on the Company;

(iv)    conviction of, or a plea of nolo contendere to, a felony or other crime involving moral
        turpitude; or

(v)     the commission of any act that is a conflict of interest (as defined above).

Employee shall have the right to terminate her employment under this Agreement by giving
the Company at least thirty (30) days written notice. In the event that Employer terminates this
Agreement without Cause or Employee terminates this Agreement for Good Reason, the Company
shall pay her severance in the amount of her base salary, bonus and reimbursement of COBRA
expenses until the later of: (a) December 31, 2017 or (b) one year after her last day of employment.
For purposes hereof, "Good Reason" shall mean (1) material diminishment or reduction of
Employee's compensation, benefits, expense reimbursement, authority, responsibilities, title or to
whom she reports, (2) the hiring or engagement of any person to perform substantially the same
services as Employee without Employee's prior written consent (which may be withheld in her sole
discretion), (3) the appointment of any officer that is superior in rank to her other than the CEO, (4)
relocation of Employee's principal place of providing services by more than twenty miles, or (5)
material breach by Company or its members of this Agreement or any other agreement between
Company or one or more of its members on the one hand and Employee on the other hand.

The Agreement shall terminate automatically upon Employee's death. Upon termination due
to death, Company shall pay to Employee's beneficiaries or estate, as appropriate and upon any
proper showing or order required by law, any compensation then due and owing including without
limitation a pro-rata portion of any bonuses that may accrue for such fiscal year. Thereafter, all
obligations of the Company under this Agreement (including but not limited to salary and any other
benefits) shall cease. Nothing in this Section shall affect any entitlement of Employee's heirs to the
benefits of any life insurance plan or other applicable benefits.

Employee acknowledges and agrees that her obligations under the Confidentiality and
Intellectual Property Agreement set forth in Addendum A survive termination of this Agreement so
long as the mandatory bonus set forth in Section 4 and the severance set forth above (as applicable)
is actually paid.

10.     **Non-Solicitation Covenant.** Employee agrees that for a period of one year
following termination of employment, for any reason whatsoever, Employee will not solicit
customers or clients of Employer. By agreeing to this covenant, Employee acknowledges that her
contributions to Employer are unique to Employer's success and that she has significant access to
Employer's trade secrets and other confidential or proprietary information regarding Employer's
customers or clients. A general advertisement, marketing efforts or attendance at trade shows and
other industry events that is not targeted to Company's customers or clients shall not be deemed to
be solicitation.

84016-00001/2311645.3

11. **Non-Recruit Covenant.** Employee agrees not to recruit any of Employer's employees for the purpose of any outside business either during the term or for a period of one year following, ~~termination of employment~~ ... violation of the non-solicitation covenant set forth above. A general advertisement or job posting not specifically directed to Company's employees shall not be deemed to be recruitment.

12. **"Key Man" Life Insurance.** Employee acknowledges that Company may purchase, own and maintain, at Company's expense, a "key man" life insurance policy on Employee. Employee agrees, as long as this Agreement is in effect, to cooperate with any other requirements (such as physicals or execution of documents) for maintaining any such insurance policy. If Company elects to terminate such policy, to the extent legally possible it will permit Paula to assume all rights and obligations under the policy instead.

13. **Intellectual Property and Confidentiality.** By signing below, you agree and acknowledge that your execution of the Intellectual Property and Confidentiality Agreement attached hereto as Addendum A is a material condition of this Agreement.

14. **Audit Rights.** During the term of this Agreement and for a period of three years thereafter, Employee shall have unfettered access to the books and records of the Company and any successor and assign solely to confirm the Company's compliance with the terms of this Agreement. Such audit shall be at Employee's sole expense except to the extent that the audit report shows an underpayment of Employee of more than five percent (5%) of the applicable component of her consideration (in which instance Company shall be solely responsible for all expenses related to such audit).

15. **Integration Clause.** This Agreement supersedes and replaces any and all conflicting representations, agreements, understandings, or policies (whether oral or written) between Company and Employee that were in effect prior to the Effective Date of this Agreement. Employee acknowledges and agrees that no representations or promises have been made to her regarding her employment with the Company other than as stated in this Agreement.

16. **Assignment.** This Agreement is personal in nature and Employee may not assign it without the Company's written consent and any attempt to do so is void. Company may not assign, transfer or delegate this Agreement without Employee's prior written consent which shall not unreasonably be withheld, delayed or conditioned. Any such assignment, transfer or delegation shall not relieve Company of its obligations hereunder and is conditioned upon the assignee agreeing in writing to be bound by all of the terms and conditions hereof.

17. **Modification.** Except as otherwise set forth herein, the terms of this Agreement may only be amended or modified in a written agreement signed by both parties.

18. **Severability.** This Agreement is severable. If any part of this Agreement is found invalid or unenforceable in any jurisdiction, that provision, as to that jurisdiction, will not render invalid or unenforceable the other remaining provisions of this Agreement.

19.    **Governing Law And Venue.** This Agreement shall be governed by California law and venue for any legal action arising from or relating to it shall be solely in the State or Federal courts located in the County of Los Angeles in the State of California.

20.    **Waiver.** No consent or waiver, expressed or implied, by either party to or of any breach or default by the other in the performance by the other of its obligations hereunder shall be deemed or construed to be a consent or waiver of any other breach or default in the performance by such other party, or a consent or waiver to complain of any act or failure to act of any of the other party, or to declare the other party in default, irrespective of how long such failure continues, shall not constitute a waiver of such party of its rights hereunder.

21.    **Attorney Review.** Employee warrants and represents that Employee in executing his Agreement has had the opportunity to rely on legal advice from an attorney of Employee's choice, so that the terms of this Agreement and their consequences could have been fully read and explained to Employee by an attorney and that Employee fully understands the terms of this Agreement

22.    **Counterparts.** This Agreement may be executed in counterparts, and a signed copy shall have the full force and effect of a signature on any original. A copy, PDF, or facsimile copy of the fully executed Agreement shall have the full force and effect of the original executed Agreement.

**Thomas Wylde, LLC**

By: _____          December ___, 2014
    John Hanna, Manager

### EMPLOYEE'S ACKNOWLEDGMENT

I acknowledge that I have carefully read, understand and agree to the provisions of this Agreement.

_Paula Thomas_                         December ___, 2014
Paula Thomas by Andrew Apfelberg

Thomas Employment Agreement                                                  Page 5

84016-00001/2311645.3

## Addendum A— Confidentiality and Intellectual Property Agreement

~~You shall at all times ... observe ... with the policy and procedures of~~ Company then existing (whether oral or written) and including those pertaining to the performance of your duties, your duty of loyalty to Company, and dealing with confidential information of Company and its clients.

In the course of your work for the Company, you have gained access and will gain access to certain information of a confidential, proprietary or trade secret nature relating to the business of the Company and/or its clients, all of which information is collectively referred to in this Agreement as "Confidential Information." The Confidential Information includes any valuable, competitively sensitive data and information related to the Company's business (and/or that of its clients) that are not generally known or readily available to the Company's competitors, including without limitation: customer information such as pricing, names and addresses, preferences, habits and methods of contacting, servicing, and methods of soliciting customers, customer lists, business plans, methods of operation and financial information not generally known to the public, personnel files, computer codes and access information, service techniques, advertising and promotional ideas and strategy, unpublished designs, manufacturing techniques, sales forecasting and planning procedures, warehouse organization and technology, packaging procedures, importing and shipping techniques, and strategic or marketing information or plans, and other trade secrets, inventions, or pending patents. Information and documents constitute Confidential Information whether or not marked as "confidential" or "proprietary," and whether or not in electronic or documentary form, and whether or not the information or documents were created or obtained by you while performing services for the Company. Confidential Information shall not include items generally available to the public, those disclosed to the public by Company, general industry knowledge, expertise and contacts and those items independently developed by Employee without reference to Company's Confidential Information.

You covenant that in the future you will keep, strictly confidential all of the Confidential Information. You agree that you will not, directly or indirectly, use or disclose to any third party any of the Confidential Information, either during your employment or at any time thereafter, except as required in the course of performing services for the Company or with the express written consent of the Managing Member of the Company, or as otherwise required by law.

You further agree to return to the Company immediately upon resignation or termination of your employment all Confidential Information and any other property or documents belonging to the Company in your possession, custody or control, whether in hard copy or electronic form and together with all copies. You will not at any time, during or after your employment, directly or indirectly use the Confidential Information for your benefit or the benefit of any other person or entity other than the Company, nor will you publish or allow to be published or disclosed any Confidential Information to any person who is not an employee of the Company.

The non-disclosure obligations set forth in this Paragraph shall not be applicable to any information which: (i) the Company has authorized you in writing to publicly disclose, copy or use, to the extent of such authorization; (ii) is generally known or becomes part of the public domain through no fault of your own; (iii) is disclosed to the Company by third parties without restrictions

or disclosure; or (iv) is required to be disclosed in the context of any administrative or judicial proceedings; provided that, if you are requested or legally compelled to disclose any Confidential Information, you shall provide the Company with prompt written notice thereof.

You further acknowledge and agree that a breach of the provisions of this Agreement relating to Confidential Information would cause the Company to suffer irreparable damage that could not be adequately remedied by an action at law. Accordingly, you agree that the Company or its Affiliates shall be entitled to injunctive relief to enforce these provisions in an action filed in any court of competent jurisdiction, in addition to recovery of its reasonable attorneys' fees and costs and any other remedies provided by law.

Except with respect to "moral rights," in consideration for the compensation and benefits set forth in this Agreement you hereby irrevocably and unconditionally assign and agree to assign in the future to the Company all rights, title and interest in any intellectual property (trademarks, copyrights, patents), discoveries, inventions, works of authorship, improvements and innovations, and other information/data that relates to any of the Company's business operations, products or services (including all electronic data, other data, and records pertaining thereto), whether or not patentable, trademarkable and/or copyrightable material and whether or not reduced to writing, developed in whole or in part by you in the course of your employment with the Company, even if developed prior to the date of this Agreement (collectively, the "Work Product"). All Work Product shall be deemed to be and shall remain "a work made for hire" under the United States Copyright Act and the sole and exclusive property of the Company. To the extent that any such Work Product is ever determined not to fall within the scope of "works made for hire" or otherwise not to belong to the Company, you hereby irrevocably, absolutely and perpetually assign and agree to assign, transfer and convey to Company all of your right, title and interest worldwide in and to the Work Product.

If you have any rights in Work Product (other than "moral rights"), that cannot be assigned, you agree to unconditionally and irrevocably waive enforcement worldwide of such rights against Company and all claims and causes of action of any kind against Company with respect to such rights, and agree, at Company's sole expense and request, to consent to an join in any action to enforce such rights. If such rights are not waivable, you hereby grant to Company a sole, exclusive, royalty-free, irrevocable, perpetual, transferable, assignable, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to such non-waivable rights so that Company may fully exploit those retained rights in such Work Product, including to make, have made, import, modify, use, copy, perform, display, sell and otherwise distribute such rights in connection with its current and future business, in any medium or format, whether now know or later developed.

You agree to keep, maintain and make available to Company adequate and current records (in the form of notes, sketches, reports, correspondence, lists, specifications, or other information), in any form that may be required by Company, of all Confidential Information developed by you and all "works made for hire" and "Work Product" made by you during your employment by the Company, whether before or after you executed this Agreement. You must return to the Company upon resignation or termination of employment all Confidential Information and other property of the Company, whether in document or electronic form, together with all copies.

You further agree to execute and have notarized any additional documents reasonably requested by Company to effect or evidence the assignment described above and those documents reasonably requested by Company in order to apply for and obtain, in Company's name and for its benefit, copyrights, trademarks, . . . related to any of the Work Product and to transfer, effect, confirm, perfect, record, preserve, protect and enforce all right, title and interest transferred hereunder (collectively, "Supporting Documents"). If you fail or refuse to execute any Supporting Documents within thirty business days after receipt of written request, you hereby agree, for yourself and your successors and assigns, to the fullest extent permitted by law, that the Company is hereby irrevocably appointed as your attorney-in-fact with full authority to execute, verify and file any Supporting Documents requested by Company, and to perform all other acts necessary to effect, perfect or evidence the assignments set forth above. You hereby waive and quitclaim to Company any and all claims, of any nature whatsoever, which you now or may hereafter have for infringement of any proprietary rights in Work Product assigned hereunder to Company.

You acknowledge and agree that your obligations under this Addendum survive termination of this Agreement and/or your termination of employment with the Company for any reason.

I acknowledge that I have carefully read, understand and agree to the provisions of this Agreement.

Paula Thomas    by Andrew Apfelberg

Date: _____

## SCHEDULE 1

Activities That Do Not Constitute A Conflict Of Interest

Personal Stylist

Designer/stylist for hospitality, transportation, film, TV and music

# EXHIBIT "9"

## AMENDED AND RESTATED OPERATING AGREEMENT
## OF THOMAS WYLDE, LLC

This Amended and Restated Operating Agreement (the "Agreement") of THOMAS WYLDE, LLC, a limited liability company formed under the California Revised Uniform Limited Liability Company Act (the "Company"), is entered into as of December 22, 2014 by John Hanna, Jene Park, Doug Lee, Roger Kuo and Paula Thomas (each a "Member," and collectively the "Members").

The Articles of Organization of the Company were filed with the California Secretary of State on July 22, 2014 and have been adopted and approved by the Members. The Operating Agreement of Thomas Wylde ("July Agreement") was entered into concurrently therewith.

Contemporaneous herewith, Paula Thomas ("Paula") is making a capital contribution and being admitted as a Member. In connection therewith, the Company and Members desire to amend and restate the July Agreement which shall be replaced and superseded in its entirety by this Agreement.

The Members enter into this Agreement to memorialize the terms and conditions of governance of the Company, the conduct of its business, and their relative rights and obligations.

Now therefore, the parties agree as follows:

### ARTICLE I: DEFINITIONS

Capitalized terms used in this Agreement have the meanings specified in this Article, Exhibit C, or elsewhere in this Agreement, and when not so defined shall have the meanings set forth in Corporations Code § 17701.02.

1.1.    **"Act"** means the California Revised Uniform Limited Liability Company Act (Corporations Code §§ 17701.01-17713.13), including amendments from time to time.

1.2.    **"Affiliate"** of a Member or Manager means (i) any Person directly or indirectly, through one or more intermediaries, controlling, controlled by, or under common control with the Member or Manager or (ii) a family member of the Member or Manager. The term "control" (including the terms "controlled by" and "under common control with") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through membership, ownership of voting securities, by contract, or otherwise.

1.3.    **"Available Cash"** means all net revenues from the Company's operations, including net proceeds from all sales, re-financings, and other dispositions of Company property that the Members, by Vote of a Supermajority of Members, deem in excess of the amount reasonably necessary for the operating requirements of the Company, including debt reduction and Reserves.

1.4.    **"Capital Account"** shall mean the account maintained for a Member or Assignee pursuant to Section 2.1 of Exhibit C. Each Member's initial Capital Account balance as of the date of this Agreement is set forth in Exhibit A.

1.5.    **"Capital Contribution"** means a Member's capital contribution to the Company in exchange for Units.

1.6.    **"Cause"** shall mean, with respect to the Manager, any Officer of the Company, and any Executive Officer serving on the Company's Executive Committee, fraud, willful misconduct, gross negligence, breach of fiduciary duty or other gross misconduct with respect to a material matter relating to the affairs of the Company.

1.7.    **"Confidential Information"** means all trade secrets, "know-how," customer lists, pricing policies, operational methods, programs, and other business information of or relating to the Company.

1.8.    **"Corporations Code"** means the California Corporations Code.

1.9.    **"Electronic transmission by the Company"** and "electronic transmission to the Company" have the meanings set forth in Corporations Code § 17701.02(i)(1)-(2).

1.10.   **"Encumber"** means the act of creating or purporting to create an Encumbrance, whether or not perfected under applicable law.

1.11.   **"Encumbrance"** means, with respect to any Membership Interest, or any part of it, a mortgage, pledge, security interest, lien, proxy coupled with an interest (other than as contemplated in this Agreement), option, or preferential right to purchase.

1.12.   **"Executive Committee"** means the Company's Executive Committee, as described in Article V.

1.13.   **"Executive Officer"** means an Officer of the Company that serves on the Company's Executive Committee.

1.14.   **"Involuntary Transfer"** means, with respect to any Membership Interest, or any part of it, any Transfer or Encumbrance, whether by operation of law, under court order, foreclosure of a security interest, execution of a judgment or other legal process, or otherwise, including a purported transfer to or from a trustee in bankruptcy, receiver, or assignee for the benefit of creditors.

1.15.   **"IRC"** or **"Code"** means the Internal Revenue Code of 1986, as amended, and any successor provision.

1.16    **"Member"** means any of the five Members listed herein – John Hanna, Jene Park, Doug Lee, Roger Kuo and Paula – or a Person who subsequently acquires a Membership Interest

2

in the Company, as permitted under this Agreement, and who has not ceased to be a Member under Article VIII or for any other reason.

1.17.  "Membership Interest" means a Member's entire interest and rights in the Company, collectively, including the Member's economic rights, any right to Vote or participate in management, and any right to information concerning the business and affairs of the Company.

1.18.  "Net Profits" and "Net Loss" shall have the meaning set forth in Section 1.7 of Exhibit C attached hereto.

1.19.  "Notice" means a notice in writing required or permitted under this Agreement. A notice shall be deemed given or sent when deposited, as certified mail or for overnight delivery, postage and fees prepaid, in the United States mails; when delivered to Federal Express, United Parcel Service, DHL WorldWide Express, or Airborne Express, for overnight delivery, charges prepaid or charged to the sender's account; when personally delivered to the recipient; when transmitted by electronic transmission by or to the Company; or when delivered to the home or office of a recipient in the care of a person whom the deliverer has reason to believe shall promptly communicate the notice to the recipient.

Any correctly addressed notice that is refused, unclaimed, or undeliverable because of an act or omission of the party to be notified shall be deemed effective as of the first date that the notice was refused, unclaimed, or deemed undeliverable by the postal authorities, messenger, or overnight delivery service.

Any party may change its address, electronic mail address, or fax number by giving the Manager Notice of the change.

1.20.  "Person" means an individual, partnership, limited partnership, trust, estate, association, corporation, limited liability company, or other entity, whether domestic or foreign.

1.21.  "Proxy" means a written authorization signed or an electronic transmission authorized by a Member or the Member's attorney-in-fact giving another Person the power to exercise the voting rights of that Member. A Proxy may not be transmitted orally.

1.22.  "Regulations," "Reg," or "Treasury Reg" means the income tax regulations promulgated by the United States Department of the Treasury and published in the Federal Register for the purpose of interpreting and applying the provisions of the IRC, as those Regulations may be amended from time to time, including corresponding provisions of applicable successor regulations.

1.23.  "Reserves" means the aggregate of reserve accounts that the Members, by Vote of a Supermajority of Members, deem reasonably necessary to meet accrued or contingent liabilities of the Company, reasonably anticipated operating expenses, and working capital requirements.

3

1.24. "**Successor in Interest**" means a Transferee, a successor of a Person by merger or otherwise by operation of law, or a transferee of all or substantially all of the business or assets of a Person.

1.25. "**Supermajority of Members**" means a Member or Members whose aggregate Unit Percentage represents at least sixty-five percent (65%) of the Unit Percentages of all non-Defaulting Members.

1.26. "**Transfer**" means any sale, assignment, gift, Involuntary Transfer, Encumbrance, or other disposition of a Membership Interest or any part of a Membership Interest, directly or indirectly, other than an Encumbrance that is expressly permitted under this Agreement.

1.27. "**Unit(s)**" means the unit(s) of Membership Interest in the Company.

1.28. "**Unit Percentage**" means, with respect to a Member, the percentage obtained by dividing the total number of Units held by such Member by the total number of Units outstanding.

1.29. "**Vote**" means a written consent or approval, a ballot cast at a meeting, or a voice vote.

1.30. "**Voting Interest**" means, with respect to a Member, the right to Vote or participate in management and any right to information concerning the business and affairs of the Company provided under the Act, except as limited by the provisions of this Agreement. A Member's Voting Interest shall be directly proportional to that Member's Unit Percentage.

1.31. "**Writing**" includes any form of recorded message capable of comprehension by ordinary visual means, and when used to describe communications between the Company and its Members, "writing" shall include electronic transmissions by and to the Company as defined in Corporations Code §17701.02(i).

1.32. "**Written**" or "**in writing**" includes facsimile and other electronic communication authorized by the Corporations Code.

## ARTICLE II: ORGANIZATION

2.1. **Articles of Organization.** The Articles of Organization were filed with the California Secretary of State on July 22, 2014, File Number 201420310399.

2.2. **Company Name.** The name of the Company is Thomas Wylde, LLC. The business of the Company may be conducted under that name, or, in compliance with applicable laws, under any other name that the Manager deems appropriate.

4

2.3.   **Company Offices**. The principal executive office and mailing address of the Company shall be at 3231 S. La Cienega Blvd., Los Angeles, California 90016, or any other place or places determined by the Manager from time to time.

2.4.   **Company Agent**. The initial agent for service of process on the Company shall be David Schnider, Esq. whose street address is 3231 S. La Cienega Blvd., Los Angeles, California 90016. The Manager may from time to time change the Company's agent for service of process. If the agent ceases to act as such for any reason, the Manager shall promptly designate a replacement agent and notify the Secretary of State of the change.

2.5.   **Business**. The purpose of the Company is to (a) engage in any lawful act or activity for which limited liability companies may be organized under the Act and (b) do all things necessary, suitable or proper for the accomplishment of, or in the furtherance of the Company's participation in the luxury fashion industry.

2.6.   **Taxation**. The Members intend the Company to be a limited liability company under the Act, classified as a partnership for federal and state income tax purposes, to the maximum extent possible.

2.7.   **Term**. The term of existence of the Company shall commence on the date that the Articles of Organization were filed with the California Secretary of State, and shall continue until terminated by the provisions of this Agreement or as provided by law.

2.8.   **Members**.   The names and addresses (including fax numbers and email addresses) of the Members are as set forth in Exhibit B.

2.9.   **Managed by One Manager**. The Company shall be managed by one Manager, who shall initially be John Hanna, whose address is 3231 S. La Cienega Blvd., Los Angeles, California 90016, all as more particularly set forth in Section 5.1.

2.10.   **Consent of Spouse or Domestic Partner**. Each and every Member who is a natural person, and who is married or has entered into a domestic partnership under the laws of any jurisdiction, shall cause his or her spouse or domestic partner to execute and deliver a copy of the Consent of Spouse or Domestic Partner attached hereto as Exhibit A.

### ARTICLE III: CAPITAL AND CAPITAL CONTRIBUTIONS

3.1.   **Capital Contributions of the Members**. The capital structure of the Company shall consist of Units all of the same class with equal rights, except as otherwise provided in this Agreement. Units may only exist in positive, whole integer quantities and not in fractional amounts.

3.2   **Members' Initial Capital Contribution**. On or before the Effective Date, each Member has or shall contribute capital to the Company for the Units as set forth in Exhibit B, attached hereto, which shall thereafter constitute the Capital Contribution for each Member. The 110 Units issued to the Members constitute 100% of all Membership Interest in the Company.

5

Other than the initial Capital Contributions set forth in Exhibit B, no Member shall be required to make any additional Capital Contributions without such Member's approval.

3.3.    **Failure to Make Initial Capital Contributions.** If a Member fails to make the required Capital Contribution set forth in in Exhibit B, then the Manager shall provide written notice that such Member is in default of this Agreement (a "Defaulting Member"). On the occurrence of, and for the duration of, a Defaulting Member's default, the Defaulting Member shall forfeit all right to Vote the Defaulting Member's Voting Interest or otherwise participate in the business and affairs of the Company, and any and all provisions of this Agreement relating to Voting or written consent of the Members shall be implemented without including the Voting Interest of the Defaulting Member. A Defaulting Member's death, disability, or inability to make a required contribution does not relieve that Defaulting Member of its contribution obligations. On satisfaction of a Defaulting Member's obligations, that Member's Voting Interest shall be restored. In any event, any Defaulting Member shall indemnify and hold the Company and the other Members harmless from any loss, cost, or expense, including reasonable attorney fees caused by the failure to timely make a required Capital Contribution.

3.4.    **No Withdrawals.** A Member shall not be entitled to withdraw any part of the Member's Capital Contribution or to receive any distributions, whether of money or property, from the Company except as provided in this Agreement.

3.5.    **No Interest On Capital.** No interest shall be paid on Capital Contributions or on the balance of a Member's Capital Account.

3.6.    **Members and Manager Not Liable.** The Members and the Manager shall not be bound by, or be personally liable for, the expenses, liabilities, or obligations of the Company except as otherwise provided in the Act or in this Agreement. The Manager and the Company shall not take any action that would cause a Member to be personally liable for the Company's obligations without such Member's express written consent, which may be withheld or conditioned in the Member's sole and absolute discretion.

3.7    **Right of Participation.** Each Member shall have a right of first refusal to purchase such Member's pro-rata share (based on that Member's Unit Percentage) of any new Membership Interest issued by the Company on the same terms as the other purchaser(s) of such newly-issued Membership Interest. Within fifteen (15) days of receiving notice such new Membership Interest, Paula (and/or her designee) shall have the first opportunity to purchase some or all of any new Membership Interest issuance. Thereafter, within fifteen (15) days, the other Members shall have the second opportunity to purchase any remaining new Membership Interests. For purposes of clarification, the foregoing participation right is intended to give Paula (and/or her designee) the opportunity to increase her Member's Unit Percentage and, to the extent she does not desire to do so, then to be an anti-dilution right that would enable each Member to maintain that Member's Unit Percentage.

## ARTICLE IV: ALLOCATIONS AND DISTRIBUTIONS

84010-00001/2311042.2

4.1.    **Allocation**.  After giving effect to the special allocation provisions of Exhibit C attached hereto, Net Profits and Net Losses for any fiscal year shall be allocated, for Company book purposes and for tax purposes, to each Member in accordance with that Member's Unit Percentage.

