# EXHIBIT

## "16"

Richard Byron Peddie, SBN 193770
lawstudios@comcast.net
Lawstudios | Richard Byron Peddie, P.C.
5051 Euclid Avenue
Boulder, CO 80303-2831
Tel.: 303.444.5447
Fax: 720.222.4766
*Attorney for Creditor Thomas Wylde, LLC*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re<br><br>PDTW, LLC,<br><br>    Debtor<br>/-----------------------------------------/<br>Larry Simons, Chapter 7 Trustee,<br>    Plaintiff,<br><br>    v.<br><br>Paula Thomas and Thomas Wylde, LLC,<br>    Defendants | Case No.: 6:16-bk-15889-SY<br>Adv. Proc. No.: 6:17-ap-01200-SY<br><br>**DECLARATION OF DAVID SCHNIDER**<br><br>**Hon. Scott H. Yun**<br><br>**DATE: May 29, 2018**<br>**TIME: 10:00 a.m.**<br>**COURTROOM.: 302** |

**DECLARATION OF DAVID SCHNIDER**

I, DAVID SCHNIDER, declare, upon my oath and under penalty of perjury, that if called to

testify, I could and would testify as follows:

1.    My name is DAVID SCHNIDER. I submit this declaration in support of Thomas Wylde,

LLC's opposition to a motion for summary judgment brought by Paula Thomas within

these proceedings. I have served as house counsel for the Debtor, PDTW, LLC,

("PDTW") and also for Thomas Wylde, LLC ("TW"). I am an attorney at law licensed to

1

DECLARATION OF DAVID SCHNIDER

**OppMSJ00057**

1    practice in the State of California. I am familiar with PDTW's contracts and debt

2    instruments, as well as those instruments drawn up as part of Paula Thomas' ("Thomas")

3    acquisition of her membership interest in TW..

4  2.    Attached to that Declarations & Exhibits Package attached to the Opposition as **Exhibit**

5    **B** is a true and correct copy of that Agreement to Purchase Membership Interest signed by

6    Thomas on or about Dec. 22, 2014 ("APMI"). Included also are true and correct copies of

7    two of the attachments to the APMI: (a) the "Use of Proceeds Agreement" (commencing

8    at **OppMSJ00020**); and (b) the "Indemnity Agreement" (commencing at

9    **OppMSJ00024**).

10  3.    Attached to that Declarations & Exhibits Package attached to the Opposition as **Exhibit**

11    **C** is a true and correct copy of that Dec. 22, 2014 Action by Written Consent of the

12    Members of PDTW, LLC (**OppMSJ00028**).

13  4.    Attached to that Declarations & Exhibits Package attached to the Opposition as **Exhibit**

14    **D** are true and correct copies of: (1) that Certificate of Copyright Assignment executed by

15    Thomas on Jan. 13, 2015 (**OppMSJ00030 - 00031**); (2) the Certificate of Trademark

16    Assignment executed by Thomas on Jan. 13, 2015 (**OppMSJ00032 - 00033**); and (3) that

17    Notice of Recordation of Assignment Document I retrieved from the US Patent &

18    Trademark Office after I sent the Certificate of Trademark Assignment to be recorded at

19    the USPTO (**OppMSJ00034 - 00035**). I also sent the Certificate of Copyright

20    Assignment to be recorded by the U.S. Copyright Office. Anyone can view the list of

21    works of authorship assigned and recorded at the Copyright Office at:

22    https://cocatalog.loc.gov/cgi-bin/doctitles.cgi?V9919D054

23  5.    Attached to that Declarations & Exhibits Package attached to the Opposition as **Exhibit**

24    **E** are true and correct copies of certain e-mails between myself and attorney Andrew

25    Apfelberg of the law firm of Greenberg Glusker Fields Claman & Machtinger LLP, a

26    well-known law firm in Los Angeles. These are two samples from a series of email

27    chains involving Mr. Apfelberg regarding the negotiation of Paula Thomas' APMI and

28    the transaction to purchase the THOMAS WYLDE intellectual property.

---

2

DECLARATION OF DAVID SCHNIDER

6.    The first chain, commencing at **OppMSJ00037**, shows that Andrew Apfelberg was already informed of the basic discussion points for the contemplated transactions. And, in fact, I was in communication with Andrew Apfelberg throughout this process, starting in July of 2014, and into February of 2015.

7.    I informed Paula Thomas, either directly or through her counsel, Andrew Apfelberg, that the members would join TW in three phases and that she would not be one of the "original" members but would instead join later. This was done for tax reasons to benefit her and the other minority members. I similarly informed Paula Thomas, either directly or through her counsel, Andrew Apfelberg, that Hillshore Investments, S.A., would be the last to become a member of TW for the same reason.

8.    The second chain, commencing at **OppMSJ00040**, shows communications on and just before Dec. 22, 2014, the date Paula Thomas signed the APMI and related instruments. TW was bound, under the APMI and attachments, to pay off CBC Partners I, LLC for Thomas. *See* **Exhibit B** – APMI ¶ 6(d) (**OppMSJ00012 & 000116** - liabilities assumed) & Use of Proceeds Agreement ¶ 1 (**OppsMSJ00020**).

9.    As one can see, Debtor PDTW, LLC, had delegated the CBC Partners I, LLC debt to Thomas – **Exhibit C** – and Thomas had accepted liability for that debt – **OppMSJ00028**.

10.    I am informed and believe that TW in fact paid off CBC Partners I, LLC as well as all other creditors TW was bound to pay off under the APMI and Use of Proceeds Agreement..

11.    Attached to that Declarations & Exhibits Package attached to the Opposition as **Exhibit F - OppMSJ00042 - 00051 -** is a true and correct copy of Paula Thomas' guarantee of the CBC Partners I, LLC debt. Jene Park signed a similar guarantee.

12.    Steve Prestemon is Jene Park's husband. I am informed and believe that TW paid him approximately $360,000.00 on or about Dec. 31, 2014 and that such payment repaid in full all amounts owing or potentially to become owing by PDTW to Prestemon or his affiliates, as required by the Use of Proceeds Agreement.

---

3

DECLARATION OF DAVID SCHNIDER

1      was highlighted.

2          Q     Read it into the record.

3          A     (Reading):

4                            Exhibit J, to the opposition,

5                    is a true and correct copy of an e-mail

6                    chain, starting on July 9th, 2014 and

7                    ending on July 10th, 2014, in which I

8                    was copied.  This e-mail chain contains

9                    the initial proposal I was aware of from

10                   a potential investor concerning

11                   obtaining capital and restructuring the

12                   Thomas Wylde fashion house.

13         Q     Let me stop you there.

14         A     Okay.

15         Q     Identify one publication that refers to PDTW as

16     the Thomas Wylde fashion house.  One publication.

17         A     I can't possibly.

18         Q     Yeah.  Because it didn't -- it was never referred

19     as the Thomas Wylde fashion house, wasn't it?

20         A     I have no idea.

21         Q     Okay.  So you just put those words in to make it

22     appear that PDTW, the Thomas Wylde fashion house, was

23     restructured into Thomas Wylde; isn't that right?