4.2.    **Distributions**.  Distributions of Available Cash to the Members shall be made on a *pro rata* basis to the Members in accordance with their respective Unit Percentages.  By a Vote of Supermajority of Members, Members shall decide when Available Cash shall be distributed the Members.  All distributions of Available Cash shall be subject to maintaining the Company in a sound financial and cash position.

4.3.    **Tax Distribution**.  Notwithstanding Paragraph 4.2, and subject to any applicable law, the Manager shall distribute to each Member, within 75 days after the close of each fiscal year an amount equal to 50% of the Net Profits (and items of income and gain) for such fiscal year allocated to such Member, less the aggregate amount of prior Distributions by the Company to such Member during such fiscal year; provided that the Members, by Vote of a Supermajority of Members, may change the amount of such tax distribution.

## ARTICLE V: MANAGEMENT AND EXECUTIVE COMMITTEE

5.1.    **Managed by Manager**.  Subject to Sections 5.4 and 7.3, the business of the Company shall be managed by one Manager, who may also be a Member.  Except as otherwise set forth in this Agreement, all decisions concerning the management of the Company's business shall be made by the Manager.  The Manager shall also serve as the Chief Executive Officer ("CEO") of the Company.  The Manager shall have general supervision of the business and affairs of the Company, shall preside at all meetings of Members and the Executive Committee, and shall have any other powers and duties usually vested in a CEO.  The Manager may also provide for additional Officers of the Company from time to time and shall establish the powers, duties, and compensation of all other Company officers and employees.

5.2.    **Officers**.  Subject to Section 7.3 and 5.3(a), the Manager may, from time to time, but shall not be required to, designate or appoint one or more Officers of the Company, including without limitation, president, one or more vice presidents, a secretary, an assistant secretary, a treasurer and/or an assistant treasurer.  Such Officers may, but need not, be employees of the Company or Members of the Company.  Each appointed Officer shall hold such office until (a) his or her successor is appointed, (b) such Officer submits his or her resignation, or (c) such Officer is removed by the Manager (subject to Section 7.3).  All Officers of the Company shall perform his or her duties in good faith and with such degree of care, which an ordinarily prudent individual in a like position would use under similar circumstances.

5.3.    **Executive Committee**.  The Manager shall be assisted and advised by an Executive Committee, consisting of Company Officers designated herein as Executive Officers of the Company.   Executive Officers may, but need not be, employees of the Company or Members of the Company.

7

5.3.1. **Executive Officers.** Executive Officers shall have the duties, functions, and powers described herein. Each Executive Officer shall serve until he or she (a) submits his or her resignation, or (b) is removed by Vote of a Supermajority of Members. Each Executive Officer named below shall perform his or her duties in good faith and with such degree of care, which an ordinarily prudent individual in a like position would use under similar circumstances, and shall owe fiduciary duties of loyalty and care to the Company and the other Members.

(a)    **Chief Creative Officer and Creative Director.** The Chief Creative Officer and Creative Director ("CCOD") shall be in charge of the Company's creative design processes and product conception and shall have sole discretion over the creation and designs marketed by the Company. The CCOD shall also be the Chairperson of the Executive Committee. For so long as she is employed by the Company, the CCOD for the Company shall be Paula.

(b)    **Chief Operating Officer and Chief Commercial Officer.** The Chief Operating Officer ("COO") and Chief Commercial Officer ("CCO") shall be in charge of the Company's commercial strategy; development of merchandise and products; customer relations; and sales. The COO and CCO for the Company as of the Effective Date shall be Jene Park.

5.4.    **Manager's Powers and Limitations.** The Manager of the Company shall have all powers and authority provided by this Agreement and the Act. Notwithstanding the foregoing, the Manager shall not take any of the actions described in Section 7.3 unless it has been approved by the Members by Vote of a Supermajority of Members.

5.5.    **Compensation.** Subject to Section 7.3, the Manager shall be entitled to compensation for the Manager's services and reimbursement for all expenses reasonably incurred by the Manager in the performance of the Manager's duties.

5.6.    **Company Assets.** The Manager shall cause all assets of the Company, whether real or personal, to be held in the name of the Company.

5.7.    **Company Funds.** All funds of the Company shall be deposited in one or more accounts with one or more recognized financial institutions in the name of the Company, at locations determined by the Manager. Withdrawal from those accounts shall require only the signature of the Manager or any other person or persons as the Manager may designate.

5.8.    **Removal and Replacement of Manager.** The Manager shall serve until the earlier of: (a) the Manager's resignation, retirement, death, or disability, (b) the Manager's removal by Vote of a Supermajority of Members or (c) the Manager ceasing to be a Member of the Company. A new Manager shall be appointed by Vote of a Supermajority of Members.

## ARTICLE VI: ACCOUNTS AND ACCOUNTING

6.1.    **Books of Account.** Complete books of account of the Company's business, in which each Company transaction shall be fully and accurately entered, shall be kept at the Company's principal executive office and at other locations that the Manager shall determine from time to time, and shall be open to inspection and copying on reasonable Notice by any

54610-00001/2511042.2

Member or the Member's authorized representatives during normal business hours. The costs of inspection and copying shall be borne by the Member seeking inspection.

6.2.  **Accounting Method**. Financial books and records of the Company shall be kept based on the Manager's choice of accounting method. The financial statements of the Company shall be appropriate and adequate for the Company's business and for carrying out the provisions of this Agreement. The fiscal year of the Company shall be determined by the Manager.

6.3.  **Content of Books**.  At all times during the term of existence of the Company, and beyond that term, if reasonably necessary, the Company shall keep or cause to be kept the books of account referred to in Section 6.2, together with:

(a)  A current list of the full name and last known business or residence address of each Member, together with the Capital Contribution and the share in Profits and Losses of each Member;

(b)  A copy of the Articles of Organization, as amended;

(c)  Copies of the Company's federal, state, and local income tax or information returns and reports, if any, for the six most recent taxable years;

(d)  An original executed copy or counterparts of this Agreement, as amended;

(e)  Any powers of attorney under which the Articles of Organization or any amendments to said articles were executed;

(f)  Financial statements of the Company for the six most recent fiscal years; and

(g)  The books and records of the Company as they relate to the Company's internal affairs for the current and past four fiscal years.

(h)  If the Manager deems that any of the foregoing items shall be kept beyond the term of existence of the Company, the repository of those items shall be as designated by the Manager.

6.4.  **Financial Statements**. From time to time as determined by the Manager and at the end of each fiscal year, the books of the Company shall be closed and examined, statements reflecting the financial condition of the Company and its profits or losses shall be prepared, and a report about those matters shall be issued by the Company's accountants. Copies of the financial statements shall be given to all Members. In addition, all Members shall receive, not less frequently than at the end of each month, copies of such financial statements regarding the previous calendar month as may be prepared in the ordinary course of business by the Manager or accountants selected by the Manager. The Manager shall cause an annual report to be sent to each Member within 120 days after the end of the fiscal year of the Company. The annual report may be sent by electronic transmission by the Company and shall include:

9

(a)    A balance sheet, income statement, and a statement of cash flows of the Company for and as of the close of the fiscal year, and

(b)    A statement showing the Capital Account of each Member as of the close of the fiscal year and the distributions, if any, made to each Member during the fiscal year.

6.5.    **Tax Information.**  Within 90 days after the end of each taxable year of the Company, the Company shall send to each of the Members all information necessary for the Members to complete their federal and state income tax or information returns and a copy of the Company's federal, state, and local income tax or information returns for that year.

6.6.    **Tax Matters Partner.**  The Manager shall act as Tax Matters Partner of the Company under IRC § 6231(a)(7). The Tax Matters Partner is authorized to do the following:

(a)    Keep the Members informed of administrative and judicial proceedings for the adjustment of Company items (as defined in IRC § 6231(a)(3)) at the Company level, as required under IRC § 6223(g) and the implementing Regulations;

(b)    Enter into settlement agreements under IRC § 6224(c)(3) and applicable Regulations with the Internal Revenue Service or the Secretary of the Treasury (the Secretary) with respect to any tax audit or judicial review, in which agreement the Tax Matters Partner may expressly state that the agreement shall bind the other Members, except that the settlement agreement shall not bind any Member who (within the time prescribed under the IRC and Regulations) files a statement with the Secretary providing that the Tax Matters Partner shall not have the authority to enter into a settlement agreement on behalf of that Member;

(c)    On receipt of a notice of a final Company administrative adjustment, to file a petition for readjustment of the Company items with the Tax Court, the District Court of the United States for the district in which the Company's principal place of business is located, or the United States Court of Federal Claims, all as contemplated under IRC § 6226(a) and applicable Regulations;

(d)    File requests for administrative adjustment of Company items on Company tax returns under IRC § 6227(b) and applicable Regulations; and, to the extent those requests are not allowed in full, file a petition for adjustment with the Tax Court, the District Court of the United States for the district in which the Company's principal place of business is located, or the United States Court of Federal Claims, all as contemplated under IRC § 6228(a); and

(e)    Take any other action on behalf of the Members or the Company in connection with any administrative or judicial tax proceeding to the extent permitted by law or regulations, including retaining tax advisers (at the expense of the Company) to whom the Tax Matters Partner may delegate such rights and duties as deemed necessary and appropriate.

10

## ARTICLE VII: MEMBERSHIP AND UNITS

7.1    Membership Interest and Units

7.1.1    **Membership and Units.** There shall be only one class of Membership Interest and one class of Units. Members shall have the right and power to appoint, remove, and replace the Manager and Executive Officers of the Company as provided in this Agreement, and the right to Vote on all other matters with respect to which this Agreement or the Act requires or permits Member action. Each Member shall vote in proportion to the Member's then-existing Voting Interest.

7.1.2.    **Units.** The Company has issued 110 (One Hundred Ten) Units to the Members as set forth in Exhibit B.

7.2.    **Certificates.** All issuances, reissuances, exchanges, and other transactions in Units involving Members shall be recorded in a permanent ledger as part of the books and records of the Company. The Company may, but is not required to, issue certificates evidencing Units ("Unit Certificates") to Members of the Company. Once Unit Certificates have been issued, they shall continue to be issued as necessary to reflect current Units held by Members. Unit Certificates shall be in a form approved by the Manager, shall be manually signed by the Manager, and shall bear conspicuous legends evidencing the restrictions on Transfer and the purchase rights of the Units and Members set forth in this Agreement, including the following:

*THE UNITS REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO THE TERMS AND CONDITIONS OF THE OPERATING AGREEMENT OF THE COMPANY, AS AMENDED FROM TIME TO TIME. THE UNITS MAY NOT BE SOLD, TRANSFERRED, OR OTHERWISE DISPOSED OF EXCEPT IN ACCORDANCE WITH SUCH OPERATING AGREEMENT.*

*THE UNITS REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR ANY STATE SECURITIES LAWS. THE UNITS MAY NOT BE OFFERED, SOLD, ASSIGNED, PLEDGED OR OTHERWISE TRANSFERRED UNLESS REGISTERED OR QUALIFIED UNDER THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS, OR PURSUANT TO AN EXEMPTION THEREFROM AND THE COMPANY RECEIVES AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY AND ITS LEGAL COUNSEL THAT SUCH SALE, PLEDGE, ASSIGNMENT OR TRANSFER IS EXEMPT FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT.*

7.3.    **Acts Requiring Member Vote.** Except as otherwise provided in this Agreement or by the Act, all of the following acts shall require the consent by Vote of a Supermajority of Members:

11

(a)     Any act that would make it impossible to carry on the ordinary business of the Company;

(b)     Any confession of a judgment against the Company;

(c)     The dissolution of the Company:

(d)     The disposition, sale, transfer, assignment or license of all or a substantial part of the Company's assets not in the ordinary course of business;

(e)     The incurring of any debt not in the ordinary course of business;

(f)     A change in the nature of the principal business of the Company or establishment of new or diffusion product lines;

(g)     The filing of a petition in bankruptcy or entering into an assignment for the benefit of the Company's creditors;

(h)     The entering into, on behalf of the Company, of any transaction constituting (i) a "reorganization" within the meaning of Corporations Code §17711.01 or (ii) a sale, merger, or conversion of the Company;

(g)     The incurring of any contractual obligation or the making of any capital expenditure with a total cost of more than $500,000;

(h)     The issuance or redemption of any Membership Interest (including the terms thereof);

(i)     Making operating or liquidating distributions to Members;.

(j)     The Transfer of any Membership Interest (other than to a Permitted Transferee);

(k)     The admission of any new Member (other than a Permitted Transferee);

(l)     Instituting, settling, or compromising of any claim or litigation for more than $100,000;

(m)     Any transaction between the Company and a Member or an Affiliate of a Member or between the Company and a Manager or an Affiliate of a Manager;

(n)     Approval of annual budget and deviation of more than 10% for any line item in any previously-approved budget;

(o)     Paying any officer or employee more than $200,000 per year; and

12

(p)    incurring any debt secured by the assets of the Company and all amendments and modifications thereto.

7.4.    **Record Date**. The record date for determining the Members entitled to receive Notice of any meeting, to Vote, to receive any distribution, or to exercise any right in respect of any other lawful action, shall be the date set by the Manager; provided that the record date shall not be more than 60, or less than 10 calendar days before the date of the meeting and not more than 60 calendar days before any other action. In the absence of any action setting a record date, the record date shall be determined in accordance with Corporations Code § 17704.07(p).

7.5.    **Meetings**.

7.5.1.    **General**. Meetings of the Members may be called at any time by the Manager, Members representing more than 32% of the Unit Percentage, or any member of the Executive Committee, for the purpose of addressing any matters on which the Members may Vote. If a meeting of the Members is called by the Members or a member of the Executive Committee, Notice of the call shall be delivered to the Manager. Meetings may be held at the principal executive office of the Company or at any other location designated by the Manager. Following the call of a meeting, the Manager shall give Notice of the meeting not less than 10, nor more than 60, calendar days before the meeting date to all Members entitled to Vote at the meeting. The Notice shall state the place, date, and hour of the meeting, the means of electronic transmission by and to the Company or electronic video communication, if any, and the general nature of business to be transacted. No other business may be transacted at the meeting. A quorum at any meeting of Members shall consist of a Supermajority of Members, represented in person or by Proxy. The Members present at a duly called or held meeting at which a quorum is present may continue to transact business until adjournment, notwithstanding the withdrawal of a sufficient number of Members to leave less than a quorum, if the action taken, other than adjournment, is approved by the requisite Unit Percentage as specified in this Agreement or the Act.

7.5.2.    **Quorum**. A meeting of Members at which a quorum is present may be adjourned to another time or place and any business that might have been transacted at the original meeting may be transacted at the adjourned meeting. If a quorum is not present at an original meeting, Notice of the adjourned meeting shall be given to each Member of record entitled to Vote at the adjourned meeting.

7.5.3.    **Waiver of Notice**. The transactions of any meeting of Members, however called and noticed, and wherever held, shall be as valid as though consummated at a meeting duly held after regular call and notice if (a) a quorum is present at that meeting, either in person or by Proxy, and (b) either before or after the meeting, each of the Persons entitled to Vote, not present in person or by Proxy, signs either a written waiver of notice, a consent to the holding of the meeting, or an approval of the minutes of the meeting. Attendance of a Member at a meeting shall constitute waiver of notice, unless that Member objects, at the beginning of the meeting, to the transaction of any business on the ground that the meeting was not lawfully called or convened. Attendance at a meeting is not a waiver of any right to object to the consideration of

13

matters required to be described in the notice of the meeting and not so included, if the objection is expressly made at the meeting.

7.5.4.   <u>Proxies</u>.   At all meetings of Members, a Member may Vote in person or by Proxy.      Any Proxy shall be filed with the Manager before or at the time of the meeting, and may be filed by facsimile transmission to the Manager at the principal executive office of the Company or any other address given by the Manager to the Members for those purposes.

7.5.5.   <u>Video Attendance</u>.   A meeting of the Members may be conducted, in whole or in part, by electronic means (audio or video with audio) so long as the Company implements reasonable measures to provide participating Members a full opportunity to hear and be heard and otherwise concurrently participate in the meeting. The permanent record of any such meeting shall consist of the minutes of such meeting and/or the electronic recording of such meeting, if recorded..

7.5.6.   <u>Written Consent</u>.   Any action that may be taken at any meeting of the Members may be taken without a meeting if a consent in writing, setting forth the action so taken, is signed by Members having not less than the minimum Voting Interest that would be necessary to authorize or take that action at a meeting at which all Members entitled to Vote were present and voted. Prompt Notice of any action taken in such manner shall be given to all Members who have not consented in writing.

7.5.7.   <u>No Authority</u>.   No Member acting solely in the capacity of a Member is an agent of the Company, nor can any Member acting solely in the capacity of a Member bind the Company or execute any instrument on behalf of the Company. Each Member shall indemnify, defend, and hold harmless each other Member and the Company from and against any and all loss, cost, expense, liability, or damage arising from or out of any claim based on any action by the Member in contravention of this Section 7.6.

## ARTICLE VIII: TRANSFER OF UNITS

8.1.      <u>Dissociation</u>.   A Member may not dissociate from the Company without the written consents of all of the Members. Dissociation shall not release a Member from any obligations and liabilities under this Agreement accrued or incurred before the effective date of dissociation.

8.2.      <u>Transfers</u>.   Except as expressly provided in this Agreement, a Member shall not Transfer any Units in the Company, whether now owned or later acquired, unless a Supermajority of Members approves in writing the transferee's admission to the Company as a Member. No Member may Encumber or permit or suffer any Encumbrance of all or any part of the Member's Units unless the Encumbrance has been approved by the Members by Vote of a Supermajority of Members. Approval may be granted or withheld in the Members' sole discretion. Any Transfer or Encumbrance of a Membership Interest without the required approval shall be void. Notwithstanding the foregoing, (x) any Member may Transfer such Member's Membership Interest to (i) such Member's spouse (including domestic partner) or family member, (ii) a company wholly-owned by such Member and such Member's spouse and

14

family member(s), (iii) any revocable trust created for the benefit of the Member and/such Member's spouse and family member(s), (iv) another Member of the Company and (v) pursuant to Section 8.11 (each, a "Permitted Transfer"), (y) the Company's and other Members' right of first refusal set forth in this Agreement shall not apply to any such Permitted Transfer, and (z) the Members shall approve a person's admission as a substitute Member so long as such person obtained Units pursuant to a Permitted Transfer. Any Person that obtained Units pursuant to a Permitted Transfer may, in turn, transfer its Membership Interest to any Person that is a Permitted Transferee of the initial Member without triggering the Company's and other Members' right of first refusal.

8.3.    **No Release on Transfer.** A Member shall not be released from liabilities as a Member solely as a result of a Transfer of Units, both with respect to obligations to the Company and to third parties incurred before the Transfer.

8.4.    **Agreement Binds New Members.** Any new Person admitted to the Company as a Member shall hold one or more Units; if such Unit(s) were obtained by Transfer from a current or former Member, such Unit(s) shall remain subject to all the provisions of this Agreement that applied to the Member from whom such Unit(s) were obtained.

8.5    **Voluntary Lifetime Transfers.** No Member may make a Voluntary Lifetime Transfer (as defined below) except pursuant to this Section. Any Member who wishes to make a Voluntary Lifetime Transfer must promptly send a notice ("Member Notice") to the Company and each other Member. Such notice shall include a description of the proposed Transfer, the price and terms on which the Membership Interest is to be Transferred, the name, address (both home and office), and business or occupation of the proposed transferee, and any other facts that are, or would reasonably be deemed to be, material to the proposed Transfer. The Member wishing to make a Voluntary Lifetime Transfer shall be deemed to have offered to sell his or her Membership Interest to be transferred to the Company and the other Members as described in Section 8.7. A "Voluntary Lifetime Transfer" means any Transfer made during a Member's lifetime, which is not a Permitted Transfer or an Involuntary Lifetime Transfer (as defined in Section 8.6).

8.6    **Involuntary Lifetime Transfer.** Any Member who has any information that would reasonably lead him or her to expect that an Involuntary Lifetime Transfer is foreseeable, including bankruptcy, legal action, etc. must promptly send a Member Notice to the Company and each other Member. Such notice shall include a description of the expected Transfer, the name, address (both home and office), and business or occupation of the expected transferee, and any other facts that are, or would reasonably be deemed to be, material to the involuntary Transfer. The Member who may be making an Involuntary Lifetime Transfer shall be deemed to have offered to sell his or her Membership Interest otherwise to be transferred to the Company and the other Members as described in Section 8.7. An "Involuntary Lifetime transfer" means any Transfer made on account of a court order or otherwise by operation of law, including any Transfer incident to any bankruptcy, divorce or marital property settlement or any Transfer pursuant to applicable community property, quasi-community property or similar state law.

15

8.7    **Right of First Refusal of the Company and Non-Transferring Members.**

8.7.1    General.   Each Member shall be deemed to have offered to sell his or her Membership Interest proposed or forced to be Transferred in a Voluntary Lifetime Transfer or an Involuntary Lifetime Transfer ("Offered Membership Interest") to the Company and the other Members (i) at the price and payment terms offered by a proposed transferee set forth in the Member Notice or (ii) if there is no price or payment terms offered by a proposed transferee (e.g., in the case of an Involuntary Lifetime Transfer), at the Agreement Price (as defined below) and Agreement Terms (as defined below).

8.7.2.    **Company's Right.**   Within the later of (i) thirty (30) days following receipt of a Member Notice or (ii) ten (10) days following the determination of the Agreement Price, the Company shall send a written notice ("Company Notice") to the Members stating the portion of the Offered Membership Interest the Company wishes to purchase.

8.7.3.    **Members' Right.**   Unless the Company Notice specifies all of the Offered Membership Interest, within thirty (30) days after mailing of the Company Notice, each Member who desires to purchase a portion of the Offered Membership Interest shall give a written notice to the Company specifying the maximum portion of the Offered Membership Interest that the Member wishes to purchase. If the aggregate Offered Membership Interest to be purchased by the Members exceeds the total amount of the Offered Membership Interest, the Offered Membership Interest shall be allocated to the exercising Members based on their respective Unit Percentages.

8.7.4    **Remaining Offered Membership Interest.**   If the Company and the other Members do not agree to buy all of the Offered Membership Interest, any remaining Offered Membership Interest may be sold to a non-Member within thirty (30) days after the expiration of the Company's and Members' option period.   If such Transfer does not occur within thirty (30) days, the provisions of this Agreement will continue to apply to such Offered Membership Interest as if no such Transfer had been contemplated and no notice had been given. A Transfer is consummated when the Company has been given notice that legal title to the Membership Interest has been Transferred, subject to recordation on its books.

8.8    **Agreement Price.**   The Agreement Price will be the fair market value of the Membership Interest being Transferred and shall initially be determined in good faith by the Company.   If any Member objects to the Company's determination of the fair market value, the Company and the objecting Member shall attempt to jointly appoint a qualified appraiser.   If the parties cannot agree on a single appraiser, they shall each appoint one appraiser and the two appraisers appointed by the parties shall choose a third appraiser.   In the event that three appraisers are used, the Agreement Price shall be the average of the two closest fair market values proposed by the three appraisers.   The cost of appraisal shall be borne and paid by the objecting Member, unless the Company's proposed fair market value is at least twenty percent (20%) less than the Agreement Price determined by appraisal.   The determination of the appraiser(s) shall be final and binding.

16

8.9    **Agreement Terms**.

8.9.1    Installment Note. If there are no payment terms offered by a proposed transferee (e.g., in the case of an Involuntary Lifetime Transfer), unless the parties agree otherwise, twenty percent (20%) of the purchase price shall be paid within 30 days of the closing for the sale of the Offered Membership Interest and the balance of the purchase price will be paid pursuant to a promissory note equally amortized over four years, principal and interest payable in monthly installments, with interest at the prime rate quoted by the Company's main bank in effect on the date of the closing.

8.9.2    **Closing**. The purchase of the Offered Membership Interest pursuant to this Agreement will take place at a closing, held at 1:00 P.M. on the thirtieth (30th) day after the date on which the last option to buy is exercised or lapses, or after the last date on which a purchaser becomes obligated to buy, at the Company's primary place of business, or at any other place to which the parties agree. At the closing, the purchaser or purchasers will pay for the Offered Membership Interest in cash, by wire transfer or certified cashier's check, and/or promissory note, and the Company will change its books to indicate that the Offered Membership Interest has been Transferred. If the seller does not appear at the closing, then:

(a)    The purchaser or purchasers shall deposit the purchase price in full, or the first payment of same, by check (or other verifiable means) with an escrow agent;

(b)    The escrow agent shall deposit such funds with any bank with which the Company has a bank account on the date of the closing, to be paid to the seller as soon as is reasonably practicable, less an appropriate fee to the Company for administrative costs; and

(c)    The Company will adjust its transfer books to reflect that the Offered Membership Interest has been Transferred.

8.10    **Transfers at Death**. Upon the death of any Member, the surviving spouse or any family member of the deceased Member may receive such deceased Member's Membership Interest (without triggering the Company's and Members' right of first refusal with respect to such Transferred Membership Interest). If a deceased Member's proposed transferee is not a Permitted Transferee, such proposed Transfer shall be subject to the Company's and Members' right of first refusal described in section 8.7.

## ARTICLE IX: DISSOLUTION AND WINDING UP

9.1.    **Dissolution**. The Company shall be dissolved on the first to occur of the following events:

(a)    The Vote of a Supermajority of Members to dissolve the Company;

(b)    The sale or other disposition of substantially all of the Company's assets; or

17

(c)    Entry of a decree of judicial dissolution under Corporations Code § 17707.03.

9.2.    **Winding Up.**  On the dissolution of the Company, the Company shall engage in no further business other than that necessary to wind up the business and affairs of the Company. The Manager shall wind up the affairs of the Company, and shall give Notice of the commencement of winding up by mail to all known creditors and claimants against the Company whose addresses appear in the records of the Company. After paying or adequately providing for the payment of all known debts of the Company (except debts owing to Members), the remaining assets of the Company shall be distributed or applied in the following order:

(a)    To pay the expenses of liquidation;

(b)    To the establishment of reasonable reserves for contingent liabilities or obligations of the Company. On the determination that reserves are no longer necessary, they shall be distributed as provided in this Section 9.2;

(c)    To repay outstanding loans to Members. If there are insufficient funds to pay those loans in full, each Member shall be repaid in the ratio that the Member's loan, together with accrued and unpaid interest, bears to the total of all loans from Members, including all accrued and unpaid interest. Repayment shall first be credited to unpaid principal and the remainder shall be credited to accrued and unpaid interest; and

(d)    To the Members in accordance with their respective positive Capital Account balances.