24         A     That is what happened.

25         Q     No, that's not what happened.  There's no such

                                              Page 145

# EXHIBIT

# "17"

# THOMAS WYLDE

RESOLVED FURTHER that a copy of this written consent shall be entered into the Minute Books of the Company.

IN WITNESS WHEREOF, the undersigned executes this written consent as of the date set forth above.

David Schnider, Organizer and General Counsel
Thomas Wylde, LLC
3231 S. La Cienega Blvd., Unit A
Los Angeles, CA 90016

John Hanna hereby accepts the authority and responsibility vested in him pursuant to the foregoing resolutions and certifies that he shall act as a fiduciary of the Company to carry out the terms hereof on behalf of and for the benefit of the Company pursuant to the direction of its Members.

July 29, 2014

John Hanna, CEO
Thomas Wylde, LLC
3231 S. La Cienega Blvd., Unit A
Los Angeles, CA 90016

3231 S. La Cienega Blvd., Unit A, Los Angeles, CA 90016

SCHNIDER_BK 002391

# EXHIBIT

# "18"

Page 1

From:   Richard <lawstudios@comcast.net>
To:   "Zamora, Nancy" <zamora3@aol.com>
Date:   8/4/2017 2:18:55 PM
Subject:   Fwd: PDTW, LLC; rescheduling of Auctioneer deposition

Nancy,

I have no idea if "parties" for the purposes of the agreed-to, informal discovery dispute resolution
procedure in effect in the state action means that non-parties can invoke it, but see attached.

It may be that by seeking a protective order from Judge Raphael you can get Judge Raphael to say
that Paula Thomas does not own the archives. I haven't given it much thought -- just an idea.

I still don't get what a deposition of RL Spears' representative has to do with anything in the LASC
litigation.  Throughout that litigation Paula Thomas said the archives belonged to PDTW (except
where she was just talking about "property belonging to PDTW and Thomas" and sloppily conflating
the two . . .).

Note that Paula's attorneys attached a Jan. 10, 2016 letter from Kring & Chung to their recent ex
parte.  Even that letter has K&C demanding return of the archives as PDTW property. (And curiously
I have a Jan. 13, 2016 version of essentially the same letter . . .)

*In sum, this deposition could never take place if Paula had not done the recent about-face
concerning archives suddenly belonging to her.*

I have been trying to run down the genesis of that about-face:

I checked the Jan. 12, 2016 hearing, and I believe that what I told the Judge was not just "partially
correct" as the Judge said, but totally correct:  I have not combed through it exhaustively, and
admittedly just went through one pass searching on "archiv" and then one pass searching on "MS.
THOMAS" but: (a) I can't find Paula Thomas saying anything at that hearing; and (b) the only person
who starts championing a position in which Paula Thomas owns the archives is Judge Yun. *See, Tr.
of Jan. 12, 2017* at 27:20 - 29:13. *That* appears to be the root of all of this newfangled interest in
moving a whole bunch of stuff over from PDTW to Paula Thomas -- stuff that never was in dispute -
- and all of that appears to have occurred because Judge Yun went in and read the ruling in the
preliminary injunction in state court in which Judge Raphael's ruling is based upon PDTW's standing
(implicitly -- he deflects my argument concerning Paula Thomas' lack of standing by saying that
PDTW has standing).

So that appears to be the moment in which this opportunity to rewrite history was first
perceived.  But the Judge is just wrong in saying that Paula Thomas claimed anything at all herself
with regards to archives at the Jan. 12 hearing:  That was purely Judge Yun from all I can tell.

And yes, from that point on Paula Thomas ran with it. *See Tr. of Mar. 30* at 12:4 - 12:20. (Perhaps the
Judge thought Paula's assertions of ownership occurring on March 30 occurred on Jan. 12 and was
mistaken merely as to date. Still, all of this just originates with some dicta in a preliminary injunction
that actually did not find that Paula Thomas owned the archives, could not finally settle that question
(as it was a preliminary injunction), did not rely upon Thomas' ownership of the archives, but instead
PDTW's, which dicta is then commented upon by Judge Yun, and which comments Paula Thomas
has now latched onto . . .)

I believe that the only way to get anywhere with these guys will be to nuke the issue completely in
adversary proceedings combining the Paula Thomas officer advances issue with the archive
ownership issue and also collection of the remaining items.

**Page 1**

From:  Richard <lawstudios@comcast.net>

To:  "Zamora, Nancy" <zamora3@aol.com>

Date:  7/9/2017 3:48:55 PM

Subject:  Re: Just Filed -- Joinder

One aim I had came from Nancy's comment that she might need to supplement her reply to deal with the subpoena/subpoena duces tecum Biller intends to serve upon the auctioneer: I think that with this all of this can just be ready in court to talk about it directly. So, I hope I saved you an extra filing!

Now everyone who first looks at this case -- whether Judge Yun or even you guys at the beginning -- has the same reaction: "Something odd is going on here . . ." And the first place they look is TW.

We may yet have our disagreements, but if you can work in anything to help Judge Yun understand why it is that we are cooperating (or "colluding" if you ask Dimitrios Biller . . .), I think it will help all of us.

Remember: The THOMAS WYLDE mark resulted in litigation right off the bat. has rarely been free of litigation, and, under PDTW, has never really been free of tremendous debt -- $500K to Schiffman, over $360K to Jene's family as at Dec. 2014, hard lenders like CBC and even Finance One, was dependent upon Jene Park cosigning/guaranteeing things and pledging her house (as did Paula Thomas for the CBC loan and perhaps Finance One).But we're looking at a company that had screwy dealings for almost a decade before filing bankruptcy.

It is really unfortunate for Paula Thomas and even Jene Park and others besides that the mark never resumed that initial, meteoric rise it first experienced right as the first bit of litigation exploded with the initial investors pre-PDTW.

And yes, I think the thing to do would be to hit Paula Thomas with an adversarial proceeding to establish the amount of her debt.We have to knock some sense into her counsel somehow.

rbp

---

**From:** "Nancy Zamora" <zamora3@aol.com>
**To:** "Larry Simons" <larry@lsimonslaw.com>
**Cc:** "Richard" <lawstudios@comcast.net>
**Sent:** Sunday, July 9, 2017 4:12:06 PM
**Subject:** Re: Just Filed -- Joinder

Absolutely . . . And begins to address the motion to dismiss.

I noticed in re-reading the last hearing transcript that Biller starts by referencing 6,000 items in inventory and by the end of the hearing starts referencing 10,000 items. Amazing.