9.3.    **No Recourse.**  Each Member shall look solely to the assets of the Company for the return of the Member's investment, and if Company property remaining after the payment or discharge of the Company's debts and liabilities is insufficient to return the investment of each Member, the Member shall have no recourse against any other Member or the Manager for indemnification, contribution, or reimbursement, except as specifically provided in this Agreement.

## ARTICLE X: CONFIDENTIALITY

10.1.    **Confidentiality.**  Each Member covenants with the Company and each other Member that for so long as a Member holds any Units in the Company, and for a two-year period following the Transfer of a Member's Units, whether voluntary, involuntary, by operation of law, or by reason of any provision of this Agreement, a Member shall not, directly or indirectly, through an Affiliate or otherwise use or disclose in any manner any Confidential Information.

10.2.    **Money Damages Inadequate.**  Each Member agrees that a breach of Section 10.1 shall result in irreparable damage and injury to the Company that no money damages could adequately compensate. If the Member breaches Section 10.1, in addition to all other remedies to which the Company may be entitled to, and notwithstanding the arbitration provisions of

18

Article XI, the Company shall be entitled to an injunction to enforce the provisions of this Agreement, to be issued by any court of competent jurisdiction. Each Member expressly waives any claim or defense that an adequate remedy at law exists for any such breach.

10.3.  **Reformation.**  If any provision of Section 10.1 is deemed to exceed the time or geographic limits or any other limitation imposed by applicable law in any jurisdiction, that provision shall be deemed reformed in that jurisdiction to the extent necessary to permit enforcement.

## ARTICLE XI: INDEMNIFICATION AND ARBITRATION

11.1.  **Indemnification.**  The Company shall indemnify any Person who was or is a party, or who is threatened to be made a party, to any legal proceeding by reason of the fact that the Person was or is a Member, Manager, Officer, Executive Officer, employee, or other agent of the Company against expenses including reasonable attorneys' fees, judgments, fines, settlements, and other amounts actually and reasonably incurred by that Person in connection with the proceeding, if (a) that Person acted in good faith and in a manner that the Person reasonably believed to be in the best interests of the Company, and (b) in the case of a criminal proceeding, the Person had no reasonable cause to believe that the Person's conduct was unlawful. The termination of any proceeding by judgment, order, settlement, conviction, or on a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Person did not act in good faith and in a manner that the Person reasonably believed to be in the best interests of the Company, or that the Person had reasonable cause to believe that the Person's conduct was unlawful.

11.2.  **Advancement of Expenses.**  Expenses of each Person indemnified under this Agreement actually and reasonably incurred in connection with the defense or settlement of a legal proceeding shall be paid by the Company in advance of the final disposition of that proceeding, on receipt of an undertaking by that Person to repay that amount unless it shall ultimately be determined that the Person is entitled to be indemnified by the Company.

11.3.  **Arbitration.**  **Any action to enforce or interpret this Agreement, or to resolve disputes relating in any way to (or arising out of) this Agreement or the Company among or between any of the Company, a current or former Member, or the current or a former Manager shall be settled by binding arbitration before a single arbitrator in accordance with the then-applicable Commercial Arbitration Rules of the American Arbitration Association. The place of arbitration shall be Los Angeles, California. The award of the arbitrator shall be final, binding, and conclusive on all parties. Judgment may be entered on any such award in any court of competent jurisdiction.**

## ARTICLE XII: GENERAL PROVISIONS

12.1.  **Integration.**  This Agreement constitutes the whole and entire agreement of the parties with respect to its subject matter, and it shall not be modified or amended in any respect except by a written instrument as described herein. No party is relying on any representations or

19

warranties not expressly contained in this Agreement. This Agreement replaces and supersedes all prior written and oral agreements by and among the Members and Manager or any of them.

12.2.  **Counterparts.**  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.  Executed counterparts of this Agreement may be delivered by facsimile transmission or in portable document format (PDF) by e-mail. The signatures in a facsimile or PDF data file shall have the same force and effect as an original.

12.3.  **Choice of Law.** This Agreement shall be construed and enforced under the laws of the State of California, without regard to the conflicts of law provisions thereof.

12.4.  **Severability.** If any provision of this Agreement is determined by any court or arbitrator of competent jurisdiction to be invalid, illegal, or unenforceable, that provision shall be severed and the remaining provisions of this Agreement shall remain in effect.

12.5  **Binding Effect.** This Agreement shall be binding on and inure to the benefit of the parties and their heirs, personal representatives, and permitted successors and assigns.

12.6.  **Representation.** Each party to this Agreement warrants and represents that it has had sufficient time to adequately consult with its own independent counsel prior to execution.

12.7.  **Additional Instruments.** The parties to this Agreement shall promptly execute and deliver any and all additional documents, instruments, notices, and other assurances, and shall do any and all other acts and things reasonably necessary in connection with the performance of their respective obligations under this Agreement and to carry out the intent of the parties.

12.8.  **Independent Activities.** Except as provided in this Agreement, no provision of this Agreement shall be construed to limit in any manner the Members or the Manager in the carrying on of their own respective businesses or activities.

12.9.  **Capacity and Authority.** Each Member represents and warrants to the other Members that he, she, or it has the capacity and authority to enter into this Agreement.

12.10.  **Interpretation.** The article, section, and subsection titles and headings in this Agreement are inserted as matters of convenience and for ease of reference only and shall be disregarded for all other purposes, including the construction or enforcement of this Agreement or any of its provisions.  Whenever used in this Agreement, the singular shall include the plural and the plural shall include the singular, and the neuter gender shall include the male and female as well as a trust, firm, company, or corporation, all as the context and meaning of this Agreement may require.

12.11.  **Time of the Essence.** Time is of the essence for every provision of this Agreement that specifies a time for performance.

12.12. **Exhibits.** The exhibits referenced herein are expressly incorporated into and made part of this Agreement.

12.13. **No Third Party Beneficiaries.** This Agreement is made solely for the benefit of the parties to this Agreement and their respective permitted successors and assigns, and there are no intended third-party beneficiaries.

12.14. **Amendment.** This Agreement may be amended only by the written approval of all of the Members.

## SECURITIES LAW REPRESENTATIONS

EACH MEMBER OR OTHER PERSON, BY EXECUTING THIS AGREEMENT, AND EVERY OTHER PERSON WHO EXECUTES THIS AGREEMENT OR OTHERWISE THEREAFTER BECOMES A MEMBER, HEREBY REPRESENTS AND WARRANTS TO THE COMPANY AND TO THE OTHER MEMBERS THAT HE, SHE, OR IT: (A) IS AWARE THAT THE ACQUISITION OF ITS UNITS IN THE COMPANY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR QUALIFIED UNDER THE SECURITIES LAWS OF ANY STATE, (B) IS ACQUIRING ITS UNITS IN THE COMPANY SOLELY FOR ITS OWN ACCOUNT AND NOT FOR THE ACCOUNT OF ANY OTHER PERSON, FOR INVESTMENT ONLY, AND NOT WITH A VIEW TO OR FOR SALE IN CONNECTION WITH ANY DISTRIBUTION OF SUCH UNITS, (C) UNDERSTANDS THAT THE SALE, PLEDGE, ASSIGNMENT OR OTHER TRANSFER OF ITS UNITS IN THE COMPANY IS LIMITED BY THIS AGREEMENT AND IN ANY EVENT MAY NOT BE EFFECTED UNLESS (I) THE TRANSFER IS REGISTERED AND QUALIFIED UNDER APPLICABLE SECURITIES LAWS, OR IS EFFECTED AS A NON-PUBLIC OFFERING THAT IS EXEMPT FROM THE REGISTRATION AND QUALIFICATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS, AND (II) THE PERSON ACQUIRING SUCH UNITS REPRESENTS AND WARRANTS TO THE COMPANY AND TO THE OTHER MEMBERS THAT SUCH PERSON IS ACQUIRING ITS UNITS IN THE COMPANY SOLELY FOR ITS OWN ACCOUNT AND NOT FOR THE ACCOUNT OF ANY OTHER PERSON, FOR INVESTMENT ONLY, AND NOT WITH A VIEW TO OR FOR SALE IN CONNECTION WITH ANY DISTRIBUTION OF SUCH UNITS, (D) HAS SUCH KNOWLEDGE AND EXPERIENCE IN FINANCIAL AND BUSINESS MATTERS THAT IT IS CAPABLE OF EVALUATING THE MERITS AND RISKS OF ACQUIRING ITS UNITS IN THE COMPANY, (E) ACKNOWLEDGES THAT THERE IS NO GUARANTEE THAT THE COMPANY WILL BE A FINANCIAL SUCCESS, AND IS ABLE TO BEAR THE ECONOMIC RISK OF THE LOSS OF ITS UNITS IN THE COMPANY, (F) CONFIRMS THAT THE COMPANY HAS NOT SOLICITED OR ADVERTISED THE UNITS IN ANY WAY, AND (G) ACKNOWLEDGES THAT THE COMPANY AND THE OTHER MEMBERS ARE RELYING ON THE FOREGOING REPRESENTATIONS.

84010-00001\2311042.2

IN WITNESS WHEREOF, the parties have executed or caused to be executed this Agreement on the day and year first written above.

_____
JOHN HANNA, Manager, Member, and Chief Executive Officer

_____
JENE PARK, Member, Chief Operations Officer and Chief Commercial Officer

_____
DOUG LEE, Member

_____
ROGER KUO, Member

_____
PAULA THOMAS, Member, Chief Creative Officer and Creative Director

22

## EXHIBIT A

## CONSENT OF SPOUSE OR DOMESTIC PARTNER

The undersigned is the spouse or registered domestic partner of _____ ("Member"), and acknowledges that he or she has read the foregoing Amended and Restated Operating Agreement of Thomas Wylde, LLC (the "Agreement") and understands its provisions. The undersigned is aware that, by the provisions of the Agreement, Member and the undersigned have consented to sell or transfer all Units in the Company, including any community property interest or quasi-community property interest therein, only in accordance with the terms and provisions of the Agreement. The undersigned expressly approves of and agrees to be bound by the provisions of the Agreement in its entirety, including, but not limited to, those provisions relating to the sales and transfers of Units and the restrictions on them. If the undersigned predeceases Member while Member owns any Units therein, the undersigned agrees not to devise or bequeath any community property interest or quasi-community property interest in such Units in contravention of the Agreement.

Date: _____

_____
Signature

_____
Name

23

84015-00001/2611042.2

## EXHIBIT B

## MEMBERS AND CAPITAL CONTRIBUTIONS

| Name | Contact Information | Capital Contributions and Due Dates | No. Units | Initial Capital Account Balance |
|---|---|---|---|---|
| John Hanna | 3231 S. La Cienega Blvd., Los Angeles, CA 90016 Fax: 310-559-5765 Email: john@thomaswylde.com | $700<br><br>December 15, 2014 | 14 | $700 |
| Jene Park | 3231 S. La Cienega Blvd., Los Angeles, CA 90016 Fax: 310-559-5765 Email: jene@thomaswylde.com | $900<br><br>December 15, 2014 | 18 | $900 |
| Roger Kuo | 18141 Irvine Blvd. Tustin, CA 92780 Fax: 714-237-9991 Email: roger@zther.com | $350<br><br>December 15, 2014 | 7 | $350 |
| Doug Lee | 18141 Irvine Blvd. Tustin, CA 92780 Fax: 714-237-9991 Email: dlee@lpdirect.com | $350<br><br>December 15 2014 | 7 | $350 |
| Paula Thomas | 2514 S. Toledo Ave. Palm Spring, CA 92264 Email: paulathomas@me.com<br><br>*With a copy to:*<br>*Andrew Apfelberg*<br>*Greenberg Glusker*<br>*1900 Avenue of the Stars*<br>*21st Floor*<br>*Los Angeles, CA 90067*<br>*Email: aapfelberg@ggfirm.com* | $3,200 + intellectual property and certain liabilities<br><br>December ___, 2014 | 64 | $3,200 |

84616-00001\2311642.2

## EXHIBIT C
## TAX PROVISIONS

### ARTICLE I: DEFINITIONS

1.1    **"Adjusted Capital Account Deficit"** means, with respect to any Member, the deficit balance, if any, in such Member's Capital Account as of the end of the relevant fiscal year, after giving effect to the following adjustments:

1.1.1    Credit to such Capital Account any amounts that such Member is obligated to restore pursuant to any provision of this Agreement or is deemed to be obligated to restore pursuant to the penultimate sentences of Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5);

1.1.2    Credit to such Capital Account the amount of the deductions and losses referable to any outstanding recourse liabilities of the Company owed to or guaranteed by such Member to the extent that no other Member bears any economic risk of loss and the amount of the deductions and losses referable to such Member's share (determined in accordance with the Member's Unit Percentage) of outstanding recourse liabilities owed by the Company to non-Members to the extent that no Member bears any economic risk of loss; and

1.1.3    Debit to such Capital Account the items described in Regulations Sections 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5), and 1.704-1(b)(2)(ii)(d)(6).

The foregoing definition of Adjusted Capital Account Deficit is intended to comply with the provisions of Regulations Section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

1.2    **"Code"** means the Internal Revenue Code of 1986, as amended from time to time, the provisions of succeeding law, and to the extent applicable, the Regulations.

1.3    **"Company Minimum Gain"** has the meaning ascribed to the term "Partnership Minimum Gain" in Regulations Section 1.704-2(d).

1.4    **"Member Nonrecourse Debt"** has the meaning ascribed to the term "Partner Nonrecourse Debt" in Regulations Section 1.704-2(b)(4).

1.5    **"Member Nonrecourse Debt Minimum Gain"** means an amount, with respect to each Member Nonrecourse Debt, equal to the Company Minimum Gain that would result if such Member Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Regulations Section 1.704-2(i)(3).

1.6    **"Member Nonrecourse Deductions"** means items of Company loss, deduction, or Code Section 705(a)(2)(B) expenditures that are attributable to Member Nonrecourse Debt or to other liabilities of the Company owed to or guaranteed by a Member to the extent that no other Member bears the economic risk of loss.

25

1.7    **"Net Profits"** and **"Net Losses"** means, for each fiscal year, an amount equal to the Company's taxable income or loss for such fiscal year, determined in accordance with Code Section 703(a) (for this purpose, all items of income, gain, loss, or deduction required to be stated separately pursuant to Code Section 703(a)(1) shall be included in taxable income or loss), with the following adjustments:

1.7.1    Any income of the Company that is exempt from federal income tax and not otherwise taken into account in computing Net Profits or Net Losses pursuant to this definition shall be added to such taxable income or loss;

1.7.2    Any expenditures of the Company described in Code Section 705(a)(2)(B) or treated as Code Section 705(a)(2)(B) expenditures pursuant to Regulations Section 1.704-1(b)(2)(iv)(i), and not otherwise taken into account in computing Net Profits or Net Losses pursuant to this definition shall be subtracted from such taxable income or loss;

1.7.3    In the event the book value of any Company asset is adjusted as a result of the application of Regulations Section 1.704-1(b)(2)(iv)(e) or Regulations Section 1.704-1(b)(2)(iv)(f), the amount of such adjustment shall be taken into account as gain or loss from the disposition of such asset for purposes of computing Net Profits or Net Losses;

1.7.4    Gain or loss resulting from any disposition of property with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the book value of the property disposed of, notwithstanding that the adjusted tax basis of such property differs from its book value;

1.7.5    In lieu of the depreciation, amortization, and other cost recovery deductions taken into account in computing such taxable income or loss, there shall be taken into account book depreciation, amortization, and other cost recovery deductions for such fiscal year, computed in accordance with Regulations Section 1.704-1(b)(2)(iv)(g); and

1.7.6    Notwithstanding any other provision of this Section 1.7, any items that are specially allocated pursuant to Sections 3.2 and 3.3 of this Exhibit C shall not be taken into account in computing Net Profits or Net Losses (the amounts of the items of Company income, gain, loss, or deduction available to be specially allocated pursuant to Sections 3.2 and 3.3 of this Exhibit C shall be determined by applying rules analogous to those set forth in Sections 1.7.1 through 1.7.5 above).

The foregoing definition of Net Profits and Net Losses is intended to comply with the provisions of Regulations Section 1.704-1(b) and shall be interpreted consistently therewith. In the event the Members, by Vote of a Supermajority of Members, determine that it is prudent to modify the manner in which Net Profits and Net Losses are computed in order to comply with such Regulations, the Members, by Vote of a Supermajority of Members, may make such modification.

1.8    **"Nonrecourse Deductions"** has the meaning set forth in Regulations Section 1.704-2(b)(1).

1.9    "**Nonrecourse Liability**" has the meaning set forth in Regulations Section 1.704-2(b)(3).

## ARTICLE II: CAPITAL ACCOUNT

2.1    **Capital Accounts**.  The Company shall establish an individual Capital Account for each Member.  The Company shall determine and maintain each Capital Account in accordance with Regulations Section 1.704-1(b)(2)(iv) and, in pursuance thereof, the following provisions shall apply:

2.1.1    To each Member's Capital Account there shall be credited such Member's Capital Contributions, such Member's allocated share of Net Profits and any items in the nature of income or gain that are specially allocated pursuant to Sections 3.2 and 3.3 of this Exhibit C, and the amount of any Company liabilities assumed by such Member or which are secured by any property distributed to such Member;

2.1.2    To each Member's Capital Account there shall be debited the amount of cash and the fair market value of any property distributed to such Member pursuant to any provision of this Agreement, such Member's allocated share of Net Losses and any items in the nature of expenses or losses that are specially allocated pursuant to Sections 3.2 and 3.3 of this Exhibit C, and the amount of any liabilities of such Member assumed by the Company or which are secured by any property contributed by such Member to the Company;

2.1.3    In the event all or a portion of a Membership Interest in the Company is transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the transferred Membership Interest; and

2.1.4    In determining the amount of any liability for purposes of Sections 2.1.1 and 2.1.2 of this Exhibit C, there shall be taken into account Code Section 752(c) and any other applicable provisions of the Code and Regulations.

The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Regulations Section 1.704-1(b), and shall be interpreted and applied in a manner consistent with such Regulations.  In the event the Members, by Vote of a Supermajority of Members, determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto, are computed in order to comply with such Regulations, the Members, by Vote of a Supermajority of Members, may make such modification.

## ARTICLE III: SPECIAL ALLOCATIONS

3.1    **Adjusted Capital Account Deficit**.  An allocation of Net Losses under Section 4.1 of the Agreement shall not be made to the extent it would create or increase an Adjusted Capital Account Deficit for a Member or Members at the end of any fiscal year.  Any Net Losses not allocated because of the preceding sentence shall be allocated to the other Member or Members in proportion to such Member's or Members' respective Unit Percentages; provided, however, that to the extent such allocation would create or increase an Adjusted

27

Capital Account Deficit for another Member or Members at the end of any fiscal year, such allocation shall be made to the remaining Member or Members in proportion to the respective Unit Percentages of such Member or Members.

### 3.2   Special Allocations.

3.2.1   **Member Nonrecourse Deductions.** Any Member Nonrecourse Deductions for any fiscal year shall be specially allocated to the Member who bears the economic risk of loss with respect to the Member Nonrecourse Debt or other liability to which such Member Nonrecourse Deductions are attributable in accordance with Regulations Section 1.704-2(i) and Regulations Section 1.704-1(b).

3.2.2   **Nonrecourse Deductions Referable to Liabilities Owed to Non-Members.** Any Nonrecourse Deductions for any fiscal year and any other deductions or losses for any fiscal year referable to a liability owed by the Company to a Person other than a Member to the extent that no Member bears the economic risk of loss shall be specially allocated to the Members in accordance with their Unit Percentages.

3.2.3   **Member Minimum Gain Chargeback.** Except as otherwise provided in Regulation Section 1.704-2(i)(4), notwithstanding any other provision of this Agreement, if there is a net decrease in Member Nonrecourse Debt Minimum Gain attributable to a Member Nonrecourse Debt during any fiscal year, each Member who has a share of the Member Nonrecourse Debt Minimum Gain attributable to such Member Nonrecourse Debt (which share shall be determined in accordance with Regulations Section 1.704-2(i)(5)) shall be specially allocated items of Company income and gain for such fiscal year (and, if necessary, subsequent fiscal years) in an amount equal to that portion of such Member's share of the net decrease in Member Nonrecourse Debt Minimum Gain attributable to such Member Nonrecourse Debt, determined in accordance with Regulations Section 1.704-2(i)(4). Allocations pursuant to the previous sentence shall be made in proportion to the amounts required to be allocated to each Member pursuant thereto. The items to be so allocated shall be determined in accordance with Regulations Section 1.704-2(i)(4) and 1.704-2(j)(2). This Section 3.2.3 is intended to comply with the minimum gain chargeback requirement contained in Regulations Section 1.704-2(i)(4) and shall be interpreted consistently therewith.

3.2.4   **Minimum Gain Chargeback.** Except as otherwise provided in Regulations Section 1.704-2(f), notwithstanding any other provision of this Agreement, if there is a net decrease in Company Minimum Gain during any fiscal year, each Member shall be specially allocated items of Company income and gain for such fiscal year (and, if necessary, subsequent fiscal years) in an amount equal to the portion of such Member's share of the net decrease in Company Minimum Gain which share of such net decrease shall be determined in accordance with Regulations Section 1.704-2(g)(2). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Member pursuant thereto. The items to be so allocated shall be determined in accordance with Regulations Sections 1.704-2(f)(6) and 1.704-2(j)(2). This Section 3.2.4 is intended to comply with the minimum gain chargeback requirement contained in Regulations Section 1.704-2(f) and shall be interpreted consistently therewith.

3.2.5  **Qualified Income Offset**.  In the event any Member unexpectedly
receives any adjustments, allocations, or distributions described in Regulations Section 1.704-
1(b)(2)(ii)(d)(4), (5), or (6) or any other event creates an Adjusted Capital Account Deficit, items
of Company income and gain shall be specially allocated to each such Member in an amount and
manner sufficient to eliminate the Adjusted Capital Account Deficit of such Member as quickly
as possible, provided that an allocation pursuant to this Section 3.2.5 shall be made only if and to
the extent that such Member would have an Adjusted Capital Account Deficit after all other
allocations provided for in this Agreement have been tentatively made as if this Section 3.2.5
were not in the Agreement.

3.3    **Curative Allocations**.  The allocations set forth in Sections 3.1 and 3.2 of this
Exhibit C (the "**Regulatory Allocations**") are intended to comply with certain requirements of
the Regulations.  It is the intent of the Members that, to the extent possible, all Regulatory
Allocations shall be offset either with other Regulatory Allocations or with special allocations of
other items of Company income, gain, loss, or deduction pursuant to this Section 3.3.  Therefore,
notwithstanding any other provision of the Agreement (other than the Regulatory Allocations),
the Members, by Vote of a Supermajority of Members, shall  make such offsetting special
allocations of Company income, gain, loss, or deduction in whatever manner they determine
appropriate so that, after such offsetting allocations are made, a Member's Capital Account
balance is, to the extent possible, equal to the Capital Account balance such Member would have
had if the Regulatory Allocations were not part of this Agreement and all Company items were
allocated pursuant to Section 4.1 of the Agreement.  In exercising their discretion under this
Section 3.3, the Members, by Vote of a Supermajority of Members, shall take into account any
future Regulatory Allocations under Sections 3.2.3 and 3.2.4 of this Exhibit C that, although not
yet made, are likely to offset other Regulatory Allocations previously made under Sections 3.2.1
and 3.2.2 of this Exhibit C.

3.4    **Code Section 704(c) Allocations**.  The allocations specified in this Agreement
shall govern the allocation of items to the Members for Code Section 704(b) book purposes, and
the allocation of items to the Members for tax purposes shall be in accordance with such book
allocations, except that solely for tax purposes and notwithstanding any other provision of this
Agreement: (i) Code Section 704(c) shall apply to the allocation of items of income, gain,
deduction, and loss related to contributed property having an adjusted federal income tax basis at
the time of contribution that differs from its fair market value; and (ii) Regulations
Section 1.704-1(b)(2)(iv)(f)(4) shall apply to the items of income, gain, deduction, and loss
related to property the book value of which is adjusted pursuant to Regulations Section 1.704-
1(b)(2)(iv)(f).

3.5    **Allocations in Respect of a Transferred Membership Interest**.  If any
Membership Interest is transferred, or is increased or decreased by reason of the admission of a
new Member or otherwise, during any fiscal year of the Company, each item of income, gain,
loss, deduction, or credit of the Company for such fiscal year shall be allocated among the
Members, as determined by the Members, by Vote of a Supermajority of Members, in
accordance with any method permitted by Code Section 706(d) and the Regulations promulgated
thereunder in order to take into account the Members' varying interests in the Company during
such fiscal year.

29

IN WITNESS WHEREOF, the parties have executed or caused to be executed this Agreement on the day and year first written above.

_____
JOHN HANNA, Manager, Member, and Chief Executive Officer

_____
JENE PARK, Member, Chief Operations Officer and Chief Commercial Officer

_____
DOUG LEE, Member

_____
ROGER KUO, Member

_____
PAULA THOMAS, Member, Chief Creative Officer and Creative Director

22

IN WITNESS WHEREOF, the parties have executed or caused to be executed this Agreement on the day and year first written above.

JOHN HANNA, Manager, Member, and Chief Executive Officer

JENE PARK, Member, Chief Operations Officer and Chief Commercial Officer

DOUG LEE, Member

ROGER KUO, Member

PAULA THOMAS, Member, Chief Creative Officer and Creative Director

22

IN WITNESS WHEREOF, the parties have executed or caused to be executed this Agreement on the day and year first written above.