Nancy

Sent from my iPad

On Jul 9, 2017, at 1:58 PM, Larry Simons <larry@lsimonslaw.com> wrote:

> Think it complements the reply well. Thanks Richard
>
> Sent from my iPhone
>
> On Jul 9, 2017, at 1:10 PM, Nancy Zamora <zamora3@aol.com> wrote:
>
>> Well said.
>>
>> Sent from my iPad
>>
>> On Jul 9, 2017, at 11:50 AM, Richard <lawstudios@comcast.net> wrote:
>>
>>> See attached.
>>>
>>> Best Regards,
>>>
>>>
>>> Richard Byron Peddie
>>> Lawstudios | Richard Byron Peddie, P.C.
>>>
>>>
>>> This e-mail, including any included attachments or links (collectively "Communication") is subject to the Electronics Communications Privacy Act, 18 U.S.C. 2510-2521, and may be protected under other laws as well. The Communication may be protected as an attorney-client communication and/or attorney work product.
>>>    In any event, the Communication is CONFIDENTIAL and PROPRIETARY, intended only for the designated recipient. If you are not the designated recipient, you are notified that any review, dissemination, distribution, or copying of the Communication is strictly prohibited.
>>>    If you have received this transmission in error, please notify us immediately by return e-mail, or by telephone (303.444.5447), and delete the Communication, together with any attachments, from your system.
>>>
>>>
>>> <ServiceCopy.pdf>

# EXHIBIT "19"

# PROMISSORY NOTE

**$1,800,000.00**                                                     **August 13, 2014**

    **FOR VALUE RECEIVED, Thomas Wylde LLC.**, a California limited liability company ("Borrower"), promises to pay to the order of **Hillshore Investments** ("Lender") at Los Angeles, California, or such other place as Lender may designate in writing, the amount loaned hereunder in lawful money of the United States of America, together with interest on the outstanding principal balance hereof as set forth in this Promissory Note (this "Note").

## BACKGROUND

    **WHEREAS**, Borrower and Lender are negotiating an equity investment transaction whereby Lender may invest up to Five Million Five Hundred Thousand Dollars ($5,500,000.00) in Borrower (the "Equity Investment");

    **WHEREAS**, Borrower and Lender desire to close the Equity Investment as soon as possible; and

    **WHEREAS**, until Borrower and Lender can close on the Equity Investment, the parties desire to enter into this Note whereby Lender will loan One Million Eight Hundred Thousand Dollars ($1,800,000.00) transferred monthly during 2014 (the "Loan Amount") upon the terms and conditions set forth herein. **Disbursement as per attached Appendix A.**

## AGREEMENT

    1.   **Recitals**. The foregoing recitals in the Background section are hereby incorporated by reference herein and made a part hereof.

    2.   **Term**. The term of this Note shall begin on the date hereof and shall terminate upon operating agreement is finalized and signed by all parties (the "Term").

    3.   **Loan**. Upon execution hereof, Lender shall wire the Loan Amount to a bank account designated by Borrower.

    4.   **Interest Rate; Default Rate**. Beginning on the 60th day from the date hereof, interest shall accrue on the outstanding principal balance at a fixed rate of five percent (5.00%) per annum. Upon the occurrence of an Event of Default (as defined herein), interest shall accrue on the then-outstanding balance of this Note (including overdue interest) from the date of the occurrence of an Event of Default to the date on which the overdue amount is paid (or, as applicable, the date when the Event of Default is cured) at the rate of five percent (5.00%) per annum (the "Default Rate"). Interest at the Default Rate shall be due and payable on the date on which the overdue amount is paid. Any interest which is not paid when due shall be added to the principal balance of this Note.

    5.   **Payments**. Borrower shall make quarterly payments towards the Loan Amount and any and all interest accrued thereon. Payments shall initially be applied to any accrued interest and then to reduction of principal. Any balance of principal or interest due shall be payable as a balloon payment at the end of the Term.

    6.   **Prepayment**. Borrower shall have the right to prepay the unpaid principal balance in whole or in part without penalty or premium. Each prepayment shall be accompanied by payment of all interest accrued hereunder to the date of payment. Each partial payment shall be applied against the installment of interest last due and payable.

7.    **Lender Rights**.

(a)    During the Term, Borrower shall make the financial books of Borrower available to Lender upon reasonable demand during business hours.

8.    **Events of Default; Remedies**.

(a)    Event of Default.  Each of the following events shall constitute an "Event of Default" under this Note:  (i) Borrower fails to make any payment of principal or interest or any other sum required to be made under this Note within ten (10) days after its due date; (ii) Borrower fails to observe or perform any other covenant, agreement, condition or term of this Note (other than payment), which remains uncured fifteen (15) days after receipt by Borrower of written notice thereof by Lender; (iii) Borrower becomes insolvent or makes an assignment for the benefit of creditors; or (iv) if (A) a court shall enter a decree or order for relief in respect of Borrower in an involuntary case under the Federal Bankruptcy Code or any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or similar official) of Borrower or for any of the property of Borrower ordering the winding up or liquidation of its affairs, and such decree or order shall remain unstayed and in effect for a period of sixty (60) days; or (B) Borrower shall commence an action in bankruptcy, insolvency, or under any other similar law now or hereinafter in effect, or shall consent to the entry of an order for relief in an involuntary case under any such law, or shall consent to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator (or similar official) of Borrower or for any part of its property.

(b)    Remedies.  At any time after occurrence of an Event of Default, Lender may, at Lender's option and without notice or demand, do any one or more of the following:

(i)    without declaring the unpaid principal amount to be due, collect all installments of principal and/or interest and all other sums due under this Note from time to time, by any action provided in this Note or provided at law or in equity;

(ii)    declare the entire unpaid principal balance of this Note, together with interest accrued thereon and all other sums due from Borrower under this Note to be due and payable immediately; and/or

(iii)    exercise any other right or remedy as may be provided in this Note, or provided at law or in equity.

9.    **Choice of Law; Jurisdiction**.  This Note is to be construed and governed by the laws of the State of California (without giving effect to principles of conflicts of laws).  The parties irrevocably agree that any legal action or proceeding arising out of or in connection with this Note may be brought in any state or federal court located in the State of California (or in any court in which appeal from such courts may be taken), and each party agrees not to assert, by way of motion, as a defense, or otherwise, in any such action, suit or proceeding, any claim that it is not subject personally to the jurisdiction of any such court, that the action, suit or proceeding is brought in an inconvenient forum, that the venue of the action, suit or proceeding is improper or that this Note or the subject matter hereof may not be enforced in or by such court, and hereby agrees not to challenge such jurisdiction or venue by reason of any offsets or counterclaims in any such action, suit or proceeding

10.    **Binding Effect**.  This Note shall inure to the benefit of Lender and Lender's successors and assigns and shall be binding upon Borrower and its successors and assigns.

11.    **Entire Agreement**.  This Note shall constitute the entire agreement and understanding between the parties on the matters contained herein.

12.    **Amendment**.  This Note shall not be amended without a writing signed by the parties hereto.

13.    **Notices**.  All notices, requests, demands and other communications given pursuant to any provision of this Note shall be given in writing by U.S. certified or registered mail with return receipt requested and postage prepaid, or by any 24-hour courier service with proof of delivery, addressed to the party for which it is intended at the address of that party first stated above or such other address of which that party shall have given notice in the manner provided herein.  Any such mail notice shall be deemed to have been given when the notice is deposited in the mail.  Any such courier notice shall be deemed to have been given on the following business day.

14.    **Severability**.  To the extent that any provision herein is found to be unlawful, such provision shall be severable from the remainder of the Note and as such shall not affect the validity of the remaining provisions of the Note.

IN WITNESS WHEREOF, the parties have executed this Note on the day written above.