_____
JOHN HANNA, Manager, Member, and Chief Executive Officer

_____
JENE PARK, Member, Chief Operations Officer and Chief Commercial Officer

_____
DOUG LEE, Member

_____
ROGER KUO, Member

_____
PAULA THOMAS, Member, Chief Creative Officer and Creative Director

22

IN WITNESS WHEREOF, the parties have executed or caused to be executed this
Agreement on the day and year first written above.

JOHN HANNA, Manager, Member, and Chief
Executive Officer

JENE PARK, Member, Chief Operations Officer
and Chief Commercial Officer

DOUG LEE, Member

ROGER KUO, Member

PAULA THOMAS, Member, Chief Creative
Officer and Creative Director

22

64016-00001/2311842.2

IN WITNESS WHEREOF, the parties have executed or caused to be executed this Agreement on the day and year first written above.

_____
JOHN HANNA, Manager, Member, and Chief Executive Officer

_____
JENE PARK, Member, Chief Operations Officer and Chief Commercial Officer

_____
DOUG LEE, Member

_____
ROGER KUO, Member

_____
PAULA THOMAS, Member, Chief Creative Officer and Creative Director

22

IN WITNESS WHEREOF, the parties have executed or caused to be executed this Agreement on the day and year first written above.

_____
JOHN HANNA, Manager, Member, and Chief
Executive Officer

_____
JENE PARK, Member, Chief Operations Officer
and Chief Commercial Officer

_____
DOUG LEE, Member

_____
ROGER KUO, Member

_____
PAULA THOMAS, Member, Chief Creative
Officer and Creative Director

22

IN WITNESS WHEREOF, the parties have executed or caused to be executed this Agreement on the day and year first written above.

_____
JOHN HANNA, Manager, Member, and Chief Executive Officer

_____
JENE PARK, Member, Chief Operations Officer and Chief Commercial Officer

_____
DOUG LEE, Member

_____
ROGER KUO, Member

_____
PAULA THOMAS, Member, Chief Creative Officer and Creative Director

22

IN WITNESS WHEREOF, the parties have executed or caused to be executed this Agreement on the day and year first written above.

JOHN HANNA, Manager, Member, and Chief Executive Officer

JENE PARK, Member, Chief Operations Officer and Chief Commercial Officer

DOUG LEE, Member

ROGER KUO, Member

PAULA THOMAS, Member, Chief Creative Officer and Creative Director

22

# EXHIBIT "10"

## AMENDED EXHIBIT B

### MEMBERS AND CAPITAL CONTRIBUTIONS
April 15, 2015

| Name | Contact Information | Capital Contributions and Due Dates | No. Units | Initial Capital Account Balance |
|---|---|---|---|---|
| John Hanna | 3231 S. La Cienega Blvd., Los Angeles, CA 90016 Fax: 310-559-5765 Email: john@thomaswylde.com | $700 December 15, 2014 | 14 | $700 |
| The Palliative, LLC | 12114 Dewey St., Los Angeles, CA 90066 Fax: 310-559-5765 Email: jene@thomaswylde.com | $900 December 15, 2014 | 18 | $900 |
| Stanley Ducks, LLC | 18141 Irvine Blvd. Tustin, CA 92780 Fax: 714-237-9991 Email: roger@zther.com | $350 December 15, 2014 | 7 | $350 |
| DSRB Group, LLC | 18141 Irvine Blvd. Tustin, CA 92780 Fax: 714-237-9991 Email: dlee@lpdirect.com | $350 December 15, 2014 | 7 | $350 |
| Paula Thomas | 2514 S. Toledo Ave. Palm Spring, CA 92264 Email: paulathomas@me.com *With a copy to: Andrew Apfelberg Greenberg Glusker 1900 Avenue of the Stars 21st Floor Los Angeles, CA 90067 Email: aapfelberg@ggfirm.com* | $3,200 + intellectual property and certain liabilities December 22, 2014 | 64 | $3,200 |
| Hillshore Investments | Calle 53 Este, Urbanización Marbella, Torre MMG, 2, Ciudad de Panamá, Panamá Attn: Eniluz Gonzalez, General Manager | $5,500,000 January 1, 2015 | 90 | $5,500,000 |

# EXHIBIT "11"

**PAULA THOMAS**

| Month | Gross Amount Paid | |
|-------|------------------:|---|
| Jul-14 | 25,000.00 | Base on annual pay of $300K |
| Aug-14 | 25,000.00 | |
| Sep-14 | 25,000.00 | |
| Oct-14 | 25,000.00 | |
| Nov-14 | 25,000.00 | |
| Dec-14 | 25,000.00 | |
| | 150,000.00 | Total 2014 |
| | | |
| Jan-15 | 25,000.00 | |
| Feb-15 | 25,000.00 | |
| Mar-15 | 25,000.00 | |
| Apr-15 | 16,666.67 | 1/3 paycut effected - $200K/pa |
| May-15 | - | |
| Jun-15 | - | |
| Jul-15 | - | |
| Aug-15 | - | |
| Sep-15 | - | |
| | 91,666.67 | Total 2015 |

JFNF PARK

| Month | Gross Amount Paid | |
|---|---|---|
| Jul-14 | 18,333.33 | Base on annual pay of $220K |
| Aug-14 | 18,333.33 | |
| Sep-14 | 18,333.33 | |
| Oct-14 | 18,333.33 | |
| Nov-14 | 18,333.33 | |
| Dec-14 | 18,333.33 | |
| | 109,999.98 | Total 2014 |
| | | |
| Jan-15 | 18,333.33 | |
| Feb-15 | 18,333.33 | |
| Mar-15 | 18,333.33 | |
| Apr-15 | 12,500.00 | 1/3 paycut effected - $150K/pa |
| May-15 | 12,500.00 | |
| Jun-15 | 12,500.00 | |
| Jul-15 | 12,500.00 | |
| Aug-15 | 12,500.00 | |
| Sep-15 | 12,500.00 | |
| | 129,999.99 | Total 2015 |

JOHN HANNA

| Month | Gross Amount Paid | |
|---|---|---|
| Jul-14 | 24,583.33 | Base on annual pay of $295K |
| Aug-14 | 24,583.33 | |
| Sep-14 | 24,583.33 | |
| Oct-14 | 24,583.33 | |
| Nov-14 | 24,583.33 | |
| Dec-14 | 24,583.33 | |
| | 147,499.98 | Total 2014 |
| | | |
| Jan-15 | 24,583.33 | |
| Feb-15 | 24,583.33 | |
| Mar-15 | 24,583.33 | |
| Apr-15 | 16,667.00 | 1/3 paycut effected - $200K/pa |
| May-15 | 16,667.00 | |
| Jun-15 | 16,667.00 | |
| Jul-15 | 16,667.00 | |
| Aug-15 | 16,667.00 | |
| Sep-15 | 16,667.00 | |
| | 173,751.99 | Total 2015 |

# EXHIBIT "12"

**AMENDED EXHIBIT B**

## MEMBERS AND CAPITAL CONTRIBUTIONS
April 15, 2015

| Name | Contact Information | Capital Contributions and Due Dates | No. Units | Initial Capital Account Balance |
|---|---|---|---|---|
| John Hanna | 3231 S. La Cienega Blvd., Los Angeles, CA 90016 Fax: 310-559-5765 Email: john@thomaswylde.com | $700 December 15, 2014 | 14 | $700 |
| The Palliative, LLC | 12114 Dewey St., Los Angeles, CA 90066 Fax: 310-559-5765 Email: jene@thomaswylde.com | $900 December 15, 2014 | 18 | $900 |
| Stanley Ducks, LLC | 18141 Irvine Blvd. Tustin, CA 92780 Fax: 714-237-9991 Email: roger@zther.com | $350 December 15, 2014 | 7 | $350 |
| DSRB Group, LLC | 18141 Irvine Blvd. Tustin, CA 92780 Fax: 714-237-9991 Email: dlee@lpdirect.com | $350 December 15, 2014 | 7 | $350 |
| Paula Thomas | 2514 S. Toledo Ave. Palm Spring, CA 92264 Email: paulathomas@me.com  *With a copy to: Andrew Apfelberg Greenberg Glusker 1900 Avenue of the Stars 21st Floor Los Angeles, CA 90067 Email: aapfelberg@ggfirm.com* | $3,200 + intellectual property and certain liabilities December 22, 2014 | 64 | $3,200 |
| Hillshore Investments | Calle 53 Este, Urbanización Marbella, Torre MMG, 2, Ciudad de Panamá, Panamá Attn: Eniluz Gonzalez, General Manager | $5,500,000 January 1, 2015 | 90 | $5,500,000 |

# EXHIBIT "13"

Kyu Hong Kim, CPA, Inc.
**3435 Wilshire Blvd Ste 1970**
**Los Angeles, CA 90010-1938**
213-381-3557

November 9, 2016

**CONFIDENTIAL**

THOMAS WYLDE LLC
235 W 31ST ST
LOS ANGELES, CA 90007

Dear :

We have prepared the enclosed amended returns from information provided by you without
verification or audit. We suggest that you examine these returns carefully to fully acquaint
yourself with all items contained therein to ensure that there are no omissions or misstatements.

**Federal Filing Instructions**

Your amended 2015 Form 1065 shows no balance due.

Your amended return is being filed electronically and is not required to be mailed. If you mail a
paper copy of Form 1065 to the IRS it will delay processing of the return. The electronically filed
return is not complete without a signature. A limited liability company member should sign and
date Form 8879-PE, IRS *e-file* Signature Authorization for Form 1065. The form must be signed
and returned before the electronic file can be transmitted to the IRS.

Mail the signed Form 8879-PE as soon as possible to:

Kyu Hong Kim, CPA, Inc.
3435 Wilshire Blvd Ste 1970
Los Angeles, CA 90010-1938

**California Filing Instructions**

Your amended California 2015 Form 568 shows no balance due.

Your amended return is being filed electronically and is not required to be mailed. If you mail a
paper copy of Form 568 to the California Franchise Tax Board it will delay processing of your
return. The electronically filed return is not complete without your signature. A limited liability
company member should sign and date Form 8453-LLC, California e-file Return Authorization
for Limited Liability Companies. The form must be signed and returned before the electronic file
can be transmitted to California Franchise Tax Board.

Mail signed Form 8453-LLC as soon as possible to:

Kyu Hong Kim, CPA, Inc.
3435 Wilshire Blvd Ste 1970
Los Angeles, CA 90010-1938

Also enclosed is any material you furnished for use in preparing the returns. If the returns are examined, requests may be made for supporting documentation. Therefore, we recommend that you retain all pertinent records for at least seven years.

In order that we may properly advise you of tax considerations, please keep us informed of any significant changes in your financial affairs or of any correspondence received from taxing authorities.

If you have any questions, or if we can be of assistance in any way, please call.

Sincerely,

Kyu Hong Kim, CPA, Inc.

**Form 1065X**

**Amended Return or Administrative Adjustment Request (AAR)**

(For use by filers of Forms 1065, 1065-B, and 1066)

Department of the Treasury
Internal Revenue Service

▶ See separate instructions.

For tax year ending
▶ _____
(Enter month and year)

| Please Type or Print | Name | Employer identification number |
|---|---|---|
| | THOMAS WYLDE LLC | 47-1444612 |
| | Number, street, and room or suite no. If a P.O. box, see instructions | |
| | ___ N ____ __ | |
| | City or town, state, and ZIP code   LOS ANGELES   CA 90007 | Telephone number (optional) |

Enter name and address used on original return (if same as above, write "Same")

Same

Internal Revenue Service Center
where original return was filed ▶    Ogden, UT 84201-0011

## TEFRA/NonTEFRA Determination

**A** Has the partnership made an election to be treated as an electing large partnership (ELP) under the provisions of section 775?  ☐ Yes  ☒ No

If "Yes," the partnership is not subject to TEFRA. Enter the date of the election ▶ _____ , go to Item E, and check the "Not subject to TEFRA" box. Do not complete Items B through D.

You must determine if the partnership is subject to the rules for consolidated audit proceedings (TEFRA proceedings) under sections 6221 through 6234. See instructions for details.

**B** Did the partnership have 10 or fewer partners at all times during the tax year? (Note. A husband and wife are considered one partner for TEFRA purposes.)  ☒ Yes  ☐ No

**C** At all times during the partnership's tax year, were all partners U.S. citizens, resident aliens, C corporations, or estates of deceased partners?  ☐ Yes  ☒ No

If the answers to questions B and C are "Yes," the partnership is not subject to TEFRA proceedings. A partnership that is not subject to TEFRA cannot file an Administrative Adjustment Request. See partnership instructions for details.

**D** If the partnership is not otherwise subject to TEFRA, has the partnership filed Form 8893, Election of Partnership Level Tax Treatment, or its equivalent, to make an election to be treated as a TEFRA partnership?  ☐ Yes  ☒ No

If the answer to question D is "Yes," enter the tax year that the election to be treated as a TEFRA partnership was originally filed with the partnership return ▶

**E** The partnership is  ☒ Subject to TEFRA.  ☐ Not subject to TEFRA.

**F** Check the applicable box (see instructions):  ☐ Amended Return  ☐ Administrative Adjustment Request (AAR)

**G** If you are a Tax Matters Partner (TMP) or a Partner With Authority (PWA) filing an AAR on behalf of the pass-through entity, are you requesting substituted return treatment? (see instructions)  ☐ Yes  ☒ No

**H** Check the applicable box to identify the type of pass-through entity:  ☒ Partnership  ☐ Electing Large Partnership (ELP)
☐ Real Estate Mortgage Investment Conduit (REMIC)

**I** Partnerships and ELPs, enter the number of Schedules K-1 being filed with this return . . . . . . . . . . . . ▶  6

**Fill in applicable items and use Part III to explain any changes**

| Part I | Amended or Administrative Adjustment Request (AAR) Items for Partnerships Filing Form 1065 Only (ELPs and REMICs, use Part II) | | (a) As originally reported on Schedule K or as previously adjusted | (b) Net change — increase or (decrease) — explain in Part III | (c) Correct amount |
|---|---|---|---|---|---|
| 1 | Ordinary business income (loss) | 1 | -4,613,383 | 0 | -4,613,383 |
| 2 | Net rental real estate income (loss) | 2 | | | |
| 3 | Other net rental income (loss) (see instructions) | 3 | | | |
| 4 | Guaranteed payments | 4 | | | |
| 5 | Interest income | 5 | | | |
| 6a | Ordinary dividends | 6a | | | |
| b | Qualified dividends | 6b | | | |
| 7 | Royalties | 7 | | | |
| 8 | Net short-term capital gain (loss) | 8 | | | |
| 9a | Net long-term capital gain (loss) | 9a | | | |
| b | Collectibles (28%) gain (loss) | 9b | | | |
| c | Unrecaptured section 1250 gain (see instructions) | 9c | | | |
| 10 | Net section 1231 gain (loss) | 10 | | | |
| 11 | Other income (loss) (see instructions) | 11 | | | |

*Income (Loss)* column label appears along left margin.

For Paperwork Reduction Act Notice, see instructions

Form **1065X**

DAA

| | | | | | |
|---|---|---|---|---|---|
| **Deductions** | 12 | Section 179 deduction | 12 | | |
| | 13a | Contributions | 13a | 2,400 | 0 | 2,400 |
| | b | Investment interest expense | 13b | | |
| | c | Section 59(e) expenditures | 13c | | |
| | d | Other deductions (see instructions) | 13d | | |
| **Self-Employment** | 14a | Net earnings (loss) from self-employment | 14a | | |
| | b | Gross farming or fishing income | 14b | | |
| | c | Gross nonfarm income | 14c | | |
| **Credits** | 15a | Low-income housing credit (section 42(j)(5)) | 15a | | |
| | b | Low-income housing credit (other) | 15b | | |
| | c | Qualified rehabilitation expenditures (rental real estate) | 15c | | |
| | d | Other rental real estate credits (see instructions) | 15d | | |
| | e | Other rental credits (see instructions) | 15e | | |
| | f | Other credits (see instructions) | 15f | | |
| **Foreign Transactions** | 16a | Name of country or U.S. possession ▶ | | | |
| | b | Gross income from all sources | 16b | | |
| | c | Gross income sourced at partner level | 16c | | |
| | d | Foreign gross income sourced at partnership level passive category | 16d | | |
| | e | Foreign gross income sourced at partnership level general category | 16e | | |
| | f | Foreign gross income sourced at partnership level other | 16f | | |
| | g | Deductions allocated and apportioned at partner level interest expense | 16g | | |
| | h | Deductions allocated and apportioned at partner level other | 16h | | |
| | i | Deductions allocated and apportioned at partnership level to foreign source income passive category | 16i | | |
| | j | Deductions allocated and apportioned at partnership level to foreign source income general category | 16j | | |
| | k | Deductions allocated and apportioned at partnership level to foreign source income other | 16k | | |
| | l | Total foreign taxes (check one) ▶ Paid ☐ Accrued ☐ | 16l | | |
| | m | Reduction in taxes available for credit (see instructions) | 16m | | |
| | n | Other foreign tax information (see instructions) | 16n | | |
| **Alternative Minimum Tax (AMT) Items** | 17a | Post-1986 depreciation adjustment | 17a | | |
| | b | Adjusted gain or loss | 17b | | |
| | c | Depletion (other than oil or gas) | 17c | | |
| | d | Oil, gas, and geothermal properties—gross income | 17d | | |
| | e | Oil, gas, and geothermal properties—deductions | 17e | | |
| | f | Other AMT items (attach statement) | 17f | | |
| **Other Information** | 18a | Tax-exempt interest income | 18a | | |
| | b | Other tax-exempt income | 18b | | |
| | c | Nondeductible expenses | 18c | 48,960 | 0 | 48,960 |
| | 19a | Distributions of cash and marketable securities | 19a | | |
| | b | Distributions of other property | 19b | | |
| | 20a | Investment income | 20a | | |
| | b | Investment expenses | 20b | | |
| | c | Other items and amounts (see instructions) | 20c | | |

**Note. Amended Schedules K-1:** File amended Schedules K-1 with Form 1065X. If the partnership is filing Form 1065X for an administrative adjustment request (AAR), please inform the partners receiving the amended Schedules K-1 that the partnership is filing the AAR. If the partnership is not subject to the rules for consolidated audit proceedings (TEFRA proceedings) under sections 6221 through 6234, the partnership cannot file an AAR and instead must furnish the amended Schedules K-1 to its partners. The partners must then file their own amended returns (see instructions).

DAA

1065X

Amended or Administrative Adjustment Request (AAR) Items for ELPs and REMICs Only

| (a) Description of Item Being Amended or Adjusted (see instructions) | | (b) As originally reported or as previously adjusted | (c) Net change — increase or (decrease) — explain in Part II | (d) Correct amount |
|---|---|---|---|---|
| 1 | 1 | | | |
| 2 | 2 | | | |
| 3 | 3 | | | |
| 4 | 4 | | | |
| 5 | 5 | | | |

## Tax and Payments (see instructions)

| | | | |
|---|---|---|---|
| 6 ELPs ONLY: Tax and other payments | 6 | | |
| 7 REMICs ONLY: Tax on net income from prohibited transactions | 7 | | |
| 8 REMICs ONLY: Tax on net income from foreclosure property | 8 | | |
| 9 REMICs ONLY: Tax on contributions after the startup day | 9 | | |
| 10 Total tax | 10 | | |
| 11 Tax paid with Form 7004 | 11 | | |
| 12 Tax paid with (or after) the filing of the original return | | 12 | |
| 13 Add lines 11 and 12, column (d) | | 13 | |
| 14 Overpayment, if any, as shown on original return or as later adjusted | | 14 | |
| 15 Subtract line 14 from line 13 | | 15 | |

## Tax Due or Overpayments (see instructions)

| | | |
|---|---|---|
| 16 Tax Due. Subtract line 15 from line 10, column (d). For details on how to pay, see instructions | 16 | |
| 17 Overpayment. Subtract line 10, column (d), from line 15 | 17 | |

**Note.** Amended Schedules K-1 or Schedules Q. File amended Schedules K-1 or Schedules Q with Form 1065X. If the ELP or REMIC is filing Form 1065X for an administrative adjustment request (AAR), do not furnish the amended Schedules K-1 or Schedules Q to the partners or residual interest holders. If the REMIC is not filing for an AAR and is not subject to the rules for consolidated audit proceedings under sections 6221 through 6231, the REMIC must furnish the amended Schedules Q to its residual interest holders. See instructions for details.

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ Signature of general partner, limited liability company member manager, or authorized individual     Date     ▶ Title

| **Paid Preparer Use Only** | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | Kyu Hong Kim | | | | P00288359 |
| | Firm's name ▶ Kyu Hong Kim, CPA, Inc. | | | Firm's EIN ▶ | 20-2861494 |
| | Firm's address ▶ 3435 Wilshire Blvd Ste 1970 Los Angeles, CA     90010-1938 | | | Phone no. | 213-381-3557 |

Form **1065X** (1-2012)

DAA

**Part III** Explanation of Changes to Items in Part I and Part II. Enter the line number from Part I or Part II for the items you are changing, and give the reason for each change. For partnerships, show the box number and code used to report the item on Schedule K-1. Show any computation in detail. Also, see What To Attach in the instructions.

If this amended return or AAR is reporting any change in the allocation of the partnership's or REMIC's income, gain, loss, deduction, or credit among its partners or residual interest holders, see Changes in Allocation in the instructions, and check ▶ ☐

This amended return is to correct only partners' share of profit and capital. Partners' share of loss is same as original return. Since the taxpayer made loss in current year, change in partners' share of profit and capital will not affect partner's share of current year income, deductions, credits, and other items in Part III of Schedule K-1.

Form **1065X** (1-2013)

DAA

# Form 1065

Department of the Treasury
Internal Revenue Service

## U.S. Return of Partnership Income

For calendar year 2015, or tax year beginning _____, ending _____
► Information about Form 1065 and its separate instructions is at www.irs.gov/form1065.

OMB No. 1545-0123

**2015**

| | |
|---|---|
| **A** Principal business activity | Name of partnership |
| MANUFACTURIN | **Type** THOMAS WYLIE LLC |
| **B** Principal product or service | **Print** |
| APPAREL | 235 W 31ST ST |
| **C** Business code number | City or town, state or province, country, and ZIP or foreign postal code |
| 315990 | LOS ANGELES        CA 90007 |

**D** Employer identification number: 4~-1443612

**E** Date business started: 07/22/2014

**F** Total assets (see the instructions) $ 6,292,703 See Statement 1

**G** Check applicable boxes: (1) ☐ Initial return  (2) ☐ Final return  (3) ☐ Name change  (4) ☐ Address change  (5) ☒ Amended return
(6) ☐ Technical termination - also check (1) or (2)

**H** Check accounting method: (1) ☐ Cash  (2) ☒ Accrual  (3) ☐ Other (specify) ►

**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ►     6

**J** Check if Schedules C and M-3 are attached ................................................................. ☐

Caution. Include only trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.

### Income

| | | | |
|---|---|---|---|
| 1a | Gross receipts or sales | 1a | 3,973,781 |
| b | Returns and allowances | 1b | |
| c | Balance. Subtract line 1b from line 1a | 1c | 3,973,781 |
| 2 | Cost of goods sold (attach Form 1125-A) | 2 | 1,932,841 |
| 3 | Gross profit. Subtract line 2 from line 1c | 3 | 2,038,940 |
| 4 | Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) | 4 | |
| 5 | Net farm profit (loss) (attach Schedule F (Form 1040)) | 5 | |
| 6 | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | 6 | |
| 7 | Other income (loss) (attach statement)                 See Statement 2 | 7 | 77,661 |
| 8 | Total income (loss). Combine lines 3 through 7 | 8 | 2,116,601 |

### Deductions (see the instructions for limitations)

| | | | |
|---|---|---|---|
| 9 | Salaries and wages (other than to partners) (less employment credits) | 9 | 1,492,031 |
| 10 | Guaranteed payments to partners | 10 | |
| 11 | Repairs and maintenance | 11 | 33,607 |
| 12 | Bad debts | 12 | |
| 13 | Rent | 13 | 375,439 |
| 14 | Taxes and licenses | 14 | 8,265 |
| 15 | Interest                             See Statement 3 | 15 | 200,000 |
| 16a | Depreciation (if required, attach Form 4562) | 16a | 15,295 |
| b | Less depreciation reported on Form 1125-A and elsewhere on return | 16b | |
| | | 16c | 15,295 |
| 17 | Depletion (Do not deduct oil and gas depletion.) | 17 | |
| 18 | Retirement plans, etc. | 18 | |
| 19 | Employee benefit programs | 19 | 67,230 |
| 20 | Other deductions (attach statement)                See Statement 4 | 20 | 4,538,117 |
| 21 | Total deductions. Add the amounts shown in the far right column for lines 9 through 20 | 21 | 6,729,984 |
| 22 | Ordinary business income (loss). Subtract line 21 from line 8 | 22 | -4,613,383 |

## Sign Here

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge.

► _____
Signature of general partner or limited liability company member manager        Date

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

## Paid Preparer Use Only

| | | |
|---|---|---|
| Print/Type preparer's name | Preparer's signature | Date |
| Kyu Hong Kim | | |
| Firm's name ► Kyu Hong Kim, CPA, Inc. | | Check ☐ if self-employed  PTIN P00296355 |
| Firm's address ► 3435 Wilshire Blvd Ste 1970 | | Firm's EIN ► 20-2861494 |
| Los Angeles, CA        90010-1936 | | Phone no. 213-381-3557 |

For Paperwork Reduction Act Notice, see separate instructions.