LENDER:    **Hillshore Investments**          BORROWER:    Thomas Wylde LLC

Signature: _____          Signature: _____
Printed Name:                            Printed Name: John Hanna
Title:                                   Title:  CEO

**Appendix A:**

## Funding Schedule

| Date | Amount |
|------|--------|
| Aug 15, 2014 | 600,000 |
| Sep 1, 2014 | 350,000 |
| Oct 1, 2014 | 350,000 |
| Nov 1, 2014 | 150,000 |
| Dec 1, 2014 | 350,000 |
| **Total Funding 2014** | **1,800,000** |



# EXHIBIT

# "20"

**Dimitrios Biller**

| | |
|---|---|
| **From:** | Goodkin, Olivia |
| **Sent:** | Friday, May 08, 2015 5:52 AM |
| **To:** | 'joe@kfpgcpa.com' |
| **Cc:** | Apfelberg, Andrew M.; Paula Thomas (paulathomas@me.com); mocrain@crainlawgroup.com |
| **Subject:** | Paula's settlement agreement. |
| **Attachments:** | TW Advances to PDTW.PDF; PDTW LLC Depreciation Schedule.xls; GGDOCS1-#2382502-v1-Excerpts_of_Thomas_Agreement.DOCX |

Dear Joe,

Thank you for talking to me last week about Paula Thomas. I am looping in my partner Andrew, and another attorney, Michael, who are assisting. I would like for you to look at excerpts of the settlement agreement which pertain to the $4.7 million "debt" of PDTW LLC. I attach a Word document with the excerpts. Note that we have the settlement payments coming to Locknload so that payroll taxes are not taken out. We need you to review that structure as well.

Recently there was a settlement with a creditor of PDTW, Shiffman. Thomas Wylde LLC's attorney says the following about the $4.7, and why PDTW is not in release (the attorney's comments are in red below), relating to Shiffman. The $4.7, and the release of PDTW, are issues that I have asked Andrew to look at, but this may involve tax issues as well (one thought is that can't there be a release but for Shiffman? Or the language David says below, in yellow?):

The $4.7M is based on the attached schedule of advances. This included the CBC and Prestemon loan payments and funding of operating expenses during the transition period. This would be one of the exhibits to the agreement.

I am also attaching an Excel spreadsheet. This is a depreciation schedule, which shows PDTW's assets as best we have them. I think we would use this as the basis for the exhibit of assets to be updated. I think we will be able to cut much of the detail and change the formatting for the exhibit, but I figured better to give you the whole spreadsheet with both tabs to review.

I don't yet have a press release. I am not sure if the company has a draft or has someone working on it, but I will check.

As to PDTW, I purposely left it out of the release. I think until Shiffman is paid in full, TW cannot acquire PDTW's assets. He has first claim. Once the Schiffman debt is paid in full, we can then transfer all of PDTW's remaining assets and possibly the entire membership interest in the company to TW in exchange for a release of claims on the debt.

Andrew, Joe's contact info is below:

Joseph Foster, CPA, MST
Principal
KF Professional Group
100 North First Street ■ Suite 105 ■ Burbank ■ CA 91502
Tel 818-736-5960 ■ Fax 818-736-5966

Best regards,

Olivia

1

**12:54 PM**
**04/28/16**
**Accrual Basis**

## PDTW LLC
## Transactions by Account
### All Transactions

| Date | Name | Memo | Split | Amount | Vendor payment | Loan Assignment |
|------|------|------|-------|--------|----------------|-----------------|
| 09/02/2014 | DADA | CNRC - Amt Loaned to PDTW to pay Dada Invoices | Loan Payable | 404,000.00 | 404,000.00 | |
| 09/03/2014 | DADA | paid by Thomas Wylde, LLC- Bank of Manhattan CK #116 | Accounts Payable | 81,397.33 | 81,397.33 | |
| 09/05/2014 | NETCENTRA | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 117 | Accounts Payable | 902.02 | 902.02 | |
| 09/05/2014 | GREATAMERICA LEASING CORP. | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 118 | Accounts Payable | 1,710.88 | 1,710.88 | |
| 09/05/2014 | DIRTY INC | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 113 | Accounts Payable | 530.00 | 530.00 | |
| 09/05/2014 | WORLDNET INTL. | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 119 | Accounts Payable | 8,436.80 | 8,436.80 | |
| 09/05/2014 | DAVID BANG | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 120 | Accounts Payable | 159.77 | 159.77 | |
| 09/05/2014 | ANA JOVEL | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 115 | Accounts Payable | 250.00 | 250.00 | |
| 09/05/2014 | BARDOMIANO ROJAS | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 114 | 6250 - Repairs and Maintenance | 120.00 | 120.00 | |
| 09/09/2014 | UNITED LEATHER | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 121 | Accounts Payable | 10,000.00 | 10,000.00 | |
| 09/09/2014 | ROBYN MORGAN | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 122 | 6250 - Outside Service | 80.00 | 80.00 | |
| 09/09/2014 | BARDOMIANO ROJAS | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 123 | 6250 - Outside Service | 225.64 | 225.64 | |
| 09/12/2014 | WORLD ASIA LOGISTIC | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 130 | Accounts Payable | 1,354.41 | 1,354.41 | |
| 09/12/2014 | UNITED LEATHER | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 131 | Accounts Payable | 5,000.00 | 5,000.00 | |
| 09/12/2014 | BERKSHIRE HATHAWAY HOMESTATE | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 132 | 6300 - Repairs and Maintenance | 774.00 | 774.00 | |
| 09/12/2014 | ANA JOVEL | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 133 | Accounts Payable | 250.00 | 250.00 | |
| 09/12/2014 | RAYMOND J PAIGE | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 134 | 6324 - Storage | 1,389.00 | 1,389.00 | |
| 09/12/2014 | DAVID BANG | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 135 | Accounts Payable | 122.08 | 122.08 | |
| 09/12/2014 | ELSA A CHAVEZ. | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 136 | Accounts Payable | 60.03 | 60.03 | |
| 09/12/2014 | JEAN JOHNSTON. | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 137 | Accounts Payable | 57.82 | 57.82 | |
| 09/12/2014 | SUNAH JO. | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 138 | Accounts Payable | 75.76 | 75.76 | |
| 09/12/2014 | SYLVIA CHICO. | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 139 | Accounts Payable | 14.41 | 14.41 | |
| 09/12/2014 | DEBORAH PAYNE. | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 140 | Accounts Payable | 40.72 | 40.72 | |
| 09/12/2014 | INDUSTRIAL COLOR | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 141 | Accounts Payable | 797.00 | 797.00 | |
| 09/12/2014 | M. COREY WHITTED | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 142 | Accounts Payable | 350.00 | 350.00 | |
| 09/12/2014 | PRODIGITAL INC | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 143 | Accounts Payable | 600.00 | 600.00 | |
| 09/12/2014 | QUIXOTE STUDIOS, LLC | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 144 | Accounts Payable | 204.00 | 204.00 | |
| 09/12/2014 | URBAN PLATE, LLC | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 145 | Accounts Payable | 1,050.00 | 1,050.00 | |
| 09/12/2014 | VICTOR SALDANA | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 146 | Accounts Payable | 350.00 | 350.00 | |
| 09/12/2014 | CATLIN MYERS | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 147 | Accounts Payable | 350.00 | 350.00 | |
| 09/12/2014 | MAGNET LA | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 148 | Accounts Payable | 900.00 | 900.00 | |
| 09/12/2014 | YIOTIS PANAYIOTOU | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 149 | Accounts Payable | 750.00 | 750.00 | |
| 09/12/2014 | ROSEMARY CUSTOM KITCHEN DESK | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 150 | 6300 - Repairs and Maintenance | 80.00 | 80.00 | |
| 09/12/2014 | SUN MOON | paid by Thomas Wylde, LLC- Bank of Manhattan WIRE | Accounts Payable | 50,523.30 | 50,523.30 | |
| 09/22/2014 | BLACKWELDER FEE OWNER LLC | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 151 | Accounts Payable | 33,168.07 | 33,168.07 | |
| 09/22/2014 | BLACKWELDER FEE OWNER LLC | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 152 | Accounts Payable | 30,000.00 | 30,000.00 | |
| 09/25/2014 | | TRSFR from Bank of Manhattan, Thomas Wylde, LLC | CHASE 202151939 | 210,000.00 | 210,000.00 | |
| 10/01/2014 | VENDOME GLOBAL PARTNERS LLC | ADVANCE FROM THOMAS WYLDE, LLC - WIRE | Accounts Payable | 62,000.00 | 62,000.00 | |
| 10/07/2014 | Linda Park-Greilsamer | ADVANCE FROM TW LLC, PAID BY BOMHT # 156 | Accounts Payable | 461.53 | 461.53 | |
| 10/10/2014 | DADA | ADVANCE FROM TW LLC, PAID BY BOMHT # 157 | Accounts Payable | 19,916.85 | 19,916.85 | |
| 10/14/2014 | UNITED LEATHER | PAID BY THOMAS WYLDE, LLC CHECK #158, BOFMHT | Accounts Payable | 5,000.00 | 5,000.00 | |
| 10/15/2014 | | Funds Transfer | Credit Card at American Express | 32,605.11 | 32,605.11 | |
| 10/26/2014 | | | CHASE 202151939 | 165,000.00 | 165,000.00 | |
| 11/09/2014 | DADA | ADVANCE FROM TW LLC, PAID BY BOMHT # 154 | Accounts Payable | 20,672.94 | 20,672.94 | |
| 11/14/2014 | NETCENTRA | ADVANCE FROM TW LLC, PAID BY BOMHT # 155 | Accounts Payable | 6,819.75 | 6,819.75 | |
| 11/14/2014 | GREATAMERICA LEASING CORP. | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 166 | Accounts Payable | 2,398.75 | 2,398.75 | |
| 11/14/2014 | | | | 1,675.82 | 1,675.82 | |