Form **1065** (2015)

DAA

**Schedule B** Other Information

| | | Yes | No |
|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box: | | |
| a | ☐ Domestic general partnership    b ☐ Domestic limited partnership | | |
| c | ☒ Domestic limited liability company    d ☐ Domestic limited liability partnership | | |
| e | ☐ Foreign partnership    f ☐ Other ▶ | | |
| 2 | At any time during the tax year was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person? | | X |

| | At the end of the tax year: | Yes | No |
|---|---|---|---|
| 3 | | | |
| a | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | | X |
| b | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | | X |

4  At the end of the tax year, did the partnership:

a  Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv) below .......... **No**

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

b  Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv) below .......... **No**

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | Yes | No |
|---|---|---|---|
| 5 | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details | | X |
| 6 | Does the partnership satisfy all four of the following conditions? | | |
| a | The partnership's total receipts for the tax year were less than $250,000. | | |
| b | The partnership's total assets at the end of the tax year were less than $1 million. | | |
| c | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| d | The partnership is not filing and is not required to file Schedule M-3 .......... If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. | | X |
| 7 | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? | | X |
| 8 | During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? | | X |
| 9 | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? | | X |
| 10 | At any time during calendar year 2015, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). If "Yes," enter the name of the foreign country. ▶ | | X |

Form **1065**

DAA

## Schedule B   Other Information (continued)

| | | Yes | No |
|---|---|---|---|
| 11 | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions | | X |
| 12a | Is the partnership making, or had it previously made (and not revoked), a section 754 election? See instructions for details regarding a section 754 election. | | X |
| b | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | X |
| c | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | X |
| 13 | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than disregarded entities wholly owned by the partnership throughout the tax year) | ▶ ☐ | |
| 14 | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in partnership property? | | X |
| 15 | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, enter the number of Forms 8858 attached. See instructions ▶ | | |
| 16 | Does the partnership have any foreign partners? If "Yes," enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership. ▶ | | X |
| 17 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return. ▶ | | |
| 18a | Did you make any payments in 2015 that would require you to file Form(s) 1099? See instructions | X | |
| b | If "Yes," did you or will you file required Form(s) 1099? | X | |
| 19 | Enter the number of Form(s) 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations, attached to this return. ▶          0 | | |
| 20 | Enter the number of partners that are foreign governments under section 892. ▶          0 | | |

**Designation of Tax Matters Partner** (see instructions)

Enter below the general partner or member-manager designated as the tax matters partner (TMP) for the tax year of this return:

| Name of designated TMP | ▶ | | Identifying number of TMP | ▶ | |
|---|---|---|---|---|---|
| If the TMP is an entity, name of TMP representative | ▶ | | Phone number of TMP | ▶ | |
| Address of designated TMP | ▶ | | | | |

Form **1065** (2015)

DAA

| | | Schedule K | Partners' Distributive Share Items | | | Total amount |
|---|---|---|---|---|---|---|
| | | 1 | Ordinary business income (loss) (page 1, line 22) | | 1 | -4,613,383 |
| | | 2 | Net rental real estate income (loss) (attach Form 8825) | | 2 | |
| | | 3a | Other gross rental income (loss) | 3a | | |
| | | b | Expenses from other rental activities (attach statement) | 3b | | |
| | | c | Other net rental income (loss). Subtract line 3b from line 3a | | 3c | |
| Income (Loss) | | 4 | Guaranteed payments | | 4 | |
| | | 5 | Interest income | | 5 | |
| | | 6 | Dividends:  a Ordinary dividends | | 6a | |
| | | | b Qualified dividends | 6b | | |
| | | 7 | Royalties | | 7 | |
| | | 8 | Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | | 8 | |
| | | 9a | Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | | 9a | |
| | | b | Collectibles (28%) gain (loss) | 9b | | |
| | | c | Unrecaptured section 1250 gain (attach statement) | 9c | | |
| | | 10 | Net section 1231 gain (loss) (attach Form 4797) | | 10 | |
| | | 11 | Other income (loss) (see instructions) Type ▶ | | 11 | |
| Deductions | | 12 | Section 179 deduction (attach Form 4562) | | 12 | 0 |
| | | 13a | Contributions                  See Statement 5 | | 13a | 2,400 |
| | | b | Investment interest expense | | 13b | |
| | | c | Section 59(e)(2) expenditures: | | | |
| | | | (1) Type ▶                                      (2) Amount: ▶ | | 13c(2) | |
| | | d | Other deductions (see instructions)  Type ▶ | | 13d | |
| Self-Employ-ment | | 14a | Net earnings (loss) from self-employment | | 14a | |
| | | b | Gross farming or fishing income | | 14b | |
| | | c | Gross nonfarm income | | 14c | |
| Credits | | 15a | Low-income housing credit (section 42(j)(5)) | | 15a | |
| | | b | Low-income housing credit (other) | | 15b | |
| | | c | Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable) | | 15c | |
| | | d | Other rental real estate credits (see instructions)        Type ▶ | | 15d | |
| | | e | Other rental credits (see instructions)                Type ▶ | | 15e | |
| | | f | Other credits (see instructions)                    Type ▶ | | 15f | |
| Foreign Transactions | | 16a | Name of country or U.S. possession ▶ | | | |
| | | b | Gross income from all sources | | 16b | |
| | | c | Gross income sourced at partner level | | 16c | |
| | | | Foreign gross income sourced at partnership level | | | |
| | | d | Passive category ▶          e General category ▶          f Other ▶ | | 16f | |
| | | | Deductions allocated and apportioned at partner level | | | |
| | | g | Interest expense ▶                h Other                ▶ | | 16h | |
| | | | Deductions allocated and apportioned at partnership level to foreign source income | | | |
| | | i | Passive category ▶          j General category ▶          k Other ▶ | | 16k | |
| | | l | Total foreign taxes (check one):  ▶  Paid  ☐    Accrued  ☐ | | 16l | |
| | | m | Reduction in taxes available for credit (attach statement) | | 16m | |
| | | n | Other foreign tax information (attach statement) | | | |
| Alternative Minimum Tax (AMT) Items | | 17a | Post-1986 depreciation adjustment | | 17a | |
| | | b | Adjusted gain or loss | | 17b | |
| | | c | Depletion (other than oil and gas) | | 17c | |
| | | d | Oil, gas, and geothermal properties – gross income | | 17d | |
| | | e | Oil, gas, and geothermal properties – deductions | | 17e | |
| | | f | Other AMT items (attach statement) | | 17f | |
| Other Information | | 18a | Tax-exempt interest income | | 18a | |
| | | b | Other tax-exempt income | | 18b | |
| | | c | Nondeductible expenses          See Statement 6 | | 18c | 48,960 |
| | | 19a | Distributions of cash and marketable securities | | 19a | |
| | | b | Distributions of other property | | 19b | |
| | | 20a | Investment income | | 20a | |
| | | b | Investment expenses | | 20b | |
| | | c | Other items and amounts (attach statement) | | | |

DAA

1065

**Analysis of Net Income (Loss)**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16l | | | | | 1 | -4,615,783 |

| 2 | Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt Organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|---|
| a | General partners | | | | | | |
| b | Limited partners | -4,615,783 | | | | | |

## Schedule L   Balance Sheets per Books

| | Assets | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| | | (a) | (b) | (c) | (d) |
| 1 | Cash | | 179,904 | | 66,706 |
| 2a | Trade notes and accounts receivable | | | 553,507 | |
| b | Less allowance for bad debts | | | | 553,507 |
| 3 | Inventories | | | | 1,101,833 |
| 4 | U.S. government obligations | | | | |
| 5 | Tax-exempt securities | | | | |
| 6 | Other current assets See Stmt 7 (attach statement) | | 4,100,120 | | 2,525,414 |
| 7a | Loans to partners (or persons related to partners) | | | | |
| b | Mortgage and real estate loans | | | | |
| 8 | Other investments (attach statement) | | | | |
| 9a | Buildings and other depreciable assets | 1,734 | | 27,514 | |
| b | Less accumulated depreciation | | 1,734 | 2,525 | 24,989 |
| 10a | Depletable assets | | | | |
| b | Less accumulated depletion | | | | |
| 11 | Land (net of any amortization) | | | | |
| 12a | Intangible assets (amortizable only) | | | | |
| b | Less accumulated amortization | | | | |
| 13 | Other assets (attach statement) See Stmt 8 | | 4,700 | | 2,020,254 |
| 14 | Total assets | | 4,286,458 | | 6,292,703 |
| | **Liabilities and Capital** | | | | |
| 15 | Accounts payable | | 56,777 | | 836,336 |
| 16 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 17 | Other current liabilities (attach statement) See Stmt 9 | | 111,040 | | 784,884 |
| 18 | All nonrecourse loans | | | | |
| 19a | Loans from partners (or persons related to partners) | | | | |
| b | Mortgages, notes, bonds payable in 1 year or more | | | | |
| 20 | Other liabilities (attach statement) See Stmt 10 | | 4,300,000 | | 2,000,000 |
| 21 | Partners' capital accounts | | -181,359 | | 2,671,483 |
| 22 | Total liabilities and capital | | 4,286,458 | | 6,292,703 |

## Schedule M-1   Reconciliation of Income (Loss) per Books With Income (Loss) per Return

Note: The partnership may be required to file Schedule M-3 (see instructions).

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books | -4,651,971 | 6 | Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | a | Tax-exempt interest $ | |
| 3 | Guaranteed payments (other than health insurance) | | 7 | Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): | |
| 4 | Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16l (itemize): | | a | Depreciation $ 12,772 | 12,772 |
| a | Depreciation $ | | | | |
| b | Travel and entertainment $ 48,960 | 48,960 | 8 | Add lines 6 and 7 | 12,772 |
| | | | 9 | Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | -4,615,783 |
| 5 | Add lines 1 through 4 | -4,603,011 | | | |

## Schedule M-2   Analysis of Partners' Capital Accounts

| | | | | | |
|---|---|---|---|---|---|
| 1 | Balance at beginning of year | -181,359 | 6 | Distributions: a Cash | |
| 2 | Capital contributed: a Cash | 7,504,813 | | b Property | |
| | b Property | | 7 | Other decreases (itemize): | |
| 3 | Net income (loss) per books | -4,651,971 | | | |
| 4 | Other increases (itemize): | | 8 | Add lines 6 and 7 | |
| 5 | Add lines 1 through 4 | 2,671,483 | 9 | Balance at end of year. Subtract line 8 from line 5 | 2,671,483 |

DAA                                                                                         Form **1065** (2015)

Department of the Treasury
Internal Revenue Service

► Attach to Form 1120, 1120-C, 1120-F, 1120S, 1065, or 1065-B.
► Information about Form 1125-A and its instructions is at www.irs.gov/form1125a.

| Name | Employer identification number |
|------|-------------------------------|
| THOMAS WYLDE LLC | 47-1444612 |

| | | |
|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs (attach schedule) | 4 | |
| 5 | Other costs (attach schedule) | 5 | |
| 6 | Total. Add lines 1 through 5 | 6 | 3,034,674 |
| 7 | Inventory at end of year | 7 | 1,101,833 |
| 8 | Cost of goods sold. Subtract line 7 from line 6. Enter here and on Form 1120, page 1, line 2 or the appropriate line of your tax return (see instructions) | 8 | 1,932,841 |

9a  Check all methods used for valuing closing inventory:
   (i) ☐ Cost
   (ii) ☐ Lower of cost or market
   (iii) ☐ Other (Specify method used and attach explanation.) ►

b  Check if there was a writedown of subnormal goods ► ☐

c  Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ► ☐

d  If the LIFO inventory method was used for this tax year, enter the amount of closing inventory computed under LIFO | 9d |

e  If property is produced or acquired for resale, do the rules of section 263A apply to the entity (see instructions)? ☐ Yes ☐ No

f  Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If "Yes," attach explanation ☐ Yes ☐ No

For Paperwork Reduction Act Notice, see instructions.

Form **1125-A** (Rev. 12/2013)

CAA

SCHEDULE B-1
(Form 1065)

Department of the Treasury
Internal Revenue Service

**More of the Partnership**

▶ Attach to Form 1065. See instructions on back.

| Name of partnership | Employer identification number (EIN) |
|---|---|
| THOMAS WYLDE LLC | 47-1444612 |

**Part I    Entities Owning 50% or More of the Partnership** (Form 1065, Schedule B, Question 3a)

Complete columns (i) through (v) below for any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, tax-exempt organization, or any foreign government that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| HILLSHORE | INVESTMENTS 99-9999999 | Corporation | United States | 100.000000 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Part II    Individuals or Estates Owning 50% or More of the Partnership** (Form 1065, Schedule B, Question 3b)

Complete columns (i) through (iv) below for any individual or estate that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Individual or Estate | (ii) Identifying Number (if any) | (iii) Country of Citizenship (see instructions) | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 1065.**    Schedule B-1 (Form 1065) (Rev. 12-2011)

DAA

**Schedule K-1**
**(Form 1065)**

**2015**

Department of the Treasury
Internal Revenue Service

For calendar year 2015, or tax
year beginning _____
ending _____

**Partner's Share of Income, Deductions, Credits, etc.**

## Part I  Information About the Partnership

**A** Partnership's employer identification number
47-1444612

**B** Partnership's name, address, city, state, and ZIP code
THOMAS WYLDE LLC

235 W 31ST ST
LOS ANGELES        CA 90007

**C** IRS Center where partnership filed return
e-file

**D** ☐ Check if this is a publicly traded partnership (PTP)

## Part II  Information About the Partner

**E** Partner's identifying number
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

**F** Partner's name, address, city, state, and ZIP code
JOHN HANNA

6250 HOLLYWOOD BLVD #4H
Los Angeles        CA 90028

**G** ☒ General partner or LLC member-manager    ☐ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner?    Individual

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here    ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 7.000000 % | 0.400000 % |
| Loss | 0.000000 % | 0.000000 % |
| Capital | 7.000000 % | 0.400000 % |

**K** Partner's share of liabilities at year end:

| | |
|---|---|
| Nonrecourse | $ _____ |
| Qualified nonrecourse financing | $ _____ |
| Recourse | $ _____ |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ 700 |
| Capital contributed during the year | $ _____ |
| Current year increase (decrease) | $ _____ |
| Withdrawals & distributions | $ ( _____ ) |
| Ending capital account | $ 700 |

☒ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No
If "Yes," attach statement (see instructions)

## Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | | |
|---|---|---|---|---|
| 1 | Ordinary business income (loss) | | 15 | Credits |
| 2 | Net rental real estate income (loss) | | | |
| 3 | Other net rental income (loss) | | 16 | Foreign transactions |
| 4 | Guaranteed payments | | | |
| 5 | Interest income | | | |
| 6a | Ordinary dividends | | | |
| 6b | Qualified dividends | | | |
| 7 | Royalties | | | |
| 8 | Net short-term capital gain (loss) | | | |
| 9a | Net long-term capital gain (loss) | | 17 | Alternative minimum tax (AMT) items |
| 9b | Collectibles (28%) gain (loss) | | | |
| 9c | Unrecaptured section 1250 gain | | | |
| 10 | Net section 1231 gain (loss) | | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | | | |
| | | | 19 | Distributions |
| 12 | Section 179 deduction | | | |
| 13 | Other deductions | | 20 | Other information |
| 14 | Self-employment earnings (loss) | | | |

*See attached statement for additional information.

For IRS Use Only

DAA

| Schedule K-1 | **2015** | **Part III** Partner's Share of Current Year Income, Deductions, Credits, and Other Items | |
|---|---|---|---|
| (Form 1065) | | | |
| Department of the Treasury Internal Revenue Service | For calendar year 2015, or tax year beginning _____ ending _____ | **1** Ordinary business income (loss) | **15** Credits |
| **Partner's Share of Income, Deductions, Credits, etc.** | | **2** Net rental real estate income (loss) | |
| | | **3** Other net rental income (loss) | **16** Foreign transactions |

**Part I  Information About the Partnership**

| | | | |
|---|---|---|---|
| **A** Partnership's employer identification number | | **4** Guaranteed payments | |
| 47-1444612 | | | |
| **B** Partnership's name, address, city, state, and ZIP code | | **5** Interest income | |
| THOMAS WYLDE LLC | | | |
| | | **6a** Ordinary dividends | |
| 235 W 31ST ST | | | |
| LOS ANGELES          CA 90007 | | **6b** Qualified dividends | |
| **C** IRS Center where partnership filed return | | **7** Royalties | |
| e-file | | | |
| **D** ☐ Check if this is a publicly traded partnership (PTP) | | **8** Net short-term capital gain (loss) | |

**Part II  Information About the Partner**

| | | | |
|---|---|---|---|
| **E** Partner's identifying number | | **9a** Net long-term capital gain (loss) | **17** Alternative minimum tax (AMT) items |
| 57-1157980 | | | |
| **F** Partner's name, address, city, state, and ZIP code | | **9b** Collectibles (28%) gain (loss) | |
| STANLEY DUCKS, LLC | | | |
| | | **9c** Unrecaptured section 1250 gain | |
| 18141 IRVINE BLVD | | | |
| TUSTIN          CA 92780 | | **10** Net section 1231 gain (loss) | **18** Tax-exempt income and nondeductible expenses |
| | | **11** Other income (loss) | |
| **G** ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member | | | |
| **H** ☒ Domestic partner   ☐ Foreign partner | | | |
| **I1** What type of entity is this partner?  Partnership | | | **19** Distributions |
| **I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐ | | **12** Section 179 deduction | |
| **J** Partner's share of profit, loss, and capital (see instructions): | | **13** Other deductions | |

| | Beginning | Ending |
|---|---|---|
| Profit | 3.500000 % | 0.200000 % |
| Loss | 0.000000 % | 0.000000 % |
| Capital | 3.500000 % | 0.200000 % |

| | | | |
|---|---|---|---|
| | | | **20** Other information |
| **K** Partner's share of liabilities at year end: | | **14** Self-employment earnings (loss) | |
| Nonrecourse ....................... $ _____ | | | |
| Qualified nonrecourse financing ....... $ _____ | | | |
| Recourse ........................... $ _____ | | | |
| **L** Partner's capital account analysis: | | *See attached statement for additional information.* | |
| Beginning capital account ........... $ _____ | | | |
| Capital contributed during the year ... $ _____ 350 | | | |
| Current year increase (decrease) ..... $ _____ | | | |
| Withdrawals & distributions .......... $ ( _____ ) | | | |
| Ending capital account .............. $ _____ 350 | | | |
| ☒ Tax basis  ☐ GAAP  ☐ Section 704(b) book  ☐ Other (explain) | | | |
| **M** Did the partner contribute property with a built-in gain or loss? ☐ Yes  ☒ No  If "Yes," attach statement (see instructions) | | | |

For Paperwork Reduction Act Notice, see Instructions for Form 1065.   IRS.gov/form1065          Schedule K-1 (Form 1065) 2015
DAA

**Schedule K-1** 2015

**(Form 1065)**

Department of the Treasury
Internal Revenue Service

For calendar year 2015, or tax
year beginning _____
ending _____

**Partner's Share of Income, Deductions,**
**Credits, etc.**

| | | |
|---|---|---|
| **Part I** | **Information About the Partnership** | |

**A** Partnership's employer identification number
47-1444612

**B** Partnership's name, address, city, state, and ZIP code
THOMAS WYLDE LLC

235 W 31ST ST
LOS ANGELES          CA 90007

**C** IRS Center where partnership filed return
e-file

**D** ☐ Check if this is a publicly traded partnership (PTP)

| | | |
|---|---|---|
| **Part II** | **Information About the Partner** | |

**E** Partner's identifying number
47-1710832

**F** Partner's name, address, city, state, and ZIP code
DSRB, LLC

18141 IRVINE BLVD
TUSTIN          CA 92780

**G** ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner?    Partnership

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 3.500000 % | 0.200000 % |
| Loss | 0.000000 % | 0.000000 % |
| Capital | 3.500000 % | 0.200000 % |

**K** Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse | $ | |
| Qualified nonrecourse financing | $ | |
| Recourse | $ | |

**L** Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account | $ | |
| Capital contributed during the year | $ | 350 |
| Current year increase (decrease) | $ | |
| Withdrawals & distributions | $ ( | ) |
| Ending capital account | $ | 350 |

☒ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No
If "Yes," attach statement (see instructions)

For IRS Use Only

---

| | **Part III** | **Partner's Share of Current Year Income,** | | |
|---|---|---|---|---|
| | | **Deductions, Credits, and Other Items** | | |
| 1 | Ordinary business income (loss) | | 15 | Credits |
| 2 | Net rental real estate income (loss) | | | |
| 3 | Other net rental income (loss) | | 16 | Foreign transactions |
| 4 | Guaranteed payments | | | |
| 5 | Interest income | | | |
| 6a | Ordinary dividends | | | |
| 6b | Qualified dividends | | | |
| 7 | Royalties | | | |
| 8 | Net short-term capital gain (loss) | | | |
| 9a | Net long-term capital gain (loss) | | 17 | Alternative minimum tax (AMT) items |
| 9b | Collectibles (28%) gain (loss) | | | |
| 9c | Unrecaptured section 1250 gain | | | |
| 10 | Net section 1231 gain (loss) | | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | | | |
| | | | 19 | Distributions |
| 12 | Section 179 deduction | | | |
| 13 | Other deductions | | 20 | Other information |
| 14 | Self-employment earnings (loss) | | | |

*See attached statement for additional information.*

For Paperwork Reduction Act Notice, see Instructions for Form 1065.          IRS.gov/form1065          Schedule K-1 (Form 1065) 2015

DAA

**Schedule K-1**
**(Form 1065)**

2015

Department of the Treasury
Internal Revenue Service

For calendar year 2015, or tax
year beginning

ending

**Partner's Share of Income, Deductions,**
**Credits, etc.**

## Part I   Information About the Partnership

**A** Partnership's employer identification number

47-1444612

**B** Partnership's name, address, city, state, and ZIP code

THOMAS WYLDE LLC

235 W 31ST ST
LOS ANGELES          CA 90007

**C** IRS Center where partnership filed return

e-file

**D** ☐ Check if this is a publicly traded partnership (PTP)

## Part II   Information About the Partner

**E** Partner's identifying number

45-4648680

**F** Partner's name, address, city, state, and ZIP code

THE PALLIATIVE, LLC.

12114 DEWEY ST.
LOS ANGELES         CA 90066

**G** ☐ General partner or LLC
member-manager
  ☒ Limited partner or other LLC
member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner?   Partnership

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here  ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 9.000000 % | 0.510000 % |
| Loss | 0.000000 % | 0.000000 % |
| Capital | 9.000000 % | 0.510000 % |

**K** Partner's share of liabilities at year end:

Nonrecourse ......................... $ _____
Qualified nonrecourse financing ..... $ _____
Recourse ............................ $ _____

**L** Partner's capital account analysis:

Beginning capital account ........... $ _____
Capital contributed during the year . $ 900
Current year increase (decrease) .... $ _____
Withdrawals & distributions ......... $ ( _____ )
Ending capital account .............. $ 900

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

### Part III   Partner's Share of Current Year Income, Credits, and Other Items

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) | 15 | Credits |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4 | Guaranteed payments | | |
| 5 | Interest income | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | | |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | | |
| 9a | Net long-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | | |
| | | | |
| | | | |
| | | 19 | Distributions |
| 12 | Section 179 deduction | | |
| 13 | Other deductions | | |
| | | 20 | Other information |
| | | | |
| 14 | Self-employment earnings (loss) | | |

*See attached statement for additional information.

For IRS Use Only

Schedule K-1
(Form 1065)

2015

Department of the Treasury
Internal Revenue Service

For calendar year 2015, or tax
year beginning
ending

**Partner's Share of Income, Deductions, Credits, etc.**

## Part I  Information About the Partnership

**A** Partnership's employer identification number
47-1444612

**B** Partnership's name, address, city, state, and ZIP code
THOMAS WYLDE LLC

235 W 31ST ST
LOS ANGELES          CA 90007

**C** IRS Center where partnership filed return
e-file

**D** ☐ Check if this is a publicly traded partnership (PTP)

## Part II  Information About the Partner

**E** Partner's identifying number
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

**F** Partner's name, address, city, state, and ZIP code
PAULA THOMAS

2514 S. TOLEDO AVE.
PALM SPRINGS          CA 92264

**G** ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner?   Individual
**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here  ☐

**J** Partner's share of profit, loss, and capital (see instructions):

|        | Beginning   | Ending      |
|--------|-------------|-------------|
| Profit | 32.000000 % | 1.830000 %  |
| Loss   | 0.000000 %  | 0.000000 %  |
| Capital| 32.000000 % | 1.830000 %  |

**K** Partner's share of liabilities at year end:

Nonrecourse ........................... $
Qualified nonrecourse financing ..... $
Recourse ............................. $

**L** Partner's capital account analysis:

Beginning capital account ............ $
Capital contributed during the year .. $          3,200
Current year increase (decrease) ..... $
Withdrawals & distributions .......... $ (            )
Ending capital account ............... $          3,200

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did this partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

## Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) | 15 | Credits |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4 | Guaranteed payments | | |
| 5 | Interest income | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | | |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | | |
| 9a | Net long-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | | |
| | | 19 | Distributions |
| 12 | Section 179 deduction | | |
| 13 | Other deductions | 20 | Other information |
| 14 | Self-employment earnings (loss) | | |

*See attached statement for additional information.

For IRS Use Only

**Schedule K-1**
**(Form 1065)**

2015

Department of the Treasury
Internal Revenue Service

For calendar year 2015, or tax

year beginning _____

ending _____

**Partner's Share of Income, Deductions,**
Credits, etc.

## Part I   Information About the Partnership

A  Partnership's employer identification number

47-1444612

B  Partnership's name, address, city, state, and ZIP code

THOMAS WYLDE LLC

235 W 31ST ST
LOS ANGELES        CA 90007

C  IRS Center where partnership filed return

e-file

D  ☐  Check if this is a publicly traded partnership (PTP)

## Part II   Information About the Partner

E  Partner's identifying number

99-9999999

F  Partner's name, address, city, state, and ZIP code

HILLSHORE INVESTMENTS
CALLE 53 ESTE. URBANIZACION
MARBELLA TORRE MMG

Panama

G  ☐ General partner or LLC        ☒ Limited partner or other LLC
member-manager                     member

H  ☐ Domestic partner              ☒ Foreign partner

I1  What type of entity is this partner?   Corporation

I2  If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here  ☐

J  Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 45.000000 % | 96.860000 % |
| Loss | 100.000000 % | 100.000000 % |
| Capital | 45.000000 % | 96.860000 % |

K  Partner's share of liabilities at year end:

Nonrecourse ....................... $ _____

Qualified nonrecourse financing .... $ _____

Recourse .......................... $ _____

L  Partner's capital account analysis:

Beginning capital account .......... $ _____ -182,059

Capital contributed during the year .. $ _____ 7,500,013

Current year increase (decrease) .... $ _____ -4,651,971

Withdrawals & distributions ........ $ (_____)

Ending capital account ............. $ _____ 2,665,983

☒ Tax basis  ☐ GAAP  ☐ Section 704(b) book
☐ Other (explain)

M  Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

For Paperwork Reduction Act Notice, see Instructions for Form 1065.