12:54 PM
04/28/15
Accrual Basis

## PDTW LLC
### Transactions by Account
#### All Transactions

| Date | Name | Memo | Split | Amount | Vendor payment | Loan Assignment |
|---|---|---|---|---|---|---|
| 11/14/2014 | BERKSHIRE HATHAWAY HOMESTATE | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 167 | Accounts Payable | 776.00 | 776.00 | |
| 11/14/2014 | MURPHY ROSEN | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 168 | Accounts Payable | 5,000.00 | 5,000.00 | |
| 11/14/2014 | BLACKWELDER FEE OWNER LLC | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 169 | Accounts Payable | 30,000.00 | 30,000.00 | |
| 11/14/2014 | WORLD ASIA LOGISTIC | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 171 | Accounts Payable | 1,055.60 | 1,055.60 | |
| 11/14/2014 | RAYMOND J PAIGE | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 172 | 6324 - Storage | 1,389.00 | 1,389.00 | |
| 11/14/2014 | UNITED LEATHER | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 173 | Accounts Payable | 5,000.00 | 5,000.00 | |
| 11/14/2014 | MINA CHO BEAD WORK | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 174 | Accounts Payable | 840.00 | 840.00 | |
| 11/14/2014 | JJ & CO. | paid by Thomas Wylde, LLC- Bank of Manhattan WIRE | Accounts Payable | 43,552.51 | 43,552.51 | |
| 11/14/2014 | UNU | paid by Thomas Wylde, LLC- Bank of Manhattan WIRE | Accounts Payable | 11,390.00 | 11,390.00 | |
| 11/14/2014 | VENDOME GLOBAL PARTNERS LLC | paid by Thomas Wylde, LLC- Bank of Manhattan WIRE | Accounts Payable | 31,500.00 | 31,500.00 | |
| 11/14/2014 | WORLD ASIA UK | paid by Thomas Wylde, LLC- Bank of Manhattan WIRE | Accounts Payable | 2,036.52 | 2,036.52 | |
| 11/17/2014 | DAVID SCHNIDER | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 106 | 6300 - Repairs and Maintenance | 1,211.60 | 1,211.60 | |
| 11/21/2014 | ANA JOVEL | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 170 | Accounts Payable | 250.00 | 250.00 | |
| 11/21/2014 | MINA CHO BEAD WORK | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 179 | Accounts Payable | 540.00 | 540.00 | |
| 11/21/2014 | UNITED LEATHER | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 180 | Accounts Payable | 5,000.00 | 5,000.00 | |
| 11/24/2014 | MK ACCESSORY | paid by Thomas Wylde, LLC- Bank of Manhattan wire | Accounts Payable | 27,143.00 | 27,143.00 | |
| 11/24/2014 | SUN MOON | paid by Thomas Wylde, LLC- Bank of Manhattan wire | Accounts Payable | 206,956.99 | 206,956.99 | |
| 11/28/2014 | NETCENTRA | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 181 | Accounts Payable | 1,067.84 | 1,067.84 | |
| 12/01/2014 | UNU | paid by Thomas Wylde, LLC- Bank of Manhattan wire | Accounts Payable | 85,798.30 | 85,798.30 | |
| 12/01/2014 | ALLIED DELTA | paid by Thomas Wylde, LLC- Bank of Manhattan | Accounts Payable | 579.54 | 579.54 | |
| 12/01/2014 | Anthem Blue Cross | paid by Thomas Wylde, LLC- Bank of Manhattan | Accounts Payable | 5,907.55 | 5,907.55 | |
| 12/03/2014 | MIDNITE COMMUNICATIONS | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 162 | Accounts Payable | 2,500.00 | 2,500.00 | |
| 12/03/2014 | EVERNEX LTD | paid by Thomas Wylde, LLC- Bank of Manhattan wire | Accounts Payable | 2,520.65 | 2,520.65 | |
| 12/03/2014 | SUN MOON | paid by Thomas Wylde, LLC- Bank of Manhattan CK# WIRE | Accounts Payable | 6,087.16 | 6,087.16 | |
| 12/03/2014 | MK ACCESSORY | paid by Thomas Wylde, LLC- Bank of Manhattan CK# WIRE | Accounts Payable | 5,000.00 | 5,000.00 | |
| 12/04/2014 | 1 MODEL MANAGEMENT LLC | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 182 | Accounts Payable | 15,190.00 | 15,190.00 | |
| 12/08/2014 | B2 | creadited to Bank of Manhattan- MIA VIP 12/4/14 | Accounts Receivable | -2,958.49 | -2,958.49 | |
| 12/10/2014 | BLACKWELDER FEE OWNER LLC | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 185 | Accounts Payable | 30,000.00 | 30,000.00 | |
| 12/15/2014 | VENDOME GLOBAL PARTNERS LLC | paid by Thomas Wylde, LLC- Bank of Manhattan CK# 177 | Accounts Payable | 31,500.00 | 31,500.00 | |
| 12/15/2014 | | Funds Transfer | CHASE 202151939 | 100,000.00 | 100,000.00 | |
| 12/16/2014 | SUN MOON | paid by Thomas Wylde, LLC- Bank of Manhattan WIRE | Accounts Payable | 17,294.00 | 17,294.00 | |
| 12/16/2014 | MARIO BELLUCCI | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | Accounts Payable | 13,328.53 | 13,328.53 | |
| 12/17/2014 | MADISON DIXON | 12/17/14 VIP SALE | 6250 - Outside Service | 500.00 | 500.00 | |
| 12/18/2014 | JAMES HONG | INTERN 12/15-12/17/14 | 6250 - Outside Service | 406.44 | 406.44 | |
| 12/18/2014 | B2 | creadited to Bank of Manhattan- NY VIP 12/15/14 | Accounts Receivable | -9,577.00 | -9,577.00 | |
| 12/19/2014 | UNITED LEATHER | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | Accounts Payable | 15,799.38 | 15,799.38 | |
| 12/19/2014 | 1 MODEL MANAGEMENT LLC | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | Accounts Payable | 33,841.00 | 33,841.00 | |
| 12/19/2014 | PHOTOGENICS LLC | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | Accounts Payable | 2,000.00 | 2,000.00 | |
| 12/19/2014 | REX, INC | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | Accounts Payable | 900.00 | 900.00 | |
| 12/19/2014 | MURPHY ROSEN | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | Accounts Payable | 5,000.00 | 5,000.00 | |
| 12/19/2014 | PEAK MODELS & TALENT | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | Accounts Payable | 450.00 | 450.00 | |
| 12/19/2014 | ANA JOVEL | BANK OF MANHATTAN | 6300 - Repairs and Maintenance | 250.00 | 250.00 | |
| 12/19/2014 | B2 | creadited to Bank of Manhattan- OFFICE SALE 12/17/14 | Accounts Receivable | -11,401.50 | -11,401.50 | |
| 12/22/2014 | MK ACCESSORY | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | Accounts Payable | 10,848.00 | 10,848.00 | |
| 12/22/2014 | JJ & CO. | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | Accounts Payable | 954.33 | 954.33 | |
| 12/22/2014 | MASTER INT'L AIR | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | Accounts Payable | 3,266.43 | 3,266.43 | |