DAA

## Part III   Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | |
|---|---|---|
| 1 | Ordinary business income (loss) | -4,613,383 |
| 2 | Net rental real estate income (loss) | |
| 3 | Other net rental income (loss) | |
| 4 | Guaranteed payments | |
| 5 | Interest income | |
| 6a | Ordinary dividends | |
| 6b | Qualified dividends | |
| 7 | Royalties | |
| 8 | Net short-term capital gain (loss) | |
| 9a | Net long-term capital gain (loss) | |
| 9b | Collectibles (28%) gain (loss) | |
| 9c | Unrecaptured section 1250 gain | |
| 10 | Net section 1231 gain (loss) | |
| 11 | Other income (loss)   C* | 48,960 |
| 12 | Section 179 deduction | |
| 13 | Other deductions   A | 2,400 |
| 14 | Self-employment earnings (loss) | |

| | | |
|---|---|---|
| 15 | Credits | |
| 16 | Foreign transactions | |
| 17 | Alternative minimum tax (AMT) items | |
| 18 | Tax-exempt income and nondeductible expenses | |
| 19 | Distributions | |
| 20 | Other information   Z*   STMT | |

*See attached statement for additional information.

For IRS Use Only

**SCHEDULE M-3**
**(Form 1065)**

Net Income (Loss) Reconciliation
for Certain Partnerships

Department of the Treasury
Internal Revenue Service

▶ Information about Schedule M-3 (Form 1065) and its instructions is at www.irs.gov/form1065.

**2015**

| Name of partnership | Employer identification number |
|---|---|
| THOMAS WILDE LLC | 47-1444612 |

This Schedule M-3 is being filed because (check all that apply):

B  [X]  The amount of the partnership's adjusted total assets for the tax year is equal to $10 million or more. If box B is checked, enter the amount of adjusted total assets for the tax year _____ 10,944,674.

C  [ ]  The amount of total receipts for the tax year is equal to $35 million or more. If box C is checked, enter the total receipts for the tax year _____.

D  [ ]  An entity that is a reportable entity partner with respect to the partnership owns or is deemed to own an interest of 50 percent or more in the partnership's capital, profit, or loss, on any day during the tax year of the partnership.

| Name of Reportable Entity Partner | Identifying Number | Maximum Percentage Owned or Deemed Owned |
|---|---|---|
| | | |
| | | |

E  [ ]  Voluntary Filer.

**Part I    Financial Information and Net Income (Loss) Reconciliation**

1a  Did the partnership file SEC Form 10-K for its income statement period ending with or within this tax year?
    [ ]  Yes. Skip lines 1b and 1c and complete lines 2 through 11 with respect to that SEC Form 10-K.
    [ ]  No. Go to line 1b. See instructions if multiple non-tax-basis income statements are prepared.

b  Did the partnership prepare a certified audited non-tax-basis income statement for that period?
    [ ]  Yes. Skip line 1c and complete lines 2 through 11 with respect to that income statement.
    [ ]  No. Go to line 1c.

c  Did the partnership prepare a non-tax-basis income statement for that period?
    [ ]  Yes. Complete lines 2 through 11 with respect to that income statement.
    [ ]  No. Skip lines 2 through 9b and enter the partnership's net income (loss) per its books and records on line 4a.

2  Enter the income statement period:  Beginning  01/01/15    Ending  12/31/15

3a  Has the partnership's income statement been restated for the income statement period on line 2?
    [ ]  Yes. (If "Yes," attach a statement and the amount of each item restated.)
    [X]  No.

b  Has the partnership's income statement been restated for any of the five income statement periods immediately preceding the period on line 2?
    [ ]  Yes. (If "Yes," attach a statement and the amount of each item restated.)
    [X]  No.

| | | |
|---|---|---|
| 4a  Worldwide consolidated net income (loss) from income statement source identified in Part I, line 1 | **4a** | -4,651,971 |
| b  Indicate accounting standard used for line 4a (see instructions): | | |
|   1 [X] GAAP  2 [ ] IFRS  3 [ ] 704(b) | | |
|   4 [ ] Tax-basis  5 [ ] Other: (Specify) ▶ | | |
| 5a  Net income from nonincludible foreign entities (attach statement) | **5a** | ( ) |
| b  Net loss from nonincludible foreign entities (attach statement and enter as a positive amount) | **5b** | |
| 6a  Net income from nonincludible U.S. entities (attach statement) | **6a** | ( ) |
| b  Net loss from nonincludible U.S. entities (attach statement and enter as a positive amount) | **6b** | |
| 7a  Net income (loss) of other foreign disregarded entities (attach statement) | **7a** | |
| b  Net income (loss) of other U.S. disregarded entities (attach statement) | **7b** | |
| 8  Adjustment to eliminations of transactions between includible entities and nonincludible entities (attach statement) | **8** | |
| 9  Adjustment to reconcile income statement period to tax year (attach statement) | **9** | |
| 10  Other adjustments to reconcile to amount on line 11 (attach statement) | **10** | |
| 11  Net income (loss) per income statement of the partnership. Combine lines 4a through 10 | **11** | -4,651,971 |
| Note: Part I, line 11, must equal Part II, line 26, column (a) or Schedule M-1, line 1 (see instructions). | | |

12  Enter the total amount (not just the partnership's share) of the assets and liabilities of all entities included or removed on the following lines:

| | Total Assets | Total Liabilities |
|---|---|---|
| a  Included on Part I, line 4 | 6,292,703 | 3,621,220 |
| b  Removed on Part I, line 5 | | |
| c  Removed on Part I, line 6 | | |
| d  Included on Part I, line 7 | | |

For Paperwork Reduction Act Notice, see the Instructions for your return.    Schedule M-3 (Form 1065) 2015

DAA

| Form **4562** | | Depreciation and Amortization | | | **2015** |
|---|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service (99) | | (Including Information on Listed Property) ▶ Attach to your tax return. ▶ Information about Form 4562 and its separate instructions is at www.irs.gov/form4562. | | | Attachment Sequence No. **179** |

Name(s) shown on return
**THOMAS WYLDE LLC**

Identifying number
**47-1444612**

Business or activity to which this form relates

## Part I    Election To Expense Certain Property Under Section 179
Note: If you have any listed property, complete Part V before you complete Part I.

| | | | |
|---|---|---|---|
| 1 | Maximum amount (see instructions) | **1** | 500,000 |
| 2 | Total cost of section 179 property placed in service (see instructions) | **2** | |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) | **3** | 2,000,000 |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | **4** | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | **5** | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost | |
|---|---|---|---|---|
| | | | | |
| | | | | |

| | | | |
|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 | **7** | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | **8** | |
| 9 | Tentative deduction. Enter the smaller of line 5 or line 8 | **9** | |
| 10 | Carryover of disallowed deduction from line 13 of your 2014 Form 4562 | **10** | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instructions) | **11** | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | **12** | |
| 13 | Carryover of disallowed deduction to 2016. Add lines 9 and 10, less line 12 ▶ | **13** | |

Note: Do not use Part II or Part III below for listed property. Instead, use Part V.

## Part II    Special Depreciation Allowance and Other Depreciation (Do not include listed property.) (See instructions.)

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | **14** | 12,888 |
| 15 | Property subject to section 168(f)(1) election | **15** | |
| 16 | Other depreciation (including ACRS) | **16** | |

## Part III    MACRS Depreciation (Do not include listed property.) (See instructions.)

### Section A

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2015 | **17** | 239 |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ▶ | | |

### Section B—Assets Placed in Service During 2015 Tax Year Using the General Depreciation System

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only—see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | 5,683 | 5.0 | HY | 200DB | 1,136 |
| c 7-year property | | 7,209 | 7.0 | HY | 200DB | 1,030 |
| d 10-year property | | | | | | |
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs. | | S/L | |
| h Residential rental property | | | 27.5 yrs. | MM | S/L | |
| | | | 27.5 yrs. | MM | S/L | |
| i Nonresidential real property | | | 39 yrs. | MM | S/L | |
| | | | | MM | S/L | |

### Section C—Assets Placed in Service During 2015 Tax Year Using the Alternative Depreciation System

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs. | | S/L | |
| c 40-year | | | 40 yrs. | MM | S/L | |

## Part IV    Summary (See instructions.)

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 | **21** | |
| 22 | Total. Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations—see instructions | **22** | 15,295 |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | **23** | |

For Paperwork Reduction Act Notice, see separate instructions.                      Form **4562** (2015)

DAA

There are no amounts for Page 2

Federal Statements

## Statement 1 - Form 1065, Page 1, Line G(5) - Reason for Amended Return

Description

This amended return is to correct the partners' share of profit and capital reported above it does in fact in original return

Since the taxpayer made less in current year, change in partners' share of profit and capital will not affect partner's share of current year income, deductions, credits, and other items in Part III of Schedule K-1.

## Statement 2 - Form 1065, Page 1, Line 7 - Other Income (Loss)

| Description | Amount |
|---|---|
| Freight Income | $  38,080 |
| Other Income | 39,581 |
| Total | $  77,661 |

## Statement 3 - Form 1065, Page 1, Line 15 - Interest

| Description | Amount |
|---|---|
| Interest expense | $  200,000 |
| Total | $  200,000 |

## Statement 4 - Form 1065, Page 1, Line 20 - Other Deductions

| Description | Amount |
|---|---|
| ADVERTISING AND PROMOTION | $  284,574 |
| AUTO EXPENSE | 12,320 |
| SOCIAL MEDIA | 1,969 |
| WEBSITE EXPENSE | 67,850 |
| FACTORING CHARGE | 28,616 |
| BANK FEES | 30,148 |
| COMMISSION | 320,091 |
| COPYRIGHT, PATENT & TRADEMARK | 604 |
| DUES AND SUBCRIPTIONS | 30,168 |
| EQUIPMENT RENTAL | 20,327 |
| GIFTS | 3,502 |
| INSURANCE | 19,985 |
| MISCELLANEOUS | 108 |
| OFFICE EXPENSE | 4,162 |
| OFFICER ALLOWANCE | 20,794 |
| OFFICE SUPPLIES | 34,825 |
| OUTSIDE SERVICE | 420,514 |
| PHOTOSHOOT EXPENSE | 125,415 |
| PICK AND PACK EXPENSE | 127,888 |
| Postage & CARRIER | 392 |
| PROFESSIONAL FEES | 160,591 |
| PUBLIC RELATIONS | 217,342 |
| REFERENCE AND MATERIALS | 23,010 |
| SAMPLES | 1,389,957 |
| SHIPPING EXPENSE | 156,303 |
| SHOWROOM EXPENSE | 161,142 |
| STORAGE | 29,784 |
| SUPPLIES | 26,212 |

### Statement 4 - Form 1065, Page 1, Line 20 - Other Deductions (continued)

| Description | Amount |
|---|---|
| TELEPHONE | $ 28,912 |
| TRADE SHOW | 453,070 |
| TRAVEL | 290,350 |
| UTILITIES | 11,632 |
| Meals and Entertain (50%) | 48,960 |
| Total | $ 4,538,117 |

47-1444612

# Federal Statements

## Statement 5 - Form 1065, Schedule K, Line 13a - Contributions

| Description | 100% | 50% | 30% | 20% | Total |
|---|---|---|---|---|---|
| CHARITABLE CONTRIBUTION | $ 0 | $ 2,400 | $ 0 | $ 0 | 2,0 |
| Total | $ | $ 2,400 | $ | $ | 2,0 |

5

Federal Statements

### Statement 6 - Form 1065, Schedule K, Line 18c - Nondeductible Expenses

| Description | Amount |
|---|---|
| Nondeductible Meals and Entertainment | $ 46,365 |
| Total | $ 46,365 |

### Statement 7 - Form 1065, Schedule L, Line 6 - Other Current Assets

| Description | Beginning of Year | End of Year |
|---|---|---|
| ADVANCE TO OFFICERS | $ 74 | $ 2,514 |
| ADVANCE TO PDTW, LLC | 4,052,052 | 2,434,663 |
| VENDOR DEPOSITS | 47,994 | 80,657 |
| EMPLOYEE ADVANCE | | 900 |
| Undeposited Funds | | 6,680 |
| Total | $ 4,100,120 | $ 2,525,414 |

### Statement 8 - Form 1065, Schedule L, Line 13 - Other Assets

| Description | Beginning of Year | End of Year |
|---|---|---|
| PREPAID EXPENSES | $ 4,700 | $ 22,317 |
| ADVANCE ON COMMISSION | | 13,600 |
| GOODWILL | | 1,984,337 |
| Total | $ 4,700 | $ 2,020,254 |

### Statement 9 - Form 1065, Schedule L, Line 17 - Other Current Liabilities

| Description | Beginning of Year | End of Year |
|---|---|---|
| ACCRUED EXPENSES | $ 7,671 | $ 201,107 |
| ADVANCE FROM PDTW, LLC | 36,734 | |
| CUSTOMER DEPOSITS | 66,635 | 29,616 |
| FACTORING PAYABLE | | 430,409 |
| ADVANCES FROM OFFICERS | | 12,737 |
| AMERICAN EXPRESS | | 111,015 |
| Total | $ 111,040 | $ 784,884 |

### Statement 10 - Form 1065, Schedule L, Line 20 - Other Liabilities

| Description | Beginning of Year | End of Year |
|---|---|---|
| NOTE PAYABLE - LONG TERM | $ 4,300,000 | $ 2,000,000 |
| Total | $ 4,300,000 | $ 2,000,000 |

Limited Liability Company
2015   Return of Income

505

201420310399   TYBM   47-1444612            15   DBA   315000      RP
TYB  01-01-2015   TYE  12-31-2015
THOMAS WILLS LLC

235 W 31ST ST
LOS ANGELES         CA   90007

ACCTMETHOD 2  07-22-2014   ASSETS   6292703.
INITIAL 0  FINAL 0  AMENDED 1

J  (1) During this taxable year, did another person or legal entity acquire control or majority ownership (more than a 50% interest) of this LLC or any legal entity in which the LLC holds a controlling or majority interest that owned California real property (i.e., land, buildings), leased such property for a term of 35 years or more, or leased such property from a government agency for any term? ............................................................................ ● ☐ Yes ☒ No

  (2) During this taxable year, did this LLC acquire control or majority ownership (more than a 50% interest) in another legal entity that owned California real property (i.e., land, buildings), leased such property for a term of 35 years or more, or leased such property from a government agency for any term? ............................................................................ ● ☐ Yes ☒ No

  (3) During this taxable year, has more than 50% of the LLC's ownership interests cumulatively transferred in one or more transactions after an interest in California real property (i.e., land, buildings) was transferred to it that was excluded from property tax reassessment under Revenue and Taxation Code Section 62(a)(2) and it was not reported on a previous year's tax return? ............................................................................ ● ☐ Yes ☒ No
      (Yes requires filing of statement, penalties may apply – see instructions.)

| | Complete Schedule IW, LLC Income Worksheet (on Side 7) first to determine Line 1. | | | Whole dollars only |
|---|---|---|---|---|
| 1 | Total income from Schedule IW, Limited Liability Company Income Worksheet. See instructions | ● | 1 | 4,049,442 00 |
| 2 | Limited Liability Company fee. See instructions | ● | 2 | 6,000 00 |
| 3 | 2015 annual Limited Liability Company tax. See instructions | ● | 3 | 800 00 |
| 4 | Nonconsenting nonresident members' tax liability from Schedule T (Side 4) | ● | 4 | 00 |
| 5 | Total tax and fee. Add line 2, line 3, and line 4 | ● | 5 | 6,800 00 |
| 6 | Amount paid with form FTB 3537 and 2015 form FTB 3522 and form FTB 3536 | ● | 6 | 6,800 00 |
| 7 | Overpayment from prior year allowed as a credit | ● | 7 | 00 |
| 8 | Withholding (Form 592-B and/or 593) | ● | 8 | 0 00 |
| 9 | Total payments. Add line 6, line 7, and line 8 | ● | 9 | 6,800 00 |
| 10 | Use Tax. This is not a total line. See instructions | ● | 10 | 00 |
| 11 | Payments balance. If line 9 is more than line 10, subtract line 10 from line 9 | ● | 11 | 6,800 00 |
| 12 | Use Tax balance. If line 10 is more than line 9, subtract line 9 from line 10 | ● | 12 | 00 |

Enclose, but do not staple, any payment.

47-1444012

| | | | | Whole dollars only |
|---|---|---|---|---|
| 13 | Tax and fee due. If line 5 is more than line 11, subtract line 11 from line 5 | ● | 13 | 00 |
| 14 | Overpayment. If line 11 is more than line 5, subtract line 5 from line 11 | ● | 14 | 00 |
| 15 | Amount of line 14 to be credited to 2016 tax or fee | ● | 15 | 00 |
| 16 | Refund. If the total of line 15 is less than line 14, subtract the total from line 14 | ● 16 | | 00 |
| 17 | Penalties and interest. See instructions | ● | 17 | 00 |
| 18 | Total amount due. Add line 12, line 13, line 15, and line 17, then subtract line 14 from the result | ● 18 | | 00 |

**K** Enter the maximum number of members in the LLC at any time during the year. For multiple member LLCs, attach a California Schedule K-1 (568) for each of these members ........................... ● ☐ 6

**L** Is this LLC an investment partnership? See General Information O ........................... ● ☐ Yes ☒ No

**M** (1) Is this LLC apportioning or allocating income to California using Schedule R? ........................... ● ☐ Yes ☒ No

(2) If "No," was this LLC registered in California without earning any income sourced in this state during the taxable year? ........... ⊙ ☐ Yes ☒ No

**N** Was there a distribution of property or a transfer (for example, by sale or death) of an LLC interest during the taxable year? ● ☐ Yes ☒ No

**P** (1) Does the LLC have any foreign (non-U.S.) nonresident members? ........................... ● ☒ Yes ☐ No

(2) Does the LLC have any domestic (non-foreign) nonresident members? ........................... ● ☐ Yes ☒ No

(3) Were Form 592, Form 592-A, Form 592-B, and Form 592-F filed for these members? ........................... ● ☐ Yes ☒ No

**Q** Are any members in this LLC also LLCs or partnerships? ........................... ● ☒ Yes ☐ No

**R** Is this LLC under audit by the IRS or has it been audited in a prior year? ........................... ● ☐ Yes ☒ No

**S** Is this LLC a member or partner in another multiple member LLC or partnership? ........................... ● ☐ Yes ☒ No
If "Yes," complete Schedule EO, Part I.

**T** Is this LLC a publicly traded partnership as defined in IRC Section 469(k)(2)? ........................... ☐ Yes ☒ No

**U** (1) Is this LLC a business entity disregarded for tax purposes? ........................... ● ☐ Yes ☒ No

(2) If "Yes," see instructions and complete Side 1, Side 2, Side 3, Schedule B, Side 5, and Side 7, if applicable. Are there credits or credit carryovers attributable to the disregarded entity? ........................... ● ☐ Yes ☐ No

(3) If "Yes" to U(1), does the disregarded entity have total income derived from or attributable to California that is less than the LLC's total income from all sources? ........................... ☐ Yes ☐ No

**V** Has the LLC included a Reportable Transaction, or Listed Transaction within this return?
(See instructions for definitions). If "Yes," complete and attach federal Form 8886 for each transaction ........................... ● ☐ Yes ☒ No

**W** Did this LLC file the Federal Schedule M-3 (federal Form 1065)? ........................... ● ☒ Yes ☐ No

**X** Is this LLC a direct owner of an entity that filed a federal Schedule M-3? ........................... ● ☐ Yes ☒ No

**Y** Does the LLC have a beneficial interest in a trust or is it a grantor of a Trust? ........................... ● ☐ Yes ☒ No
If "Yes," attach schedule of trusts and federal identification numbers.

**Z** Does this LLC own an interest in a business entity disregarded for tax purposes? ........................... ⊙ ☐ Yes ☒ No
If "Yes," complete Schedule EO, Part II.

*(continued on Side 3)*

47-1444612

(continued from Side 2)

**AA**  Is any member of the LLC related (as defined in IRC Section 267(c)(4)) to any other member of the LLC? •☐ Yes ☒ No

**BB**  Is any member of the LLC ... ... ... ... ... ... ... ...
to any other member? •☐ Yes ☒ No

**CC**  (1)  Is the LLC deferring any income from the disposition of assets? (see instructions) •☐ Yes ☒ No

(2)  If "Yes," enter the year of asset disposition ........................ •[                    ]

**DD**  Is the LLC reporting previously deferred income from:
(see instructions) ........................ •☐ Installment Sale  •☐ IRC §1031  •☐ IRC §1033  •☐ Other

**EE**  (1)  Did this LLC generate a New Employment Credit? •☐ Yes ☒ No

(2)  If "Yes," enter the generated amount ........................ •[              .00]

**FF**  "Doing business as" name. See instructions: •_____

**GG**  (1)  Has this LLC operated as another entity type such as a corporation, S corporation, General Partnership,
Limited Partnership, or Sole Proprietorship in the previous five (5) years? •☐ Yes ☒ No

(2)  If "Yes," provide prior FEIN(s) if different, business name(s), and entity type(s) for prior returns
filed with the FTB and/or IRS (see instructions)

**HH**  (1)  Has this LLC previously operated outside California? •☐ Yes ☒ No

(2)  Is this the first year of doing business in California? •☐ Yes ☒ No

---

| Single Member LLC Information and Consent — Complete only if the LLC is disregarded. | Federal TIN/SSN: • |
|---|---|
| Sole Owner's name (as shown on owner's return) ⊚ | FEIN/CA Corp no./CA SOS File no. |
| Street Address, City, State, and ZIP Code | •☐ Return filed with the FTB by this Owner |
| | ☐ (1) Form 540    ☐ (5) Form 541 |
| | ☐ (2) Form 100    ☐ (6) Form 100S |
| Member's Consent Statement: I consent to the jurisdiction of the State of California to tax my LLC income and agree to file returns and pay tax as may be required by the Franchise Tax Board. | ☐ (3) Form 565    ☐ (7) Form 568 |
| Signature ▶                                        Date | ☐ (4) Other |

| | To learn about your privacy rights, how we may use your information, and the consequences for not providing the requested information, go to ftb.ca.gov and search for privacy notice. To request the notice by mail, call 800.852.5711. |
|---|---|
| **Sign Here** | Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. |
| | Signature of authorized member or manager ▶ _____    Date _____    Telephone • |
| | Authorized member or manager's e-mail address (optional) • |

| **Paid Preparer's Use Only** | Paid preparer's signature ▶ | Date | Check if self-employed ☐ | PTIN • P00288359 |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed) and address ▶ | KYU HONG KIM, CPA, INC.  3435 WILSHIRE BLVD STE 1970  LOS ANGELES, CA 90010-1938 | | FEIN • 20-2861494 |
| | | | | Telephone • 213-381-3557 |

May the FTB discuss this return with the preparer shown above (see instructions)? ........................ •☒ Yes ☐ No

47-1444612

## Schedule A  Cost of Goods Sold

| | | | | | |
|---|---|---|---|---|---|
| 1 | Inventory at beginning of year | | 1 | | 00 |
| 2 | Purchases less cost of items withdrawn for personal use | | 2 | 3,034,674 | 00 |
| 3 | Cost of labor | | 3 | | 00 |
| 4 | Additional IRC Section 263A costs. Attach schedule | | 4 | | 00 |
| 5 | Other costs. Attach schedule | | 5 | | 00 |
| 6 | Total. Add line 1 through line 5 | | 6 | 3,034,674 | 00 |
| 7 | Inventory at end of year | | 7 | 1,101,833 | 00 |
| 8 | Cost of goods sold. Subtract line 7 from line 6. Enter here and on Schedule B, line 2 | | 8 | 1,932,841 | 00 |

9  a  Check all methods used for valuing closing inventory:

(1) ☐ Cost  (2) ☐ Lower of cost or market as described in Treas. Reg. Section 1.471-4  (3) ☐ Write down of "subnormal" goods as described in Treas. Reg. Section 1.471-2(c)  (4) ☐ Other. Specify method used and attach explanation

b  Check this box if the LIFO inventory method was adopted this taxable year for any goods. If checked, attach federal Form 970 ... ☐

c  Do the rules of IRC Section 263A (with respect to property produced or acquired for resale) apply to the LLC? ... ☐ Yes  ☐ No

d  Was there any change (other than for IRC Section 263A purposes) in determining quantities, cost, or valuations between opening and closing inventory? If "Yes," attach explanation ... ☐ Yes  ☐ No

## Schedule B  Income and Deductions

Caution: Include only trade or business income and expenses on line 1a through line 22 below. See the instructions for more information.

| | | | | | | |
|---|---|---|---|---|---|---|
| Income | 1  a  Gross receipts or sales $ 3,971,781 b Less returns and allowances $ | c Balance | | 1c | 3,971,781 | 00 |
| | 2  Cost of goods sold (Schedule A, line 8) | | ⊙ | 2 | 1,932,841 | 00 |
| | 3  GROSS PROFIT. Subtract line 2 from line 1c | | | 3 | 2,038,940 | 00 |
| | 4  Total ordinary income from other LLCs, partnerships, and fiduciaries. Attach schedule | | | 4 | | 00 |
| | 5  Total ordinary loss from other LLCs, partnerships, and fiduciaries. Attach schedule | | | 5 | | 00 |
| | 6  Total farm profit. Attach federal Schedule F (Form 1040) | | | 6 | | 00 |
| | 7  Total farm loss. Attach federal Schedule F (Form 1040) | | | 7 | | 00 |
| | 8  Total gains included on Schedule D-1, Part II, line 17 (gain only) | | | 8 | | 00 |
| | 9  Total losses included on Schedule D-1, Part II, line 17 (loss only) | | | 9 | | 00 |
| | 10  Other income. Attach schedule  SEE STATEMENT 1 | | | 10 | 77,661 | 00 |
| | 11  Other loss. Attach schedule | | | 11 | | 00 |
| | 12  Total income (loss). Combine line 3 through line 11 | | | 12 | 2,116,601 | 00 |
| Deductions | 13  Salaries and wages (other than to members) | | | 13 | 1,492,031 | 00 |
| | 14  Guaranteed payments to members | | ⊙ | 14 | | 00 |
| | 15  Bad debts | | ● | 15 | | 00 |
| | 16  Deductible interest expense not claimed elsewhere on return | | ⊙ | 16 | 200,000 | 00 |
| | 17  a  Depreciation and amortization. Attach form FTB 3885L $ 4,812 | | | | | |
| | b  Less depreciation reported on Schedule A and elsewhere on return $ | c Balance | ● | 17c | 4,812 | 00 |
| | 18  Depletion. Do not deduct oil and gas depletion | | | 18 | | 00 |
| | 19  Retirement plans, etc. | | | 19 | | 00 |
| | 20  Employee benefit programs | | | 20 | 67,230 | 00 |
| | 21  Other deductions. Attach schedule  SEE STATEMENT 2 | | ● | 21 | 4,954,628 | 00 |
| | 22  Total deductions. Add line 13 through line 21 | | ● | 22 | 6,718,701 | 00 |
| | 23  Ordinary income (loss) from trade or business activities. Subtract line 22 from line 12 | | ● | 23 | -4,602,100 | 00 |

## Schedule T  Nonconsenting Nonresident Members' Tax Liability. Attach additional sheets if necessary.

| (a) Member's name | (b) SSN, ITIN, or FEIN | (c) Distributive share of income | (d) Tax rate | (e) Member's total tax due (see instructions) | (f) Amount withheld by this LLC on this member reported on Form 592-B | (g) Member's net tax due |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Total the amount of tax due. Enter the total here and on Side 1, line 4. If less than zero enter -0- ...................