**12:54 PM**
**04/28/15**
**Accrual Basis**

## PDTW LLC
### Transactions by Account
#### All Transactions

| Date | Name | Memo | Split | Amount | Vendor payment | Loan Assignment |
|---|---|---|---|---|---|---|
| 12/22/2014 | JAMES HONG | HELPER-YEAR-END INVENTORY COUNT 12/12/14 | 6250 · Outside Service | 96.00 | 96.00 | |
| 12/23/2014 | SUN MOON | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | Accounts Payable | 22,745.61 | 22,745.61 | |
| 12/23/2014 | OLIVIA LAI | PAID BY BOF M | 6250 · Outside Service | 395.42 | 395.42 | |
| 12/23/2014 | JOANNE LEE | INTERN 12/22-23/14 13HRS@ 12 | 6250 · Outside Service | 156.00 | 156.00 | |
| 12/24/2014 | H&H FASHION LLC | JAN | Advances to Officer | 23,977.53 | 23,977.53 | |
| 12/24/2014 | PALLIATIVE, LLC | DEC FEE | 6270 · Management Fee | 8,333.33 | 8,333.33 | |
| 12/26/2014 | UNITED LEATHER | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | Accounts Payable | 6,435.25 | 6,435.25 | |
| 12/26/2014 | TELEPACIFIC COMMUNICATION | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | Accounts Payable | 800.53 | 800.53 | |
| 12/26/2014 | PREMIUM ASSIGNMENT CORP. | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | Accounts Payable | 539.71 | 539.71 | |
| 12/26/2014 | NETCENTRA | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | Accounts Payable | 285.00 | 285.00 | |
| 12/26/2014 | ANA JOVEL | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | 6300 · Repairs and Maintenance | 250.00 | 250.00 | |
| 12/26/2014 | WORLDNET INTL. | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | Accounts Payable | 4,656.45 | 4,656.45 | |
| 12/30/2014 | | Note payment in full - paid for by TW LLC | Bridge Loan Payable | 1,639,015.63 | | 1,639,015.63 |
| 12/30/2014 | | additional interest for 12/24-29/14 | Bridge Loan Payable | 3,656.25 | 3,656.25 | |
| 12/31/2014 | ANA JOVEL | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | 6300 · Repairs and Maintenance | 250.00 | 250.00 | |
| 12/31/2014 | | Payment of Notes Payable to Steve Prestemon | N/P - Steven Prestemon | 359,336.93 | | 359,336.93 |
| 02/05/2015 | MURPHY ROSEN | paid by Thomas Wylde, LLC- Bank of Manhattan CK# | Accounts Payable | 5,000.00 | 5,000.00 | |
| 04/27/2015 | Michael Shiffman | | 6244 · Legal Settlement | 30,000.00 | 30,000.00 | |
| | | | | **4,017,065.28** | **2,018,712.72** | **1,998,352.56** |

1    BY MR. BILLER:

2         Q       So how many days a week do you work with

3    John Hanna?

4         A       How many?

5         Q       Days do you work with John Hanna per

6    week?

7         A       Two to three days.

8         Q       Okay.  I only have one copy of this

9    document, unfortunately.  I'll give it to you because I

10   think it's more important for you to have it because

11   I'll be asking you about it.  I'll be asking you

12   questions; okay?

13        A       Okay.

14        MR. BILLER:  Let's have the next document

15   marked.

16                    (Exhibit 74 was marked for

17            identification by the Certified Shorthand

18            Reporter and is attached hereto.)

19   BY MR. BILLER:

20        Q       I want you to flip through 74 and let me

21   know when you become familiar with it.

22        MR. BILLER:  Let's go off the record.

23                    (Break taken:  11:14 a.m. - 11:19 a.m.)

24   BY MR. BILLER:

25        Q       Are you ready?

Page 117

84016-00001/2382502.1

2.      Agreement

2.1     The Employment Agreement, the Consulting Agreement, and the Clawback Agreement, including any amendments thereto, are all terminated by mutual consent as of the Effective Date of this Settlement Agreement. Thomas' obligations under the Confidentiality and Intellectual Property Agreement set forth in Addendum A to the Employment Agreement survive such termination, as well as the non-solicitation and non-recruit covenants, as set forth in sections 10 and 11 thereof.

2.2     TW agrees to pay Lockhoad a contract termination fee of $200,000, to be paid in 20 equal monthly installments of $10,000, the first due upon the Effective Date and each successive payment on the first day of the month thereafter. Payments shall be made by ACH deposit, unless otherwise agreed by the parties. There shall be no penalty for prepayment of any amount.  [first payment by check?]