47-1444012

## Schedule K    Members' Shares of Income, Deductions, Credits, etc.

| (a) Distributive share items | | (b) Amounts from federal K (1065) | (c) California adjustments | (d) Total amounts using California law |
|---|---|---|---|---|
| **Income (Loss)** | | | | |
| 1 Ordinary income (loss) from trade or business activities | 1 | −4,613,383 | 11,283 | −4,602,100 |
| 2 ... Attach federal Form 8825 | 2 | | | |
| b Less expenses. Att. sch. | 3b | | | |
| c Net income (loss) from other rental activities. Subtract line 3b from line 3a | 3c | | | |
| 4 Guaranteed payments to members | 4 | | | |
| 5 Interest income | 5 | | | |
| 6 Dividends | 6 | | | |
| 7 Royalties | 7 | | | |
| 8 Net short-term capital gain (loss). Attach Schedule D (568) | 8 | | | |
| 9 Net long-term capital gain (loss). Attach Schedule D (568) | 9 | | | |
| 10 a Total Gain under IRC Section 1231 (other than due to casualty or theft) | 10a | | | |
| b Total Loss under IRC Section 1231 (other than due to casualty or theft) | 10b | | | |
| 11 a Other portfolio income (loss). Att. sch. | 11a | | | 0 |
| b Total other income. Att. sch. | 11b | | | |
| c Total other loss. Attach schedule | 11c | | | |
| **Deductions** | | | | |
| 12 Expense deduction for recovery property (IRC Section 179). Attach schedule | 12 | | | |
| 13 a Charitable contributions. See instructions. SEE STMT 3,4 | 13a | 2,400 | | 2,400 |
| b Investment interest expense | 13b | | | |
| c 1 Total expenditures to which IRC Section 59(e) election may apply. | 13c1 | | | |
| 2 Type of expenditure | 13c2 | | | |
| d Deductions related to portfolio income | 13d | | | 0 |
| e Other deductions. Attach sch. | 13e | | | |
| **Credits** | | | | |
| 15 a Withholding on LLC allocated to all members | 15a | | | |
| b Low-income housing credit | 15b | | | |
| c Credits other than the credit shown on line 15b related to rental real estate activities. Attach schedule | 15c | | | |
| d Credits related to other rental activities. Attach schedule | 15d | | | |
| e Nonconsenting nonresident members' tax paid by LLC | 15e | | | |
| f Other credits. Att. sch. | 15f | | | |
| g New Employment Credit | 15g | | | |
| **Alternative Minimum Tax (AMT) Items** | | | | |
| 17 a Depreciation adjustment on property placed in service after 1986 | 17a | | 1,200 | 1,200 |
| b Adjusted gain or loss | 17b | | | |
| c Depletion (other than oil and gas) | 17c | | | |
| d Gross income from oil, gas, and geothermal properties | 17d | | | |
| e Deductions allocable to oil, gas, and geothermal properties | 17e | | | |
| f Other alternative minimum tax items. Attach schedule | 17f | | | |
| **Other Information** | | | | |
| 18 a Tax-exempt interest income | 18a | | | |
| b Other tax-exempt income | 18b | | | 0 |
| c Nondeductible expenses SEE STMT 5,6 | 18c | 48,960 | 800 | 49,760 |
| 19 a Distributions of money (cash and marketable securities) | 19a | | | |
| b Distribution of property other than money | 19b | | | |
| 20 a Investment income | 20a | | | |
| b Investment expenses | 20b | | | |
| c Other information. See instructions. | 20c | | | |
| **Analysis** | | | | |
| 21 a Total distributive income/payment items. Combine lines 1, 2, and 3c through 11c. From the result, subtract the sum of lines 12 through 13e. | 21a | −4,615,783 | 11,283 | −4,604,500 |

| b Analysis of members: | (a) Corporate | (b) Individual | | (c) Partnership | (d) Exempt Organization | (e) Nominee/Other | (f) LLC |
|---|---|---|---|---|---|---|---|
| | | i. Active | ii. Passive | | | | |
| Members: | −4604500 | | | | | | |

Schedule L   Balance sheets. Use the instructions for Schedule L, before completing Schedules L, M-1, and M-2.

| Assets | Beginning of taxable year | | End of taxable year | |
|---|---|---|---|---|
| | (a) | (b) | (c) | (d) |
| 1 Cash | | 179,004 | | 66,395 |
| 2 a Trade notes and accounts receivable | | | 553,507 | |
| b Less allowance for bad debts | | | | 553,507 |
| 3 Inventories | | | | 1,101,833 |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets. STMT 7 | | 4,300,120 | | 2,525,414 |
| 7 Mortgage and real estate loans | | 0 | | 0 |
| 8 Other investments | | 0 | | 0 |
| 9 a Buildings and other depreciable assets | 1,734 | | 27,514 | |
| b Less accumulated depreciation | | 1,734 | 2,525 | 24,989 |
| 10 a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 11 Land (net of any amortization) | | | | |
| 12 a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | | 0 | | 0 |
| 13 Other assets. Att. sch. STMT 8 | | 4,700 | | 2,020,254 |
| 14 Total assets | | 4,286,458 | | 6,292,703 |
| **Liabilities and Capital** | | | | |
| 15 Accounts payable | | 56,777 | | 835,336 |
| 16 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 17 Other current liabilities. STMT 9 | | 111,040 | | 784,884 |
| 18 All nonrecourse loans | | | | |
| 19 Mortgages, notes, bonds payable in 1 year or more | | | | |
| 20 Other liabilities. Attach schedule STMT 10 | | 4,300,000 | | 2,000,000 |
| 21 Members' capital accounts | | −181,359 | | 2,671,483 |
| 22 Total liabilities and capital | | 4,286,458 | | 6,292,703 |

## Schedule M-1  Reconciliation of Income (Loss) per Books With Income (Loss) per Return. Use total amount under California law. See instructions.

| | | | | |
|---|---|---|---|---|
| 1 Net income (loss) per books | −4,651,971 | 6 Income recorded on books this year not included on Schedule K, line 1 through line 11c. Itemize: | | |
| 2 Income included on Schedule K, line 1 through line 11c, not recorded on books this year. Itemize: | 0 | a Tax-exempt interest .... $ | 0 | |
| 3 Guaranteed payments (other than health insurance) | 0 | b Other STMT 11 $ | 12,772 | |
| 4 Expenses recorded on books this year not included on Schedule K, line 1 through line 13e. Itemize: | | c Total. Add line 6a and line 6b | | 12,772 |
| a Depreciation .... $ 10,483 | | 7 Deductions included on Schedule K, line 1 through line 13e, not charged against book income this year. Itemize: | | |
| b Travel and entertainment ... $ 48,960 | | a Depreciation $ | 0 | |
| c Annual LLC tax .. $ 800 | | b Other $ | | |
| d Other ......... $ | | c Total. Add line 7a and line 7b | | 0 |
| e Total. Add line 4a through 4d | 60,243 | 8 Total. Add line 6c and line 7c | | 12,772 |
| 5 Total of line 1 through line 4e | −4,591,728 | 9 Income (loss) (Schedule K, line 21a). Subtract line 8 from line 5 | | −4,604,500 |

## Schedule M-2  Analysis of Members' Capital Accounts. Use California amounts.

| | | | | |
|---|---|---|---|---|
| 1 Balance at beginning of year | −181,359 | 5 Total of line 1 through line 4 | | 2,671,483 |
| 2 Capital contributed during year | | 6 Distributions:  a Cash | | |
| a Cash | 7,504,813 | b Property | | |
| b Property | | 7 Other decrease. Itemize | | |
| 3 Net income (loss) per books | −4,651,971 | 8 Total of line 6 and line 7 | | 0 |
| 4 Other increase. Itemize | | 9 Balance at end of year. Subtract line 8 from line 5 | | 2,671,483 |

## Schedule O  Amounts from Liquidation used to Capitalize a Limited Liability Company. Complete only if initial return box is checked on Side 1, Question H.)

Name of entity liquidated (if more than one, attach a schedule)

| Type of entity: | (1) C Corporation | (2) S Corporation | (3) Partnership | (4) Limited Partnership | (5) Sole Proprietor | (6) Farmer |
|---|---|---|---|---|---|---|

Entity ID number(s)  FEIN _____  SSN or ITIN _____  Corporation _____  CA SOS _____

Amount of liquidation gains recognized to capitalize the LLC ...... ●

THOMAS WILDE LLC
47-1944612

## Schedule IW    Limited Liability Company (LLC) Income Worksheet

Enter your California income amounts on the worksheet. All amounts entered must be assigned for California law differences. Use only amounts that are from sources derived from or attributable to California when completing lines 1-17 of this worksheet. If your business is both within and outside of California, see Schedule IW instructions to assign the correct amounts to California. If the LLC is wholly within California, the total income amount is assigned to California and

SMLLC is still required to complete Schedule IW. Disregarded entities that do not meet the filing requirements to complete Schedule B or Schedule K should prepare Schedule IW by entering the California amounts attributable to the disregarded entity from the member's federal Schedule B, C, D, E, F (Form 1040), or additional schedules associated with other activities. Do not enter amounts on this worksheet that have already been reported by another LLC to determine its fee.

**See Instructions on page 13 of the Form 568 Booklet for more Information on how to complete Schedule IW.**

| | | | | |
|---|---|---|---|---|
| 1 a | Total California income from Form 568, Schedule B, line 3. See Instructions | ⊙ 1a | 2,038,940 |
| b | Enter the California cost of goods sold from Form 568, Schedule B, line 2 and from federal Schedule F (Form 1040) (plus California adjustments) associated with the receipts assigned to California on lines 1a and 4 | ⊙ 1b | 1,932,841 |
| 2 a | If the answer to Question U(1) on Form 568 Side 2, is "Yes", include the gross income of this disregarded entity that is not included in lines 1 and 8 through 16 | ⊙ 2a | |
| b | Enter the cost of goods sold of disregarded entities associated with the receipts assigned to California on line 2a | ⊙ 2b | |
| 3 a | LLC's distributive share of ordinary income from pass-through entities | ⊙ 3a | |
| b | Enter the LLC's distributive share of cost of goods sold from other pass-through entities associated with the receipt assigned to California on line 3a (see Schedule K-1s (565), Table 3, line 1a) | ⊙ 3b | |
| c | Enter the LLC's distributive share of deductions from other pass-through entities associated with the receipt assigned to California on line 3a (see Schedule K-1s (565), Table 3, line 1b) | ⊙ 3c | |
| 4 | Add gross farm income from federal Schedule F (Form 1040). Use California amounts | ⊙ 4 | |
| 5 | Enter the total of other income from Form 568, Schedule B, line 10 | ⊙ 5 | 77,661 |
| 6 | Enter the total gains (not losses) from Form 568, Schedule B, line 8. | ⊙ 6 | |
| 7 | Add line 1a through line 6 | ⊙ 7 | 4,049,442 |
| 8 | California rental real estate | | | |
| a | Enter the total gross rents from federal Form 8825, line 18a | ⊙ 8a | |
| b | Enter the total gross rents from all Schedule K-1s (565), Table 3, line 2 | ⊙ 8b | |
| c | Add line 8a and line 8b | ⊙ 8c | |
| 9 | Other California rentals. | | | |
| a | Enter the amount from Schedule K (568), line 3a | ⊙ 9a | |
| b | Enter the amount from all Schedule K-1s (565), Table 3, line 3 | ⊙ 9b | |
| c | Add lines 9a and 9b | ⊙ 9c | |
| 10 | California interest. Enter the amount from Form 568, Schedule K, line 5 | ⊙ 10 | |
| 11 | California dividends. Enter the amount from Form 568, Schedule K, line 6 | ⊙ 11 | |
| 12 | California royalties. Enter the amount from Form 568, Schedule K, line 7 | ⊙ 12 | |
| 13 | California capital gains. Enter the capital gains (not losses) included in the amounts from Form 568, Schedule K, lines 8 and 9 | ⊙ 13 | |
| 14 | California 1231 gains. Enter the amount of total gains (not losses) from Form 568, Schedule K, line 10a | ⊙ 14 | |
| 15 | Other California portfolio income (not loss). Enter the amount from Form 568 Schedule K, line 11a | ⊙ 15 | |
| 16 | Other California income (not loss) not included in line 5. Enter the amount from Form 568, Schedule K, line 11b | ⊙ 16 | |
| 17 | Total California income. Add lines 7, 8c, 9c, 10, 11, 12, 13, 14, 15, and 16. Line 17 may not be a negative number. Enter here and on Form 568, Side 1, Line 1. If less than zero enter -0- | ⊙ 17 | 4,049,442 |

## 2015   Depreciation and Amortization   3885L

| Name as shown on return | California Secretary of State (SOS) file no. |
|---|---|
| THOMAS WYLDE LLC | 201420310399 |
| | FEIN |
| | 47-1444612 |

| (a) Description of property | (b) Date placed in service (mm/dd/yyyy) | (c) Cost or other basis | (d) Method of figuring depreciation | (e) Life or rate | (f) Depreciation for this year | (g) Code section | (h) Period or percentage | (i) Amortization for this year |
|---|---|---|---|---|---|---|---|---|
| 1 COMPUTER 01/31/2015 | | 2,667 | 200DB | 5 | 533 | | | |
| COMPUTER 02/11/2015 | | 4,104 | 200DB | 5 | 821 | | | |
| COMPUTER 06/06/2015 | | 1,118 | 200DB | 5 | 224 | | | |
| OFFICE EQUIP. 08/21/2015 | | 813 | 200DB | 5 | 163 | | | |
| OFFICE EQUIP. 10/19/2015 | | 1,062 | 200DB | 5 | 212 | | | |
| SEE STATEMENT 12 | | | | | 2,381 | | | |

1 Enter line 1, column (f) and column (i) totals ............... 1   4,334

**Depreciation**

Be sure to make adjustments for any basis differences when calculating depreciation.

2  California depreciation for assets placed in service beginning before the 2015 taxable year ...........................  2   478

3  Total California depreciation. Add line 1(f) and line 2 ..........................................................  3   4,812

**Amortization**

Be sure to make adjustments for any basis differences when calculating amortization.

4  California amortization for intangibles placed in service beginning before the 2015 taxable year ......................  4

5  Total California amortization. Add line 1(i) and line 4 .........................................................  5

6  Total depreciation and amortization. Add line 3 and line 5. Enter the total here and on Form 568, Schedule B, line 17a, if from a trade or business; or on federal Form 8825, line 14, if from rental real estate activities ................  6   4,812

7  IRC Section 179 expense deduction from line 12 of the worksheet in the instructions ......  7

8  Carryover of disallowed deduction to 2016 from line 13 of the worksheet in the instructions ..........  8

**Member's Share of Income,**
**2015** **Deductions, Credits, etc.**

CALIFORNIA SCHEDULE
**K-1 (568)**

TYB 01-01-2015 TYE 12-31-2015
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

6250 HOLLYWOOD BLVD 4H
LOS ANGELES CA 90028

47-1444612 201420310399
THOMAS WYLDE LLC

235 W 31ST ST
LOS ANGELES CA 90007

A What type of entity is this member?
(1) [X] Individual (4) [ ] C Corporation (7) [ ] LLP (10) [ ] Exempt Organization
(2) [ ] S Corporation (5) [ ] General Partnership (8) [ ] LLC (11) [ ] Disregarded Entity
(3) [ ] Estate/Trust (6) [ ] Limited Partnership (9) [ ] IRA/Keogh/SEP

B Is this member a foreign member? ● [ ] Yes [X] No
C Enter member's percentage (without regard to special allocations) of:

| | (i) Before decrease or termination | (ii) End of year |
|---|---|---|
| Profit sharing | 7.000000 % | 0.400000 % |
| Loss sharing | 0.000000 % | 0.000000 % |
| Ownership of capital | 7.000000 % | 0.400000 % |

D Member's share of liabilities:
Nonrecourse ● $ _____ 00
Qualified nonrecourse financing ● $ _____ 00
Other ● $ _____ 00

E Reportable transaction or tax shelter registration number(s) _____

F (1) Check here if this is a publicly traded partnership as defined in IRC Section 469(k)(2) ● [ ]
(2) Check here if this is an investment partnership (R&TC Sections 17955 and 23040.1) ● [ ]

G Check here if this is: ● (1) [ ] A final Schedule K-1 (568) (2) [X] An amended Schedule K-1 (568)

H Is this member a resident of California? ● [X] Yes ▶ [ ] No

FRONTS MYLDE LLC

| Member's name | Member's identifying number |
|---|---|
| JOHN HANNA | 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 |

| Capital account at beginning of year | Capital contributed during year | Member's share of line 3, line 4 and line 7 Form 568, Schedule M-2 | Withdrawals and distributions | Capital account at end of year combine column (a) through column (d) |
|---|---|---|---|---|
| a. 700 | b. | c. | d. ( ) | e. 700 |

Caution: Refer to Member's Instructions for Schedule K-1 (568) before entering information from this schedule on your California return.

| (a) Distributive share items | (b) Amounts from federal Schedule K-1 (1065) | (c) California adjustments | (d) Total amounts using California law. Combine col. (b) and col. (c) where applicable | (e) California source amounts and credits |
|---|---|---|---|---|
| **Income (Loss)** | | | | |
| 1 Ordinary income (loss) from trade or business activities | | | ● | ▶ |
| 2 Net income (loss) from rental real estate activities | | | ● | ▶ |
| 3 Net income (loss) from other rental activities | | | ◉ | ◉ |
| 4 Guaranteed payments to members | | | ● | ▶ |
| 5 Interest income | | | ● | ▶ |
| 6 Dividends | | | ● | ▶ |
| 7 Royalties | | | ● | ▶ |
| 8 Net short-term capital gain (loss) | | | ● | ▶ |
| 9 Net long-term capital gain (loss) | | | ● | ▶ |
| 10 a Total gain under IRC Section 1231 (other than due to casualty or theft) | | | ● | ▶ |
| b Total loss under IRC Section 1231 (other than due to casualty or theft) | | | | ▶ |
| 11 a Other portfolio income (loss). Attach schedule | | | ● | ▶ |
| b Total other income. Attach schedule | | | | ▶ |
| c Total other loss. Attach schedule | | | ● | ▶ |
| **Deductions** | | | | |
| 12 Expense deduction for recovery property (IRC Section 179) | | | | |
| 13 a Charitable contributions | | | | |
| b Investment interest expense | | | | |
| c 1 Total expenditures to which an IRC Section 59(e) election may apply | | | | |
| 2 Type of expenditures | | | | |
| d Deductions related to portfolio income Attach schedule | | | | |
| e Other deductions. Attach schedule | | | | |

THERE ARE NO AMOUNTS ON PAGE 3 AND 4

| TAXABLE YEAR 2015 | Member's Share of Income, Deductions, Credits, etc. | CALIFORNIA SCHEDULE K-1 (568) |
|---|---|---|

TYB 01-01-2015   TYE 12-31-2015
57-1157980

STANLEY DUCKS, LLC

18141 IRVINE BLVD
TUSTIN        CA  92780

47-1444612        201420310399
THOMAS WYLDE LLC

235 W 31ST ST
LOS ANGELES      CA  90007

**A** What type of entity is this member? ●

(1) ☐ Individual   (4) ☐ C Corporation   (7) ☐ LLP   (10) ☐ Exempt Organization

(2) ☐ S Corporation   (5) ☒ General Partnership   (8) ☐ LLC   (11) ☐ Disregarded Entity

(3) ☐ Estate/Trust   (6) ☐ Limited Partnership   (9) ☐ IRA/Keogh/SEP

**B** Is this member a foreign member? ● ☐ Yes  ☒ No

**C** Enter member's percentage (without regard to special allocations) of:

|  | (i) Before decrease or termination | (ii) End of year |
|---|---|---|
| Profit sharing | 3.500000 % ● | 0.200000 % |
| Loss sharing | 0.000000 % ● | 0.000000 % |
| Ownership of capital | 3.500000 % ● | 0.200000 % |

**D** Member's share of liabilities:

Nonrecourse ● $ _____.00

Qualified nonrecourse financing ● $ _____.00

Other ● $ _____.00

**E** Reportable transaction or tax shelter registration number(s) _____

**F** (1) Check here if this is a publicly traded partnership as defined in IRC Section 469(k)(2) ●○ ☐

(2) Check here if this is an investment partnership (R&TC Sections 17955 and 23040.1) ●○ ☐

**G** Check here if this is: ● (1) ☐ A final Schedule K-1 (568)   (2) ☒ An amended Schedule K-1 (568)

**H** Is this member a resident of California? ● ☒ Yes ► ☐ No

THOMAS WYLDE, LLC

| Member's name | Member's identifying number |
|---|---|
| STANLEY DUCKS, LLC | 57-3157980 |

| Capital account at beginning of year | Capital contributed during year | Member's share of line 3, line 4, and the 7 Form 568, Schedule M-2 | Withdrawals and distributions | Capital account at end of year, combine column (a) through column (d) |
|---|---|---|---|---|
| $ | $ | 350 | $ ( | $ 350 |

Caution: Refer to Member's Instructions for Schedule K-1 (568) before entering information from this schedule on your California return.

| (a) Distributive share items | (b) Amounts from federal Schedule K-1 (1065) | (c) California adjustments | (d) Total amounts using California law. Combine col. (b) and col. (c) where applicable | (e) California source amounts and credits |
|---|---|---|---|---|
| 1 Ordinary income (loss) from trade or business activities | | | ● | ► |
| 2 Net income (loss) from rental real estate activities | | | ● | ► |
| 3 Net income (loss) from other rental activities | | | ◉ | ◉ |
| 4 Guaranteed payments to members | | | ● | ► |
| 5 Interest income | | | ● | ► |
| 6 Dividends | | | ● | ► |
| 7 Royalties | | | ● | ► |
| 8 Net short-term capital gain (loss) | | | ● | ► |
| 9 Net long-term capital gain (loss) | | | ● | ► |
| 10 a Total gain under IRC Section 1231 (other than due to casualty or theft) | | | ● | ► |
| b Total loss under IRC Section 1231 (other than due to casualty or theft) | | | ● | ► |
| 11 a Other portfolio income (loss). Attach schedule | | | ● | ► |
| b Total other income. Attach schedule | | | ● | ► |
| c Total other loss. Attach schedule | | | ● | ► |
| 12 Expense deduction for recovery property (IRC Section 179) | | | | |
| 13 a Charitable contributions | | | | |
| b Investment interest expense | | | | |
| c 1 Total expenditures to which an IRC Section 59(e) election may apply | | | | |
| 2 Type of expenditures | | | | |
| d Deductions related to portfolio income. Attach schedule | | | | |
| e Other deductions. Attach schedule | | | | |

THERE ARE NO AMOUNTS ON PAGE 3 AND 4

| 2015 | Member's Share of Income, Deductions, Credits, etc. | K-1 (568) |
|---|---|---|

TYB  01-01-2015   TYE  12-31-2015
47-1710832

DSRB, LLC

18141 IRVINE BLVD
TUSTIN          CA   92780

47-1444612          201420310399
THOMAS WYLDE LLC

235 W 31ST ST
LOS ANGELES       CA   90007

A  What type of entity is this member?  ●
  (1) ☐ Individual      (4) ☐ C Corporation    (7) ☐ LLP          (10) ☐ Exempt Organization
  (2) ☐ S Corporation   (5) ☒ General Partnership (8) ☐ LLC        (11) ☐ Disregarded Entity
  (3) ☐ Estate/Trust    (6) ☐ Limited Partnership (9) ☐ IRA/Keogh/SEP

B  Is this member a foreign member? ..................................................... ● ☐ Yes  ☒ No
C  Enter member's percentage (without regard to special allocations) of:

|  | (i) Before decrease or termination | (ii) End of year |
|---|---|---|
| Profit sharing | 3.500000 % ● | 0.200000 % |
| Loss sharing | 0.000000 % ● | 0.000000 % |
| Ownership of capital | 3.500000 % ● | 0.200000 % |

D  Member's share of liabilities:
  Nonrecourse ................................................................... ● $ _____ .00
  Qualified nonrecourse financing ........................................... ● $ _____ .00
  Other ........................................................................... ● $ _____ .00

E  Reportable transaction or tax shelter registration number(s) ...........
F  (1) Check here if this is a publicly traded partnership as defined in IRC Section 469(k)(2) ..................... ◉ ☐
   (2) Check here if this is an investment partnership (R&TC Sections 17955 and 23040.1) ..................... ◉ ☐
G  Check here if this is:  ● (1) ☐ A final Schedule K-1 (568)  (2) ☒ An amended Schedule K-1 (568)
H  Is this member a resident of California? ................................................................ ● ☒ Yes ► ☐ No

**Member's name**

DSRB, LLC

**Member's identifying number**

47-1710932

| Capital account at beginning of year | Capital contributed during year | Member's share of line 3, line 4, and line 7 Form 568, Schedule M-2 | Withdrawals and distributions | Capital account at end of year combine column (a) through column (d) |
|---|---|---|---|---|
| • | • 350 • | • | • ( ) • | • 350 |

Caution: Refer to Member's Instructions for Schedule K-1 (568) before entering information from this schedule on your California return.

| (a) Distributive share items | (b) Amounts from federal Schedule K-1 (1065) | (c) California adjustments | (d) Total amounts using California law. Combine col. (b) and col. (c) where applicable | (e) California source amounts and credits |
|---|---|---|---|---|
| **Income (Loss)** | | | | |
| 1 Ordinary income (loss) from trade or business activities .......... | | | • | ► |
| 2 Net income (loss) from rental real estate activities | | | • | ► |
| 3 Net income (loss) from other rental activities | | | ◉ | ◉ |
| 4 Guaranteed payments to members ..... | | | • | ► |
| 5 Interest income | | | • | ► |
| 6 Dividends | | | • | ► |
| 7 Royalties | | | • | ► |
| 8 Net short-term capital gain (loss) | | | • | ► |
| 9 Net long-term capital gain (loss) .... | | | • | ► |
| 10 a Total gain under IRC Section 1231 (other than due to casualty or theft) | | | • | ► |
| b Total loss under IRC Section 1231 (other than due to casualty or theft) ... | | | • | ► |
| 11 a Other portfolio income (loss). Attach schedule | | | • | ► |
| b Total other income. Attach schedule | | | • | ► |
| c Total other loss. Attach schedule | | | • | ► |
| **Deductions** | | | | |
| 12 Expense deduction for recovery property (IRC Section 179) | | | | |
| 13 a Charitable contributions | | | | |
| b Investment interest expense ...... | | | | |
| c 1 Total expenditures to which an IRC Section 59(e) election may apply. ......... | | | | |
| 2 Type of expenditures | | | | |
| d Deductions related to portfolio income Attach schedule | | | | |
| e Other deductions. Attach schedule | | | | |

THERE ARE NO AMOUNTS ON PAGE 3 AND 4

**Member's Share of Income,**
**2015   Deductions, Credits, etc.**                              **K-1 (568)**

TYP  01-01-2015   TYE  12-31-2015
45-4645080

THE  PALLIATIVE, LLC.