2.3     Lockhoad agrees to pay taxes, if any, due on the termination, to the extent required by law, and hereby indemnifies and holds TW harmless from any and all tax consequences or liabilities, including taxes, penalties, interest and attorney's fees, assessed or incurred by reason of the breach of this paragraph or the tax characterization of the termination fee.

2.4     Thomas shall not be rehired by TW; provided, however, that Thomas retains her ownership interest in TW, and nothing in this Settlement Agreement is intended to nor shall operate as a waiver of any rights she may have as a Member. This Settlement Agreement is intended to and shall not adversely affect Thomas' Membership interest in TW, and Thomas will be treated the same as any other minority owner who is not acting as a Manager, subject to the provisions of the TW Operating Agreement.

2.5     The current list of PDTW Assets listed in its books and records is attached hereto as Exhibit "C." Within 30 days of the Effective Date, Thomas and TW shall inventory the PDTW Assets in storage in Palm Springs or otherwise in the possession, custody, or control of any party and supplement Exhibit "C" with any additional asset belonging to the company identified by any party. Except as otherwise agreed, TW shall maintain possession of all such assets in trust for PDTW and may use or dispose of them in order to satisfy PDTW's debt obligations.

# EXHIBIT

# "21"

**POTW Depreciation schedule**

| Equipment Asset# | Date | Production Equipment | Cost | Useful life | | | 2014 Total |
|---|---|---|---|---|---|---|---|
| 6 | 11/30/2006 | Sewing Machine | 4,763.00 | 5 | | | 5.15 |
| | | | 4,763.00 | | | | 5.15 |

**Office Furniture**

| Asset# | Date | | Cost | Useful life | AD 12/31/2013 | Jan-14 | Feb-14 | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | 2014 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16 | 2/7/2008 | Office Furniture | 6,525.00 | 7 | 5,797.00 | | | | | | | | | | | | | 61.57 |
| 17 | 5/30/2008 | Office Furniture | 431.00 | 7 | 384.00 | | | | | | | | | | | | | 1,473.45 |
| 18 | 8/13/2008 | Office Furniture | 10,300.00 | 7 | 9,151.00 | | | | | | | | | | | | | 932.14 |
| 25 | 9/4/2009 | Office Furniture | 251.00 | 7 | 210.00 | 2.99 | 2.16 | | | | | | | | | | | 128.69 |
| 37 | 9/13/2010 | Office Furniture | 383.00 | 7 | 383.00 | | | | | | | | | | | | | 128.49 |
| 40 | 3/13/2011 | Office Furniture | 3,210.00 | 7 | 3,210.00 | | | | | | | | | | | | | 395.71 |
| 42 | 4/16/2011 | Office Furniture | 2,081.00 | 7 | 2,081.00 | | | | | | | | | | | | | 124.00 |
| 43 | 4/20/2011 | Furniture | 1,409.00 | 7 | 1,409.00 | | | | | | | | | | | | | |
| 47 | 8/23/2011 | Furniture | 1,110.00 | 7 | 1,110.00 | | | | | | | | | | | | | |
| 48 | 9/20/2011 | Furniture | 1,600.00 | 7 | 1,600.00 | | | | | | | | | | | | | |
| 52 | 2/14/2012 | Office Furniture | 392.00 | 7 | 224.00 | 5.13 | 5.13 | 5.13 | 5.13 | 5.13 | 5.13 | 5.13 | 5.13 | 5.13 | 5.13 | 5.13 | 5.13 | |
| 53 | 2/15/2012 | Office Furniture | 3,262.00 | 7 | 1,864.00 | 122.62 | 122.62 | 122.62 | 122.62 | 122.62 | 122.62 | 122.62 | 122.62 | 122.62 | 122.62 | 122.62 | 122.62 | |
| 51 | 6/5/2012 | Office Furniture | 5,427.00 | 7 | 3,101.00 | 77.68 | 77.68 | 77.68 | 77.68 | 77.68 | 77.68 | 77.68 | 77.68 | 77.68 | 77.68 | 77.68 | 77.68 | |
| | 6/4/2013 | Furniture | 900.85 | 7 | | 10.72 | 10.72 | 10.72 | 10.72 | 10.72 | 10.72 | 10.72 | 10.72 | 10.72 | 10.72 | 10.72 | 10.72 | |
| | 11/18/2013 | Furniture | 2,770.00 | 7 | | 32.98 | 32.98 | 32.98 | 32.98 | 32.98 | 32.98 | 32.98 | 32.98 | 32.98 | 32.98 | 32.98 | 32.98 | |
| | 12/4/2013 | Furniture | 868.00 | 7 | | 10.33 | 10.33 | 10.33 | 10.33 | 10.33 | 10.33 | 10.33 | 10.33 | 10.33 | 10.33 | 10.33 | 10.33 | |
| | 8/28/2014 | Office chairs | 2,437.41 | 7 | | | | | | | | | | | | | | |
| | 9/2/2014 | Office tables | 1,739.64 | 7 | | | | | | | | | | | | | | |
| | 12/20/2014 | 6 drawers | 877.26 | 7 | | | | | | | | | | | | | | |
| | 1/27/2015 | 2 moroccan cover for pillow | 270.00 | 7 | | | | | | | | | | | | | | |
| | 1/27/2015 | 2 25/75 down pillow | 280.00 | 7 | | | | | | | | | | | | | | |
| | | | 40,519.85 | | 30,124.00 | 262.45 | 261.62 | 259.46 | 259.46 | 259.46 | 259.46 | 259.46 | 259.46 | 259.46 | 259.46 | 259.46 | 259.46 | 3,118.00 |