12114 DEWEY ST
LOS ANGELES       CA   90066

47-1444612        201420310399
THOMAS WYLDE LLC

235 W 31ST ST
LOS ANGELES       CA   90007

---

**A**  What type of entity is this member?
(1) ☐ Individual      (4) ☐ C Corporation      (7) ☐ LLP        (10) ☐ Exempt Organization
(2) ☐ S Corporation   (5) ☒ General Partnership (8) ☐ LLC        (11) ☐ Disregarded Entity
(3) ☐ Estate/Trust    (6) ☐ Limited Partnership (9) ☐ IRA/Keogh/SEP

**B**  Is this member a foreign member? ............................................................... ☐ Yes  ☒ No
**C**  Enter member's percentage (without regard to special allocations) of:

|                          | (i) Before decrease or termination | (ii) End of year |
|--------------------------|:----------------------------------:|:----------------:|
| Profit sharing           | 9.000000 %                         | 0.510000 %       |
| Loss sharing             | 0.000000 %                         | 0.000000 %       |
| Ownership of capital     | 9.000000 %                         | 0.510000 %       |

**D**  Member's share of liabilities:
Nonrecourse ....................................................................... $ _____ .00
Qualified nonrecourse financing .................................... $ _____ .00
Other ................................................................................... $ _____ .00

**E**  Reportable transaction or tax shelter registration number(s) _____

**F**  (1) Check here if this is a publicly traded partnership as defined in IRC Section 469(k)(2) ............. ⊙ ☐
(2) Check here if this is an investment partnership (R&TC Sections 17955 and 23040.1) ............. ⊙ ☐

**G**  Check here if this is:  (1) ☐ A final Schedule K-1 (568)   (2) ☒ An amended Schedule K-1 (568)

**H**  Is this member a resident of California? ............................................................ ☒ Yes  ☐ No

PIONEER HYDE, LLC

| Member's name | Member's identifying number |
|---|---|
| THE PALLIATIVE, LLC. | 45-4648680 |

| Capital account at beginning of year | Capital contributed during year | Member's share of line 3, line 4, and line 7 Form 568, Schedule M-2 | Withdrawals and distributions | Capital account at end of year combine column (a) through column (d) |
|---|---|---|---|---|
| | | 900. | ( ) | 900. |

Caution: Refer to Member's Instructions for Schedule K-1 (568) before entering information from this schedule on your California return.

| (a) Distributive share items | (b) Amounts from federal Schedule K-1 (1065) | (c) California adjustments | (d) Total amounts using California law. Combine col. (b) and col. (c) where applicable | (e) California source amounts and credits |
|---|---|---|---|---|
| 1 Ordinary income (loss) from trade or business activities | | | • | ▶ |
| 2 Net income (loss) from rental real estate activities | | | • | ▶ |
| 3 Net income (loss) from other rental activities | | | ◉ | ◉ |
| 4 Guaranteed payments to members | | | • | ▶ |
| 5 Interest income | | | • | ▶ |
| 6 Dividends | | | • | ▶ |
| 7 Royalties | | | • | ▶ |
| 8 Net short-term capital gain (loss) | | | • | ▶ |
| 9 Net long-term capital gain (loss) | | | • | ▶ |
| 10 a Total gain under IRC Section 1231 (other than due to casualty or theft) | | | • | ▶ |
| b Total loss under IRC Section 1231 (other than due to casualty or theft) | | | • | |
| 11 a Other portfolio income (loss). Attach schedule | | | • | ▶ |
| b Total other income. Attach schedule | | | • | ▶ |
| c Total other loss. Attach schedule | | | • | ▶ |
| 12 Expense deduction for recovery property (IRC Section 179) | | | | |
| 13 a Charitable contributions | | | | |
| b Investment interest expense | | | | |
| c 1 Total expenditures to which an IRC Section 59(e) election may apply. | | | | |
| 2 Type of expenditures | | | | |
| d Deductions related to portfolio income Attach schedule | | | | |
| e Other deductions. Attach schedule | | | | |

THERE ARE NO AMOUNTS ON PAGE 3 AND 4

| | Member's Share of Income, | | |
|---|---|---|---|
| **2015** | **Deductions, Credits, etc.** | | **K-1 (568)** |

FYE 01-01-2015   TYE 12-31-2015
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
PAULA         LEONARD

2514 S TOLEDO AVE
PALM SPRINGS      CA   92264

47-1444612      201420310399
THOMAS WYLDE LLC

235 W 31ST ST
LOS ANGELES      CA   90007

**A** What type of entity is this member?
- (1) [X] Individual
- (2) [ ] S Corporation
- (3) [ ] Estate/Trust
- (4) [ ] C Corporation
- (5) [ ] General Partnership
- (6) [ ] Limited Partnership
- (7) [ ] LLP
- (8) [ ] LLC
- (9) [ ] IRA/Keogh/SEP
- (10) [ ] Exempt Organization
- (11) [ ] Disregarded Entity

**B** Is this member a foreign member? ..................... [ ] Yes [X] No

**C** Enter member's percentage (without regard to special allocations) of:

| | (i) Before decrease or termination | (ii) End of year |
|---|---|---|
| Profit sharing | 32.000000 % | 1.830000 % |
| Loss sharing | 0.000000 % | 0.000000 % |
| Ownership of capital | 32.000000 % | 1.830000 % |

**D** Member's share of liabilities:

Nonrecourse ........................................ $ .00

Qualified nonrecourse financing ...................... $ .00

Other ............................................. $ .00

**E** Reportable transaction or tax shelter registration number(s) ...........

**F** (1) Check here if this is a publicly traded partnership as defined in IRC Section 469(K)(2) ............ ⊙ [ ]

(2) Check here if this is an investment partnership (R&TC Sections 17955 and 23040.1) ............ ⊙ [ ]

**G** Check here if this is: (1) [ ] A final Schedule K-1 (568)   (2) [X] An amended Schedule K-1 (568)

**H** Is this member a resident of California? .................... [X] Yes ▶ [ ] No

THOMAS WYDE, LLC

| Member's name | Member's identifying number |
|---|---|
| PAULA THOMAS | 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 |

| Capital account at beginning of year | Capital contributed during year | Member's share of line 3, line 4 and line 7 Form 568, Schedule M-2 | Withdrawals and distributions | Capital account at end of year, combine column (a) through column (d) |
|---|---|---|---|---|
| | 3,200 | | ( ) | 3,200 |

Caution: Refer to Member's Instructions for Schedule K-1 (568) before entering information from this schedule on your California return.

| | (a)<br>Distributive share items | (b)<br>Amounts from federal Schedule K-1 (1065) | (c)<br>California adjustments | (d)<br>Total amounts using California law. Combine col. (b) and col. (c) where applicable | (e)<br>California source amounts and credits |
|---|---|---|---|---|---|
| Income (Loss) | 1 Ordinary income (loss) from trade or business activities | | | • | ▶ |
| | 2 Net income (loss) from rental real estate activities | | | • | ▶ |
| | 3 Net income (loss) from other rental activities | | | ⊙ | ⊙ |
| | 4 Guaranteed payments to members | | | • | ▶ |
| | 5 Interest income | | | • | ▶ |
| | 6 Dividends | | | • | ▶ |
| | 7 Royalties | | | • | ▶ |
| | 8 Net short-term capital gain (loss) | | | • | ▶ |
| | 9 Net long-term capital gain (loss) | | | • | ▶ |
| | 10 a Total gain under IRC Section 1231 (other than due to casualty or theft) | | | • | ▶ |
| | b Total loss under IRC Section 1231 (other than due to casualty or theft) | | | • | ▶ |
| | 11 a Other portfolio income (loss). Attach schedule | | | • | ▶ |
| | b Total other income. Attach schedule | | | • | |
| | c Total other loss. Attach schedule | | | • | ▶ |
| Deductions | 12 Expense deduction for recovery property (IRC Section 179) | | | | |
| | 13 a Charitable contributions | | | | |
| | b Investment interest expense | | | | |
| | c 1 Total expenditures to which an IRC Section 59(e) election may apply | | | | |
| | 2 Type of expenditures | | | | |
| | d Deductions related to portfolio income. Attach schedule | | | | |
| | e Other deductions. Attach schedule | | | | |

THERE ARE NO AMOUNTS ON PAGE 3 AND 4

**Member's Share of Income,**
**2015  Deductions, Credits, etc.**

**K-1 (568)**

TYE  01-01-2015  TYE  12-31-2015
93-3333333

HILLSHORE INVESTMENTS
CALIF 53 ESTE URBANIZACION
MARBELLA TORRE MMG

PANAMA

47-1444612     201420310399
THOMAS WYLDE LLC

235 W 31ST ST
LOS ANGELES     CA   90007

---

**A** What type of entity is this member?
- (1) ☐ Individual
- (4) ☒ C Corporation
- (7) ☐ LLP
- (10) ☐ Exempt Organization
- (2) ☐ S Corporation
- (5) ☐ General Partnership
- (8) ☐ LLC
- (11) ☐ Disregarded Entity
- (3) ☐ Estate/Trust
- (6) ☐ Limited Partnership
- (9) ☐ IRA/Keogh/SEP

**B** Is this member a foreign member? ............................................................. ● ☒ Yes  ☐ No

**C** Enter member's percentage (without regard to special allocations) of:

| | (i) Before decrease or termination | (ii) End of year |
|---|---|---|
| Profit sharing | 45.000000 % ● | 96.860000 % |
| Loss sharing | 100.000000 % ● | 100.000000 % |
| Ownership of capital | 45.000000 % ● | 96.860000 % |

**D** Member's share of liabilities:
- Nonrecourse ............................................................. ● $  .00
- Qualified nonrecourse financing ............................................................. ● $  .00
- Other ............................................................. ● $  .00

**E** Reportable transaction or tax shelter registration number(s) ...........

**F** (1) Check here if this is a publicly traded partnership as defined in IRC Section 469(k)(2) ............................................................. ◉ ☐
   (2) Check here if this is an investment partnership (R&TC Sections 17955 and 23040.1) ............................................................. ◉ ☐

**G** Check here if this is:  (1) ☐ A final Schedule K-1 (568)   (2) ☒ An amended Schedule K-1 (568)

**H** Is this member a resident of California? ............................................................. ● ☐ Yes  ▶ ☒ No

| Member's name | Member's Identifying number |
|---|---|
| HILLSHORE INVESTMENTS | 99-9999999 |

| Capital amount at beginning of year | Capital contributed during year | Member's share of line 3, line 4, and line 7 Form 568, Schedule M-2 | Withdrawals and contributions | Capital amount at end of year combine column (a) through column (d) |
|---|---|---|---|---|
| -182,059 | 7,500,013 | -4,651,971 | ( ) | 2,665,983 |

Caution: Refer to Member's Instructions for Schedule K-1 (568) before entering information from this schedule on your California return.

| | (a) Distributive share items | (b) Amounts from federal Schedule K-1 (1065) | (c) California adjustments | (d) Total amounts using California law. Combine col. (b) and col. (c) where applicable | (e) California source amounts and credits |
|---|---|---|---|---|---|
| Income (Loss) | 1 Ordinary income (loss) from trade or business activities | -4,613,383 | 11,283 | -4,602,100 | -4,602,100 |
| | 2 Net income (loss) from rental real estate activities | | | | |
| | 3 Net income (loss) from other rental activities | | | | |
| | 4 Guaranteed payments to members | | | | |
| | 5 Interest income | | | | |
| | 6 Dividends | | | | |
| | 7 Royalties | | | | |
| | 8 Net short-term capital gain (loss) | | | | |
| | 9 Net long-term capital gain (loss) | | | | |
| | 10 a Total gain under IRC Section 1231 (other than due to casualty or theft) | | | | |
| | b Total loss under IRC Section 1231 (other than due to casualty or theft) | | | | |
| | 11 a Other portfolio income (loss). Attach schedule | | | | |
| | b Total other income. Attach schedule | | | | |
| | c Total other loss. Attach schedule | | | | |
| Deductions | 12 Expense deduction for recovery property (IRC Section 179) | | | | |
| | 13 a Charitable contributions STMT 1,2 | 2,400 | | 2,400 | |
| | b Investment interest expense | | | | |
| | c 1 Total expenditures to which an IRC Section 59(e) election may apply. | | | | |
| | 2 Type of expenditures | | | | |
| | d Deductions related to portfolio income. Attach schedule | | | | |
| | e Other deductions. Attach schedule | | | | |

Member's name

**HILLSHORE INVESTMENTS**

Member's identifying number

**99-9999999**

| | (a) | (b) federal Schedule K-1 | (c) | (d) California law. Combine | (e) source amounts |
|---|---|---|---|---|---|
| **Credits** | 15 a Total withholding (equals amount on Form 592-B if calendar year LLC) | | | | |
| | b Low-income housing credit | | | | |
| | c Credits other than line 15b related to rental real estate activities. Attach schedule | | | | |
| | d Credits related to other rental activities. Att. sch. | | | | |
| | e Nonconsenting nonresident member's tax paid by LLC | | | | |
| | f Other credits – Attach required schedules or statements | | | | |
| | g New employment credit | | | | |
| **Alternative Minimum Tax (AMT) Items** | 17 a Depreciation adjustment on property placed in service after 1986 | | 1,200 | 1,200 | 1,200 |
| | b Adjusted gain or loss | | | | |
| | c Depletion (other than oil & gas) | | | | |
| | d Gross income from oil, gas, and geothermal properties | | | | |
| | e Deductions allocable to oil, gas, and geothermal properties | | | | |
| | f Other alternative minimum tax items. Att. sch. | | | | |
| **Tax-exempt Income and Expenses** | 18 a Tax-exempt interest income | | | | |
| | b Other tax-exempt income | | | | |
| | c Nondeductible expenses | 48,960 | 800 | 49,760 | 49,760 |
| **Distributions** | 19 a Distributions of money (cash and marketable securities) | | | | |
| | b Distributions of property other than money | | | | |
| **Other Information** | 20 a Investment income | | | | |
| | b Investment expenses | | | | |
| | c Other information. See instructions. SEE STMT 3. | | | | |

THERE ARE NO AMOUNTS ON PAGE 4

Limited Liability Company Nonresident
**20.13   Members' Consent**                                                3832

For use by limited liability companies (LLCs) with one or more nonresident members. Attach to Form 568 and give a copy to each nonresident member. Use additional sheets if necessary. Separate forms FTB 3832 for each nonresident member (or groups of nonresident members) may be used.

Limited liability company name

California Secretary of State (SOS) file number
201420510399

THOMAS WYLDE LLC                                                47-1444612

Note: Completion of this form does not satisfy the requirements for filing a California income tax return. See General Information C, Nonresidents Who Must File a California Return.

List the names and identification numbers below, of the nonresident members of record at the end of the LLC's taxable year.

| Number | Nonresident member's name | I consent to the jurisdiction of the State of California to tax my distributive share of the LLC income attributable to California sources. | | Nonresident member's SSN, TIN, or FEIN |
|---|---|---|---|---|
| | | Signature | Date | |
| 1 | ⊙ HILLSHORE INVESTMENTS | | | ⊙ 99-9999999 |
| 2 | ⊙ | | | ⊙ |
| 3 | ⊙ | | | ⊙ |
| 4 | ⊙ | | | ⊙ |
| 5 | ⊙ | | | ⊙ |
| 6 | ⊙ | | | ⊙ |
| 7 | ⊙ | | | ⊙ |

List the names and identification numbers below, of the nonresident members who sold or transferred their ownership interests before the end of the LLC's taxable year.

| Number | Nonresident member's name | I consent to the jurisdiction of the State of California to tax my distributive share of the LLC income attributable to California sources. | | Nonresident member's SSN, TIN, or FEIN |
|---|---|---|---|---|
| | | Signature | Date | |
| 1 | ⊙ | | | ⊙ |
| 2 | ⊙ | | | ⊙ |
| 3 | ⊙ | | | ⊙ |
| 4 | ⊙ | | | ⊙ |
| 5 | ⊙ | | | ⊙ |
| 6 | ⊙ | | | ⊙ |
| 7 | ⊙ | | | ⊙ |

PAGE 1 OF 1

California Statements

## Statement 1 - Form 568, Page 4, Line 10 - Other Income

| Description | Amount |
|---|---|
| Foreign Income | $ 55,080 |
| | 20,581 |
| Total | $ 77,661 |

## Statement 2 - Form 568, Page 4, Schedule B, Line 21 - Other Deductions

| Description | Amount |
|---|---|
| ADVERTISING AND PROMOTION | $ 284,574 |
| AUTO EXPENSE | 12,320 |
| SOCIAL MEDIA | 1,969 |
| WEBSITE EXPENSE | 67,850 |
| FACTORING CHARGE | 28,616 |
| BANK FEES | 30,148 |
| COMMISSION | 320,091 |
| COPYRIGHT, PATENT & TRADEMARK | 604 |
| DUES AND SUBCRIPTIONS | 30,168 |
| EQUIPMENT RENTAL | 20,327 |
| GIFTS | 3,502 |
| INSURANCE | 19,985 |
| MISCELLANEOUS | 108 |
| OFFICE EXPENSE | 4,162 |
| OFFICER ALLOWANCE | 20,794 |
| OFFICE SUPPLIES | 34,825 |
| OUTSIDE SERVICE | 420,514 |
| PHOTOSHOOT EXPENSE | 125,415 |
| PICK AND PACK EXPENSE | 127,888 |
| Postage & CARRIER | 392 |
| PROFESSIONAL FEES | 160,591 |
| PUBLIC RELATIONS | 217,342 |
| REFERENCE AND MATERIALS | 23,010 |
| SAMPLES | 1,389,957 |
| SHIPPING EXPENSE | 156,303 |
| SHOWROOM EXPENSE | 161,142 |
| STORAGE | 29,784 |
| SUPPLIES | 26,212 |
| TELEPHONE | 28,912 |
| TRADE SHOW | 439,670 |
| TRAVEL | 290,350 |
| UTILITIES | 11,632 |
| Repairs | 33,607 |
| Rent | 375,439 |
| Meals and Entertain (50%) | 48,960 |
| Taxes | 7,465 |
| Total | $ 4,954,628 |

1-2

17444612

# California Statements

## Statement 3 - Form 565, Page 5, Schedule K, Line 13a, Column b - Charitable Contributions

| Description | 100% | 50% | 30% | 20% | Total |
|---|---|---|---|---|---|
| CHARITABLE CONTRIBUTION | $ | $ 2,400 | $ | $ | $ 2,400 |
| Total | $ 0 | $ 2,400 | $ 0 | $ 0 | $ 2,400 |

## Statement 4 - Form 565, Page 5, Schedule K, Line 13a, Column d - Charitable Contributions

| Description | 100% | 50% | 30% | 20% | Total |
|---|---|---|---|---|---|
| CHARITABLE CONTRIBUTION | $ | $ 2,400 | $ | $ | $ 2,400 |
| Total | $ 0 | $ 2,400 | $ 0 | $ 0 | $ 2,400 |

3-4

## California Statements

47-1444577

### Statement 5 - Form 568, Page 5, Schedule K, Line 18c, Column b - Nondeductible Expenses

| Description | Amount |
|---|---|
| Nondeductible Meals and Entertainment | $ 48,960 |
| Total | $ 48,960 |

### Statement 6 - Form 568, Page 5, Schedule K, Line 18c, Column d - Nondeductible Expenses

| Description | Amount |
|---|---|
| Nondeductible Meals and Entertainment | $ 48,960 |
| Nondeductible Taxes | 800 |
| Total | $ 49,760 |

### Statement 7 - Form 568, Page 6, Schedule L, Line 6 - Other Current Assets

| Description | Beginning of Year | End of Year |
|---|---|---|
| ADVANCE TO OFFICERS | $ 74 | $ 2,514 |
| ADVANCE TO PDTW, LLC | 4,052,052 | 2,434,663 |
| VENDOR DEPOSITS | 47,994 | 80,657 |
| EMPLOYEE ADVANCE | | 900 |
| Undeposited Funds | | 6,680 |
| Total | $ 4,100,120 | $ 2,525,414 |

### Statement 8 - Form 568, Page 6, Schedule L, Line 13 - Other Assets

| Description | Beginning of Year | End of Year |
|---|---|---|
| PREPAID EXPENSES | $ 4,700 | $ 22,317 |
| ADVANCE ON COMMISSION | | 13,600 |
| GOODWILL | | 1,984,337 |
| Total | $ 4,700 | $ 2,020,254 |

### Statement 9 - Form 568, Page 6, Schedule L, Line 17 - Other Current Liabilities

| Description | Beginning of Year | End of Year |
|---|---|---|
| ACCRUED EXPENSES | $ 7,671 | $ 201,107 |
| ADVANCE FROM PDTW, LLC | 36,734 | |
| CUSTOMER DEPOSITS | 66,635 | 29,616 |
| FACTORING PAYABLE | | 430,409 |
| ADVANCES FROM OFFICERS | | 12,737 |
| AMERICAN EXPRESS | | 111,015 |
| Total | $ 111,040 | $ 784,884 |

## California Statements

47-1444632

### Statement 10 - Form 568, Page 6, Schedule L, Line 20 - Other Liabilities

| Description | Beginning of Year | End of Year |
|---|---|---|
| NOTE PAYABLE   LONG TERM | $    4,300,000 | $    2,000,000 |
| Total | $    4,300,000 | $    2,000,000 |

### Statement 11 - Form 568, Page 6, Sch M-1, Line 6 - Income Recorded on Books, Not on Sch K

| Description | Amount |
|---|---|
| Fed/CA income adjust | $    12,772 |
| Total | $    12,772 |

## California Statements

### Statement 12 - Form 3885L - Depreciation and Amortization

| Date in Serv | Cost | Meth | Life/Rate | Current Depr | Code | Per/Percent | Current Amrt |
|---|---|---|---|---|---|---|---|
| **Phone** | | | | | | | |
| 2/01/15 $ | 360 | 200DB | 5 $ | 72 | | $ | |
| **Office Equip.** | | | | | | | |
| 3/18/15 | 880 | 200DB | 5 | 176 | | | |
| **Office Furniture** | | | | | | | |
| 1/07/15 | 2,189 | 200DB | 7 | 313 | | | |
| **Phone** | | | | | | | |
| 2/27/15 | 360 | 200DB | 5 | 72 | | | |
| **Office Furniture: Desk** | | | | | | | |
| 1/09/15 | 1,959 | 200DB | 7 | 280 | | | |
| **Table** | | | | | | | |
| 1/19/15 | 2,312 | 200DB | 7 | 330 | | | |
| **Office Furniture** | | | | | | | |
| 2/04/15 | 1,740 | 200DB | 7 | 249 | | | |
| **Office Furniture** | | | | | | | |
| 9/18/15 | 2,027 | 200DB | 7 | 290 | | | |
| **Office Furniture** | | | | | | | |
| 10/14/15 | 1,196 | 200DB | 7 | 171 | | | |
| **Container** | | | | | | | |
| 10/23/15 | 2,993 | 200DB | 7 | 428 | | | |
| Total | | | | $ 2,381 | | | $ 0 |