**Office Equipment**

| Asset# | Date | | Cost | Useful life | 12/31/2013 | Jan-14 | Feb-14 | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | 2014 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8/14/2006 | Mac Computer | 2,963.00 | 5 | 2,963.00 | | | | | | | | | | | | | |
| 7 | 11/9/2006 | Mac Computer | 3,636.00 | 5 | 3,636.00 | | | | | | | | | | | | | |
| 11 | 11/30/2006 | Mac Computer | 4,649.00 | 5 | 4,649.00 | | | | | | | | | | | | | |
| 12 | 12/27/2006 | Mac Computer | 4,563.00 | 5 | 4,563.00 | | | | | | | | | | | | | |
| 14 | 1/1/2007 | Computer Equipment | 21,345.00 | 5 | 21,345.00 | | | | | | | | | | | | | |
| 15 | 4/19/2008 | Computer Equipment | 4,559.00 | 5 | 4,428.00 | | | | | | | | | | | | | |
| 19 | 4/7/2009 | Computer Equipment | 2,549.00 | 5 | 2,343.00 | | | | | | | | | | | | | |
| 20 | 5/2/2009 | Computer Equipment | 1,807.00 | 5 | 1,661.00 | | | | | | | | | | | | | |
| 21 | 11/7/2009 | Computer Equipment | 3,377.00 | 5 | 3,030.00 | | | | | | | | | | | | | |
| 22 | 11/2/2009 | Computer Equipment | 2,269.00 | 5 | 2,036.00 | | | | | | | | | | | | | |
| 23 | 12/3/2009 | Computer Equipment | 1,275.00 | 5 | 1,144.00 | | | | | | | | | | | | | |
| 24 | 12/31/2009 | Computer Equipment | 1,846.00 | 5 | 1,657.00 | | | | | | | | | | | | | |
| 26 | 2/6/2010 | Computer Equipment | 6,676.00 | 5 | 5,715.00 | | | | | | | | | | | | | |
| 27 | 2/8/2010 | Computer Equipment | 74.00 | 5 | 63.00 | | | | | | | | | | | | | |
| 28 | 2/17/2010 | Computer Equipment | 4,319.00 | 5 | 3,697.00 | | | | | | | | | | | | | |
| 29 | 2/17/2010 | Computer Equipment | 4,556.00 | 5 | 3,900.00 | | | | | | | | | | | | | |
| 30 | 2/24/2010 | Computer Equipment | 1,697.00 | 5 | 1,453.00 | | | | | | | | | | | | | |
| 31 | 2/27/2010 | Computer Equipment | 1,066.00 | 5 | 913.00 | | | | | | | | | | | | | |
| 32 | 5/2/2010 | Computer Equipment | 1,017.00 | 5 | 871.00 | | | | | | | | | | | | | |
| 33 | 7/31/2010 | Computer Equipment | 436.00 | 5 | 373.00 | | | | | | | | | | | | | |
| 34 | 7/31/2010 | Computer Equipment | 436.00 | 5 | 373.00 | | | | | | | | | | | | | |
| 35 | 8/10/2010 | Computer Equipment | 861.00 | 5 | 737.00 | | | | | | | | | | | | | |
| 36 | 9/16/2010 | Computer Equipment | 1,332.00 | 5 | 1,332.00 | | | | | | | | | | | | | |
| 38 | 1/6/2011 | Computer Equipment | 1,643.00 | 5 | 1,643.00 | | | | | | | | | | | | | |
| 39 | 2/25/2011 | Computer Equipment | 3,979.00 | 5 | 3,979.00 | | | | | | | | | | | | | |
| 44 | 5/24/2011 | iPad | 668.00 | 5 | 668.00 | | | | | | | | | | | | | |
| 45 | 5/25/2011 | iPad | 882.00 | 5 | 882.00 | | | | | | | | | | | | | |
| 46 | 7/28/2011 | Computer Equipment | 4,949.00 | 5 | 4,949.00 | | | | | | | | | | | | | |
| 49 | 11/3/2011 | Computer Equipment | 3,950.00 | 5 | 3,950.00 | | | | | | | | | | | | | |
| 50 | 8/29/2012 | Mac Computer | 2,164.00 | 5 | 1,299.00 | 49.38 | 49.38 | 49.38 | 49.38 | 49.38 | 49.38 | 49.38 | 49.38 | 49.38 | 49.38 | 49.38 | 48.78 | 592.00 |
| | 8/14/2014 | Apple Store - Computer | 1,309.91 | 5 | | | | | | | | | 10.92 | 21.83 | 21.83 | 21.83 | 21.83 | 98.24 |
| | 8/26/2014 | Apple Store - Computer | 1,136.00 | 5 | | | | | | | | | 9.47 | 18.93 | 18.93 | 18.93 | 18.93 | 85.20 |
| | 8/26/2014 | Apple Store - Computer | 1,179.11 | 5 | | | | | | | | | 9.83 | 19.65 | 19.65 | 19.65 | 19.65 | 88.43 |

**Equipment**

| Date | Description | Useful Life | Cost | 12/31/2013 | Jan-14 | Feb-14 | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | 2014 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/29/2014 | Apple Store - Computer | 5 | 14,607.38 | | | | | | | | | | 243.46 | 243.46 | 243.46 | 243.46 | 973.83 |
| 8/29/2014 | Apple Store - Computer | 5 | 1,487.58 | | | | | | | | | | 24.79 | 24.79 | 24.79 | 24.79 | 99.17 |
| 9/10/2014 | Apple Store - Computer | 5 | 448.00 | | | | | | | | | | 7.47 | 7.47 | 7.47 | 7.47 | 29.87 |
| 9/11/2014 | HP - PC | 5 | 2,568.43 | | | | | | | | | | 42.81 | 42.81 | 42.81 | 42.81 | 171.23 |
| 9/11/2014 | Apple Store - Computer | 5 | 272.50 | | | | | | | | | | 4.54 | 4.54 | 4.54 | 4.54 | 18.17 |
| 9/12/2014 | Apple Store - Computer | 5 | 2,975.16 | | | | | | | | | | 49.59 | 49.59 | 49.59 | 49.59 | 198.34 |
| 9/12/2014 | Apple Store - Computer | 5 | 154.78 | | | | | | | | | | 2.58 | 2.58 | 2.58 | 2.58 | 10.32 |
| 9/19/2014 | Apple Store - Computer | 5 | 952.27 | | | | | | | | | | 7.94 | 15.87 | 15.87 | 15.87 | 55.55 |
| 9/30/2014 | Apple Store - Computer | 5 | 249.00 | | | | | | | | | | | 4.15 | 4.15 | 4.15 | 12.45 |
| 10/5/2014 | Apple Store - Computer | 5 | 161.32 | | | | | | | | | | | 2.69 | 2.69 | 2.69 | 8.07 |
| 10/6/2014 | Apple Store - Computer | 5 | 106.82 | | | | | | | | | | | 1.78 | 1.78 | 1.78 | 5.34 |
| 10/7/2014 | Apple Store - Computer | 5 | 47.96 | | | | | | | | | | | 0.80 | 0.80 | 0.80 | 2.40 |
| 10/8/2014 | Apple Store - Computer | 5 | 152.00 | | | | | | | | | | | 2.53 | 2.53 | 2.53 | 7.60 |
| 10/10/2014 | Apple Store - Computer | 5 | 2,257.03 | | | | | | | | | | | 37.62 | 37.62 | 37.62 | 112.85 |
| 11/24/2014 | Apple Store - Computer | 5 | 366.41 | | | | | | | | | | | | 6.11 | 6.11 | 12.11 |
| 11/30/2014 | Apple Store - Computer | 5 | 2,052.11 | | | | | | | | | | | | | 34.20 | 34.20 |
| | | | **95,543.00** | **90,252.00** | 49.38 | 49.38 | 49.38 | 49.38 | 49.38 | 49.38 | 49.38 | 79.59 | 492.97 | 550.47 | 556.58 | 590.18 | **2,615.47** |

**Leasehold Improvement - Bldg**

| Asset | Date | Useful Life | Cost | 12/31/2013 | Jan-14 | Feb-14 |
|---|---|---|---|---|---|---|
| 41 | 3/19/2011 | 8 | 3,260.00 | 3,260.00 | | |
| | | | **3,260.00** | **3,260.00** | | |

| | | | Cost | 12/31/2013 | Jan-14 | Feb-14 | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **TOTAL** | | | **123,636.00** | **123,636.00** | 311.83 | 311.00 | 308.85 | 308.85 | 308.85 | 308.85 | 308.85 | 339.05 | 752.43 | 809.93 | 816.04 | 869.64 |

TOTAL 2014: **5,734.65**